FILED
CLERK

4:07 pm, Mar 23, 2020
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
JACKSON,                       : 18-cv-03007-JS-AKT
              Plaintiff,       :
                               :
     - versus -                : U.S. Courthouse
                               : Central Islip, New York
                               :
NASSAU COUNTY, et al.,         : March 6, 2020
              Defendants       :
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR PROCEEDINGS
BEFORE THE HONORABLE A. KATHLEEN TOMLINSON
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

**For the Plaintiff**:          **Gabriel Paul Harvis, Esq.**
                                **Baree Fett, Esq.**
                                Elefterakis, Elefterakis
                                & Panek
                                80 Pine Street, 38th Floor
                                New York, NY 10005

**For the County**
**Defendants**:                 **Lalit Kumar Loomba, Esq.**
                                **Janine A. Mastellone, Esq.**
                                **Peter A. Meisels, Esq.**
                                Wilson Elser Moskowitz
                                Edelman & Dicker
                                1133 Westchester Avenue
                                White Plains, NY 10604

**For the Village**
**Defendants**:                 **Keith M. Corbett, Esq.**
                                **Harris Beach PLLC**
                                **100 Wall Street**
                                **23rd Floor**
                                **New York, NY 10005**

**Transcription Service**:      **Transcriptions Plus II, Inc.**
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Calling case 18-CV-3007, Jackson v.
2   Nassau County, et al.
3          Please state your appearance on the record.
4          MR. HARVIS:  For the plaintiff, Gabriel Harvis.
5   Good morning, your Honor.
6          THE COURT:  Good morning.
7          MS. FETT:  Good morning, your Honor.
8   Baree Fett for the plaintiff.
9          THE COURT:  Good morning.
10          MR. LOOMBA:  Good morning, your Honor.
11   Lalit Loomba for the County defendants from
12   Wilson Elser.
13          MS. MASTELLONE:  Good morning, your Honor.
14   Janine Mastellone for the County defendants
15   from Wilson Elser.
16          THE COURT:  Good morning.
17          MR. MEISELS:  Good morning, your Honor.
18   Peter Meisels from Wilson Elser for the County
19   defendants.
20          MR. CORBETT:  Good morning, your Honor.
21   Keith Corbett of Harris Beach for the Village
22   of Freeport, and I have with me today my associate,
23   Stephanie Tanzi.
24          MS. TANZI:  Good morning, your Honor.
25          MR. CORBETT:  Good to see you again.

3

Proceedings

1          THE COURT:  Good morning.

2          All right.  We have some ground to cover this

3   morning, and obviously this is my first go-round with all

4   of you.  Just as a preliminary, as you can see, we don't

5   have a court reporter here.  However, the courtroom is

6   wired, and all of these conferences are digitally

7   recorded.  So that means the most important thing I need

8   from you this morning is if you're speaking, get that

9   microphone as close to you as you can.  You can pick them

10  up.  They move.  You can adjust the level of it, but

11  please make sure you're on top of the microphone when you

12  speak.  All right?

13          I have some things I want to go through with

14  you from the submissions that you made.  I will ask you

15  some questions along the way.  Then I will give each of

16  you an opportunity to tell what else you think needs to

17  be addressed today.

18          So in preparing for this, you know, I have made

19  some substantial notes for myself.  So I am going to ask

20  you to bear with me, and let me get through my list, and

21  then I will take your list, all right?  So we'll go from

22  there.

23          All right.  I know there's been a dispute about

24  the depositions, and apparently the deposition schedule

25  or proposed schedule that was circulating with apparently

4

Proceedings

1    some scheduling done that is now out the window, so we'll

2    get to that in just a few minutes.

3            Judge Seybert, since the case after her having

4    seen you with some specific directives obviously, one of

5    which was to talk about this proposed amended complaint.

6    In looking now and I'm taking my lead off DE-269, which

7    is the February 26th letter, lengthy letter from Wilson

8    Elser -- let's see -- specifically from Mr. Loomba, and I

9    had previously gone over the January 22nd letter, which

10   is at 263, from Mr. Harvis.

11           So the first thing is obviously there are some

12   folks now out of this case going forward.  There was

13   supposed to, I think, have been a stipulation indicating

14   that.  It doesn't appear that any action has been taken

15   in that regard, and that's one of the first things we

16   need to get resolved.

17           So whatever the existing, and I say existing,

18   I'm not taking into account right now the proposed second

19   amended complaint, whatever the existing caption should

20   be with who is in, and who is out, I'm giving you ten

21   days to get that filed, all right?

22           And let me just explain how to make this work

23   for everybody.  You're going to put the caption up to the

24   point of these agreed upon changes.  You're going to file

25   it with that caption, and then in the body of the

5

Proceedings

1    stipulation, you're going to put the existing, what you

2    now agree, is the existing parties who are in the case.

3    Again, not including the issues revolving around the

4    second amended complaint.  That will make it easier for

5    us to sign off on, and also for the clerk's office to do

6    what they need to do.

7           Now I know that the plaintiffs are looking for

8    permission to file a second amended complaint.  The

9    defendants don't want -- don't believe there are grounds

10   for a second amended complaint.  I know part of what

11   Judge Seybert's concerned about, I'm concerned about, and

12   some of you expressed concern about, is you know,

13   proceeding in this case is an economically feasible

14   manner.

15          There's been a lot of back and forth here since

16   this case was undertaken, including motion practice, and

17   the expenses just keep digging a bigger hole here.  So

18   honestly, I want to propose something to you, which I

19   have bee thinking about, and that is instead of having

20   duplicate motion practice with requests, for example, a

21   motion to amend, and then opposition being filed, and

22   then a reply, and then a decision by Judge Seybert, which

23   we know regardless of how that goes, if in fact she

24   allows the amendments, then there's going to be motion

25   practice to dismiss the second amended complaint.

Transcriptions Plus II, Inc.

6

Proceedings

1          I would like to see if we can streamline this

2     process without anybody feeling that their rights were

3     being compromised, and what I am going to suggest to you

4     is I don't expect the defendants to say that they approve

5     of this, they accept this, or they think that this is an

6     okay thing, but it certainly seems to me there should be

7     some way to formulate the wording in a stipulation that

8     says, for example, the plaintiff has proposed this.  The

9     defendants do not agree with the assertions, and

10    allegations made in that second amended complaint, and

11    believe that those claims are not viable, nor the

12    individuals who seek to be added should be added, but in

13    an effort to move this process forward, you're not going

14    to prevent the amended complaint from being filed, with

15    the clear understanding that once it is, you're free to

16    proceed then to move to dismiss that second amended

17    complaint, which brings us down to one set of motion

18    papers, as opposed to two, and I would like to at least

19    now get some feedback on that issue.  And I'm sure that

20    you're not objecting to that.

21          MR. HARVIS:  No, that sounds good to us, your

22    Honor.

23          THE COURT:  All right.  You can preserve all of

24    your rights in the stipulation.  I don't really think

25    that's an issue.

7

                              Proceedings

1              MR. CORBETT:  Your Honor, would you like a

2    response?  I'm sorry.

3              THE COURT:  Sure.

4              MR. CORBETT:  Sure.  And again, Keith Corbett

5    for --

6              THE COURT:  Your colleagues are conferring, so

7    you can respond while they're conferring.

8              MR. CORBETT:  That's great.  Thank you, your

9    Honor.  Keith Corbett again for the Village of Freeport.

10             And your Honor, we completely concur with the

11   presentation you made, and obviously what you're looking

12   to do.  One of our concerns has always been let's do this

13   in an economically feasible manner, and an orderly

14   manner, so this case could be prosecuted, and defended

15   the way it should be as most cases are.

16             From the beginning, from our first conference

17   with Seybert, we were trying to streamline this, and if I

18   could just backup a little bit to give you some facts,

19   and some procedures that went on in this case, then I

20   will get some of the questions you asked.

21             You know, the initial --

22             THE COURT:  And just let me say to you, I have

23   read through everything, so I have a --

24             MR. CORBETT:  I will make it quick, your Honor.

25   I don't have to --

8

Proceedings

1          THE COURT:  I was going to say, you can

2     streamline your response, understanding that I have

3     looked at everything.  Go ahead.

4          MR. CORBETT:  Okay.  The original complaint

5     that started in this action named various police

6     officers, at no time did identify if they were Freeport

7     officers or Nassau County Police Department officers.  At

8     no time did it distinguish which claims it were against,

9     it was just blunderbuss against everyone.  It was very

10    difficulty to ascertain who was who.

11          At Judge Seybert's direction at the first

12    conference, she looked at I believe Mr. Meisels, and

13    myself, and said help them out, figure out who is there.

14    So we didn't want to load the gun to shoot ourselves, but

15    we did.  We did.

16          THE COURT:  Uh-hum.

17          MR. CORBETT:  And we went back and forth with

18    plaintiff's counsel a few times.  Ultimately, he reduced,

19    there were originally 19 individuals that I believed were

20    Freeport, tough to find 24 years ago, that we answered

21    for.  He reduced that down to 11, even though we had went

22    through documents showing that none of these individuals

23    have anything to do with this case.

24          THE COURT:  Uh-hum.

25          MR. CORBETT:  And it's been our position from

Proceedings

1   day one, as your Honor knows from multiple cases you've

2   had, in Nassau County, homicides are completely

3   controlled, overseen, investigated, prosecuted, by the

4   County of Nassau.  I mean, that is not disputed in this

5   case.

6              THE COURT:  Right.

7              MR. CORBETT:  The Village of Freeport does not

8   have the means to do homicides investigations.  They were

9   not in charge of this.  They were not responsible for

10  this.  It's all overseen by the County.  And we've

11  continually tried to explain that to plaintiff's counsel.

12             Thereafter, even though most of these people

13  are not in the case, we get that second complaint, still

14  going off the various individuals.  Finally, now we're at

15  a place where there's that he's requesting a second

16  amended complaint.

17             For the Village's position, we don't have an

18  issue with him filing a second amended complaint.  It

19  narrows it down to two individuals in his -- in the

20  plaintiff's mind, who are left in Freeport.  We believe

21  there are three additional claims he tries to add in that

22  we don't think are permissible, because of the relate

23  back doctrine, and we don't think they're even going to

24  survive.

25             That being said, the complaint now suffers from

Proceedings

1   very -- the exact same deficiencies as the first two.  He

2   does not lay out any factual basis to keep the two

3   individual Freeport officers in.  He does not lay out any

4   legal basis to keep them in.  If you look at it, he

5   actually only mentions the Freeport officers in a 192-

6   paragraph complaint, over 44 pages, he mentions a

7   Detective Zimmer three times, and a Police Officer

8   Melendez four times.

9          There's nothing in here that could actually

10  establish an intention infliction of emotional distress,

11  malicious prosecution, conspiracy.  We've had discovery

12  in this case.  The Village had finally worked out the

13  confidentiality stipulation with the County.  There were

14  some issues there for a while.  The plaintiffs received

15  thousands of pages of documents from the County.  Many of

16  the documents that County gave were Freeport documents,

17  because that makes sense.  Freeport would've given

18  anything to the County since they prosecuted the case,

19  and had the case.

20         So it's still our position that the complaint,

21  though we don't object to the filing of it, we will so we

22  have in dispositive motion practice.  The issue we're

23  wrestling with, and it's really not us, we're trying to

24  work with the plaintiff on is, there's no basis for

25  Freeport to be here, and we've spent -- I mean, the

Proceedings

1    taxpayers of Freeport have spent significant funds

2    already involved in two nonparty depositions, paper

3    discovery, and the whole matter.

4              I mean, my suggestion now to get to the

5    questions that were asked, to a stipulation of

6    discontinuance without prejudice without us.  I will even

7    have them appear for a deposition and when it's again

8    shown for the 90th time, there's no involvement here on

9    Freeport that would attach to any of these claims, I

10   would ask that the case be completely dismissed.

11             To force Freeport to still continue, there are

12   still interrogatories that were served upon us for

13   officers that he's no longer naming as defendants if this

14   complaint gets served.

15             There's no need to keep Freeport around.

16   There's no dispute that we were not involved in the

17   investigation, and the prosecution of Mr. Jackson.

18             More pointedly to this case, the entire --

19   really the crux of the case is Mr. Jackson was released

20   from prison, and he was released because allegedly two

21   statements that were taken by Nassau County police

22   officers were not in the file of the Nassau County

23   District Attorney.

24             The plaintiff obviously has a Brady violation

25   there.  Freeport didn't take those statements.  Freeport

Proceedings

1   wasn't involved in those statements that's been shown in
2   the documents that have been disclosed, it's been shown
3   by representations of counsel, it's been shown even in
4   the nonparty witnesses, which were deposed a few weeks
5   ago.
6           The fact of the matter is, there's no basis for
7   Freeport to have to continue to fund to defend a case,
8   what we believe is frivolous against them, based upon the
9   process and procedures employed in Nassau County, and the
10  facts that have been disclosed.
11          So again, we are not objecting to the filing of
12  the amended complaint.  We do reserve an objection
13  because we don't believe three additional claims should
14  not be instituted, and ultimately, it serves the same
15  deficiency, we will be (indiscernible) a motion to
16  dismiss.
17          If there's a way, and we ask for the Court's
18  guidance because at meet and confers, we haven't gotten
19  very far, as you could see from your docket, that we can
20  streamline this, so that Freeport could finally be out of
21  the case because there's really no basis for it, we're
22  happy to comply in any way we can to get there.
23          But I mean this case from the get-go has been
24  really a mess because of the way the pleadings were put
25  in, and trying to find who they're going against.

13

Proceedings

1          But we would like to have a briefing schedule
2    if possible to set today, and we would ask that
3    regardless of the outcome, a revised discovery schedule
4    be instituted today because discovery has kind of been
5    all over the map with all the letter motions, dispositive
6    motions -- I think there are motions for sanctions.
7              I mean, there's no need for all of this back
8    and forth.  We should be able to streamline it, and it
9    will let the plaintiff achieve what he needs.
10             THE COURT:  All right.  Well, I would like to
11   hear from plaintiff in response to that.
12             MR. HARVIS:  Thank you, your Honor.  Yes, so --
13             THE COURT:  Stay seated.
14             MR. HARVIS:  Thank you.  Thank you, sorry.
15             THE COURT:  Stay seated, please.  Just again,
16   just get yourself on the mic.
17             MR. HARVIS:  So yeah, so I am not sure exactly
18   how to respond to that.  I mean I think your Honor has
19   reviewed the docket.  I think it speaks for itself.
20   We've had issues from the very beginning with
21   noncompliance, and nonparticipation in this case by
22   Freeport.
23             THE COURT:  Yeah, I get all that.  I understand
24   what your arguments were.  I want you to respond to what
25   I just heard as to why Freeport shouldn't be in the case.

Proceedings

1    MR. HARVIS:  Oh, thank you, your Honor.  Yeah,

2  what we heard from Mr. Corbett was a series of

3  conclusions, statements that are unsupported anywhere in

4  the record.  In fact, as the cases developed, our theory

5  of liability as to Freeport has become more and more

6  clear.

7         What we learned when we had the depositions of

8  the two eyewitnesses whose statements were suppressed,

9  which is what led to Mr. Jackson's exoneration, when we

10  had those depositions, we learned that -- and this is in

11  the first -- the second amended complaint that we

12  submitted, we learned that the off-duty police officer

13  who was drunk that night, and pulled his service weapon

14  on the shooter, was friends with the first Freeport

15  police officer that he met that night, a Robert Melendez.

16         Robert Melendez took the drunken, off-duty

17  police officer from the scene where he had taken his gun

18  out, and pointed it at the shooter, over to the houses on

19  the north side of Freeport, and went and canvassed that

20  whole area.

21         Then the off-duty police was taken back to a

22  Freeport -- the Freeport police station, and inside of

23  the Freeport police station, he called the NYPD, and told

24  them that he had been involved in this incident, and he

25  was specifically asked whether or not he was intoxicated

15

Proceedings

1   because you're not allowed to draw your service weapon

2   when you're off-duty, and intoxicated.  He told a lie

3   there.  He said no, he wasn't.

4            And our theory of the case, and we think it's a

5   very cogent theory, is that the suppression of the

6   statements which led the DA to overturn the conviction,

7   were suppressed in order to avoid discovery of this

8   officer's misconduct.

9            Melendez's friend, who was drunk that night, if

10  anyone found out that he was drunk and he pulled his

11  weapon, that would have severe consequences for his

12  employment.  So our theory of the case was that the basic

13  original reason why they decided to suppress not only

14  those two statements, but also subsequent information

15  that came in, that would have led back to that same

16  theory of the crime, the same witness statements that

17  were suppressed.  And then --

18            THE COURT:  So let me stop you for a second.

19            MR. HARVIS:  Yeah.

20            THE COURT:  So who suppressed the statements,

21  first of all, and secondly, I mean, some of this I know

22  what the answer is, but I want it on the record anyway,

23  and secondly this off-duty drunken police officer what

24  police force is he on?

25            MR. HARVIS:  NYPD, your Honor.

Proceedings

1          THE COURT:  Okay.

2          MR. HARVIS:  And we're trying to get the bottom

3   of who suppressed them.  I mean, we haven't done any of

4   the actual defendant depositions yet, and part of that is

5   because we've had such a difficult time getting records,

6   which is really the initial thing that we need.

7          But it's the off-duty -- bolstering this theory

8   as to Freeport is the fact that the off-duty police

9   officer who himself is from Freeport, he grew up there,

10  he looked at the list of the officers that were at the

11  crime scene, and he ticked off half a dozen Freeport

12  officers that he knew from growing up, and living in

13  Freeport.

14         So we have a very strong sort of blue circle of

15  silence around him, of people that would have a reason to

16  want to assist him.  And then that's one defendant,

17  that's Officer Melendez.

18         And then looking at Freeport's participation I

19  guess the best lens to view it through, Freeport never

20  gave us initial disclosures even in this case.  We never

21  learned who they were relying on to support their claims,

22  or what the subjects of that information was.  We spent

23  like a year trying to litigate that issue.

24         And as a result, we never --

25         THE COURT:  They never gave them to you, or

Proceedings

1  they never gave you what you considered to be sufficient

2  disclosures.

3        MR. HARVIS:  Well, I think they -- they gave us

4  late disclosures, initial disclosures, and they were

5  incomplete.  They didn't give the subjects the

6  information.  And I think they just listed the

7  defendants.  I think that's what the list was.

8        And so what came out from the Nassau County

9  production was an audio recording which is extremely

10 telling, and we filed a letter motion based on it to

11 Judge Seybert, and on that recording, we hear a Freeport

12 detective because they're trying to say that Freeport had

13 no role in this murder investigation, three months after

14 the crime, we have a 36-minute recorded interview between

15 a Freeport detective, and an eyewitness to the murder who

16 may have actually seen the actual perpetrator of the

17 murder, and in that conversation, he explains that

18 Freeport and Nassau County work hand-in-hand, in

19 investigating the murder for two weeks.  He describes

20 after the crime that for two weeks, the Nassau County

21 Detectives were basically working out of the Freeport

22 police station, trying to solve this crime, and that he

23 himself, Arthur Zimmer, who is now deceased, the Freeport

24 officer, that he and Jerl Mullen, who was one of the

25 Nassau County homicide detectives, were working hand-in-

Proceedings

1    hand, trying to solve this murder.

2           And so from our view, we think that there's an

3    extremely compelling argument as to that interview that

4    was recorded being suppressed by Arthur Zimmer.  That's a

5    Brady violation, to Melendez, likely playing a role,

6    plausibly playing a role in the suppression of the

7    initial eyewitness statements.  That's a Brady violation.

8           And then really, also the conspiracy claim,

9    because we have two police forces here.  Normally, the

10   argument -- the counter argument to a conspiracy claim

11   would be the intercorporate conspiracy doctrine, but

12   because we have two different police departments here,

13   that simply doesn't apply.

14          And so we think that the facts read the way

15   that they're going to be at a motion to dismiss, which is

16   with all of the inferences drawn in our favor, are

17   clearly going to plausibly support a conspiracy

18   allegation.

19          And all of this is to say nothing of the state

20   law claims, because we filed notices of claim, and

21   therefore independent of any Freeport Village employee's

22   personal involvement for the purposes of 1983, they are

23   responsible under respondeat superior for the tortious

24   conduct of any of their employees.

25          So we have also, not to say nothing again of

19

Proceedings

1  the Monell allegations that we have against Freeport as

2  well, so we think that there are like, I would say half-

3  a-dozen or so, valid claims against Freeport, and this is

4  all kind of to go back to January 2018, when we were in

5  front of Judge Seybert, and these same arguments were

6  raised, and Judge Seybert, as Mr. Corbett said, looked at

7  the defendants, and she said you help them.  Whatever you

8  have in your offices, you give it to the plaintiff, so

9  that he can figure this out.

10           And do you know what I got?  I got nothing from

11  Freeport, no documents from Freeport.  I think I got

12  initially 23 pages from Nassau County.  They've produced

13  a lot since then and we want to give Nassau County credit

14  for that.

15           THE COURT:  Did you move to compel?  Did you

16  come back to Judge Seybert and move to compel?

17           MR. HARVIS:  Well, we went back to Judge Brown.

18  We had two conferences in front of Judge Brown and they

19  were discovery orders entered, and we're going to get

20  that when it's our turn to raise issues, but we think

21  there was noncompliance there by Freeport, and actually

22  you'll see if you look at the docket, sometimes where

23  Judge Brown goes so far as to bring up the word sanctions

24  because there's --

25           THE COURT:  Yeah, I did see that.

20

Proceedings

1      MR. HARVIS:  -- noncompliance.  And so we think

2  that what this is is basically -- and what it has been,

3  and I think Nassau probably has something to say about

4  this as well, it's really a smokescreen because in order

5  to avoid valid discovery demands that we're serving, very

6  carefully drafted, targeted demands, intended to answer

7  the kinds of kinds of question s that your Honor is

8  asking, and we get literally no response, not -- it's not

9  that they're bad responses from Freeport, we get nothing.

10      We served demands, and we're not talking about

11  defendants that are now out of the case.

12      THE COURT:  Okay, let's get to that.

13      MR. HARVIS:  Yeah, we'll save that.

14      THE COURT:  And let's just deal with what we're

15  dealing with for now, all right?

16      MR. HARVIS:  Sure.  So thank you, your Honor.

17      THE COURT:  So it's clear to me after listening

18  to this, there's no bridging the gap between you two, so

19  I am going back to my original statement which I would

20  like to see if we can craft a stipulation to deal with

21  the circumstances that allows the case to move forward

22  now to motions to dismiss the second amended complaint,

23  but I do want to give Nassau County an opportunity to

24  respond, as well.

25      MR. LOOMBA:  Good morning, your Honor.

Proceedings

1           THE COURT:  Yeah.

2           MR. LOOMBA:  And I'll stay seated.  Thank you.

3    Yes.

4           I guess the County's position on your

5    suggestion is that we would consider the stipulation so

6    that the Court would only have to address these arguments

7    once, not you know, once on an opposition to a motion to

8    amend, and then a second time on our motion to dismiss.

9           Obviously, you can only get one amendment

10   without a stipulation or a court order.  We would want to

11   condition any agreement on the County's part to allow the

12   filing of the second amended complaint, on limitations in

13   discovery going forward because we believe that some of

14   the claims, many of the claims, fail to state a claim,

15   and that that's why we --

16          THE COURT:  I get it.  You're hoping they get

17   knocked out on the motion to dismiss, and then you don't

18   have to produce anything more.

19          MR. LOOMBA:  That's correct, your Honor.

20          THE COURT:  Okay.

21          MR. LOOMBA:  I would say that the County has

22   produced --

23          THE COURT:  I'm good that way.  Go ahead.

24          MR. LOOMBA:  The County has produced quite a

25   lot of documentation, as I think the plaintiff has

Proceedings

1   acknowledged.  There are, I think, nine or -- plus two,

2   eleven, claims for relief in their second amended -- or

3   proposed second amended complaint, and we have arguments

4   addressed to the sufficiency of not all of them, but of

5   the majority of them.  And we would -- so if -- the

6   County's position on your proposal is a conditioned yes.

7           THE COURT:  All right.  So after having heard

8   what you just said, I don't have a problem, because I

9   don't want to halt discovery all together, but in terms

10  of building the language of the stipulation, I don't have

11  a problem with having the County respond as we talk more

12  about the discovery process, to the claims that you're

13  not contesting going forward, at this point, and reserve

14  your rights.

15          And what I will let you do is if you need to

16  serve another round of discovery, if those claims remain

17  in, then I will let you do that.  All right?

18          MR. HARVIS:  Well, if I may, your Honor, I mean

19  Judge Seybert specifically ordered when we were

20  originally discussing this in January of 2018,

21  specifically ordered that discovery should proceed while

22  the motion --

23          THE COURT:  I read, I read well.  I got her

24  orders, okay?

25          MR. HARVIS:  Okay.

23

Proceedings

1          THE COURT:  I'm not saying discovery is not

2    proceeding.  I'm saying to you there may be some

3    limitations on what discovery gets done, okay?

4          MR. HARVIS:  Okay.

5          THE COURT:  All right.  It seems to me -- let's

6    see -- one, two, three, four, five, six seven -- seven

7    people should be able to craft a stipulation and get it

8    filed in the next two weeks, all right?

9          And so that means what I am going to do right

10   now is set up a schedule for the motion to dismiss.

11   Okay?  Just bear with me for a minute.  Once that stip

12   comes in, excuse me, it will get so ordered, assuming

13   everything is in order, which I fully expect will be the

14   case.  As I said, you're allowed to reserve your rights

15   to the extent we discussed here this morning.

16         Once that's in, and it's so ordered, we'll deem

17   the second amended complaint to be the operative

18   proceeding -- excuse me, the operative pleading in this

19   case at this point.  All right.

20         As far as the defendants are concerned, if you

21   two want to talk to each other, or take a motion, I'm

22   fine with that, but how long do you need to make your

23   motion?  It's not like you have a surprise here.  You've

24   had the second amended complaint.

25         MR. CORBETT:  Your Honor, we could -- excuse me

24

Proceedings

1    -- we could do this expeditiously.  We could have a
2    motion submitted within 30 days or less.
3              Mr. Loomba?
4              MR. LOOMBA:  Your Honor, just because of
5    schedules and motion schedules and other cases, I would
6    ask for just a slightly longer period of time.
7              THE COURT:  Which is?
8              MR. LOOMBA:  I would just propose April 17th.
9              MR. CORBETT:  And your Honor, if I may?
10             THE COURT:  Hold on a second.
11             MR. CORBETT:  Yes, ma'am.
12             THE COURT:  All right.  That's roughly six
13   weeks.  All right.  I don't have a problem with that.
14   We'll leave it at April 17th.
15             Mr. Harvis, how about you?  Opposition?
16             MR. HARVIS:  Just because I'm opposing two
17   motions, your Honor, I would say three weeks if that's
18   okay.
19             THE COURT:  Three weeks?  That's fine.
20             MR. HARVIS:  Thank you.
21             THE COURT:  Let's see, 17th, one, two, three --
22   I will give you that weekend, which will put you at May
23   18th, all right?
24             MR. HARVIS:  Thank you, your Honor.
25             THE COURT:  And my guess is you'll want a

Proceedings

1    reply?

2              MR. CORBETT:  Yes, your Honor.

3              MR. LOOMBA:  Yes, your Honor.

4              THE COURT:  Okay.  How is ten days?  Lt's see.

5    Let me see with that is.

6              MR. CORBETT:  Can we do June 1st, your Honor?

7              THE COURT:  Well, ten days is actually ten

8    working days.  If you want -- you want June 1st, that

9    will give you the weekends, that's fine.

10             MR. CORBETT:  Thank you, your Honor.

11             THE COURT:  And let's be clear here, you know,

12   short of life and death, I don't intend to extend these

13   dates, so --

14             All right.  Let me go onto the next thing on my

15   list.

16             MR. CORBETT:  Your Honor, if I may?

17             THE COURT:  Yes.

18             MR. CORBETT:  Judge, just responding to some of

19   the things that were said earlier, just for the record.

20             THE COURT:  Yes.

21             MR. CORBETT:  There are a lot of theories about

22   a lot of things, it doesn't mean you have viable claims

23   against parties, and we can get the transcripts of those

24   nonparty proceedings, so the Court could see them.

25             THE COURT:  Uh-hum.

26

Proceedings

1      MR. CORBETT:  I mean, they knew each other

2  because they grew up in Freeport.  They weren't friends

3  or anything like that.  I didn't hear anything there that

4  would attach to any facts to any of the legal claims he

5  raised against Freeport as it relates to Bobby Melendez.

6          And again, you asked a question earlier well,

7  who suppressed those statements.  Those very statements

8  it is undisputed, were taken by County police officers,

9  not Freeport police officers.  The Freeport officers --

10      THE COURT:  All right.  Taken by the officers I

11  understand, but my question was who suppressed them.

12      MR. CORBETT:  Understood.  Your Honor, and if I

13  may, there were two statements that were taken by Village

14  of Freeport officers.  Those were given to the County,

15  and those were all disclosed to the DA.

16          And what we're seeing through discovery is the

17  County is providing records to the plaintiff, and they're

18  providing all the Freeport records because Freeport,

19  because they were not the operative entity in charge,

20  gave everything to the County.  They then went forward

21  with prosecutions, arrests, and everything forward.  I

22  mean there's no basis in any way to connected Freeport to

23  those statements.

24      THE COURT:  Okay.  I understand that.  We're

25  obviously not going to resolve the merits here today.

27

Proceedings

1            MR. CORBETT:  No, we're not, but thank you,

2   your Honor.

3            THE COURT:  All right.  And also, I am not

4   going to be the one who does that.  The motion to dismiss

5   is going to wind up being before Judge Seybert, so --

6            MR. CORBETT:  Yep.

7            THE COURT:  But let's see what else we can try

8   to get resolved today.  Just bear with me for a minute.

9            MR. HARVIS:  Your Honor, if I may just while

10   we're still on the issue of the amended complaint being

11   filed.

12            THE COURT:  Yes.

13            MR. HARVIS:  There are two defendants who I

14   need to serve with that pleading in order for them to

15   respond with their motion to dismiss, and I just wanted

16   to make sure that we have some mechanism in place for

17   that to happen.

18            THE COURT:  Who are they?

19            MR. HARVIS:  They are Walter Swinson, and the

20   ESTATE OF Arthur Zimmer, and so Walter Swinson is a

21   County -- former County employee.  So I was hoping that

22   perhaps they could give me a service address for that

23   individual, and I know that Mr. Corbett said he was

24   investigating the estate of the later Arthur Zimmer.  So

25   perhaps they could just let us know the outcome of that,

28

Proceedings

1  and --

2            THE COURT:  All right.  Well, the people who

3  would be -- and that you're looking to add here,

4  certainly have the right to be notified, and have some

5  input if they wished to, however -- well, obviously you

6  have to serve, you're going to have to also serve your

7  motions on those folks, too, so they have an opportunity

8  to see what you're doing, all right?  Just so we're all

9  on the same page.

10           MR. CORBETT:  Understood, your Honor, and just

11  to -- as you know, these -- the facts of this case

12  happened over, you know, 25 years ago.  Arthur Zimmer is

13  deceased.  We didn't do an investigation.  What we're

14  trying to figure out is was there an estate at all?  Was

15  it administrated?  Did he have a will?  We don't know any

16  of those answers, and the --

17           THE COURT:  I understand that and --

18           MR. CORBETT:  And the question I am getting to

19  is both officers are completely indemnified and held

20  harmless by the Village of Freeport.  So the necessity to

21  even --

22           THE COURT:  They still have a right to know.

23  Okay?

24           MR. CORBETT:  Oh, understood, your Honor.

25           THE COURT:  Go ahead.

Proceedings

1          MR. CORBETT:  And they should know.  What I am

2   saying is even though we are moving to dismiss ultimately

3   on behalf of everyone, we're still ourselves trying to

4   get in touch with whoever is the proper person for

5   deceased Arthur Zimmer, to make sure that they're

6   allowing us to --

7          THE COURT:  You mean the person who is handling

8   the estate?

9          MR. CORBETT:  If there is an estate.

10          THE COURT:  Okay.

11          MR. CORBETT:  We're told he may have died, it

12   may have been a small, underneath the threshold.

13          THE COURT:  All right.

14          MR. CORBETT:  He may not have had a will.

15   We're trying to figure out what that even is, even if

16   there was an estate to begin with.

17          THE COURT:  All right.

18          MR. CORBETT:  It may have been an

19   administrative proceeding, we don't know.

20          THE COURT:  Okay.

21          MR. HARVIS:  And your Honor, I will just

22   mention that Arthur Zimmer's son, David Zimmer, also

23   worked, and he's still alive, and he is worked at the

24   Freeport Police Department also, so I had suggested that

25   was a good place to start in terms of his father's

Proceedings

1    estate.

2              THE COURT:  All right.  I mean the key thing

3    here is you've got to get a last known address for

4    somebody get -- at least be notified here, so --

5              MR. HARVIS:  Understood.

6              THE COURT:  -- you'll take care of that.

7              MR. HARVIS:  Thank you, your Honor.

8              MR. LOOMBA:  Your Honor, can we raise two

9    issues here regarding parties?  One is Dora Mullen (ph.),

10   who is the administrator of the estate --

11             THE COURT:  Yes.

12             MR. LOOMBA:  -- of Jerl Mullen.

13             THE COURT:  Yes.

14             MR. LOOMBA:  The County would like to move --

15             THE COURT:  To vacate the default?

16             MR. LOOMBA:  Yes, yes.

17             THE COURT:  Yes.  Okay.

18             MR. LOOMBA:  It would --

19             THE COURT:  I was paying attention, honest.

20   Okay?

21             MR. LOOMBA:  Thank you, your Honor.

22             THE COURT:  First of all, since there's an

23   issue here about the fact that they're going to move to

24   dismiss the claims against her anyway, can you see

25   yourself stipulating to vacate the default?

31

Proceedings

1        MR. HARVIS:  Sure.

2        THE COURT:  So let's take care of that, all

3  right?

4        MR. LOOMBA:  Great.

5        THE COURT:  That's something else you will get

6  filed in the next two weeks.

7        MR. HARVIS:  And then since we already served

8  her with the first amended complaint, she's down in North

9  Carolina --

10       THE COURT:  Uh-hum.

11       MR. HARVIS:  -- is that -- I just don't want to

12  make a technical error here.  Do we need to re-serve her

13  then once we deem the second amended --

14       THE COURT:  You need to serve her with the

15  second amended complaint, yes.

16       MR. HARVIS:  All right.  Sure.

17       THE COURT:  Okay.

18       MR. HARVIS:  I will take care of that.

19       THE COURT:  All right.

20       MR. LOOMBA:  And your Honor, just with  respect

21  to Mr. Swinson, the -- he has been named in a caption,

22  right?  Somebody from the plaintiff's office has typed

23  name in the caption but that's it.

24       THE COURT:  Uh-hum.

25       MR. LOOMBA:  So he hasn't been served with

32

Proceedings

1    anything.  He has not requested defense, and
2    indemnification from the County.  The County Board of
3    Indemnification has not met to consider whether to
4    defend, and indemnify him.  Nobody from the County's
5    attorney's office has sat and considered whether to hire
6    a law firm to represent him.
7                THE COURT:  Yes.
8                MR. LOOMBA:  Wilson Elser certainly hasn't been
9    contacted to represent him.  So we -- I just wanted to
10   make sure that that was clear to the Court.
11               THE COURT:  Well, I think -- I get that.  Do
12   you have a way of communicating with him at all?
13               MR. LOOMBA:  I would have to go through the
14   police department to get --
15               THE COURT:  Okay.
16               MR. LOOMBA:  -- try to get any address, your
17   Honor.
18               THE COURT:  All right.  I mean part of that --
19   what I am most concerned about is just getting notice to
20   these folks.  I mean, the fact that potentially if this
21   motion to amend does not include him, if that's what
22   Judge Seybert decides, then all of this is a moot issue.
23               However, I still think he needs to at least be
24   notified that this amended complaint names him.  So
25   there's got to be some way that somebody in there can

33

Proceedings

1  find the last known address for him, all right?

2        MR. LOOMBA:  Okay.  We'll do that, your Honor.

3        THE COURT:  All right.

4        MR. HARVIS:  Your Honor, I am sorry, just

5  another technical issue, so assuming the stipulation is

6  filed, and then the second amended complaint is deemed

7  amended, we would then file summonses with the clerk the

8  same way we would normally do that, right?

9        THE COURT:  Correct.

10        MR. HARVIS:  Okay, great.  Thank you.

11        THE COURT:  Yeah, especially for any new party.

12  Somebody who is an existing party is a different story.

13        MR. HARVIS:  Yep.

14        THE COURT:  All right.  Moving down the list

15  here, we're going to talk about paper discovery in a

16  minute but for the time being, I am staying all further

17  depositions until these issues are resolved.

18        There is still outstanding a pending spoliation

19  motion at DE-206.  Obviously that was filed, I think back

20  in September, not filed in front of me.  Here's what I am

21  going to have you do.  I am going to terminate the notice

22  of motion that was filed in September, and you're simply

23  going to file a new notice, sometimes shortly, all right,

24  as soon as you can, which will then pull it up as a

25  pending motion before me.

Proceedings

1          MR. HARVIS:  Okay.

2          THE COURT:  And I will proceed from there.  I

3    do want to tell you, I took a quick look at the motion

4    papers.  I'm a little bit concerned because there's some

5    citations to things like residential funding, which are

6    no longer good law.  Residential funding is not the

7    measure of spoliation and damages at this point, which --

8          MR. HARVIS:  Well, if I may, your Honor.

9          THE COURT:  Go ahead.

10          MR. HARVIS:  Yeah, thank you for bringing that

11   to my attention.  I certainly was not aware of that, so I

12   apologize.  I don't do a lot of sanction/spoliation

13   practice.

14          THE COURT:  Unfortunately, I do a lot.

15          MR. HARVIS:  Okay.  Sure.

16          THE COURT:  So go ahead.

17          MR. HARVIS:  And I was just going to say, you

18   know, as the record as developed, I think that since your

19   Honor is going to terminate the notice anyway, it may

20   make more sense, rather than just refiling it, for us to

21   take a minute, and perhaps reconsider when the

22   appropriate juncture is for us to file that because as

23   we're learning more information, I just think it may

24   change the exact triangulation of that motion, and so --

25   because for example, we're learning that it may have been

Proceedings

1   a Freeport number that was called, as opposed to 911, and

2   so while I think it might make more sense to just hold

3   off on that for a bit.

4           THE COURT:  All right.  All right.  Then why

5   don't you do this?  Just submit a letter to me that says

6   you're going to withdraw the existing motion without

7   prejudice, all right?

8           MR. HARVIS:  We'll do that, your Honor.  Of

9   course.

10          THE COURT:  All right.

11          MR. HARVIS:  And your Honor, that's because of

12  the amendments I guess, and the way ESI is treated, and

13  the new rules, is that the issue there?

14          THE COURT:  Yeah, well when the Chin case came

15  in, it essentially brought in a new era because the

16  Second Circuit decided that, for example, simply because

17  you don't file a litigation hold, or don't serve a

18  litigation hold, that's no longer enough.

19          MR. HARVIS:  Yeah.

20          THE COURT:  It used to be automatic that it was

21  automatically gross negligence.  That's not the standard

22  anymore.

23          MR. HARVIS:  Got it.

24          THE COURT:  In addition to which, you also have

25  to show, which is why residential funding is out the

Proceedings

1   window, that whatever information you're claiming, or

2   documents you're claiming were spoliated, you have to be

3   able to show that they were -- that you have a way to

4   show that they would have been favorable to your case,

5   and would have helped your case proceed, which means you

6   have to have some evidence presented to that effect, not

7   just speculation.  So --

8            MR. HARVIS:  Sure, got it.

9            THE COURT:  It's tougher these days --

10           MR. HARVIS:  Yeah, yeah.

11           THE COURT:  -- to get that kind of a --

12           MR. HARVIS:  I kind of halfway got there

13   between the initial motion and the reply, but I just

14   didn't get a holistic enough understanding of it, so I

15   really appreciate that.

16           THE COURT:  All right.  Well, good.  You'll go

17   back and take another look, okay?

18           MR. HARVIS:  There we go.

19           THE COURT:  All right.  That brings us to the

20   existing state of paper discovery, and I know there's a

21   lot of dispute here.  As far as the prior rulings that

22   Judge Brown made, I'm trying to understand if you're

23   still contending that there's noncompliance with his

24   orders.

25           MR. HARVIS:  We are, your Honor, yes.  I mean

37

Proceedings

1   the most -- we were really at the preliminary phase of

2   just having exchanged initial demands and responses at

3   that time.  So we have actually drilled down a lot in

4   terms of what specifically is outstanding.

5          But in terms of actual violations of what we

6   believe were discovery orders entered by Judge Brown,

7   it's really the personnel and disciplinary files of the

8   individual officers.

9          THE COURT:  Right.

10         MR. HARVIS:  Those were ordered to be disclosed

11  by all defendants.

12         THE COURT:  Okay.

13         MR. HARVIS:  And all we've received is only

14  from Nassau County, and it was I think 37 pages of

15  summary material, that just shows a number of complaints,

16  no underlying files, no personnel records.

17         THE COURT:  Okay.  Well, let me tell you, and

18  I've written a lot about this with respect to personnel

19  files generally, and then personnel files with respect to

20  police officers.

21         I don't wholesally require anybody to turnover

22  a complete "personnel" file, for a whole host of reasons.

23  And this part of the background come out when I was in

24  practice, first of all, there are all kinds of things

25  contained in personnel files, including somebody's

38

Proceedings

1  vacation schedule, somebody's 401(k), which is supposed

2  to be kept separately but nine times out of ten, are not.

3          And so what's relevant, as far as I am

4  concerned with respect to any police officer's personnel

5  file, is any prior disciplinary actions that have been

6  filed against that officer, whether it's oral, written,

7  formal, or informal, and also narrowed to the types of

8  allegations that made.

9          Like what's the basis here for the disciplinary

10 records in terms of your case.  What is it that you're

11 looking for that's relevant to complaints made by your

12 clients at this point?

13         So I mean that focus has to narrow, and

14 honestly right now, I think it's important that you have

15 another discussion with counsel to see if you can narrow

16 this down, all right?

17         MR. HARVIS:  Sure.

18         THE COURT:  And as far as -- to the extent that

19 there are any written complaints, summaries are not good

20 enough.  If there are written complaints, those

21 complaints themselves, even if to some extent they need

22 to be redacted, they are still subject to production, and

23 should be produced.

24         So I am going to have you talk to each other

25 further about that specific issue, and to the extent you

Proceedings

1  still can't resolve the matter, if that's the case, then

2  what I want from you is whatever is specific, and I'm

3  going to have you file a Rule 37.1 motion, that's dealing

4  with an answer of specific response you got to a specific

5  discovery request.

6          And let me just point out to you because if I

7  get the motion in some format other than what I am about

8  to tell you, you're going to wind up getting it back, and

9  I would like to avoid that.

10         Rule 37.1 talks about how you present this type

11  of an objection or a motion to the Court, and so again,

12  because it focuses on an answer to a specific

13  interrogatory, or a specific document request, you're

14  required first of all to state verbatim what the request

15  was.  Underneath of that, state verbatim the response you

16  received from opposing counsel, and underneath of that,

17  your particularized objection to that specific response.

18         I get motions from people all the time on

19  discovery disputes where somebody wants to give me ten

20  pages of legal argument, and then starts talking to me

21  about the actual response to the request.  If you do

22  that, you're going to wind up getting it back.  Please

23  don't give me three pages of background.  I don't need

24  it.  I know what the case is about.  Just get right to

25  the heart of the matter.

40

Proceedings

1    Start with it's this involves document request

2    number three.  Here's what we asked for, here's what they

3    responded, here's why it's not sufficient.  It's not

4    privileged.  It's not -- whatever the reason is that you

5    believe you're entitled to that information, and you're

6    not getting it.  That's where the law goes.  If you want

7    to cite to some case, it goes in that specific objection.

8        All of this changed in December of 2015 when

9    the change to the Federal Rules took place about

10   proportionality, and so keep that in mind, as well.

11   That's the framework you're working from.

12       I will also caution you, and you'll see this in

13   my rules, normally any letter motion that gets made to me

14   is limited to three pages.  The only exception are for

15   motions that are filed under 37.1, and the reason is by

16   the time you get two of these down, or three of these

17   down, you're at the three-page limitation, just

18   responding.

19       And so that three-page limitation is waived on

20   this type of a motion but just for an example, in the

21   last couple of weeks, I've gotten a 60-page 30.1 motion,

22   which went right back to counsel, because if that's the

23   state of affairs you're telling me that you can't agree

24   on, then what I'm likely to do is call all of you in

25   here, have you go to what I refer to kindly as the "wood

41

Proceedings

1   shed" behind the courtroom, which is our attorney

2   conference room, and you'll sit here with my law clerk

3   until you work it out, all right?

4           If it takes all day, or two days, or three

5   days, that's what it does.  So you've got to learn to

6   talk to each other, and try to reach a resolution even if

7   it means some compromise, so that's what you need to do,

8   all right?

9           MR. HARVIS:  All right.

10           THE COURT:  Get me -- I'm not sure I want to

11   get so granular today that we're down to, you know, each

12   specific request that was made that you don't feel was

13   properly responded to, but in the framework of what I

14   have just given you, I certainly expect that you'll have

15   a further conversation with each other, and try to work

16   out what you can work out, all right?

17           To the extend that you need to make any Rule

18   37.1 motions, I'm going to set a limitation here of 30

19   days.  If I don't get it in 30 days, I'm going to deem

20   the objection waived, okay?  I don't want these things

21   lingering forever.

22           And depending on what's in there, I may bring

23   you back in, and rule from the bench, and just go through

24   them systematically, and say here's what's happening.

25           All right.  So I think that exhausts my list,

42

Proceedings

1   so I want to go to each one of you, and you'll tell me

2   and just remember what I said, too, depositions are on

3   hold until we get these things worked out, which means

4   also until you get an answer on the motion to dismiss the

5   second amended complaint.

6           All right.  Let me start with plaintiffs.  Mr.

7   Harvis, is there anything else we need to address today?

8           MR. HARVIS:  Well, I mean, I guess is your -- I

9   was going to kind of give a broad strokes overview of

10  what we saw like the top line discovery issues, but if

11  your Honor would prefer us to present that in letter

12  form, we could certainly do that.

13          THE COURT:  Yes, I would prefer that if you

14  don't mind.

15          MR. HARVIS:  Okay.

16          THE COURT:  Okay?

17          MR. HARVIS:  Sure.  The only question that I

18  have then is with respect to -- I guess there's the one

19  open issue that we saw is that we saw -- a lot of these

20  events take place in station houses.  We have the events

21  in the Freeport station house on the date of the murder,

22  and then we have this whole interrogation and coercion,

23  confession allegation, that takes place in the Nassau

24  County Homicide Squad.

25          We served Rule 34 demands for inspection of

Proceedings

1   those two station houses on both defendants, and Nassau

2   County has agreed that we're just going to set a date and

3   do that.  We had gotten some push back from Freeport that

4   they don't think we should be allowed to do that.  And we

5   asked to see -- when we go to the station house, the

6   records, whatever original records they have, station

7   house logs from back then, that kind of showed who was in

8   the precinct, and I just wanted to make sure that your

9   Honor's stay would allow us to proceed with that

10   inspection while we are working this out.

11         THE COURT:  I don't have a problem with that,

12   but I will tell you this.  I have more and more filings

13   by precincts as to new security measures that have been

14   put in place for a whole host of reasons, which don't

15   permit people who have lawsuits to come in and inspect.

16         What has occurred, and what the defendants

17   often have preceded with is providing photographs of the

18   spaces that you're looking for.  I realize it's not

19   exactly a preferred choice from your end, but it's

20   certainly better than nothing at this point.  If you can

21   work this out with counsel, you'll work it out, and if

22   there's a problem, then you'll come back to me.

23         MR. CORBETT:  And your Honor, that was exactly

24   -- just to -- that's exactly the reason why Freeport was

25   against allowing that.  There are security measures in

44

Proceedings

1   place for a whole host of reasons for access, things to

2   that nature.  We have no problem providing photographs.

3   Just know that, you know, this happened in 1994.  We're

4   providing photographs of the current space, and we'll

5   just let them know that this may have changed, obviously,

6   over the course of 25 years, but we have no problem

7   taking photographs so that they could see the physical

8   locations, but we do have an issue with security

9   concerns.

10          THE COURT:  The only thing I would ask you to

11   check is to find out whether or not -- and again, this

12   may be an exercise in futility, but just to find out from

13   your clients, whether or not there were any photographs

14   of the building, and the office at that point in time,

15   and if there were, I would have you produce those as

16   well.

17          MR. CORBETT:  We absolutely will.  That

18   actually came up on a completely unrelated case where we

19   were able -- there were photographs of the time in

20   question, and those are what we did provide to

21   plaintiff's counsel.  We have no problem doing that.

22          THE COURT:  As to this log, let me ask you

23   this, Mr. Corbett, what about the prospect of the police

24   department allowing you to take possession of the log, so

25   that counsel could come to your office to look at it, as

Proceedings

1  opposed to going to the police station?

2          MR. CORBETT:  Yeah, I don't foresee an issue

3  with that whatsoever.

4          THE COURT:  Okay.

5          MR. CORBETT:  I may just have to have the

6  chief, or assistant chief with me --

7          THE COURT:  That's fine.

8          MR. CORBETT:  -- because of, you know, leaving

9  the log behind.

10          THE COURT:  Yes.

11          MR. CORBETT:  I could check with the client as

12  far as access records because I know they have a specific

13  protocol about how the books and records leave the

14  department--

15          THE COURT:  Right.

16          MR. CORBETT:  But I am pretty confident we

17  could probably resolve something --

18          THE COURT:  Good.

19          MR. CORBETT:  -- towards that vein.

20          THE COURT:  Good.  That's worked out in the

21  past, so I would hope you can come to some resolution

22  after you talked to your clients, okay?

23          MR. CORBETT:  Understood, your Honor.

24          THE COURT:  All right.

25          MR. HARVIS:  Your Honor, yeah, just I guess two

Proceedings

1   short things before I concede the floor.  One is just to

2   respond to your Honor's point about proportionality and

3   the new rules, this is a case involving someone who spent

4   23 years in prison, before being exonerated, so I just --

5   I feel like the proportionality can kind of go both ways.

6   You know, sometimes it can act to limit discovery, and

7   sometimes where the case in controversy is very

8   significant, I think it can sort of increase the access

9   to discovery.  I just wanted to make that point to your

10  Honor.

11          THE COURT:  Uh-hum.

12          MR. HARVIS:  And then just one issue that I

13  thought maybe should come before we file our 37.1 letter,

14  of course we'll try and work these issues out.  We've

15  been in active discussions.

16          It's just the issue of the nonresponse, the no

17  written responses from Freeport to demands that were

18  served on January 14th of 2020.  I just feel like we're

19  basically giving them another 30-day vacation of just not

20  even -- forget objections, they're not even giving us

21  written responses, and these are directed to the Village

22  of Freeport, so they don't concern a specific defendant.

23          THE COURT:  All right.  Do you want to respond

24  to that Mr. Corbett?

25          MR. CORBETT:  Yes, your Honor.  There were

47

Proceedings

1  multiple interrogatories served on various defendants.

2  We were in the process of dealing with that, and then

3  obviously the amended complaint came in.

4           We did speak yesterday, Mr. Harvis and I.  We

5  asked for an addition two weeks to 30 days, just to

6  narrow down Officer Melendez, and obviously we're having

7  trouble figuring out who we speak to, and deal with, to

8  get to Artie Zimmer, who obviously has passed away.  And

9  that's where the delay has been.

10          THE COURT:  All right.

11          MR. CORBETT:  And to the --

12          THE COURT:  But you're willing to do it at this

13  point, so my directive will be --

14          MR. CORBETT:  My preference, honestly --

15          THE COURT:  -- I will give you two weeks.

16          MR. CORBETT:  -- is everything stayed as it

17  relates to Freeport so we can get this worked out, but I

18  understand what your Honor is saying today.  And if we

19  have to, we will, and I'm sure we do, we will respond to

20  those interrogatories.

21          THE COURT:  Fine.  Whatever was served.  I'm

22  giving you two weeks, all right?

23          MR. CORBETT:  And just your Honor, that would

24  be for the people -- I know we're going to work out a

25  stip --

Proceedings

1      THE COURT:  Yes.

2      MR. CORBETT:  -- but I think we all understand

3  who the parties are now.

4      THE COURT:  Right.

5      MR. CORBETT:  That would be just for the

6  parties remaining after we work out the second amended

7  complaint.

8      THE COURT:  Correct.  That's correct.

9      MR. CORBETT:  Thank you, your Honor.

10     THE COURT:  Okay.

11     MR. HARVIS:  Thank you, your Honor.

12     THE COURT:  All right.

13     MR. HARVIS:  And the rest of it, we'll save for

14  our letter.  Thank you very much.

15     THE COURT:  All right.  Very good.

16     MR. LOOMBA:  Your Honor?

17     Mr. Loomba, you're up.

18     MR. LOOMBA:  Yeah, thank you, your Honor.

19     So one item that we would like to see if we

20  could have addressed by the Court is the list of exhibits

21  to the proposed second amended complaint.  In paragraph

22  20, it says that the plaintiff attaches the following

23  exhibits.  There is a link to a website, and then there

24  is a list of 56 exhibits, and I guess we have some

25  concerns that if that link is an active link that the

Proceedings

1  public could access, that there might be some documents

2  here that we don't think are appropriate for public

3  dissemination.

4          THE COURT:  All right.  I understand that

5  concern.  I mean, is there some way to -- as opposed to

6  necessarily having this in the public record, in terms of

7  it being a website, or -- to access?  I mean, can you put

8  it some kind of a DropBox, or something else that would

9  be not so accessible to other people?

10         MR. HARVIS:  Yeah, I mean, well, I just would

11  say, anything that they marked confidential, we did not

12  include in this list.  So we did believe that there's a

13  presumptive right of public access to these kinds of

14  judicial documents  However, the Court would like to

15  include them is --

16         THE COURT:  I think you should talk to each

17  other, because I don't think he's talking about all of

18  them, and he says that there are some documents that they

19  believe are problematic, right?

20         MR. HARVIS:  This is the first we're hearing of

21  it.

22         THE COURT:  Okay.

23         MR. HARVIS:  So we're happy to confer on it.

24         THE COURT:  So you talk to each other.

25         MR. LOOMBA:  We can -- we'll confer, your

Proceedings

1    Honor.  Thank you.

2              THE COURT:  Okay.  Anything else?

3              MR. CORBETT:  Your Honor, just you know, I want

4    to try and expedite and make this efficient going forward

5    because it really hasn't been an efficient case to now.

6    I kept hearing an indication of letter motion, letter

7    motion.  Is he referring to a 37.1 if needed, or are we

8    just going to get into another motion campaign back and

9    forth, because I am concerned.  My client is expending

10   significant resources on a case that I understand we

11   still have to get to the merits before Judge Seybert, we

12   may ultimately not be here.

13             THE COURT:  Okay.  But my response to this was

14   I expect you all to confer and to whittle down what's

15   going to eventually have to be filed.

16             MR. CORBETT:  Understood, your Honor.  Thank

17   you.  That was my understanding.

18             THE COURT:  Okay?  Absolutely.

19             Anything else?  All right.  Let me just

20   explain, we're going to issue a minute order that's

21   simply just going to state the rulings that I have made

22   today.  If you need something more than that, if you want

23   the amplified record, you are more than welcome to

24   contact my courtroom deputy.  I'll give the phone number

25   in a minute.  She'll be out here in a minute, too.  If

Proceedings

1   you want the transcript, you can talk to her, and she'll

2   work out a way for you to order it, all right, if you

3   need it.  It's fine.

4          All right.  One last thing because I think I

5   didn't say this about 37.1, once you file that, please

6   take note on the defense side, you've got to respond to

7   that in the same fashion.  So don't again give me like

8   two paragraphs of your objections.  You need to go

9   through each one, as the plaintiff will have done, and

10  give me whatever your response is to them individually,

11  all right?  In the same format as the 37.1 plaintiff side

12  is done, okay?  All right.

13         This is my courtroom deputy, Mary Ryan, and as

14  I said, if you want the transcript, you can speak to her,

15  all right?

16         MR. HARVIS:  Thank you for your time, your

17  Honor.

18         THE COURT:  Thank you, all.

19         MR. CORBETT:  Thank you, your Honor.

20              (Matter Concluded)

21                  -o0o-

22

23

24

25

52

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **20th** day of **March**, 2020.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656

Transcriptions Plus II, Inc.