UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
JOSEPH JACKSON,                        :   Docket No.
                                   :   18-CV-3007 (JS)(AKT)
                Plaintiff,    :
                                 :
    -against-                  :
                                 :
NASSAU COUNTY; THE INCORPORATED VILLAGE  :
OF FREEPORT; DETECTIVE ROBERT DEMPSEY;   :
DETECTIVE GARY ABBONDANDELO; DETECTIVE   :
JOHN M. HOLLAND; DETECTIVE MICAHEL HERTS;  :
DETECTIVE MARTIN ALGER; POLICE OFFICER    :
ROBERT MELENDEZ, DETECTIVE WALTER      :
SWENSON, DETECTIVE ANTHONY KOSIER;     :
DETECTIVE SERGEANT DAN SEVERIN; DORA    :
MULLEN, AS ADMINISTRATOR OF THE ESTATE OF  :
JERL MULLEN; JANE DOE, AS ADMINISTRATOR OF  :
THE ESTATE OF ARTHUR ZIMMER, and JOHN and   :
JANE DOE 1 through 20,              :
                                 :
               Defendants.    :
-------------------------------------------------------------------- x

**COUNTY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S SECOND-AMENDED
COMPLAINT AND MOTION TO STRIKE EXHIBITS**

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for County Defendants
1133 Westchester Avenue
White Plains, NY  10604
(914) 323-7000

8230766v.1

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................. 1

Preliminary Statement and Summary of Argument ................................................ 1

Pertinent Facts and Procedural History ................................................................. 3

    A.   Overview ................................................................................................ 3

    B.   Allegations in the Second-Amended Complaint .................................. 3

    C.   Facts Regarding the Estate of Jerl Mullen ........................................... 12

Argument ................................................................................................................ 13

    POINT I     THE SECOND-AMENDED COMPLAINT VIOLATES RULE 8(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE ................. 13

    POINT II    CERTAIN OF THE PROPOSED EXHIBITS SHOULD BE STRICKEN PURSUANT TO RULE 10(c) AND/OR RULE 12(f) OF THE FEDERAL RULES ................................................ 14

    POINT III   CERTAIN CLAIMS FOR RELIEF SHOULD BE DISMISSED UNDER RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE ................................................................. 18

        A.   The Malicious Prosecution Claims Should be Dismissed ............ 19

        B.   The Fabrication of Evidence Claim Should be Dismissed as Against Det. Alger and Det. Sgt. Severin ..................................... 21

        C.   The Coercion Claim Should be Dismissed as against Det. Kosier on Grounds of Lack of Participation ................................ 22

        D.   The Supervisory Liability Claim Should be Dismissed ................ 24

        E.   Plaintiff Does Not Allege a Plausible Monell Claim .................... 25

        F.   The Common-Law False Imprisonment Claim Should be Dismissed ..................................................................................... 26

        G.   The Claim For Intentional or Negligent Infliction of Emotional Distress Fails ............................................................. 27

        H.   The *Brady* Violation Claim Should be Dismissed ....................... 27

-i-

I.      Plaintiff's Prolonged Detention Claim Fails ................................... 29

J.      The Failure to Intervene Claim Fails ............................................. 30

POINT IV      THE SECOND-AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AS AGAINST THE ESTATE OF JERL MULLEN ..................................................................... 31

A.      The Complaint Must be Dismissed for Improper Service as Against Dora Mullen as Administrator of the Estate of Jerl Mullen ........................................................................................... 31

B.      Plaintiff's Claims Against the Estate of Mullen are Barred by the North Carolina Non-Claim Statute ..................................... 33

Conclusion ........................................................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abreu v. City of New York,*
   657 F. Supp. 2d 357 (E.D.N.Y. 2009) ......................................................................25

*Anderson v. Branen,*
   17 F.3d 552 (2d Cir. 1994) ......................................................................................31

*Angevin v. City of New York,*
   204 F. Supp. 3d 469 (E.D.N.Y. 2016) ....................................................................27

*Bagley v. Yale University,*
   42 F. Supp. 3d 332 (D. Conn. 2014).........................................................................3

*Baker v. McCollan,*
   443 U.S. 137 (1979)................................................................................................30

*Barcomb v. Sabo,*
   487 Fed. Appx. 645 (2d Cir. 2004).........................................................................20

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................................................19

*Black v. Coughlin,*
   76 F.3d 72 (2d Cir. 1996) .......................................................................................24

*Boyd v. City of New York,*
   336 F.3d 72 (2d Cir. 2003) .....................................................................................20

*Brady v. Maryland,*
   373 U.S. 83 (1963)..................................................................................................28

*Bruno v. Cunningham,*
   2004 U.S. Dist. LEXIS 20402 ...................................................................................

*Caldarola v. Calabrese,*
   298 F.3d 156 (2d Cir. 2002) ...................................................................................26

*Cameron v. Fogarty,*
   806 F.2d 380 (2d Cir. 1986) ...................................................................................25

*Cameron v. Wise,*
   2011 U.S. Dist. LEXIS 42887 (S.D.N.Y. April 20, 2011) .....................................26

*Carson v. Lewis,*
    35 F. Supp. 2d 250 (E.D.N.Y. 1999) ....................................................................20

*Cepdea v. Coughlin,*
    785 F. Supp. 385 (S.D.N.Y. 1992) .......................................................................23

*Colon v. City of New York,*
    60 N.Y.2d 78 (1983) .............................................................................................19

*Colon v. Coughlin,*
    58 F.3d 864 (2d Cir. 1995) ...................................................................................24

*Correctional Officers Benevolent Ass'n v. Kralik,*
    226 F.R.D. 175 (S.D.N.Y. 2005) ..........................................................................15

*Corsini v. Brodsky,*
    731 Fed. Appx. 15 (2d Cir. April 13, 2018) .........................................................26

*Costello v. City of Burlington,*
    632 F.3d 41 (2d Cir. 2011) ...................................................................................23

*County of Erie v. Colgan Air, Inc.,*
    711 F.3d 147 (2d Cir. 2013) .................................................................................18

*Daughtry v. New York,*
    2015 U.S. Dist. LEXIS 68627 (E.D.N.Y. Feb. 23, 2015) .....................................27

*DeJesus v. Sears, Roebuck & Co.,*
    87 F.3d 65 (2d Cir 1996) ......................................................................................19

*Delamota v. City of New York,*
    683 Fed. Appx. 65 (2d Cir. 2017) .........................................................................30

*Demosthene v. City of New York,*
    2019 U.S. Dist. LEXIS 901 (E.D.N.Y. Jan. 10, 2019) .....................................3, 19

*Garnett v. Undercover Officer C0039,*
    838 F.3d 265 (2d Cir. 2016) .................................................................................23

*Green v. Scully,*
    850 F.2d 894 (2d Cir. 1988) .................................................................................22

*Gross v. Griffin,*
    800 F. Supp. 2d 293 (D. Me. 2011) ......................................................................35

*Guinnane v. Dobbins,*
    2019 U.S. Dist. LEXIS 186229 (D. Mont. Oct. 28, 2019) ....................................32

*Harris v County of Nassau*,
   581 F. Supp. 2d 351 (E.D.N.Y. 2008) ................................................28

*Hom v. Brennan*,
   304 F. Supp. 2d 374 (E.D.N.Y. 2004) ................................................32

*Hoyos v. City of New York*,
   999 F.Supp.2d 375 (E.D.N.Y. 2013) ................................................21

*Hurley v. Town of Southampton*,
   2018 U.S. Dist. LEXIS 137089 (E.D.N.Y. Aug. 13, 2018)....................28

*Jean-Laurent v. Wilkerson*,
   438 F. Supp.2d 318 (S.D.N.Y. 2006) ................................................31

*Johnson ex rel. Johnson v. County of Nassau*,
   2010 U.S. Dist. LEXIS 101752 (E.D.N.Y. Sept. 27, 2010) ....................31

*Jones v. City of New York*,
   988 F. Supp. 2d 305 (E.D.N.Y. 2013) ................................................27

*Jones v. King*,
   2011 U.S. Dist. LEXIS 110980 (S.D.N.Y. Sept. 28, 2011)....................23

*Jordan v. Fayettevile Metro Hous. Auth., Etc.*,
   2017 U.S. Dist. LEXIS 47647 (E.D.N.C. Mar. 30, 2017) ....................32

*Joyner v. Wilson Mem'l Hosp., Inc.*,
   38 N.C. App. 720, 248 S.E.2d 881 (1978)............................................33

*Kilburn v. Village of Saranac Lake*,
   413 Fed.. Appx. 362 (2d Cir. 2011)................................................28

*Kogut v. County of Nassau*,
   06-CV-6695 (EDNY) ................................................11, 25

*Lauer v. City of New York*,
   240 A.D.2d 543 (2d Dep't 1997)................................................27

*Lee v. County of Nassau*,
   00-CV-0881 (EDNY) ................................................12

*Levantino v. Skala*,
   56 F. Supp. 3d 191 (E.D.N.Y. 2014) ................................................26

*Lowth v. Town of Cheektowaga*,
   82 F.3d 563 (2d Cir. 1996) ................................................20

*Mabry v. Huneycutt,*
149 N.C. Ap.. 630 (2002) ...........................................................................................34

*Manganiello v. City of New York,*
612 F.3d 149 (2d Cir. 2010) ......................................................................................19

*Mendoza v. County of Nassau,*
2012 U.S. Dist. LEXIS 140961 (E.D.N.Y. Sept. 27, 2012) .............................24, 25

*Morse v. Spitzer,*
2012 U.S. Dist. LEXIS 110241 (E.D.N.Y. Aug. 3, 2012)........................................21

*Nabatkhorian v. County of Nassau,*
2013 U.S. Dist. LEXIS 43787 (E.D.N.Y. March 27, 2013) ....................................24

*Naples v. Stefanelli,*
972 F. Supp. 2d 373 (E.D.N.Y. 2013) .....................................................................19

*Nassau & Suffolk County Taxi Owners Ass'n v. New York,*
336 F. Supp. 3d 50 (E.D.N.Y. 2018) ..........................................................................3

*Nextel of N.Y., Inc. v. City of Mt. Vernon,*
361 F. Supp. 2d 336 (S.D.N.Y. 2005) ......................................................................15

*Norton v. Town of Islip,*
678 Fed. Appx. 17 (2d Cir. 2017)..............................................................................20

*O'Neill v. Krzeminski,*
839 F.2d 9 (2d Cir. 1988) .........................................................................................31

*Oquendo v. City of New York,*
2017 U.S. Dist. LEXIS 223189 (E.D.N.Y. Nov. 15, 2017)......................................21

*Pangburn v. Culbertson,*
200 F.3d 65 (2d Cir. 1999) .......................................................................................30

*Perez v. Annucci,*
2019 U.S. Dist. LEXIS 42311 (S.D.N.Y. March 15, 2019) .....................................24

*Phillips v. City of Middletown,*
2018 U.S. Dist. LEXIS 163308 (S.D.N.Y. Sept. 24, 2018)................................24, 25

*Powell v. Murphy,*
593 Fed. Appx. 25 (2d Cir. 2014)..............................................................................20

*Ragan v. Hill,*
337 N.C. 667 (1994) ............................................................................................34, 35

*Restivo v. County of Nassau,*
  06-CV-6720 (JS)...............................................................................................................25

*Ricciuti v. New York City Transit Auth.,*
  124 F.3d 123 (2d Cir. 1997) ............................................................................................23

*Richardson v. Goord,*
  347 F.3d 431 (2d Cir. 2003) ............................................................................................24

*Rose v. Bartle,*
  871 F.2d 331 (3d Cir. 1989) ............................................................................................15

*Rowan v. Sunflower Elec. Power Co.,*
  2015 U.S. Dist. LEXIS 162977 (E.D. Kansas Dec. 14, 2015) .................................15

*Russo v. City of Bridgeport,*
  479 F.3d 196 (2d Cir. 2007) ............................................................................................30

*Salmon v. Blesser,*
  802 F.3d 249 (2d Cir. 2015) ............................................................................................27

*Savino v. City of New York,*
  331 F.3d 63 (2d Cir. 2003) ..............................................................................................19

*Scott v. City of Mt. Vernon,*
  2017 U.S. Dist. LEXIS 47856 (S.D.N.Y. March 30, 2017) ....................................31

*Scraggs v. New York State Dep't of Ed.,*
  2007 U.S. Dist. LEXIS 35860 (E.D.N.Y. May 16, 2007) ........................................25

*Simon v. The City of New York,*
  2011 U.S. Dist. LEXIS 9515 (E.D.N.Y. Jan. 3, 2011) ............................................31

*Simpson v. McConnell,*
  156 N.C. App. 424 (N.C. Ct. App. 2003) ...................................................................34

*Singer v. Fulton County Sheriff,*
  63 F.3d 110 (2d Cir. 1995) ..............................................................................................28

*Smith v. Hogan,*
  794 F.3d 249 (2d Cir. 2015) ................................................................................3, 13, 14

*Soto v. City of New York,*
  132 F. Supp. 3d 424 (E.D.N.Y. 2015) ..........................................................................31

*Stancati v. County of Nassau,*
  2015 U.S. Dist. LEXIS 43802 (E.D.N.Y. March 31, 2015) ....................................24

*Stansbury v. Wertman,*
   721 F.2d 84 (2d Cir. 2013) ...................................................................................20

*Strickler v. Greene,*
   527 U.S. 263 (1999)..............................................................................................28

*Tankleff v. County of Suffolk,*
   12017 U.S. Dist. LEXIS 97472 (E.D.N.Y. June 23, 2017) ...............................19, 22

*Torres v. City of New York,*
   2017 U.S. Dist. LEXIS 158883 (E.D.N.Y. Sept. 27, 2017) ....................................21

*Toussie v. County of Suffolk,*
   806 F. Supp. 2d 558 (E.D.N.Y. 2011) ..................................................................31

*Tretola v. County of Nassau,*
   14 F. Supp. 3d 58 (E.D.N.Y. April 16, 2014)....................................................25, 26

*Turley v. ISG Lackawanna, Inc.,*
   774 F.3d 140 (2d Cir. 2014) ................................................................................27

*United States v. International Longshoremen's Ass'n,*
   518 F. Supp. 2d 442 (E.D.N.Y. 2007) ..................................................................14

*United States v. Leroy,*
   687 F.2d 60 (2d Cir. 1982) ...................................................................................28

*United States v. Zackson,*
   6 F.3d 911 (2d Cir. 1993) .....................................................................................28

*Walker v. City of New York,*
   974 F.2d 293 (2d Cir. 1992) .............................................................................24, 32

*Walker v. Jastremski,*
   430 F.3d 560 (2d Cir. 2005) .................................................................................31

*Water Energizers, Ltd. v. Water Energizers, Inc.,*
   788 F. Supp. 208 (S.D.N.Y. 1992) .......................................................................33

*Weaver v. Brenner,*
   40 F.3d 527 (2d Cir. 1994) ...................................................................................22

*Wetzel v. Town Board of Orangetown,*
   2009 U.S. Dist. LEXIS 20873 (S.D.N.Y. March 16, 2009) ...................................15

*Wolkstein v, Morgenstern,*
   275 A.D.2d 635 (1st Dep't 2000) .......................................................................27

*Women's Group v. MacMillan Pub. Co.,*
   1978 U.S. Dist. LEXIS 13904 (S.D.N.Y. Dec. 11, 1978) .......................................................15

*Wright v. Smith,*
   21 F.3d 496 (2d Cir. 1994) ...................................................................................................24

*Write v. Belafonte,*
   687 Fed. Appx. 1 (2d Cir. 2017)...........................................................................................27

*Zahrey v. Coffey,*
   221 F.3d 342 (2d Cir. 2000) .................................................................................................21

**Statutes**

N.C.G.S. §28A-19-3 .............................................................................................................33, 34

N.Y.C.P.L.R. §313 .......................................................................................................................32

NYCPL §220.20(i) ..........................................................................................................................5

NYCPL §440.10(g) ..........................................................................................................................4

NYCPL §440.10(h) ..........................................................................................................................5

NYCPL §441.10(g) ..........................................................................................................................4

**Rules**

FRCP Rule 8(a) ..........................................................................................................................2, 13

FRCP Rule 8(a)(2) ...........................................................................................................................13

FRCP Rule 10(c) ......................................................................................................................14, 15

FRCP Rule 12(b)(6) .................................................................................................................19, 31

FRCP Rule 12(f) .......................................................................................................................14, 16

## Introduction

Defendants Nassau County, Det. Robert Dempsey, Det. Gary Abbondandelo, Det. John M. Holland, Det. Michael Herts, Det. Martin Alger, Detective Anthony Kosier, Det. Sgt. Dan Severin, and Dora Mullen, as Administrator of the Estate of Jerl Mullen (collectively, the "County Defendants") and Det. Walter Swenson, respectfully submit this memorandum of law in support of their motion to dismiss plaintiff's second-amended complaint and, in the alternative, motion to strike certain exhibits which plaintiff Joseph Jackson ("Plaintiff" or "Mr. Jackson") proposes to annex to the second-amended complaint.

## Preliminary Statement and Summary of Argument

This is a wrongful conviction case. Joseph Jackson was convicted of murder following a jury trial in 1997, and sentenced to imprisonment for 25 years to life. On February 16, 2018, the Supreme Court of the State of New York, Nassau County, vacated plaintiff's conviction and dismissed the indictment, and Mr. Jackson was released from custody. He served a notice of claim against the County of Nassau on or about February 27, 2018. This action was commenced on May 22, 2018.

Plaintiff's second-amended complaint is based primarily on documentary discovery produced by the County Defendants, as well as two non-party depositions taken on February 6, 2020. This discovery took place during the pendency of motions to dismiss Plaintiff's first-amended complaint filed by the County Defendants and the Freeport Defendants. This Court terminated those motions, and allowed Plaintiff to file the second-amended complaint, subject to the County Defendants' (and the Freeport Defendants') rights to move to dismiss. Paragraph 20 of the second-amended complaint lists 56 proposed exhibits which include depositions, affidavits, transcripts of court proceedings, documents filed in Plaintiff's underlying criminal

case (including papers filed in connection with the motions to vacate Plaintiff's conviction), documents produced in discovery in this action; and deposition transcripts, expert reports and documents from entirely separate cases.  Many of these exhibits are not even cited in the body of the pleading, and in total they comprise well over four thousand pages of documentation.  By stipulation approved by the Court, the "link" to these exhibits has been deactivated subject to motion practice concerning whether any of the exhibits may be attached to the pleading and, if so, whether they must be filed under seal.

The second-amended complaint asserts ten (10) claims for relief: (i) a Section 1983 claim for malicious prosecution; (ii) a Section 1983 claim alleging fabrication of evidence; (iii) a Section 1983 claim alleging that Plaintiff's confession was coerced; (iv) a Section 1983 supervisory liability claim; (v) a *Monell* claim; (vi) a common-law malicious prosecution claim; (vii) a common-law claim for false imprisonment; (viii) a common-law claim for intentional (or negligent) infliction of emotional distress; (ix) a Section 1983 conspiracy claim; (x) a Section 1983 claim based on alleged *Brady* violations; (xi) a Section 1983 claim alleging an unlawful prolonged detention; and finally, (xii) a claim for failure to intervene.

As set forth below, when the second-amended complaint is taken together with all of the proposed exhibits it fails entirely to meet the requirements of FRCP Rule 8(a), which requires plaintiff to set forth a short, plain statement of facts.  It should be dismissed on that ground.  *See* Point I.  Even if not dismissed under Rule 8(a), many of the proposed exhibits are improperly annexed to the complaint because they are not written instruments under FRCP 10(c), and/or should be stricken as redundant, immaterial, scandalous and prejudicial pursuant to FRCP 12(f). In the alternative, if any of the exhibits may be filed, with limited exceptions they should be filed under seal.  *See* Point II.  Third, certain of the claims for relief should be dismissed, pursuant to

Rule 12(b)(6), because Plaintiff has not, and cannot, allege a viable claim for relief.  *See* Point III.  Finally, the claim against Dora Mullen, as Administrator of the Estate of Jerl Mullen, must be dismissed with prejudice as Dora Mullen was terminated as personal representative of the Estate in 2016, the Estate was closed, and claims against the Estate are no longer permitted under applicable North Carolina law.  *See* Point IV

**Pertinent Facts and Procedural History**

The following summary of facts is based on the non-conclusory allegations contained in plaintiff's second-amended complaint; documents referenced and/or incorporated therein; and documents of which this Court may take judicial notice.[1]  This summary ignores, as is appropriate, conclusory and argumentative factual allegations and mere legal conclusions.  *See Demosthene v. City of New York,* 2019 U.S. Dist. LEXIS 901, at *7-8 (E.D.N.Y. Jan. 10, 2019); *Nassau & Suffolk County Taxi Owners Ass'n v. New York,* 336 F. Supp. 3d 50, 58 (E.D.N.Y. 2018); *Bagley v. Yale Univ.,* 42 F. Supp. 3d 332, 336 (D. Conn. 2014).  All exhibits referenced herein are annexed to the accompanying declaration of Lalit K. Loomba.

A.     Overview[2]

On March 20, 1994, at about 2:00 a.m., Mr. Steven Jason ("Jason") was shot and killed just outside the parking lot of a Blimpie's restaurant located at the corner of Sunrise Highway and Guy Lombardo Avenue in Freeport, New York.  In November 1994, detectives from the Nassau County Homicide Squad gained information suggesting that Plaintiff was involved in the crime.  On December 17, 1994, Plaintiff was arrested in Freeport, New York, for his

---

[1]  It should be noted that the universe of documents that a court may consider on a motion to dismiss is broader than the category of documents that may properly be attached to a complaint in the first instance.  *See Smith v. Hogan,* 794 F.3d 249, 254 (2d Cir. 2015).

[2]  This overview is based on allegations in Plaintiff's pleadings, as well as documents of which this Court may take judicial notice.

-3-

involvement in a separate crime committed the prior August: the sale of crack cocaine to a confidential informant.  Plaintiff eventually pled guilty to the narcotics charges stemming from that arrest.  *See* **Exhibit A** (certificate of conviction).

While in custody on the narcotics charge, Plaintiff was questioned about the murder of Mr. Jason and eventually signed a confession.  Thereafter, a witness, Ms. Skwanitra Witherspoon, identified Plaintiff from a photo array, and at a separate in-person line up, as the shooter.  A grand jury returned an indictment against Plaintiff on the charge of murder in the second degree, and related offenses.  Plaintiff pled not guilty and went to trial before a jury in Nassau County.  Plaintiff was convicted of all charges in the indictment in March 1997.  He was sentenced to 25 to years in prison, and direct appeals from his conviction were unsuccessful.

In November 1995, during Plaintiff's suppression hearing, the Nassau County District Attorney's Office ("DA") marked as Hearing Exhibit 42 a Freeport incident report that referenced two witnesses, Mr. Glen Montes ("Montes") and Mr. Maurice Larrea ("Larrea"); the incident report further indicated that both Montes and Larrea had provided written statements ("32b"s).  **Exhibit B**.  Plaintiff's defense counsel, Eugene Cordero, Esq. and Scott Brettschneider, Esq. did not request copies of the Montes and Larrea statements, which were not independently produced.  On June 25, 2007, Plaintiff served a FOIL demand on the DA, specifically requesting, among other documents, copies of the written statements of Montes and Larrea.  **Exhibit C.**  Plaintiff obtained the statements in 2007 in response to his demand. However, during the next ten years he took no specific action.  In January 2017, Plaintiff wrote to the DA's Conviction Integrity Unit ("CIU") asking for a review of his case.  The CIU did so, and after meeting with Plaintiff and Mr. Brettschneider on January 9, 2018, determined that the Montes and Larrea statements were *Brady* material which should have been separately disclosed

to Plaintiff.

In February 2018, Plaintiff moved to vacate his conviction pursuant to Section 440.10(g) of the New York Criminal Procedure Law, based on the discovery of "new evidence" that would create the probability of a more favorable verdict.  N.Y.C.P.L. §441.10(g); *see* **Exhibit D**.  The DA's Office opposed vacating the judgment under CPL 440.10(g), but moved to vacate pursuant to CPL 440.10(h), which allows for *vacatur* of a conviction based on a violation of constitutional rights.  N.Y.C.P.L. §440.10(h); *see* **Exhibit E**.

A conference was held on February 16, 2018, at Supreme Court, Nassau County, before the Hon. Teresa K. Corrigan, *J.S.C.  See* **Exhibit F**.  Plaintiff's judgment of conviction was vacated, pursuant to CPL §440.10(h), and the District Attorney's Office further moved, orally, to dismiss the indictment pursuant to CPL §220.20(i) in the interests of justice.  *Id.*  Plaintiff was released from custody on February 16, 2018.  This civil case followed.

B.     Allegations in the Second-Amended Complaint

As is now alleged in the second-amended complaint, on March 20, 1994, at about 2:00 a.m., Glen Montes observed two black men chasing another black man in a parking lot adjacent to the Blimpie's restaurant at the corner of Sunrise Highway and Guy Lombardo Avenue in Freeport, New York.  Second-Amended Complaint ("SAC") (**Exhibit G**), at ¶21.

Later that morning, Detective Michael Herts of the Nassau County Police Department ("NCPD") took a written statement from Mr. Montes at the local Freeport Police Station. **Exhibit H**.  According to his statement, Montes saw the man being chased duck or dive to the ground, following which he saw one of the other men point a gun and fire two or three shots.  *Id.*

Ms. Skwanitra Witherspoon, who was in the vicinity of the shooting, provided four statements to the police, two on the morning of the shooting, one in December 1994 and one in

April 1995.  **Exhibit I**.  The first statement was taken on March 20, 1994, at 2:50 a.m., by Police

Officer Barry McGovern, of the Freeport Police Department ("FPD").  It states, in relevant part,

that Ms. Witherspoon was walking a few steps behind Mr. Jason when a light-skinned black

male in his early 20s pointed a gun at Jason.  *Id.*  Ms. Witherspoon turned to run away from the

scene and then heard 5 or 6 shots from behind her.  *Id.*

The second statement was taken on March 20, 1994, at 4:30 a.m., by Det. William

Tweedie of the NCPD.  This statement is consistent with the earlier statement, but provides more

context.  Ex. I.  It explains that Ms. Witherspoon was attending a party being held for Mr.

Jason's birthday at the nearby American Legion Hall, and that Jason was walking Witherspoon

to his car to give her a ride home at the time the shots were fired.  *Id.*

The third statement was taken on December 20, 1994, at 5:30 p.m., by Det. Mullen and

Det. Abbondandelo of the NCPD, who had travelled to Ms. Witherspoon's home for the purpose

of showing her a photo array of suspects.  Ex. I.  Ms. Witherspoon identified Plaintiff as the

person she saw aim a gun at Mr. Jason on March 20, 1994.  *Id.*  The fourth statement was taken

on April 11, 1995, at 1:30 p.m., by Det. Mullen, in connection with an in-person lineup of

suspects.  *Id.*  Ms. Witherspoon again identified Plaintiff as the person who she saw aim the gun

at Jason.  *Id.*

Martha Campbell provided a written statement on March 20, 1994, at 3:00 a.m., to Det.

A. Zimmer of the FPD.  **Exhibit J**.  Ms. Campbell was in the vicinity of the Blimpie's restaurant,

walking to Mr. Jason's party, when she heard two or three gunshots, and then saw a black man

running toward and getting into a light blue car.  *Id.*  She observed the car leave the Blimpie's

parking lot and turn southbound on Guy Lombardo Avenue.  *Id.*

As alleged in the second-amended complaint, at the time of the shooting, Mr. Montes was

8230766v.1

driving with a friend, Maurice Larrea, on the way home from a bachelor party that both men had just attended. Ex. G (SAC), at ¶23. After observing the incident, Montes continued driving eastbound, turned right (south) on Church Street and then stopped so that Larrea could get out to call the police from a payphone. Ex. H. As he recently confirmed under oath, Larrea, who grew up in Freeport, does not recall whether he called 911 or the direct telephone number for the Freeport police (516-378-0700). Deposition of Maurice Larrea, taken February 6, 2020 (**Exhibit K**) ("Larrea Dep"), at 26:5-24.[3]

Whichever number he called, after speaking with the police, Mr. Larrea ran back towards the Blimpie's parking lot and on the way there encountered "a male black" running in the other direction. **Exhibit L**. Larrea, who only *heard* shots being fired as Montes was driving by the Blimpie's parking lot, *id.,* acknowledged under oath that he could not be certain that the man he encountered was the shooter, or just another man who happened to be in the area at the time. *See* Ex. K (Larea Dep), at 63:3-11.

Mr. Larrea, who was an off-duty New York City Police Officer, drew a firearm and ordered the man to stop. Ex. L. The man stopped momentarily, but then ran north across Sunrise Highway towards the parking lot of an OTB location. *Id.* Larrea followed on foot. *Id.* He got as far as the OTB parking lot, where he lost sight of the man. *Id.*

Mr. Larrea's statement does not mention saying anything to Mr. Montes about the man he was chasing, but according to Montes's statement, as Montes was driving in his car back towards the original scene, Larrea pointed at a black man who was running and shouted "that's him,

---

[3] Neither Nassau County nor the Village of Freeport have been able to locate a recording of a 911 call placed from the Village of Freeport concerning the shooting of Steven Jason on March 20, 1994. On September 6, 2019, Plaintiff filed a motion for spoliation sanctions in connection with the 911 call (D.E. 206). However, in light of Mr. Larrea's deposition testimony, *see* transcript of March 6, 2020 discovery conference at pp 34-35, on March 16, 2020, Plaintiff filed a letter motion to withdraw his sanctions motion (D.E. 271), and by Order dated March 18, 2020, Plaintiff's motion for sanctions was terminated.

that's the guy."  Ex. H.  Montes made a U-turn and then followed the fleeing male towards a fire station where he too lost sight of him.  *Id.*  According to his statement, Montes could "*only describe the male/black I was following.*"  *Id* (emphasis added).  As he recently confirmed under oath, Montes is not sure that the person who Larrea pointed out, and who Montes followed briefly, was the same person Montes saw with a gun when he first drove by the Blimpie's parking lot.  *See* Deposition of Glenn Montes, taken February 6, 2020 (**Exhibit M**) ("Montes Dep."), at 42:10-22, 84:15-85:2.

As noted, later that same morning, Mr. Larrea gave a statement to Det. Herts at the Freeport Police station, Ex. L, and Mr. Montes gave a statement to Det. Holland at the Freeport Police station.  Ex. H.  Plaintiff alleges that Det. Herts knew that Larrea was intoxicated, but did not include that information in his statement.  Ex. G (SAC), at ¶39.  Plaintiff also alleges that Larrea had called a supervisor in the NYPD to report his involvement in the incident, but when the supervisor asked him if he was intoxicated he reported, incorrectly, that he was not.  *Id.* at ¶40; Ex. J (Larrea Dep), at 103:13-104:18.  Plaintiff alleges that Det. Herts and Det. Sgt. Severin knew that it would hurt Larrea's career if the NYPD learned that Larrea had drawn a weapon while intoxicated and then lied about it.  Ex. G (SAC), at ¶41.

Plaintiff alleges that Officer Melendez from the FPD, and Det. Sgt. Severin, Det. Herts and Det. Holland from the NCPD took steps to keep Mr. Larrea's intoxication from being revealed to the NYPD.  Plaintiff alleges that Herts and Severin prepared a "morning report" that omitted any reference to Montes or Larrea's call to the police.  Ex. G (SAC), at ¶¶43-44. Plaintiff then makes a conclusory allegation that Det. Abbondandelo, Det. Dempsey and Det. Mullen "corrupted the account" of Ms. Witherspoon to suggest that she was the "sole eyewitness and had identified the plaintiff as the perpetrator."  *Id.* at 45.  While this second allegation should

be ignored as a conclusory assertion, it is in any event demonstrably false.  Det. Dempsey was not involved in preparing any of Ms. Witherspoon's statements.  *See* Ex. I.  And Ms. Witherspoon's statements do not exclude other eyewitnesses to the crime; they merely record her own observations.  *Id.*

Plaintiff also alleges that Det. Abbondandelo participated in the concealment of the statements taken from Messrs. Larrea and Montes when he testified at trial that Ms. Witherspoon was the sole eyewitness.  Ex. G (SAC), at ¶47 (quoting from testimony at the suppression hearing).  Again, even if this conclusory allegation is considered (and it should not be), it is demonstrably incorrect.  The question addressed to Det. Abbondandelo was: "During the course of your investigation *at the scene*, did you determine whether there were any eyewitnesses to this incident."  *Id* (emphasis added).  Det. Abbondandelo answered there was one, and confirmed it was Ms. Witherspoon.  *Id.*  The Larrea and Montes statements were taken at Freeport Police Headquarters, not at the scene.  *See* Ex. L (Larrea Statement); Ex. H (Montes Statement).

Plaintiff alleges that on March 23, 1994, Det. Swenson[4] of the NCPD documented a conversation he had with a witness named Elisa Valdez who told Swenson that on the night in question she and her boyfriend heard shots in the vicinity of the Blimpie's restaurant in Freeport, and saw an automobile in pursuit of a man running northbound from the area.  Ex. G (SAC), at ¶49.  This allegation is based on a written note authored by Det. Swenson (the "Valdez Note") which was produced in discovery.  **Exhibit N**.  Plaintiff alleges that the Valdez Note was improperly "concealed," Ex. G (SAC), at ¶49, but fails to add that Ms. Valdez told Det. Swenson that she could not identify the person she saw.  Ex. N.

Plaintiff alleges that Det. Arthur Zimmer of the FPD recorded a 36-minute interview with

---

[4]  Det. Swenson has yet to be served with the second-amended complaint.  To the extent service is not completed within 90 days, the second-amended complaint should be dismissed as against him under Fed. R. Civ. P. 4(m).

Petey Baldwin.  Plaintiff alleges that Det. Zimmer did not disclose the existence of that interview to Plaintiff or his defense counsel.  Ex. G (SAC), at ¶¶50-51.

Plaintiff alleges that the theory of the crime developed by police, which had the perpetrator fleeing southbound in a car, is at odds with the accounts of Mr. Montes, Mr. Larrea and Ms. Valdez, who observed someone fleeing northbound.  Ex. G (SAC), at ¶55.  "Someone" is the key word.  Neither Montes, Larrea nor Valdez said, or could say, that the person they saw fleeing northbound was the perpetrator of the crime.[5]  And while Plaintiff specifically mentioned Martha Campbell in his first-amended complaint, in the second-amended complaint he omits any reference to her statement.  As noted, Ms. Campbell described a black male running through the Blimpie's parking lot just after shots were fired, and then driving southbound.  Ex. J.

Plaintiff alleges that on November 15, 1994, his cousin, Peddie Jenkins, provided a written statement to the police.  *See* Ex. G (SAC), at ¶¶56-57.  He alleges that Jenkins provided a second statement on November 18, 1994.  *Id.* at ¶62.  Plaintiff makes a conclusory allegation that the late NCPD Detective Mullen, and retired NCPD Detectives Abbondandelo, Dempsey and Alger "corruptly coordinated the accounts of Peddie Jenkins and Skwanitra Witherspoon," *id.* at ¶60, but then disproving his own allegation, remarks that Peddie's statements and Witherspoon's testimony are "irreconcilably contradictory."  *Id.* at ¶63 n.3.

Plaintiff makes certain allegations about a Richard "Wood" Miller, which are based on an affidavit, sworn to on March 26, 2018, that Plaintiff seeks to attach to his complaint.  Ex. G (SAC), at ¶64-65.  These allegations should be disregarded as an affidavit is not properly attached to a complaint and should be stricken under Rule 10(c) of the Federal Rules of Civil

---

[5]  Plaintiff attaches to the second-amended complaint the affirmation of Asst. District Attorney Sheryl Anania, submitted in support of the District Attorney's motion to vacate Plaintiff's conviction.  Ms. Anania states that Mr. Montes said he was "100% sure" he was following the shooter.  But in his sworn deposition, Mr. Montes acknowledged that he could not be 100 percent sure.  *See* Montes Dep. (Ex. M), at 42:10-22. 84:15-85:2.

Procedure.  *See infra* Point II.

Plaintiff was arrested on December 17, 1994, whereupon he was questioned by Det. Dempsey, Det. Abbondandelo, Det. Kosier and Det. Mullen.  Ex. G (SAC), at ¶66.  Plaintiff alleges that Det. Dempsey, Det. Mullen and Det. Abbondandelo "beat and threatened [him] and, along with defendant Kosier . . . lied to and coerced plaintiff into signing a fifteen-page false confession written by defendant Dempsey."  *Id.* at ¶69.

Plaintiff alleges that his confession conflicts with the observation of Glen Montes.  Ex. G (SAC), at ¶72.  But again, Mr. Montes, who had no formal training regarding identification of suspects, acknowledged under oath that the man he briefly followed was not necessarily the man he saw earlier with the gun.  *See* Montes Dep. (Ex. M), at 42:10-22, 84:15-85:2

Ms. Witherspoon testified at Plaintiff's criminal trial on November 21, 1996.  She testified that on March 19, 1994, she attended a birthday party for Steven Jason and his sister, Naquel Jason, at the American Legion Hall in Freeport.  **Exhibit O**, at 1051:10-1052:15.  She arrived at the party at about 11:30 p.m.  *Id.* at 1052:16-21.  At about 2:00 a.m. (March 20, 1994), Jason offered to give Ms. Witherspoon a ride home.  *Id.* at 1055:7-19.  They left the Legion Hall and started walking towards Blimpie's parking lot.  *Id.* at 1056:22-1057:2.  As they approached the parking lot, Ms. Witherspoon saw a male standing to the side who startled and scared her.  *Id.* at 1058:21-1059:4.  She saw this man pulled out a gun and pointed it at Jason's head.  *Id.* at 1059:5-7.  Jason started running one way, and she started running back towards the Legion Hall; while she was running she heard about six shots.  *Id.* at 1060:2-24.  Ms. Witherspoon then identified Plaintiff as the person she saw that night who had pulled a gun and aimed it directly at Steve Jason.  *Id.* at 1060:25-1062:23.

The second-amended complaint recites a series of allegations concerning Det. Dempsey

-11-

made in two separate and unrelated cases:  *Kogut v. County of Nassau,* 06-CV-6695 (EDNY), and *Lee v. County of Nassau,* 00-CV-0881 (EDNY).  *See* Ex. G (SAC), at ¶¶76-88.  It also contains a series of allegations about the alleged "science of false confessions."  *Id.* at ¶¶89-101. Finally, it includes conclusory allegations concerning alleged unconstitutional policies of the Nassau County and Village of Freeport police departments.  Ex. G (SAC), at ¶¶116-119.  These latter allegations are alleged "[u]pon information and belief."  *Id.*

C.      <u>Facts Regarding the Estate of Jerl Mullen</u>

On January 4, 2015, Jerl Mullen, a former NCPD homicide detective, died in North Carolina.  DE#167-8.  His wife, Dora Mullen, was appointed personal representative pursuant to North Carolina General Statutes, Chapter 28A Administration of Decedents Estates.  The estate did not have sufficient assets to cover all of its debts and expenses, and no distributions were made from the Estate.  **Exhibit P.**  A notice to creditors was published on June 13, 2015. **Exhibit Q.**  Ms. Mullen filed the final account for the estate, and the court issued an order accepting the final account and discharging Ms. Mullen as personal representative on May 23, 2016.  Ex. P.

On May 22, 2018, Plaintiff filed his complaint in this action naming Jerl Mullen as a defendant.  DE# 1.  On March 8, 2019, Plaintiff filed an amended complaint naming Detective Jerl Mullen and the Estate of Detective Jerl Mullen as defendants.  DE #162.  On May 9, 2019, the County Defendants filed a motion to dismiss any individual claims against Jerl Mullen.  DE #168.  The second-amended complaint names Dora Mullen, as Administrator of the Estate of Jerl Mullen, as a defendant.

**Argument**

**POINT I**

**THE SECOND-AMENDED COMPLAINT VIOLATES
RULE 8(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

In relevant part, Rule 8(a) of the Federal Rules of Civil Procedure provides that in order to state a viable claim for relief a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In *Smith v. Hogan,* 794 F.3d 249, 254 (2d Cir. 2015), the Second Circuit addressed the issue of whether an affidavit could be considered a "written instrument" for purposes of Fed. R. Civ. P. Rule 10(c), holding that an affidavit does not qualify as such and thus could not properly be attached or considered part of a complaint. As relevant here, the court noted further that "treating the affidavit as part of the complaint would do considerable damage to Rule 8(a)'s notice requirement." *Id.* The court reasoned that the "affidavit, buried in 170 pages of exhibits, contains novel factual allegations and purports to support a legal theory that appears nowhere on the face of the [complaint]. If such an affidavit could be deemed part of a complaint," the Court continued, "then Rule 8(a)'s requirement of a short and plain statement of a claim for which relief could be granted would be *eviscerated*." *Id.* at 255. (emphasis added)*.*

Indeed, as the court stated, using language tailor made for the instant case, the "exercise of determining exactly what combination of documents constitutes the complaint and what the complaint plausibly alleges would become a needlessly complicated adventure for both defendants and courts." *Smith,* 749 F.3d at 254. "Even more troubling," the court observed, allowing a plaintiff to burden a complaint with voluminous exhibits "would severely compromise the ability of defendants and courts to test the legal viability of complaints at the pleading stage, *a right that is integral to federal procedure*." *Id.* at 255. (emphasis added).

-13-

Here, Plaintiff lists 56 exhibits in a single paragraph of his pleading.  *See* Ex. G (SAC), at ¶20.  In total, these exhibits comprise more than four-thousand pages of documentation, which makes the 170 pages of exhibits at issue in *Smith* seem paltry by comparison.   The applicability of many of these exhibits to the second-amended complaint remains a mystery because, other than listing them in paragraph 20, Plaintiff fails to cite them in the remainder of the pleading. *See* Exhibits 7 (Plaintiff's 440.10 motion papers); 14 (polygraph records); 27 (DA records of Michael Skillings); 47 (Freeport Incident Report); 51 (FOIL requests); 52 (FOIL response); 53 (Excerpts of Plaintiff's 50-h testimony); 55 (Indictment).  Plaintiff has created just the sort of "needlessly complicated adventure" that the Second Circuit rejected in *Smith*.  Plaintiff's second-amended complaint should therefore be dismissed in its entirety.

## POINT II
### CERTAIN OF THE PROPOSED EXHIBITS SHOULD BE STRICKEN PURSUANT TO RULE 10(c) AND/OR RULE 12(f) OF THE FEDERAL RULES

Rule 10(c) provides, in relevant part, that a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).  The term "written instrument" has been interpreted by the Second Circuit to mean "a legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate."  *Smith,* 794 F.3d at 254 (internal quotes omitted).  As noted above, in *Smith,* the Second Circuit held that an affidavit did not fit within the definition of "written instrument," and therefore should be stricken from a complaint.  *Id.*[6]  Similarly, in *United States v. Int'l Longshoremen's Ass'n,* 518 F. Supp. 2d 442, 465 (E.D.N.Y. 2007), the court struck various exhibits from a civil RICO complaint holding that they were not "written instruments."  *See also*

---

[6]  It should be noted that the court in *Smith* distinguished between the kinds of documents that may properly be attached to a complaint ("written instruments"), and the categories of documents that a District Court may properly consider on a motion to dismiss.  The latter category is broader than the former.

-14-

*Rose v. Bartle,* 871 F.2d 331, 339 n.3 (3d Cir. 1989) (striking news articles under Rule 10(c)).

In relevant part, Rule 12(f) provides that a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts have likewise relied on Rule 12(f) in striking exhibits from complaints. *See Correctional Officers Benevolent Ass'n v. Kralik*, 226 F.R.D. 175 (S.D.N.Y. 2005); *Nextel of N.Y., Inc. v. City of Mt. Vernon,* 361 F. Supp. 2d 336, 339-340 (S.D.N.Y. 2005); *Wetzel v. Town Board of Orangetown,* 2009 U.S. Dist. LEXIS 20873, at *8 (S.D.N.Y. March 16, 2009); *Women's Group v. MacMillan Pub. Co.,* 1978 U.S. Dist. LEXIS 13904, *3-4 (S.D.N.Y. Dec. 11, 1978); *see also Rowan v. Sunflower Elec. Power Co.,* 2015 U.S. Dist. LEXIS 162977, at *4-5 (E.D. Kan. Dec. 14, 2015).

Here, the following proposed exhibits are clearly beyond the scope of a "written instrument" as contemplated under Rule 10(c), and should therefore be stricken from the second-amended complaint: Ex. 2 (notice of motion); Ex. 3 (affirmation); Ex. 4 (memo of law); Ex. 5 (DA file jacket); Ex. 6 (letter to CIU); Ex. 7 (affirmation); Ex. 8 (suppression hearing and trial transcripts); Ex. 9 (sentencing minutes); Ex. 10 (arrest report); Ex. 11 (statements); Ex. 12 (statements); Ex. 14 (polygraph records); Ex. 15 (Rosario list); Ex. 17 (memo of law); Ex. 18 (affidavit); Ex. 19 (statement); Ex. 20 (statement); Ex. 21 (statement); Ex. 22 (statement); Ex. 23 (discovery response); Ex. 24 (police morning report); Ex. 25 (police memo book); Ex. 26 (polygraph records); Ex. 27 (DA records); Ex. 28 (ballistic report); Ex. 29 (expert report in separate unrelated action); Ex. 30 (DA inter-departmental memo in separate unrelated action); Ex. 31 (letter); Ex. 32 (collection of documents and transcripts from separate action 99 pages); Ex. 33 (record from separate unrelated action); Ex. 35 (deposition transcripts from separate unrelated action); Ex. 36 (deposition transcripts from separate unrelated action); Ex. 38 (statement); Ex. 39 (deposition transcript from separate unrelated action); Ex. 40 (affidavit); Ex.

-15-

41 (deposition transcript from separate unrelated action); Ex. 42 (affidavit); Ex. 43 (affidavit);

Ex. 44 (deposition transcript from separate unelated action); Ex. 45 (disciplinary records); Ex. 46

(crime scene log); Ex. 47 (police incident report); Ex. 48 (deposition); Ex. 49 (deposition); Ex.

50 (detective interview notes); Ex. 51 (FOIL requests); Ex. 52 (FOIL response); Ex. 53

(deposition transcript); Ex. 54 (news articles); Ex. 56 (motion to suppress confession).

The County Defendants further submit that the following exhibits should be stricken

under Rule 12(f) as immaterial, redundant, scandalous and/or prejudicial.

- Exhibit 3 is an affirmation from Asst. D.A. Sheryl Anania in support of the District Attorney's motion to vacate the judgment. It should be stricken because Ms. Anania's opinion as to whether Plaintiff's judgment of conviction should be vacated is immaterial.

- Exhibit 4 is the memo of law in support of the DA's motion to vacate the judgment. It should be stricken as redundant because the basis of the DA's motion is clear from the notice of motion.

- Exhibit 5 is a copy of the front of a jacket file concerning Plaintiff's criminal case. It is redundant because the outcome of Plaintiff's criminal case is already of public record.

- Exhibit 7 is the affirmation of Scott Brettschneider in support of Plaintiff's motion to vacate the judgment of conviction. It should be stricken because Mr. Brettschneider's opinion as to whether Plaintiff's judgment of conviction should be vacated is immaterial.

- Exhibit 8 is over 2100 pages and consists of the entire transcript of the suppression hearing and trial in plaintiff's underlying criminal case. While excerpts from the hearing and trial may be material, the entirety of the transcript is not.

- Exhibit 10 is a copy of Plaintiff's Arrest Report from December 17, 1994. It is redundant as it is undisputed that Plaintiff was arrested.

- Exhibit 13 is a copy of an order denying Plaintiff's appeal from his criminal conviction. It is redundant as it is uncontested that Plaintiff's conviction was affirmed.

- Exhibit 16 is the order vacating plaintiff's conviction and dismissing the indictment. It should be stricken as redundant as it is not disputed that his indictment was dismissed.

- Exhibit 17 is plaintiff's memorandum of law, dated September 6, 2019, on his now-withdrawn motion for spoliation sanctions. Since the motion has been withdrawn, it is clearly immaterial and prejudicial. Further, it is only evidence of counsel's opinion.

- Exhibit 18, the affidavit of Richard "Woody" Miller, is immaterial because he states he was drunk and did not see the face of the person who he assumed was the shooter.

- Exhibit 23 is a discovery response served in connection with Plaintiff's Rule 30(b)(6) deposition notice.  It is immaterial to the allegations of the complaint.

- Exhibit 27 is a DA record concerning a Michael Skillings.  Other than listing the exhibit in paragraph 20, it is not otherwise referenced and is immaterial to the second-amended complaint.

- Exhibit 29 is an expert report filed in a separate unrelated case.  It is immaterial to the present case.

- Exhibit 30 is an internal DA memorandum from a separate unrelated action.  It is immaterial to the present case.

- Exhibit 31 is a letter from the NCPD acknowledging a request in a separate unrelated case.  It is immaterial to the present case.

- Exhibit 32 consists of 99 pages relevant to claims in a separate unrelated action.  It is immaterial to the present case.

- Exhibit 33 consists of 26 pages relevant to claims in a separate unrelated action.  It is immaterial to the present case.

- Exhibit 35 consists of excerpts from the deposition of Robert Dempsey in a separate unrelated action.  It is immaterial to the present case.

- Exhibit 36 consists of excerpts from the deposition of a plaintiff in a separate unrelated action.  It is highly prejudicial and immaterial to the present case.

- Exhibit 37 consists of a decision by the Court in a separate unrelated action.  It is immaterial to the present case.

- Exhibit 38 is the statement of a plaintiff in a separate unrelated action.  It is immaterial to the present case.

- Exhibit 39 consists of excerpts from the deposition of a plaintiff in a separate action.  It is immaterial to the present case.

- Exhibit 40 is an affidavit from a plaintiff in a separate unrelated action.  It is immaterial to the present case.

- Exhibit 41 consists of excerpts from the deposition of a plaintiff in a separate unrelated action.  It is immaterial to the present case.

8230766v.1

- Exhibit 42 is an affidavit from the mother of a plaintiff in a separate unrelated action.  It is immaterial to the present case.

- Exhibit 43 is an affidavit from a witness to a separate unrelated action.  It is immaterial to the present case.

- Exhibit 44 consists of excerpts from the deposition of a witness to a separate unrelated action.  It is immaterial to the present case.

- Exhibit 45 consists of a disciplinary record for Det. Dempsey.  It should be stricken as prejudicial.

- Exhibit 54 consists of news articles regarding false confessions.  It should be stricken as scandalous and immaterial.

- Exhibit 55 is a copy of the indictment.  It should be stricken as redundant as Plaintiff's indictment is not disputed.

The County Defendants are not addressing, and reserve all rights and arguments concerning, the admissibility of any of the documents referenced in paragraph 20 of the second-amended complaint.  The present issue is whether such documents should be stricken from the pleading.  For the reasons outlined above, the above exhibits should be stricken.  In the alternative, to the extent these exhibits are not stricken, with limited exceptions[7] they should be filed under seal.

### POINT III

### CERTAIN CLAIMS FOR RELIEF SHOULD BE DISMISSED UNDER RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *County of Erie v. Colgan Air, Inc.,* 711 F.3d 147, 149 (2d Cir. 2013) (internal quotes omitted).  While a court must accept as true factual allegations contained in the complaint, a court is "not required to accept as true conclusory allegations or 'formulaic recitation[s] of the elements of a cause of action.'"  *Demosthene v. City*

---

[7]  The exceptions are proposed Exhibit Nos. 1, 2, 3, 4, 6, 7, 13, 16, 17, 37, and 54.

*of New York,* 2019 U.S. Dist. LEXIS 4901, at *7 (E.D.N.Y. Jan. 10, 2019), quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  On a motion to dismiss a court may consider documents attached to the complaint, incorporated into the complaint by reference, any document upon which the complaint heavily relies and anything of which judicial notice may be taken.  *See Naples v. Stefanelli,* 972 F. Supp. 2d 373, 386-387 (E.D.N.Y. 2013) (Seybert, J.).

**A.      The Malicious Prosecution Claims Should be Dismissed**

To plead a viable Section 1983 Claim for malicious prosecution, a plaintiff must allege a violation of his Fourth Amendment rights in addition to the "elements of a malicious prosecution claim under state law."  *Manganiello v. City of New York,* 612 F.3d 149, 161 (2d Cir. 2010).  To plead a claim for malicious prosecution under New York law, a plaintiff must allege: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Id.*  The "existence of probable cause is a complete defense to a claim of malicious prosecution."  *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir. 2003), citing *Colon v. City of New York,* 60 N.Y.2d 78, 83 (1983).[8]

Here, Ms. Witherspoon's Statements, Trial Testimony and Identifications establish an independent basis of probable cause to initiate and continue the criminal prosecution against Plaintiff.  Ms. Witherspoon was an eyewitness to the shooting of Mr. Steve Jason.  Her March 20, 1994 statements describe how she observed a man pull a gun and point it directly at Jason, and how, seconds later, she turned to run away and heard several gun shots.  Ex. I.  In her

---

[8]  Indictment by a grand jury creates a rebuttable presumption of probable cause.  *Tankleff v. County of Suffolk,* 2017 U.S. Dist. LEXIS 97472, at *71-72 (E.D.N.Y. June 23, 2017) (Seybert, J.).  The County Defendants are not, at this juncture, seeking dismissal of Plaintiff's malicious prosecution claims under the indictment-presumption rule. However, to the extent Plaintiff's malicious prosecution claims survive the instant motion, the County Defendants reserve their right to raise that argument on a motion for summary judgment.

December 20, 1994 statement she describes identifying Plaintiff from an array of photographs as the man she saw aim the gun at Jason. *Id.* Her April 11, 1995 statement describes picking Plaintiff out of an in-person lineup. *Id.* And on November 21, 1996, testifying at trial, Ms. Witherspoon provided an in-court identification of Plaintiff. Ex. O.

The statements and trial testimony of Ms. Witherspoon, together with the evidence of the photo array and lineup, provided probable cause to believe that plaintiff was the man who shot and killed Steven Jason. *Powell v. Murphy,* 593 Fed. Appx. 25, 27 (2d Cir. 2014); *Carson v. Lewis,* 35 F. Supp. 2d 250, 260 (E.D.N.Y. 1999).[9]  In addition, each of the individual County Defendants would be entitled to qualified immunity from the malicious prosecution claim because, based on Ms. Witherspoon's evidence, a reasonable officer could conclude that there was at least arguable probable cause to prosecute plaintiff. *See Barcomb v. Sabo,* 487 Fed. Appx. 645, 647 (2d Cir. 2004).

In his second-amended complaint, Plaintiff makes a conclusory allegation that Det. Abbondandelo, Det. Dempsey and Det. Mullen "corrupted the account" of Ms. Witherspoon to suggest that she was the "sole eyewitness and had identified the plaintiff as the perpetrator." Ex. G (SAC), at ¶45.  While this allegation should be ignored as a conclusory assertion, it is in any event demonstrably false.  Det. Dempsey was not involved in preparing any of Ms. Witherspoon's statements. *See* Ex. I.  And Ms. Witherspoon's statements do not exclude other eyewitnesses to the crime; they merely describe what she observed. *Id.*

Ms. Witherspoon's statements and testimony provide an independent basis for probable cause to initiate and continue a prosecution against plaintiff even assuming, for purposes of the

---

[9]  The probable cause standard on a malicious prosecution claim is slightly higher than for false arrest, and has been described as "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Stansbury v. Wertman,* 721 F.2d 84, 95 (2d Cir. 2013), quoting *Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir. 2003).  However, an eye-witness identification clearly meets even this slightly higher standard. *See id.*

instant motion only, that plaintiff's confession to the murder was improperly obtained.  Indeed, "even where plaintiff alleges, as here, that [a] malicious prosecution is based on fabricated evidence, 'the existence of probable cause independent of the fabricated evidence is a defense to that claim.'  'To hold otherwise would untether the malicious prosecution claim from its Fourth Amendment roots.'"  *Hoyos v. City of New York*, 999 F.Supp.2d 375, 390 (E.D.N.Y. 2013), quoting *Morse v. Spitzer*, 2012 U.S. Dist. LEXIS 110241 (E.D.N.Y. Aug. 3, 2012); *see also Oquendo v. City of New York,* 2017 U.S. Dist. LEXIS 223189, at *18 n.6 (E.D.N.Y. Nov. 15, 2017); *Torres v. City of New York,* 2017 U.S. Dist. LEXIS 158883, at *11 (E.D.N.Y. Sept. 27, 2017).  Hence, the malicious prosecution claim should be dismissed.

**B.      The Fabrication of Evidence Claim Should be Dismissed as Against Det. Alger and Det. Sgt. Severin**

Under the Due Process Clause of the Fourteenth Amendment, individuals have "the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity."  *Zahrey v. Coffey,* 221 F.3d 342, 349 (2d Cir. 2000).  As in any Section 1983 claim, the plaintiff must allege the personal participation of each defendant in a claim based on the alleged fabrication of evidence.  *See Mendoza v. County of Nassau,* 2012 U.S. Dist. LEXIS 140961, at *9-11 (E.D.N.Y. Sept. 27, 2012).

Here, plaintiff's fabrication of evidence claim is brought against Det. Abbondandelo, Det. Dempsey, Det. Mullen, Det. Alger, Det. Kosier and Det. Severin.  Plaintiff alleges that these defendants fabricated evidence by: (i) "manufacturing" Plaintiff's written confession and forcing him to adopt it; (ii) "manufacturing" the identification of Plaintiff by Ms. Witherspoon; (iii) "manufacturing" the allegedly inculpatory statements from Peddie Jenkins; (iv) "manufacturing" statements from Roy Isaac and Tyrone Isaac; (v) attempting to obtain a statement from Richard "Woody" Miller; (vi) withholding exculpatory evidence and concealing the identify of "key

witnesses"; and (vii) "tampering" with witness testimony.  Ex. G (SAC), at ¶¶133-136.

A close review of the complaint, shows that there are no allegations of personal involvement with regard to any of the alleged "fabrication" of evidence as against Det. Alger and Det. Severin.  These detectives are not alleged to have participated in coercing Plaintiff's confession or "manufacturing" the statements of Skwanitra Witherspoon.  Det. Alger is alleged to have "corruptly coordinated" the accounts of Witherspoon and Jenkins, a conclusory allegation that this Court need not credit and which, by plaintiff's own account, is not even correct.  Det. Alger is also alleged to have "attempted" to persuade other witnesses to implicate Plaintiff in Steven Jason's murder.  These allegations are not sufficient to implicate Det. Alger in plaintiff's claim for relief based on fabrication of evidence.

As noted above, the sum of the allegations as against Det. Severin are that the morning report does not mention Larrea, and that he provided false information to Plaintiff's relatives in an effort to keep them from obtaining an attorney for Plaintiff.  Again, these allegations are not sufficient to implicate Det. Severin in fabricating evidence against plaintiff.

**C.     The Coercion Claim Should be Dismissed as against Det. Kosier on Grounds of Lack of Participation**

Plaintiff brings his Section 1983 Coercion claim against defendants Abbondandelo, Dempsey, Mullen and Kosier.  The right of a citizen to be free from attempts by police to coerce incriminating statements from an in-custody criminal suspect is "guaranteed by the Due Process Clause of the Fourteenth Amendment."  *Weaver v. Brenner,* 40 F.3d 527, 534 (2d Cir. 1994).  The general standard applied under the Fourteenth Amendment is whether the statement was made voluntarily.  *Green v. Scully,* 850 F.2d 894, 900-902 (2d Cir. 1988).  "No single criterion controls whether an accused's confession is voluntary:  whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding

circumstances." *Id.* at 901-902; *Tankleff v. County of Nassau,* 2017 U.S. Dist. LEXIS 97472, at *58-59 (E.D.N.Y. June 23, 2017). A defendant's personal participation is a pre-requisite to a coerced confession claim. *See Jones v. King,* 2011 U.S. Dist. LEXIS 110980, at *22 (S.D.N.Y. Sept. 28, 2011), citing *Costello v. City of Burlington,* 632 F.3d 41, 48 (2d Cir. 2011); *Cepdea v. Coughlin,* 785 F. Supp. 385, 390 (S.D.N.Y. 1992).

Here, the coercion claim should be dismissed as against Det. Kosier on grounds of lack of personal participation. Plaintiff does not allege that Det. Kosier used force against him. The only allegation as against Kosier is that he "lied to and coerced" Plaintiff into signing his 15-page confession. Ex. G (SAC), at ¶69. Allegations that Kosier "lied to and coerced" are purely conclusory and need not be credited by this Court. Without those conclusory allegations, the second-amended complaint contains no allegations that Kosier had anything to do with Plaintiff allegedly being physically coerced into signing the confession.

In paragraph 70 of the second-amended complaint, Plaintiff alleges that Kosier, and others, forced Plaintiff to spend "several hours in a frigid interrogation room while stripped to his underwear." Ex. G (SAC), at ¶70. Even assuming this was true (and it is not), the nearly 20-hour gap[10] between the end of Kosier's polygraph exam and when Plaintiff first told Det. Dempsey that was responsible is too lengthy to conclude that temperature conditions in the polygraph room overcame Plaintiff's free will and forced him to confess. *See Bruno v.*

---

[10]  The chronology of Plaintiff's questioning, polygraph exam and eventual admission was detailed by Det. Abbondandelo in the suppression hearing. *See* **Exhibit R**, at 119:17-23 (plaintiff arrived at Homicide Squad at 1:30 pm); 131:6-14 to 132:16-21 (Dempsey questions plaintiff from 3 to 6 pm); 134:11-18 (plaintiff left alone); 136:3-11 to 137:20-23 (polygraph exam held from 7:50 p.m. to 10:45 p.m.); 139:7-140:21 (Dempsey questions plaintiff for 30 minutes); 141:10-142:6 (plaintiff had dinner for about 30 minutes); 142:7-25 (Dempsey questions plaintiff until about 2:30 a.); 143:11-20 (plaintiff sleeps from 2:30 a.m. until 7:30 am); 145:4-7 (plaintiff fed breakfast at 7:30 am); 145:8-14 (Dempsey and Mullen speak with plaintiff until 9:00 am); 145:23-146:9 (Mullen speaks with plaintiff until 11:00 am); 151:8-25 (Dempsey speaks with plaintiff from about noon until 3:30 pm); 151:23 152:2, 153:4-20 (plaintiff napping from 3:30 p.m. to 5:00 pm); 153:19-154:6 (plaintiff fed dinner around 5:00 pm); 156:11-14 (plaintiff made admission just prior to 7:00 pm).

*Cunningham,* 2004 U.S. Dist. LEXIS 20402, at *37-38 (S.D.N.Y. Oct. 8, 2004).

**D.     The Supervisory Liability Claim Should be Dismissed**

Plaintiff asserts a claim for supervisory liability against Det. Sgt. Severin.  To establish a claim for supervisory liability under Section 1983, a plaintiff must allege the defendant "(1) directly participated in a constitutional violation, (ii) failed to remedy a constitutional violation of which the defendant learned through a report or appeal; (iii) created a policy or custom under which a constitutional violation occurred, (iv) acted with gross negligence in supervising subordinates, or (v) 'exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.'"  *Perez v. Annucci,* 2019 U.S. Dist. LEXIS 42311, at *7 (S.D.N.Y. March 15, 2019), quoting *Colon v. Coughlin,* 58 F.3d 864, 873 (2d Cir. 1995).  A supervisor cannot be held liable merely because of his rank, or under a theory of *respondeat superior* based on alleged misconduct by subordinates.  *See Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994); *see also Stancati v. County of Nassau,* 2015 U.S. Dist. LEXIS 43802, at *9 (E.D.N.Y. March 31, 2015), citing *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir. 2003).  Conclusory allegations of supervisory liability are not sufficient to survive a motion to dismiss.  *See Nabatkhorian v. County of Nassau,* 2013 U.S. Dist. LEXIS 43787, at *19 (E.D.N.Y. Mar. 27, 2013) (Seybert, J.).

Here, the second-amended complaint alleges that Sgt. Severin had "oversight responsibility for training, hiring, screening, instruction, supervision and discipline of the detectives and police officers who deprived Mr. Jackson of his clearly-established constitutional rights." Ex. G (SAC), at ¶144.  Plaintiff alleges that Sgt. Severin was "personally involved in both the deprivation of Mr. Jackson's constitutional rights" and created or condoned a policy of failing to take measures to guard against such violations. *Id.* at ¶145.  Plaintiff claims that Sgt. Severin was "reckless" in his failure to supervise, *id.* at ¶146, and knew or should have known

that the alleged constitutional violations against plaintiff were likely to occur.  *Id.* at ¶147.  These boilerplate allegations are not sufficient.  *See Scraggs v. New York State Dep't of Ed.,* 2007 U.S. Dist. LEXIS 35860, at *63 (E.D.N.Y. May 16, 2007) (citing cases).

**E.      Plaintiff Does Not Allege a Plausible *Monell* Claim**

It is well settled that a *Monell* claim based on boilerplate allegations of the existence of a practice or policy will not survive a motion to dismiss.  *See Phillips v. City of Middletown,* 2018 U.S. Dist. LEXIS 163308, at *24-25 (S.D.N.Y. Sept. 24, 2018); *Abreu v. City of New York,* 657 F. Supp. 2d 357, 361 (E.D.N.Y. 2009).  The rule is the same when a *Monell* claim is based on an alleged failure to train or failure to supervise.  *Mendoza v. County of Nassau,* 2012 U.S. Dist. LEXIS 140961, at *21-22 (E.D.N.Y. Sept. 12, 2012).

Here, the second-amended complaint contains a series of boilerplate allegations concerning (i) conducting inadequate investigations; fabricating evidence; perjury; failing to obtain probable cause and suppressing evidence from prosecutors (¶150); (ii) a systemic failure to train officers and detectives (¶151); (iii) the failure to adequately supervise officers and detectives (¶152); and the failure to adequately discipline officers and detectives (¶153).  These bare allegations are not sufficient to survive a motion to dismiss.  *See Phillips,* 2018 U.S. Dist. LEXIS 163308, at *24-25; *Abreu,* 657 F. Supp. 2d at 361; *Mendoza,* 2012 U.S. Dist. LEXIS 140961, at *21-22.

Plaintiff has cited the *Kogut* case and has attempted to attach to the second-amended complaint exhibits from the *Restivo* case, in an apparent effort to particularize his *Monell* claim. However, Plaintiff fails to mention that *Kogut* ended in defense verdict, *see Kogut v. County of Nassau,* 06-CV-6695 (JS), at DE 450, and that the only individual County Defendant named in *Restivo* (Det. Dempsey) was dismissed from that case.  *See Restivo v. County of Nassau,* 06-CV-6720 (JS), at DE 178.  Moreover, the *Monell* claim in Restivo was bifurcated, *see id,* at DE 153,

at pp 3-4 (referencing bifurcation) and DE 163, at p.12 (same), and was not tried.

**F.    The Common-Law False Imprisonment Claim Should be Dismissed**

Plaintiff's seventh claim for relief alleges a common-law claim for "false imprisonment" against the County and the Village pursuant to a theory of *respondeat superior.*

Probable cause is a complete defense to a claim of false arrest under both federal and New York common law. *Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir. 2002). A criminal defendant's conviction, including by guilty plea, establishes probable cause to arrest. *See Corsini v. Brodsky,* 731 Fed. Appx. 15, 18 (2d Cir. April 13, 2018); *Tretola v. County of Nassau,* 14 F. Supp. 3d 58, 68-69 (E.D.N.Y. April 16, 2014); *Cameron v. Wise,* 2011 U.S. Dist. LEXIS 42887, at \*14 (S.D.N.Y. April 20, 2011). Personal involvement is also a prerequisite to liability for state law claims. *See Levantino v. Skala,* 56 F. Supp. 3d 191, 207 (E.D.N.Y. 2014).

As noted above, Plaintiff pled guilty in satisfaction of the narcotics charge for which he was arrested on December 17, 1994. Ex. A. A conviction, including by way of a guilty plea, constitutes absolute proof of probable cause to arrest and is fatal to any subsequent claim for false arrest/false imprisonment. *Tretola,* 14 F. Supp. 3d at 68-69; *Cameron,* 2011 U.S. Dist. LEXIS 42887, at \*14. Accordingly, the common-law claim for false imprisonment must be dismissed.

To the extent that plaintiff's false imprisonment claim is based on his March 1995 arrest on the murder charge, for the reasons described above, the statement of Ms. Witherspoon on March 20, 1994, and her identification of plaintiff from a photo array on December 20, 1994, provide ample probable cause to support the arrest. *See Angevin v. City of New York,* 204 F. Supp. 3d 469, 479 (E.D.N.Y. 2016); *Daughtry v. New York,* 2015 U.S. Dist. LEXIS 68627, at \*8-9 (E.D.N.Y. Feb. 23, 2015).

The false imprisonment claim should also be dismissed as to certain of the individual County Defendants on grounds of lack of personal participation. Specifically, the second-amended complaint contains no allegations concerning any involvement in plaintiff's arrest by Det. John M. Holland; Det. Michael Alger; Det. Michael Herts, Det. Kosier or Det. Sgt. Severin.

## G.    The Claim For Intentional or Negligent Infliction of Emotional Distress Fails

Plaintiff's eighth claim for relief alleges a common-law claim for "intentional or negligent infliction of emotional distress." Ex. G (SAC), at ¶¶168-170.

Public policy "bars intentional infliction of emotional distress claims against government entities." *Jones v. City of New York,* 988 F. Supp. 2d 305, 318 (E.D.N.Y. 2013) (citation omitted); *see also Lauer v. City of New York,* 240 A.D.2d 543, 544 (2d Dep't 1997). Moreover, where, as here, the claim for relief asserting infliction of emotional distress is duplicative of the other claims alleged, the emotional distress claim is not generally allowed. *See Write v. Belafonte,* 687 Fed. Appx. 1, 2 (2d Cir. 2017), citing *Wolkstein v, Morgenstern*, 275 A.D.2d 635, 637 (1st Dep't 2000). In this regard, courts recognize that a claim for intentional infliction of emotional distress is a "highly disfavored [tort] under New York law," *Turley v. ISG Lackawanna, Inc.,* 774 F.3d 140, 158 (2d Cir. 2014) (internal quotes omitted), and it "is to be invoked only as a last resort." *Id; see also Salmon v. Blesser,* 802 F.3d 249, 256 (2d Cir. 2015).

Here, Plaintiff's state-law claim for intentional and negligent infliction of emotional distress is barred by public policy, and in addition is clearly duplicative of his separate claims alleging (i) malicious prosecution; (ii) fabrication of evidence in violation of Plaintiff's Due Process rights; and (iii) coercion of Plaintiff's written confession.

## H.    The *Brady* Violation Claim Should be Dismissed

Plaintiff's tenth claim for relief alleges that each of the individual defendants violated *Brady* by suppressing evidence, specifically: (i) the Montes and Larrea Statements; (ii) the 911

Call; (iii) the Valdez Note; and (iv) the Zimmer-Baldwin interview.

In *Brady v. Maryland,* 373 U.S. 83 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Strickler v. Greene,* 527 U.S. 263, 280 (1999), quoting *Brady,* 373 U.S. at 87. To plead a viable *Brady* violation, plaintiff must assert three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler,* 527 U.S. at 281-82; *see Hurley v. Town of Southampton,* 2018 U.S. Dist. LEXIS 137089, at *34-35 (E.D.N.Y. Aug. 13, 2018).

The *Brady* claim fails for the following reasons. First, the claim fails with respect to the Montes and Larrea statements because Plaintiff cannot meet the suppression or prejudice elements. Evidence is "not suppressed" if the defendant either "knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. LeRoy,* 687 F.2d 60, 618 (2d Cir. 1982); *see also United States v. Zackson,* 6 F.3d 911, 918 (2d Cir. 1993). While the Montes and Larrea statements themselves were not produced to Plaintiff or his defense counsel, a Freeport incident report (Ex. C), was marked as an exhibit at Plaintiff's suppression hearing held in 1995, a year before Plaintiff's criminal trial. That incident report disclosed to Plaintiff, and his defense counsel, the fact that Montes and Larrea had provided written statements (32bs), provided a basic narrative of what those statements contained, and contained Montes and Larrea's names and telephone numbers. Plaintiff had everything he needed to contact Montes and Larrea as part of his defense; his experienced attorneys just decided not to do so. Having received that information, Plaintiff cannot plausibly allege that the

statements were suppressed or that he suffered any prejudice.

Second, the *Brady* claim fails with respect to the 911 Call because, as was recently determined, Larrea is not entirely sure that he even called 911.  *See* Ex. K (Larrea Dep), at 26:5-24.  Defendants cannot be liable for failing to disclose evidence that Plaintiff cannot prove actually existed in the first place.

Third, the Swenson Note is not *Brady* material subject to an obligation to produce.  The note states that, at the relevant time, Ms. Valdez was at an office located at 11 West Sunrise Highway, in Freeport, New York, when she heard gun shots.  Ex. N.  A reference to the Freeport street map shows that 11 West Sunrise Highway is located at the corner of Church Street and Sunrise Highway, a full block away from the Blimpie's restaurant.  There is no way that Ms. Valdez could have seen the shooter.  The note says that she observed a male on foot wearing a black jacket, hood, jeans and boots, running toward the fire department with a gray or white car in pursuit.  *Id.*  The note concludes:  "No further.  Cannot ID."  *Id.*  The note does not state that the person she saw running was the shooter, and indeed it could not so state.  This information is not favorable to the defense, and offers no probative value; accordingly *Brady* does not apply.

Finally, the recording of the Zimmer-Baldwin interview is similarly not *Brady* material.  Plaintiff alleges that in the interview, "Baldwin provides several leads that support plaintiff's innocence."  Ex. G (SAC), at ¶51.  This is a conclusory assertion that this Court need not credit on the present motion.

## I.      Plaintiff's Prolonged Detention Claim Fails

Plaintiff alleges that the failure to disclose exculpatory material, including the Montes and Larrea statements, the 911 Call, the Zimmer-Baldwin interview, and the Valdez Note, resulted in a Fourth Amendment violation for prolonged wrongful detention, citing the Second Circuit's decision in *Russo v. City of Bridgeport,* 479 F.3d 196 (2d Cir. 2007).  This purported

-29-

claim should be dismissed.

In *Russo,* a case of mistaken identity, the plaintiff was arrested and imprisoned for armed robbery of a gas station.  After more than 200 days in custody, a prosecutor finally viewed surveillance video of the robbery that was in police custody for the vast majority of that time, and discovered clear evidence of the plaintiff's innocence.  The video showed the perpetrator's arms were mostly free of tattoos, whereas plaintiff "had prominent tattoos on his forearms, hands, neck, and legs."  *Russo,* 479 F.3d at 200.  Interpreting a Supreme Court decision issued in 1979, *Baker v. McCollan,* 443 U.S. 137 (1979), the Second Circuit recognized a Fourth Amendment right against prolonged wrongful detention where a pre-trial detainee could demonstrate (i) a lengthy detention (something more than a few days), where (ii) the police ignored readily available evidence that would clearly exculpate the detainee; and (iii) intentional conduct on the officer's part.  *Russo,* 479 F.3d at 209.

The Fourth Amendment claim recognized by the Second Circuit in *Russo* does not apply here.  In *Russo,* the police intentionally or recklessly ignored clearly exonerative evidence.  Here, by contrast, the allegedly withheld evidence (the Montes and Larrea statements, any 911 call, the Valdez Note and the Zimmer-Baldwin recording) are not remotely as exonerative as the videotape in question in *Russo*.  Plaintiff's attempt to fit his case into the Fourth Amendment claim recognized in *Russo* fails.  *See Delamota v. City of New York*, 683 Fed. Appx. 65, 67 (2d Cir. 2017) (rejecting wrongful detention claim).

## J.     The Failure to Intervene Claim Fails

Finally, plaintiff's twelfth claim for relief alleges a Section 1983 claim for failure to intervene.  Ex. G (SAC), at ¶¶189-191.

"A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers."  *O'Neill v.*

-30-

*Krzeminski,* 839 F.2d 9, 11 (2d Cir. 1988).  However, that duty only exists when the officer has a reasonable opportunity to intervene.  *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994); *Johnson ex rel. Johnson v. County of Nassau,* 2010 U.S. Dist. LEXIS 101752, at *10-11 (E.D.N.Y. Sept. 27, 2010); *Jean-Laurent v. Wilkerson,* 438 F. Supp.2d 318, 327 (S.D.N.Y. 2006).  In addition, a failure to intervene claim against an officer alleged to have directly violated a plaintiff's rights is not viable as against that officer because the claim would simply merge into the direct claim.  *See Scott v. City of Mt. Vernon,* 2017 U.S. Dist. LEXIS 47856, at *90-91 (S.D.N.Y. March 30, 2017); *Simon v. The City of New York,* 2011 U.S. Dist. LEXIS 9515, at *39-40 (E.D.N.Y. Jan. 3, 2011).  Finally, a claim for failure to intervene is derivative in nature, and depends on the existence of a valid underlying constitutional claim.  *See Soto v. City of New York,* 132 F. Supp. 3d 424, 458-459 (E.D.N.Y. 2015).

Here, the second-amended complaint alleges:  "[t]hose defendants that [sic] were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene."  Ex. G (SAC), at ¶190.  Plaintiff does not attempt to identify which defendant may have observed which alleged unlawful conduct.  Without any such details, Plaintiff's second-amended complaint cannot survive a motion to dismiss.

### POINT IV
### THE SECOND-AMENDED COMPLAINT SHOULD BE DISMISSED
### WITH PREJUDICE AS AGAINST THE ESTATE OF JERL MULLEN

**A.      The Complaint Must be Dismissed for Improper Service as Against Dora Mullen as Administrator of the Estate of Jerl Mullen**

The complaint must be dismissed as against Dora Mullen as Administrator of the Estate of Jerl Mullen because Ms. Mullen was discharged as personal representative of the estate in May 2016 and could not accept service of process on behalf of the estate when she received

-31-

Plaintiff's amended complaint in October 2019.

To initiate suit against an estate, the plaintiff must serve a duly appointed executor or personal representative of the estate.  *See* N.Y C.P.L.R. 313.  In *Jordan v. Fayetteville Metro. Hous. Auth. Bd.*, *Etc.,* the federal district court, applying North Carolina probate law, dismissed the defendant estate from suit where the plaintiff served the deceased defendant's widow, but the widow had not been appointed as personal representative of the estate.  2017 U.S. Dist. LEXIS 47647, at *14 (E.D.N.C. Mar. 30, 2017), adopting report and recommendation of 2017 U.S. Dist. LEXIS 49128 (E.D.N.C. Feb. 24, 2017).  The court held that an action could only be initiated against the estate via service on the personal representative and expressly rejected the plaintiff's argument that the estate should be deemed properly served since the decedent's widow had accepted service without informing the plaintiff that he was not the personal representative.  *Id.* at *14 ("the issue is whether a personal representative is required for service upon defendant Estate.  Because no personal representative has been appointed for defendant Estate, it has not properly been served.").

When an individual no longer has authority to act as a personal representative of the estate, they can no longer accept service on behalf of the estate.  For example, in *Guinnane v. Dobbins*, 2019 U.S. Dist. LEXIS 186229, at *6 (D. Mont. Oct. 28, 2019), the federal court quashed service of summons and complaint where the individual served had been terminated as personal representative of the estate.  Similarly, in *Water Energizers, Ltd. v. Water Energizers, Inc.*, 788 F. Supp. 208, 211 (S.D.N.Y. 1992), the court dismissed all claims against the estate where it was undisputed that the estate was "wound up prior to service of this action," and thus no longer existed.  "Existence is surely a necessary requisite for this court's exercise of personal jurisdiction."  *Id.*

North Carolina General Statute § 28A-23-1 provides that upon approval of the personal representative's final account, "the clerk of court shall enter an order discharging the personal representative or collector from further duties and liabilities as personal representative or collector, including those set forth in Article 13 of this Chapter."  Here, the final account was approved and Ms. Mullen was discharged as personal representative on May 23, 2016, over three years before she was purportedly served by Plaintiff.  *See* Ex. N.  Upon her discharge, Dora Mullen no longer had any authority or obligation to represent the Estate, and lacked legal authority to accept or receive service on behalf of the estate.  N.C. G.S. 28A-23-1 (discharge of personal representative); 28A-13-3 (powers of a personal representative); *Cf. Joyner v. Wilson Mem'l Hosp., Inc.*, 38 N.C. App. 720, 723, 248 S.E.2d 881, 882 (1978) (authority of personal representative continues until order of discharge).  At the time of the purported service in October 2019, there was no administrator of the Estate of Jerl Mullen.  Accordingly, Dora Mullen could not be served as Administrator of the Estate, and "Dora Mullen, as Administrator of the Estate" does not exist and is not a proper party to this suit.  The complaint, as against Dora Mullen as Administrator of the Estate of Jerl Mullen, must be dismissed.

**B.     Plaintiff's Claims Against the Estate of Mullen are Barred by the North Carolina Non-Claim Statute**

Plaintiff's claims must also be dismissed because any claim against the estate would be barred as untimely under North Carolina's "non-claim" statute, N.C.G.S. § 28A-19-3.  The non-claim statute governs the time in which a claimant may pursue a claim against an estate.  It provides, in relevant part:

> (a)  All claims against a decedent's estate which arose before the death of the decedent, . . . which are not presented to the personal representative or collector pursuant to G.S. 28A-19-1 by the date specified in the general notice to creditors as provided for in G.S. 28A-14-1(a) . . . are forever barred against the estate, the personal representative, the collector, the heirs, and the devisees of the decedent. .

. . .

(b)  All claims against a decedent's estate which arise at or after the death of the decedent, . . . are forever barred against the estate, the personal representative, the collector, the heirs, and the devisees of the decedent unless presented to the personal representative or collector as follows: . . .

(2)  With respect to any claim other than a claim based on a contract with the personal representative or collector, within six months after the date on which the claim arises.

N.C. Gen. Stat. Section 28A-19-3(a), (b).  Claims not barred by 28A-19-3(a) or (b) are barred if not filed within three years of the decedent's death, the "outside time limitation" for claims against an estate.  *See Mabry v. Huneycutt*, 149 N.C. App. 630, 635 (2002) (citing N.C.G.S. § 28A-19-3(f)); *Simpson v. McConnell*, 156 N.C. App. 424, 423 (N.C. Ct. App. 2003) (time period for claims against a decedent's estate "is not suspended indefinitely because it cannot extend beyond three years after the death of the decedent.").

"Though similar to a statute of limitations," the non-claim statute, "serves a different purpose and operates independently of the statute of limitations[;] . . . [a] cause of action may be barred by either or both of these statutes."  *Ragan v. Hill*, 337 N.C. 667, 671 (1994).  As explained by the North Carolina Supreme Court, "[t]he time limitations prescribed by this section allow the personal representative to identify all claims to be made against the assets of the estate early on in the process of administering the estate.  The statute also promotes the early and final resolution of claims by barring those not presented within the identified period of time."  *Id*.

To the extent that Plaintiff's claims arose prior to Jerl Mullen's death, they had to be presented to the personal representative of the estate by June 13, 2015.  N.C.G.S. § 28A-19-3(a); Ex. P (notice to creditors provided date of June 13, 2015).  Any claims arising after Jerl Mullen's death would have needed to be presented within 6 months after the claim arose, § 28A-19-

-34-

3(b)(2), and in no event more than three years after Jerl Mullen's death, or by January 4, 2018, § 28A-19-3(f).  Plaintiff did not "present" a claim in any of the statutorily prescribed methods under N.C. G.S. § 28A-19-1 ("Manner of presentation of claims") within the required time periods.  Consequently, Plaintiff's claims against the Estate of Jerl Mullen are barred by the North Carolina non-claim statute.  *Ragan*, 337 N.C. at 671; *see also Gross v. Griffin*, 800 F. Supp. 2d 293, 302 (D. Me. 2011) (dismissing *Bivens* claims against estate that were not timely presented pursuant to Maine probate code which required presentation of claim within four months of notice publication).  Accordingly, Plaintiff's claims against the Estate of Jerl Mullen must be dismissed as untimely.

### Conclusion

The County Defendants' motion should be granted in its entirety.

Dated: White Plains, New York
          April 17, 2020

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for County Defendants

Lalit K. Loomba

_____
Peter A. Meisels
Janine Mastellone
Lalit K. Loomba

1133 Westchester Avenue
White Plains, New York 10604
(914) 323-7000
Our File No.  12473.00014

-35-