UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOSEPH JACKSON,

                              Plaintiff,                    Case No.: 18-CV-3007

NASSAU COUNTY; THE INCORPORATED VILLAGE
OF FREEPORT; DETECTIVE ROBERT DEMPSEY;
DETECTIVE GARY ABBONDANDELO; DETECTIVE
JOHN M. HOLLAND; DETECTIVE MICHAEL HERTS;
DETECTIVE MARTIN ALGER; POLICE OFFICER
ROBERT MELENDEZ; DETECTIVE WALTER
SWENSON; DETECTIVE ANTHONY KOSIER;
DETECTIVE SERGEANT DAN SEVERIN; DORA
MULLEN, AS THE ADMINISTRATOR OF THE ESTATE
OF JERL MULLEN; JANE DOE, AS THE
ADMINISTRATOR OF THE ESTATE OF ARTHUR
ZIMMER, and JOHN and JANE DOE 1 through 20,

                              Defendants.

------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF THE VILLAGE DEFENDANTS'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(2), 12(b)(5) and 12(b)(6)**


**HARRIS BEACH PLLC**
Keith M. Corbett, Esq.
Stephanie L. Tanzi, Esq.
The OMNI
333 Earle Ovington Blvd., Suite 901
Uniondale, New York 11553
Tel: (516) 880-8484
Fax: (516) 880-8483

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT ................................................. **Error! Bookmark not defined.**

STATEMENT OF FACTS ........................................................ **Error! Bookmark not defined.**

STANDARD OF REVIEW ....................................................... **Error! Bookmark not defined.**

ARGUMENT .......................................................................... **Error! Bookmark not defined.**

POINT I  PLAINTIFF'S COMPLAINT AGAINST DEFENDANT THE ESTATE OF ARTHUR ZIMMER MUST BE DISMISSED AS THIS COURT DOES NOT HAVE PERSONAL JURISDICTION **Error! Bookmark not defined.**

POINT II  THE SECOND AMENDED COMPLAINT MUST BE DISMISSED AGAINST DEFENDANT THE ESTATE OF ARTHUR ZIMMER FOR FAILURE TO SERVE A PROPER NOTICE OF CLAIM AGIANST THE ESTATE PRIOR TO COMMENCING THIS ACTION ............................................................ **Error! Bookmark not defined.**

POINT III  THE PLAINTIFF'S UNLAWFUL PRE-TRIAL DETENTION CLAIM MUST BE DISMISSED AS THE PLAINTIFF IS TIME BARRED FROM BRINGING THIS CLAIM .. **Error! Bookmark not defined.**

POINT IV  PLAINTIFF'S SECOND AMENDED COMPLAINT MUST BE DISMISSED AGAINST THE VILLAGE DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ............................................................ **Error! Bookmark not defined.**

    A.  The Second Amended Complaint Fails to State a Claim Under 42 U.S.C. § 1983 Because The Complaint Does Not Allege Personal Involvement By the Village Defendants ....................... **Error! Bookmark not defined.**

        i.  § 1983 Conspiracy ............................ **Error! Bookmark not defined.**

        ii.  Failure to Intervene ........................... **Error! Bookmark not defined.**

        iii.  Evidence Suppression/Brady Violations/Spoliation & Denial of Access to Courts Claim .................... **Error! Bookmark not defined.**

        iv.  The Unlawful Pre-Trial Detention Claim **Error! Bookmark not defined.**

    B.  The *Monell* Custom and Policy and Failure to Supervise Claim Must Be Dismissed Against The Village Defendants For Failure to State a Claim **Error! Bookmark not defined.**

    C.  Plaintiff's State Law Claims Fail to State a Claim As And Against The Village Defendants .................................. **Error! Bookmark not defined.**

i

      i.    False Imprisonment...........................**Error! Bookmark not defined.**

      ii.   Intentional Infliction of Emotional Distress**Error! Bookmark not defined.**

      iii.  State Law Malicious Prosecution......**Error! Bookmark not defined.**

POINT V    THE FOURTH CLAIM FOR MALICIOUS PROSECUTION SHOULD BE DISMISSED AS FREEPORT DID NOT PROSECUTE THIS CASE......................................................**Error! Bookmark not defined.**

POINT VI  VILLAGE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S DAMAGES CLAIMS**Error! Bookmark not defined.**

CONCLUSION............................................................................**Error! Bookmark not defined.**

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Bell Atlantic Corp. v. Twombly*,
  127 S.Ct. 1955 (2007)................................................................................................ 4, 12

*Amnesty Am. v. Town of W. Hartford*,
  361 F.3d 113 (2d Cir. 2004)............................................................................................ 19

*Anderson v. Creighton*,
  483 U.S. 635 (1987).......................................................................................................... 25

*Aretakis v. Durivage*,
  2009 WL 249781 (N.D.N.Y. 2009) ............................................................................... 21

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009)................................................................................................... 4, 12

*Bd. of Cnty. Comm'rs v. Brown*,
  520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).................................... 19, 20

*Bell Atlantic Corp. v. Twombly*,
  127 S.Ct. 1955 (2007)................................................................................................ 4, 12

*Berg v. Kelly*,
  343 F. Supp. 3d 419, 2018 WL 6252383 (S.D.N.Y. 2018) ...................................... 19

*Bireline v. Seagondollar*,
  567 F.2d 260 (4th Cir.1977) .......................................................................................... 10

*Bishop v. City of New York*,
  2016 WL 4484245 (S.D.N.Y. 2016)............................................................................. 19

*Borawski v. Abulafia*,
  117 A.D.3d 662, 985 N.Y.S.2d 284 (2014) ............................................................... 22

*Brady v. Maryland*,
  373 U.S. 83 (1963).......................................................................................................... 16

*Brown v. Coughlin*,
  758 F.Supp. 876 (S.D.N.Y. 1991) ............................................................................... 13

*Brunache v. MV Tansp., Inc*,
  151 AD3d 1011 (2d Dept 2017) .................................................................................. 22

iii

*Carson v. Lewis*,
　35 F.Supp.2d 250 (E.D.N.Y. 1999) ............................................................... 14, 15

*Carvel v. Godley*,
　41 F.Supp.2d 476 (S.D.N.Y. 1999) ................................................................... 6

*Cerrone v. Brown*,
　246 F.3d 194 (2d Cir. 2001)............................................................................. 25

*City of Okla. City v. Tuttle*,
　471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)................................... 19, 20

*Coleman v. City of New York*,
　2010 WL 571986 (S.D.N.Y. Feb. 2, 2010) ..................................................... 15

*Courtney v. Colvin*,
　No. 13 Civ. 2884(AJN)(JLC), 2013 WL 5652476, 2013 U.S. Dist. LEXIS 149675, at *6
　(S.D.N.Y. Oct. 17, 2013) ................................................................................. 9

*DiPompo v. Ruggiero*,
　2018 WL 5045339 (S.D.N.Y. 2018) ................................................................. 13

*Dwares v. City of N.Y.*,
　985 F.2d 94 (2d Cir.1993)................................................................................ 14, 19, 20

*Dzwonczyk v. Syracuse City Police Dept.*,
　710 F. Supp. 2d 248 (N.D.N.Y. 2008) ............................................................. 26

*Feinberg v. City of New York*,
　2004 WL 1824373 ............................................................................................ 16

*Haines v. Cook Electric Co.*,
　53 Misc.2d 178, 278 N.Y.S.2d 357 (Sup.Ct.1967)......................................... 8

*Helme v. Buckelew*,
　229 N.Y. 363, 128 N.E. 216 (1920).................................................................. 8

*Hinkle v. City of Clarksburg*,
　81 F.3d 416 (4th Cir.1996) ............................................................................... 14

*Hunter v. Bryant*,
　502 U.S. 224 (1991).......................................................................................... 25

*In re Kalikow*,
　602 F.3d 82 (2d Cir.2010)................................................................................ 3

*Jenkins v. City of New York*,
　478 F.3d 76 (2d Cir. 2007)............................................................................... 21

*JF v. Carmel Cent. Sch. Dist.*,
   168 F. Supp. 3d 609 (S.D.N.Y. 2016)....................................................... 14

*Jocks v. Tavernier*,
   316 F.3d 128 (2d Cir. 2003)..................................................................... 21

*Johnson ex rel. Johnson v. Cty. of Nassau*,
   No. 09-CV-4746 JS MLO, 2010 WL 3852032 (E.D.N.Y. Sept. 27, 2010)............................ 22

*Kennedy v. Mendoza–Martinez*,
   372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) ...................................... 10, 17, 18

*Kiernan v. Hermes Intern.*,
   2009 WL 2707343 .......................................................................... 5

*Kinzer v. Jackson*,
   316 F.3d 139 (2d Cir. 2003)..................................................................... 25

*Klein v. Metropolitan Child Servs., Inc.*,
   100 A.D.3d 708, 954 N.Y.S.2d 559 (2012) ............................................... 22

*Laborers Local 17 Health and Ben. Fund v. Phillip Morris, Inc.*,
   26 F.Supp.2d 593 (S.D.N.Y.1998) ....................................................... 5

*Lennon v. Miller*,
   66 F.3d 416 (2d Cir. 1995)..................................................................... 25

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012)................................................................... 3, 6

*Lucky v. City of New York*,
   2004 WL 2088557 (S.D.N.Y. Sept. 20, 2004)........................................ 16

*Maddox v. Fowler*,
   2015 WL 4366222 ........................................................................ 13

*Makarova v. United States*,
   201 F.3d 110 (2d Cir.2000).................................................................... 3

*Mandell v. Cty. of Suffolk*,
   316 F.3d 368 (2d Cir. 2003)..................................................................... 26

*McDonough v. Smith*,
   898 F.3d 259, 2018 WL 3672942 (2d Cir. 2018) ......................................... 23, 24

*Monell v. Dep't of Soc. Serv. of City of New York*,
   436 U.S. 658, 98 S.Ct. 2018 (1978)...................................................... 19

*Moultry v. City of Poughkeepsie*,
   154 F.Sup.2d ............................................................................................ 5

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
   526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999) ......................... 3

*Murphy v. American Home Prods. Corp.*,
   58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983) ..................... 22

*Myers v. Moore*,
   326 F.R.D. 50 (S.D.N.Y. 2018) ...................................................... 13, 17

*Nghiem v. U.S. Dep't of Veterans Affairs*,
   451 F.Supp.2d 599 (S.D.N.Y.2006)........................................................ 9

*Omni Capital Int'l v. Rudolf Wolff & Co.*,
   484 U.S. 97 ............................................................................................ 4

*Owens v. Okure*,
   488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 ................................. 9, 11

*Paskowski v. Paskowski*,
   361 F. Supp. 981 (E.D.N.Y. 1973) ......................................................... 7

*Pearl v. City of Long Beach*,
   296 F.3d 76 [2d Cir. 2002].............................................................. 9, 10

*Petkewicz v. Dutchess County Dept. of Community & Family Servs.*,
   137 A.D.3d 990, 27 N.Y.S.3d 264 (2016) ............................................ 22

*Pinaud v. County of Suffolk*,
   52 F.3d 1139 (2d Cir.1995).................................................................. 10

*Plair v. City of New York*,
   789 F.Supp.2d 459 (S.D.N.Y. 2011)..................................................... 19

*Pressman v. Estate of Steinvorth*,
   860 F.Supp 171 (S.D.N.Y. 1994) .......................................................... 8

*Ricciuti v. N.Y.C. Transit Auth.*,
   124 F.3d 123 (2d Cir.1997).................................................................. 14

*Rizzo v. Goode*,
   423 U.S. 362 (1976).............................................................................. 13

*Rodriguez v. City of N.Y.*,
   649 F. Supp. 2d 301 (S.D.N.Y. 2009).................................................. 14

*Roe v. City of Waterbury*,
  542 F.3d 31 (2d Cir. 2008) ............................................................... 19

*Russo v. City of Bridgeport*,
  479 F3d 196 (2d Cir. 2007) ................................................. 10, 11, 18

*Sacino v. Warwick Valley Cent. School Dist.*,
  138 AD 3d 717 (2d Dept. 2016) ...................................................... 22

*Santana v. Leith*,
  117 A.D.3d 711, 985 N.Y.S.2d 147 (2014) ................................... 23

*Savino v. City of New York*,
  331 F.3d 63 (2d Cir. 2003) ............................................................. 26

*Schieffelin & Co. v. Jack Co. of Boca, Inc.*,
  725 F.Supp. 1314 (S.D.N.Y. 1989) ................................................ 11

*Schultes v. Kane*,
  50 A.D.3d 1277, 856 N.Y.S.2d 684 (2008) ................................... 23

*Siben v. American Airlines*,
  913 F.Supp. 271 (S.D.N.Y. 1996) .................................................. 11

*Smith v. City of New York*,
  388 F.Supp.2d 179 (S.D.N.Y. 2005) .............................................. 21

*Taggart v. Costabile*,
  131 A.D.3d 243, 14 N.Y.S.3d 388 (2015) ..................................... 22

*United States v. Ojeda Rios*,
  846 F.2d 167 (2d Cir.1988) ..................................................... 10, 18

*United States v. Orena*,
  986 F.2d 628 (2d Cir.1993) .............................................. 10, 11, 18

*United States v. Valentine*,
  539 F.3d 88 (2d Cir. 2008) ............................................................. 26

*Williams v. Smith*,
  781 F.2d 319 (2d Cir. 1986) ........................................................... 25

*Ying Li v. City of New York*,
  246 F.Supp.3d 578 (E.D.N.Y 2017) ............................................... 16

**Statutes**

42 U.S.C. § 1983 ................................................................................................ passim

N.Y.C.P.L. § 440 ...................................................................................................... 1

N.Y.C.P.L § 440 ....................................................................................................... 2

New York Surrogate's Court Procedure Act § 201, ¶ 3 ........................................ 6, 7

New York Surrogate's Court Procedure Act § 1802 .......................................... 7, 8, 9

New York Surrogate's Court Procedure Act § 1803 .................................................. 8

New York Surrogate's Court Procedure Act § 1811 .................................................. 8

New York Surrogate's Court Procedure Act §§ 1002, 1411 ..................................... 8

NY EPTL 12-1.2 ....................................................................................................... 8

**Rules**

CPLR § 214(5) .......................................................................................................... 9

CPLR § 308 ............................................................................................................... 5

CPLR § 308(2) .......................................................................................................... 5

F.R.C.P. 4(e)(2) ........................................................................................................ 5

F.R.C.P. 12(b)(5) ................................................................................................... 1, 4

F.R.C.P. 12(b)(6) ...................................................................................................... 1

F.R.C.P. 12(b)(2) ................................................................................................... 1, 4

F.R.C.P. 4(e)(1) ........................................................................................................ 5

F.R.C.P. 4(k) ............................................................................................................. 3

## PRELIMINARY STATEMENT

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and state law claims whereby Plaintiff Joseph Jackson alleges violations of his constitutional and state law rights. Plaintiff's claims arise out of a homicide investigation conducted by the Nassau County Police Department in connection with the murder of Steven Jason. Plaintiff was arrested and charged by the Nassau County District Attorney's Office with the murder of Steven Jason. On March 7, 1997, after a trial, Plaintiff was convicted of Murder in the Second Degree, Intimidating a Witness in the First Degree and Hindering Prosecution in the Second Degree. Plaintiff's conviction was ultimately overturned following an application made by the Nassau County District Attorney's Office pursuant to N.Y.C.P.L. § 440. Plaintiff alleges he was maliciously prosecuted and falsely imprisoned in connection with this conviction.

Pursuant to Rule 12(b)(2), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants The Incorporated Village of Freeport, Police Officer Robert Melendez, and the Estates of Arthur Zimmer (hereinafter "Village Defendants"), move to dismiss the Second Amended Complaint. The Village Defendants were not responsible for the investigation or prosecution of the Plaintiff. The Amended Complaint must be dismissed because: (1) Plaintiff failed to retain jurisdiction over the Village Defendants; (2) Plaintiff fails to state a claim against the Village Defendants, as the Village Defendants were not involved in the crux of the allegations contained in the Amended Complaint; (3) Plaintiff fails to make any allegations of personal involvement by the Village Defendants, and thereby fails to state a claim under 42 U.S.C. § 1983; (4) The Village Defendants did not prosecute the Plaintiff and as such,  Plaintiff fails to state a claim for malicious prosecution against the Village Defendants; and (5) the Village Defendants are entitled to qualified immunity.

1

## STATEMENT OF FACTS

At set forth in Plaintiff's Second Amended Complaint, on March 20, 1994, Steven Jason was fatally shot in Freeport, New York. Thereafter, an investigation was conducted by the Nassau County Police Department. On December 17, 1994, Plaintiff, Joseph Jackson, was arrested and charged with criminal sale of a controlled substance in the fifth degree, criminal sale of a controlled substance in the third degree, and criminal possession of a controlled substance in the third degree.

Plaintiff's conviction was ultimately overturned following an application made by the Nassau County District Attorney's Office pursuant to N.Y.C.P.L § 440. Plaintiff alleges he was maliciously prosecuted and falsely imprisoned in connection with this conviction. As discussed further herein, the Village Defendants did not initiate or continue the prosecution of the Plaintiff in connection with the homicide he was charged and ultimately convicted of. As stated in the Affidavit of Assistant Chief of Police, Raymond Horton, the Nassau County Homicide Squad commanded and controlled the investigation, arrest and prosecution of the Plaintiff, as is normal protocol for homicides in the Village of Freeport. For this and other reasons discussed below, the Second Amended Complaint should be dismissed in its entirety against the Village Defendants.

On or about May 22, 2018, Plaintiff filed his complaint against, among other defendants, the Village Defendants. On or about January 16, 2019, this Court held a pre- motion conference, wherein this Court directed the parties to meet and confer for the purpose of limiting the number of claims and defendants in this litigation and issued a briefing schedule for motions. On March 8, 2019, Plaintiff filed an Amended Complaint against the Incorporated Village of Freeport, leaving eight individual Village Defendants who had nothing to do with the underlying complaint in the caption and refusing to limit any claims against the Village Defendants. On May

9, 2019, the County Defendants and the Village Defendants filed motions to dismiss the Amended Complaint. On February 25, 2020, the Plaintiff filed the instant Second Amended Complaint, in conjunction with a motion to amend the complaint. Thereafter, on February 26, 2020, this Court issued an Order, terminating the defendants' motions to dismiss and directing the parties to confer regarding the Second Amended Complaint. Thereafter, on March 6, 2020, the parties appeared before the Court for a conference, whereat, this Court issued a briefing schedule for the instant motion and directed the parties to meet and confer concerning stipulations for the Second Amended Complaint. On April 1, 2020 this Court So Ordered a stipulation of the parties dismissing certain individual Village Defendants.

## <u>STANDARD OF REVIEW</u>

The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements. First, the plaintiff's service of process upon the defendant must have been procedurally proper. <u>See</u> <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.</u>, 526 U.S. 344, 350, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999); <u>In re Kalikow</u>, 602 F.3d 82, 92 (2d Cir.2010). Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective. The available statutory bases in federal courts are enumerated by Federal Rule of Civil Procedure 4(k). Third, the exercise of personal jurisdiction must comport with constitutional due process principles. <u>Licci ex rel. Licci v. Lebanese Canadian Bank, SAL</u>, 673 F.3d 50 (2d Cir. 2012).

If a plaintiff fails to offer sufficient enough specific factual content to create "facial plausibility" to permit the court to reasonably infer that the defendant is liable for the conduct alleged, a defendant is entitled to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949-50 (2009) (the sheer possibility of

misconduct is insufficient); see also Bell Atlantic Corp. v. Twombley, 550 U.S.544, 554-56; 127 S.Ct. 1955, 1964-65 (2007).  Iqbal requires a plaintiff to go beyond conclusory allegations of harm, and state facts which, could support an inference of the misconduct alleged. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to protect a claim from dismissal. Ashcroft, 129 S.Ct. at 1949. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." Id. at 1950.

## ARGUMENT

### POINT I

### PLAINTIFF'S COMPLAINT AGAINST DEFENDANT THE ESTATE OF ARTHUR ZIMMER MUST BE DISMISSED AS THIS COURT DOES NOT HAVE PERSONAL JURISDICTION

The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements. First, the plaintiff's service of process upon the defendant must have been procedurally proper. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999); In re Kalikow, 602 F.3d 82, 92 (2d Cir.2010). Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective. The available statutory bases in federal courts are enumerated by Federal Rule of Civil Procedure 4(k). Third, the exercise of personal jurisdiction must comport with constitutional due process principles. Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50 (2d Cir. 2012).

Plaintiff's Second Amended Complaint against the Village Defendants must be dismissed for failure to confer personal jurisdiction against the Defendant the Estate of Arthur Zimmer for failing to effectuate personal service. F.R.C.P. 12(b)(2); F.R.C.P. 12(b)(5). Without valid service of process, the court does not obtain personal jurisdiction over a defendant. See generally Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987. If the court does not have personal jurisdiction over the defendant, the action must be dismissed. See F.R.C.P. 12(b)(2); Laborers Local 17 Health and Ben. Fund v. Phillip Morris, Inc., 26 F.Supp.2d 593, 597 (S.D.N.Y.1998).

Federal Rule of Civil Procedure 4(e)(1) states that an individual must be served "by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made…" In the alternative, pursuant to F.R.C.P. 4(e)(2), service on an individual can be achieved by doing any of the following:

> (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

In this case, it is undisputed that Plaintiff did not effectuate service on Defendant The Estate of Arthur Zimmer. Plaintiff failed to file an Affidavit of Service as and for Defendant The Estate of Arthur Zimmer.

Plaintiff has also failed to effectuate service on Defendant The Estate of Arthur Zimmer pursuant to Fed. R. Civ. P. 4(e)(1). Under New York law, pursuant CPLR § 308(2), service can be made upon an individual by, *inter alia[1]*, delivering the summons "to a person of suitable age

---

[1] Service can also be made by delivering the summons to the person to be served, delivering the summons to an agent or service as designated under Rule 318, by "nail and mail", and in a manner the court, upon motion, directs. In this case, none of the other methods of service under CPLR § 308 apply.

and discretion at the actual place of business . . . and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business," thus this Court lacks personal jurisdiction over these Defendants. See Moultry v. City of Poughkeepsie, 154 F.Sup.2d at 812; Kiernan v. Hermes Intern., 2009 WL 2707343 at 3.

Based on the fact that Plaintiff failed to serve Defendant The Estate of Arthur Zimmer, such that the Court could acquire personal jurisdiction over it, the Second Amended Complaint, as it relates to Defendant Estate of Arthur Zimmer, must be dismissed, for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2); Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50 (2d Cir. 2012).

## POINT II

### THE SECOND AMENDED COMPLAINT MUST BE DISMISSED AGAINST DEFENDANT THE ESTATE OF ARTHUR ZIMMER FOR FAILURE TO SERVE A PROPER NOTICE OF CLAIM AGAINST SAID DEFENDANT PRIOR TO COMMENCING THIS ACTION

Even if the Plaintiff properly effectuated service of process over the Defendant Estate of Arthur Zimmer, the Second Amended Complaint must be dismissed against this defendant nonetheless, for failure to properly bring an action against an estate under the relevant sections of the New York State Surrogate's Court Procedure Act. See, §§ 201(3), 1802, 1803; F.R.C.P. 12(b)(6).

Pursuant to § 201(3) of the Surrogate's Court Procedure Act ("SCPA"),

The[surrogate's] court shall continue to exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates and the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any action or proceeding, or between any party and any other person having any claim

or interest therein, over whom jurisdiction has been obtained as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires.

SCPA §201(3).

Pursuant to § 201(3) of the New York State Surrogate's Court Procedure Act ("SCPA"), New York State surrogate's courts retain exclusive jurisdiction over estate administration. Carvel v. Godley, 41 F.Supp.2d 476 (S.D.N.Y. 1999)(This Court understands that the Surrogate of Westchester County has "full and complete general jurisdiction in law and equity to administer justice in all matters relating to estates and the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any action or proceeding, or between any party and any other person having any claim or interest therein, over whom jurisdiction has been obtained as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires." New York Surrogate's Court Procedure Act § 201, ¶ 3.

"It has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." Paskowski v. Paskowski, 361 F. Supp. 981, 982 (E.D.N.Y. 1973).

Pursuant to SCPA § 1802

If any claim is not presented within 7 months from the date of issue of letters, the fiduciary shall not be chargeable for any assets or moneys that he may have paid in good faith in satisfaction of any lawful claims or of any legacies or distributions to the legatees or distributees of the decedent before such claim was presented. Such

7

7 month period shall begin on the date letters were first issued to any fiduciary, including a temporary administrator or a preliminary executor, and shall not be interrupted by any subsequent issue of letters, except that the time during which there is no fiduciary in office shall not be counted as part of such period.

SCPA § 1802.

Section 1802 requires that prior to the commencement of any lawsuit against an estate, a claimant must file notice of its claim "within seven months from the date of issue of letters"[2] to the estate fiduciary (i.e., the executor or administrator). Claims shall 1) be presented in writing; 2) contain a statement of the facts upon which it is based; 3) set forth the claimed amount; and 4) be either personally delivered to the fiduciary or mailed by certified mail, return receipt requested. See SCPA § 1803; See also, Pressman v. Estate of Steinvorth, 860 F.Supp 171 (S.D.N.Y. 1994) (New York common law rule states that estate executors and administrators cannot sue or be sued in the courts of New York without first obtaining ancillary letters of administration.); citing, Helme v. Buckelew, 229 N.Y. 363, 366, 128 N.E. 216 (1920); Haines v. Cook Electric Co., 53 Misc.2d 178, 178, 278 N.Y.S.2d 357, 358 (Sup.Ct.1967).

 If the creditor fails to file within that seven-month time-period, the fiduciary cannot be held liable for any assets paid in satisfaction of other lawful claims and/or distributions to estate beneficiaries in good faith SCPA § 1802.

If the creditor fails to file within that seven-month period, and the fiduciary had no actual or constructive knowledge of the claim, the creditor will have to pursue its claim against beneficiaries of the estate or other claimants, as the case may be, but cannot pursue any claims for damages against the estate itself (*see generally* NY EPTL 12-1.2 [beneficiaries' order of

---

[2] Letters testamentary/letters of administration give the estate fiduciary (executor/executrix or administrator/administratrix) the authority to distribute assets under the will or laws of intestacy (*see* SCPA §§ 1002, 1411).

liability]; SCPA § 1811 [claimants' priorities]).  The creditor's ability to recover against other parties would be subject to the statute of limitations governing the underlying claim.

In order to commence an action against a deceased person's estate, a claimant must first file a notice of claim on the fiduciary of the estate before filing a complaint in New York or federal courts.  In this case, Plaintiff's Second Amended Complaint fails to allege that a proper notice of claim was served on the fiduciary of the Estate of Arthur Zimmer within the statutory time-frame. SCPA § 1802. Thus, the Plaintiff's Second Amended Complaint must be dismissed as and against the Defendant Estate of Arthur Zimmer.

### POINT III

### THE PLAINTIFF'S UNLAWFUL PRE-TRIAL DETENTION CLAIM MUST BE DISMISSED AS THE PLAINTIFF IS TIME BARRED FROM BRINGING THIS CLAIM

A motion to dismiss on statute of limitations grounds, "generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), as opposed to under Rule 12(b)(1)." Courtney v. Colvin, No. 13 Civ. 2884(AJN)(JLC), 2013 WL 5652476, at *2, 2013 U.S. Dist. LEXIS 149675, at *6 (S.D.N.Y. Oct. 17, 2013). "The reason Rule 12(b)(6)  provides 'the most appropriate legal basis' for such a motion is 'because expiration of the statute of limitations presents an affirmative defense.' " Id. at *2, 2013 U.S. Dist. LEXIS 149675 at *7 (quoting Nghiem v. U.S. Dep't of Veterans Affairs, 451 F.Supp.2d 599, 602 (S.D.N.Y.2006)).

42 U.S.C. § 1983 permits individuals to bring a civil action for a deprivation of their constitutional rights.  The statute of limitations for claims arising under 42 U.S.C. §1983 is found in the "general or residual [state] statute [of limitations] for personal injury actions." Pearl v.

City of Long Beach, 296 F.3d 76, 80 [2d Cir. 2002]), which, in New York, is three years (CPLR § 214[5]); see also, Owens v. Okure, 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 . However, "federal law determines when a section 1983 cause of action accrues", and federal courts have held that a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Pearl, 269 F.3d at 80 [internal citations omitted]); quoting Bireline v. Seagondollar, 567 F.2d 260, 263 (4th Cir.1977)); see Pinaud v. County of Suffolk, 52 F.3d 1139, 1156 (2d Cir.1995).

A claim for unlawful pre-trial detention under the 4th Amendment addresses the constitutionality of the length of the pre-trial detention and whether it was excessive. United States v. Orena, 986 F.2d 628, 630 (2d Cir.1993). Absent an expressed intention to punish, whether detention constitutes impermissible punishment or permissible regulation turns on whether the government has a nonpunitive reason for detention and whether detention " 'appears excessive in relation to' " the nonpunitive purpose. Kennedy v. Mendoza–Martinez, 372 U.S. 144, 169, 83 S.Ct. 554, 568, 9 L.Ed.2d 644 (1963)).

To determine whether the length of pretrial detention has become constitutionally excessive, we must weigh three factors: "(i) the length of detention; (ii) the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence upon which the detention was based," United States v. Orena, 986 F.2d 628, 630 (2d Cir.1993); that is, the evidence concerning risk of flight and danger to the safety of any other person or the community. See id. (applying test to dangerousness); United States v. Ojeda Rios, 846 F.2d 167, 169 (2d Cir.1988) (per curiam) (applying test to risk of flight and dangerousness). Even in the case cited by the Plaintiff in support of this claim, Russo v. City of Bridgeport, the court focuses

10

on the length of time of the pre-trial detention and focuses its analysis on whether the 217 day detention was excessive. Russo v. City of Bridgeport, 479 F3d 196 (2d Cir. 2007).

Therefore, the Plaintiff's unlawful pre-trial detention claim accrued, at the very latest, on the last day before his trial in 1997. Thus, his claim expired under the statute of limitations sometime in 2000, approximately eighteen years before the first pleading was filed.  See Docket # 1.  Accordingly, Plaintiff's claim for unlawful pre-trial detention must be dismissed for it is time-barred. Russo v. City of Bridgeport, 479 F3d 196 (2d Cir. 2007); see also, United States v. Orena, 986 F.2d 628, 630 (2d Cir.1993); Owens v. Okure, 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 .

## POINT IV

### PLAINTIFF'S SECOND AMENDED COMPLAINT MUST BE DISMISSED AGAINST THE VILLAGE DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

The underlying purpose of a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) is to assess the legal sufficiency of a complaint.  Schieffelin & Co. v. Jack Co. of Boca, Inc., 725 F.Supp. 1314 (S.D.N.Y. 1989).  A defendant's motion to dismiss should be granted when the plaintiff cannot prove any set of facts in support of his or her claim which would entitle plaintiff to relief.  Siben v. American Airlines, 913 F.Supp. 271 (S.D.N.Y. 1996). Even affording the Plaintiff the benefit of presuming the truth of the factual allegations and inferences made by the Plaintiff, the Plaintiff in this case failed to properly set forth a legally sufficient claim in the Second Amended Complaint against the Village Defendants.

A plaintiff may not take refuge in this lenient standard, however, by offering formulaic recitations of the elements of a cause of action, or bare-blanket assertions that the defendant

"hurt" her.  A plaintiff must offer sufficient enough specific factual content to create "facial plausibility" to permit the court to reasonably infer that the defendant is liable for the conduct alleged.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009) (the sheer possibility of misconduct is insufficient); see also Bell Atlantic Corp. v. Twombley, 550 U.S.544, 554-56; 127 S.Ct. 1955, 1964-65 (2007).  Iqbal requires a plaintiff to go beyond conclusory allegations of harm, and state facts which, could support an inference of the misconduct alleged.  Plaintiff's Second Amended Complaint fails to meet this standard.

The entire Second Amended Complaint fails to identify a Village Defendant with whom the court can reasonably infer is liable for conduct which allegedly caused harm to the Plaintiff. The Second Amended Complaint names several individual police officers, lieutenants, and sergeants with whom Plaintiff alleges were liable for the alleged false conviction of Plaintiff. However, the Second Amended Complaint must be dismissed against the Village Defendants as each claim fails to particularize which defendants participated in or are liable for the alleged conduct described therein.

The only time Village Defendant Melendez is mentioned in the Second Amended Complaint is when Plaintiff alleges that Melendez canvassed the area where the shooting took place, and where Plaintiff alleges that Maurice Larrea revealed to Melendez and several other officers that he was intoxicated when he supposedly witnessed the shooting and drew his weapon. Comp. ¶ 35, 38. The Plaintiff makes the incredible assertion, in the Second Amended Complaint that because Larrea allegedly knew of Melendez, that Melendez and other officers "took steps" to make sure that Larrea, a NYPD police officer, was not penalized for drawing his gun while intoxicated. Compl. ¶ 41, 42. The steps allegedly taken by the defendants, including Melendez, are not articulated by the Plaintiff in the Second Amended Complaint.

The only time Arthur Zimmer is mentioned in the Second Amended Complaint is when the Plaintiff states that a recorded interview between Arthur Zimmer and Peddie Baldwin, vaguely alleging that this piece of evidence was "concealed," and failing to allege who concealed it. Compl., ¶ 50.

Plaintiff plainly fails to establish a causal connection between the acts or omissions of any of the Village Defendants, and the injury or damages to which he allegedly suffered. See Maddox v. Fowler, 2015 WL 4366222, at 7. As such, Plaintiff has failed to meet his burden and Plaintiff's complaint against the Village Defendants must be dismissed in its entirety.

**A.      The Second Amended Complaint Fails to State a Claim Under 42 U.S.C. § 1983 Because The Complaint Does Not Allege Personal Involvement By the Village Defendants**

Section 1983 imposes liability for "conduct which 'subjects or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." Maddox v. Fowler, 2015 WL 4366222, at 7 (N.D.N.Y. July 16, 2015) (citing Rizzo v. Goode, 423 U.S. 362, 370–71 (1976). Thus, "[n]ot only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained." Id. In order for a plaintiff to recover in a § 1983 action, "he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions." Id. (citing Brown v. Coughlin, 758 F.Supp. 876, 881 (S.D.N.Y. 1991).

Plaintiff's failure to specify *any* individual Village Defendant's role in his § 1983 claims is fatal to those claims as to the individual Village Defendants. DiPompo v. Ruggiero, 2018 WL 5045539 (S.D.N.Y. 2018);  See Myers v. Moore, 326 F.R.D. 50, 60 (S.D.N.Y. 2018) (dismissing complaint where it did "not plead facts demonstrating which officer is responsible" because

"Plaintiff engage[d] in group pleading, lumping the three defendants together without pleading facts demonstrating what each did that makes him liable").

The claim fails as to the Defendant The Incorporated Village of Freeport because Plaintiff's Second Amended Complaint does not even allege that the Incorporated Village of Freeport had "a municipal policy or custom," which is required "to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." JF v. Carmel Cent. Sch. Dist., 168 F. Supp. 3d 609, 616 (S.D.N.Y. 2016) (internal quotation marks omitted). And Plaintiff may not "predicate liability on a theory of *respondeat superior*, since that theory is unavailable for federal claims under Section 1983." Rodriguez v. City of N.Y., 649 F. Supp. 2d 301, 306 (S.D.N.Y. 2009) . Therefore, the § 1983 claims must also be dismissed as to The Incorporated Village of Freeport.

i.      *§ 1983 Conspiracy*

To establish a conspiracy pursuant to § 1983, the plaintiff must show an agreement between two state actors or between a state actor and a private entity to violate his constitutional rights and an overt act in furtherance of the conspiracy, resulting in an actual deprivation of a constitutional right. See Carson v. Lewis, 35 F.Supp.2d 250, 271 (E.D.N.Y. 1999) see, e.g., Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 131 (2d Cir.1997) (citing Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir.1996) (setting forth elements)).

In addition, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir.1993).

The Second Amended Complaint fails to articulate how the Village Defendants conspired with any actor or entity in any way to deprive Plaintiff of any right. Plaintiff's ninth cause of action must be dismissed against the Village Defendants.  Nothing in the Amended Complaint alleges or indicates whatsoever that there was a tacit agreement between parties to violate the Plaintiff's constitutional rights.

The Plaintiff alleges that the Zimmer-Baldwin interview proves the existence of a conspiracy between Freeport and Nassau, without any facts whatsoever to support this allegation. Compl. ¶ 174. The only statement made in the Second Amended Complaint with regard to the Zimmer-Baldwin interview is that, based on Plaintiff's interpretation, "Baldwin provides several leads that support plaintiff's innocence…" and "observed a perpetrator as a 5'8" Puerto Rican." Comp. ¶ 51. However, Baldwin never states that he saw the shooting during the interview. In fact, he states that he could not see who was in the car that he observed just prior to when he heard gunshots.  The Zimmer-Baldwin falls short of establishing an agreement between Nassau County and the Village of Freeport to violate his constitutional rights or an overt act in furtherance of said conspiracy. See Carson v. Lewis, 35 F.Supp.2d 250, 271 (E.D.N.Y. 1999) It is important to note that, during the interview, Arthur Zimmer states that he is not investigating this case and that Nassau County Detective Jerl Mullen is investigating the homicide of Steven Jason.

ii.    *Failure to Intervene*

Plaintiff fails to identify any conduct or any party to support this claim let alone to particularize conduct attributable to the Village Defendants. Further, regardless of the fact that the Village Defendants were not involved in the investigation and prosecution of this case, Plaintiff fails to allege that the Village of Freeport acted in any way without probable cause,

15

which is fatal to Plaintiff's claim for failure to intervene. Coleman v. City of New York, 2010 WL 571986, at 5 (S.D.N.Y. Feb. 2, 2010) (finding that where the force used resulted in only a "transitory and de minimis" injury, "there was no constitutional violation" and any claims against other officer defendants who "applied no force at all," and "could only be liable for failure to intervene when confronted with an unlawful application of force," were dismissed); Lucky v. City of New York, 2004 WL 2088557, at 7 (S.D.N.Y. Sept. 20, 2004) (finding that the claims for failure to intervene to prevent an arrest and to prevent excessive force failed where the arrest and prosecution was supported by probable cause, and the defendants were not present at the time of the alleged use of force), aff'd, Lucky v. City of New York, 140 Fed.Appx. 301 (2d Cir. 2005); Feinberg v. City of New York, 2004 WL 1824373, at 4 ("[S]ince [the d]efendants had probable cause to arrest and charge the [p]laintiff, [the d]efendants' motion for summary judgment on this claim [for failure to intercede] is granted.")

Accordingly, Plaintiff's tenth claim for failure to intervene must be dismissed against the Village Defendants.

iii.    *Evidence Suppression/Brady Violations/Spoliation & Denial of Access to Courts Claim*

To establish a claim that the defendants suppressed and withheld evidence in violation of *Brady*, a plaintiff must establish (1) evidence at issue must be favorable to accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. Ying Li v. City of New York, 246 F.Supp.3d 578 (E.D.N.Y 2017); Brady v. Maryland, 373 U.S. 83 (1963).

In this case, the Plaintiff, alleges that the defendants suppressed four items of evidence; 1) the Montes and Larrea statements; 2) the 911 call and associated records; 3) Swenson's memo

book and the Eliza Valdez information; and 4) the Zimmer-Baldwin interview. Compl. ¶ 181. It is respectfully submitted that, with the exception of the Montes and Larrea statements, none of the items above were in the possession of the Village Defendants, none were obtained by the Plaintiff from the Village Defendants, and that the all of which, other than the 911 call, were obtained by the Plaintiff by the County Defendants through discovery in this action.

Once again, Plaintiff's tenth claim is subject to dismissal for lumping all defendants together and failure to particularize which defendants Plaintiff is alleging deliberately suppressed which evidence. See Myers v. Moore, 326 F.R.D. 50, 60 (S.D.N.Y. 2018). Plaintiff fails to even allege that any of the Village Defendants suppressed evidence.

As discussed more fully below, the Village of Freeport, the Freeport Police Department, and the individual Village Defendants are not the prosecuting entity, or the "state" within the meaning of a Brady violation. Furthermore, the Plaintiff fails to allege that the Village Defendants failed to turn over any evidence whatsoever to the Nassau County District Attorney's Office.

iv.     *The Unlawful Pre-Trial Detention Claim*

The Plaintiff's claim for unlawful pre-trial detention should be dismissed, as the statute of limitations to bring such a claim has long since expired. See, supra, Point I. However, even if this claim was not time barred, the Complaint fails to state any facts to establish a causal connection between an allegation that Plaintiff's pre-trial detention was excessively long.  Kennedy v. Mendoza–Martinez, 372 U.S. 144, 169, 83 S.Ct. 554, 568, 9 L.Ed.2d 644 (1963)).

Absent an expressed intention to punish, whether detention constitutes impermissible punishment or permissible regulation turns on whether the government has a nonpunitive reason for detention and whether detention " 'appears excessive in relation to' " the nonpunitive

purpose. <u>Kennedy v. Mendoza–Martinez</u>, 372 U.S. 144, 169, 83 S.Ct. 554, 568, 9 L.Ed.2d 644 (1963)).

To determine whether the length of pretrial detention has become constitutionally excessive, we must weigh three factors: "(i) the length of detention; (ii) the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence upon which the detention was based," <u>United States v. Orena</u>, 986 F.2d 628, 630 (2d Cir.1993); that is, the evidence concerning risk of flight and danger to the safety of any other person or the community. See <u>id</u>. (applying test to dangerousness); <u>United States v. Ojeda Rios</u>, 846 F.2d 167, 169 (2d Cir.1988) (per curiam) (applying test to risk of flight and dangerousness). In the case cited by the Plaintiff in support of this claim, <u>Russo v. City of Bridgeport</u>, the court focuses on the length of time of the pre-trial detention and focuses its analysis on whether the 217 day detention was excessive. <u>Russo v. City of Bridgeport</u>, 479 F3d 196 (2d Cir. 2007).

In this case, the Second Amended Complaint fails to allege that the that the length of the Plaintiff's pre-trial detention was excessively long. In fact, nowhere in the Second Amended Complaint does the Plaintiff even state how long he was incarcerated prior to the homicide trial. Accordingly, the Plaintiff's eleventh claim must be dismissed for failure to state a claim pursuant to F.R.C.P. 12(b)(6).

**B.    The *Monell* Custom and Policy and Failure to Supervise Claim Must Be Dismissed Against The Village Defendants For Failure to State a Claim**

Under *Monell*, "where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." <u>Monell v. Dep't of Soc. Serv. of City of New York</u>, 436 U.S. 658, 690, 98 S.Ct. 2018 (1978); accord <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 124-25 (2d Cir. 2004). Thus, to prevail on a *Monell* claim, a plaintiff must show

"(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008).

A municipality cannot be held liable on the basis of *respondeat superior*. Monell, 436 U.S. at 693-94, 98 S.Ct. 2018; accord Roe, 542 F.3d at 36; Plair v. City of New York, 789 F.Supp.2d 459, 468 (S.D.N.Y. 2011). Rather, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Thus, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Okla. City v. Tuttle, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985),  789 F.Supp.2d at 470 ("[I]t is well established that a single incident does not give rise to an unlawful practice by subordinate officials so permanent and well-settled as to constitute custom or usage.") (internal quotation marks and citation omitted) (citing cases). Berg v. Kelly, 343 F. Supp. 3d 419, 424–25, 2018 WL 6252383 (S.D.N.Y. 2018).

Whichever theory Plaintiffs offer, "boilerplate assertions of municipal policy are insufficient to state a claim for *Monell* liability." Monell at 654; see also, Bishop v. City of New York, 2016 WL 4484245, at 4 (S.D.N.Y. 2016); see also Dwares v. City of New York, 985 F.2d 94, 100 (2d Cr. 1993). Facts supporting the policy's existence must be pled. Dwares, 985 F.2d at 100, 344 F. Supp. 3d 644, 653–54, 2018 WL 4757946 (S.D.N.Y. 2018).

All of the factual allegations regarding a *Monell* policy or custom claim are against the County Defendants. Paragraphs 76 through 88 of the Second Amended Complaint, which

allegedly sets forth similar allegations of misconduct as alleged in this case, contain allegations of police falsifications against the County of Nassau and specific County Defendants named in this litigation. In fact, the Second Amended Complaint fails to make any factual allegations that the Plaintiff was convicted pursuant to any municipal policy of the Village Defendants whatsoever.

In the section of the Second Amended Complaint entitled, "Nassau County and Freeport's Unconstitutional Policies," Plaintiff makes only vague and conclusory statements alleging a "custom, policy, pattern or practice" followed by The Incorporated Village of Freeport "beginning years before the unjust conviction of Mr. Jackson and continuing throughout his incarceration…" See Amended Complaint, ¶ 116. Plaintiff's allegation that "Upon information and belief, Nassau County and Freeport, through their final policymakers, failed to adequately screen, supervise, and/or discipline detectives, officers, and investigators," without any facts to support such claims, fails to carry its burden in making a claim under *Monell* policy or customs. See Amended Complaint, ¶ 118. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); City of Okla. City v. Tuttle, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); Dwares v. City of New York, 985 F.2d 94, 100 (2d Cr. 1993). Nowhere in Plaintiff's Second Amended Complaint does he particularize an allegation that the Village Defendants engaged in conduct that violated the Plaintiff's constitutional rights.

**D.    Plaintiff's State Law Claims Fail to State a Claim As And Against The Village Defendants**

   *i.    False Imprisonment*

In order to state a claim for false imprisonment in New York, a Plaintiff must demonstrate that: (1) the defendant intentionally confined the plaintiff; (2) plaintiff was aware of

such confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. Smith v. City of New York, 388 F.Supp.2d 179, 184 (S.D.N.Y. 2005); see also Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007). A confinement is privileged where probable cause existed to make the arrest. See Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003).

The Seventh Claim of the Second Amended Complaint must be dismissed against the Village Defendants, as the Plaintiff fails to connect any allegations of false imprisonment to the Village Defendants. The Seventh Claim vaguely alleges that "Defendants intended to confine Mr. Jackson, and, lacking probable cause or any other privilege, curtailed his liberty by arresting him and taking steps to ensure he was imprisoned on the basis of false evidence and without legal justification." See Amended Complaint, ¶ 164. Nowhere in the Second Amended Complaint does the Plaintiff particularize which defendants these allegations lie, what specific factual conduct is referred to, what "steps" the Defendants allegedly took, or what "false evidence" Plaintiff is referring to.

The burden of establishing a lack of probable cause rests with a plaintiff. See Aretakis v. Durivage, 2009 WL 249781, at 8 (N.D.N.Y. 2009) ("It should not elude us that the burden of establishing lack of probable cause rests with [Plaintiff]."). Thus, conclusory, improper allegations that the Defendants lacked probable cause are not sufficient to defeat a motion to dismiss. Johnson ex rel. Johnson v. Cty. of Nassau, No. 09-CV-4746 JS MLO, 2010 WL 3852032, at 2 (E.D.N.Y. Sept. 27, 2010).

Plaintiff's claims related to false imprisonment should otherwise be dismissed in their entirety because Plaintiff does not meet his burden of adequately pleading a lack of probable cause and the Village Defendants.

ii.     *Intentional Infliction of Emotional Distress*

The Eighth Claim fails to state a claim sounding in intentional infliction or negligent infliction of emotional distress. "The elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress" Brunache v. MV Tansp., Inc, 151 AD3d 1011 (2d Dept 2017); see, (Klein v. Metropolitan Child Servs., Inc., 100 A.D.3d 708, 710, 954 N.Y.S.2d 559 (2012).

Plaintiff fails to allege conduct specifically attributable to the Village Defendants which was not so outrageous or extreme as to support an intentional infliction of emotional distress cause of action. Murphy v. American Home Prods. Corp., 58 N.Y.S.2d 293, 298–303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983); Petkewicz v. Dutchess County Dept. of Community & Family Servs., 137 A.D.3d 990, 990, 27 N.Y.S.3d 264 (2016);  Borawski v. Abulafia, 117 A.D.3d 662, 664, 985 N.Y.S.2d 284 (2014).

Further, Plaintiff fails to identify with particularity any conduct by the Village Defendants which would constitute a breach of a duty owed to Plaintiff which unreasonably endangered his physical safety, or caused him to fear for his own safety, which is required for a showing of negligent infliction of emotional distress.  Sacino v. Warwick Valley Cent. School Dist., 138 AD 3d 717 (2d Dept. 2016). (see Taggart v. Costabile, 131 A.D.3d 243, 253, 14 N.Y.S.3d 388 (2015); Santana v. Leith, 117 A.D.3d 711, 712, 985 N.Y.S.2d 147 (2014); Schultes v. Kane, 50 A.D.3d 1277, 1278, 856 N.Y.S.2d 684 (2008).

iii.     *State Law Malicious Prosecution*

The Sixth Claim for state law malicious prosecution should be dismissed against the Village Defendants, as the Second Amended Complaint fails to make any factual allegations

against the Village Defendants to support a plausible claim that the Village Defendants are liable for the malicious prosecution.  The only specific factual allegation made in the Second Amended Complaint with respect to the Sixth Claim is the allegation that the "defendant officers intentionally withheld from and misrepresented to prosecutors facts vitiating probable cause against Mr. Jackson, including, inter alia, the Larrea and Montes statements." See Amended Complaint, ¶ 159. However, the Larrea and Montes statements were taken by defendant Holland and defendant Herts, both of whom are County Defendants. See Second Amended Complaint, ¶ 39 and Plaintiff's Exhibits 21 and 22.

## POINT V

**THE FOURTH CLAIM FOR MALICIOUS PROSECUTION SHOULD BE DISMISSED AS FREEPORT DID NOT PROSECUTE THIS CASE**

The elements of a malicious prosecution claim, under New York law, require a plaintiff to establish that: (1) the defendant initiated a prosecution against the plaintiff; (2) without probable cause to believe the proceeding can succeed; (3) the proceeding was begun with malice; and (4) the matter terminated in plaintiff's favor. 42 U.S.C. § 1983.  McDonough v. Smith, 898 F.3d 259, 2018 WL 3672942 (2d Cir. 2018), cert. granted, 139 S. Ct. 915, 202 L. Ed. 2d 641, 2019 WL 166879 (2019).

The Plaintiff cannot meet his burden in establishing a plausible claim against any of the Village Defendants for state law malicious prosecution, as the Village Defendants cannot be said to have initiated the prosecution of Plaintiff, let alone with malice. Assuming arguendo, that all of the factual allegations contained in the Amended Complaint are true, the Plaintiff makes no allegations that any Village Defendants initiated the prosecution of Plaintiff for the crimes he was ultimately convicted of. Such an allegation would fail, as any involvement by the Freeport

Police Department in this case would be the result of following directives of the Nassau County

Homicide Squad and would be connected with the investigation only. As stated in the Affidavit

of Assistant Chief of Police, Raymond Horton the prosecution of a homicide in Nassau County is

investigated and otherwise handled by the Nassau County Police Department's Homicide Squad

("Homicide Squad"). In fact, in the case at bar the County Defendants commanded and

controlled the investigation, arrest and prosecution of the Plaintiff.  See Affidavit of Raymond

Horton.

Plaintiff fails to set forth any facts to support a claim that the Village Defendants

prosecuted Plaintiff with actual malice and failure to do so is fatal to his claim. Accordingly,

the first and fourth claims in the Second Amended Complaint for state law malicious prosecution

must be dismissed against the Village Defendants. McDonough v. Smith, 898 F.3d 259, 2018

WL 3672942 (2d Cir. 2018), cert. granted, 139 S. Ct. 915, 202 L. Ed. 2d 641, 2019 WL 166879

(2019).

## POINT VI

### VILLAGE DEFENDANTS ARE ENTITLED TO QUALIFIED
### IMMUNITY FROM PLAINTIFF'S DAMAGES CLAIMS

Qualified immunity protects government officials from civil liability in the performance

of their discretionary functions so long as "their actions could reasonably have been thought

consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S.

635, 638 (1987). Qualified immunity from suit is an immunity "that should be decided as early

as can be." Kinzer v. Jackson, 316 F.3d 139, 145 (2d Cir. 2003) (citing Hunter v. Bryant, 502

U.S. 224, 228 (1991). Once qualified immunity is pleaded, "plaintiff's complaint will be

dismissed unless defendant's alleged conduct, when committed, violated 'clearly established

statutory or constitutional rights of which a reasonable person would have known.'" Williams v. Smith, 781 F.2d 319, 322 (2d Cir. 1986).

"Under federal law, a police officer is entitled to qualified immunity where "(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." Cerrone v. Brown, 246 F.3d 194, 199 (2d Cir. 2001). The officer's determination "is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" Lennon v. Miller, 66 F.3d 416, 423–24 (2d Cir. 1995).

The Second Circuit has established that one does have the right to be free from arrest without probable cause, and such right is clearly established. Id. "Probable cause to arrest exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." Dzwonczyk v. Syracuse City Police Dept., 710 F. Supp. 2d 248 at 264 (N.D.N.Y. 2008) (quoting United States v. Valentine, 539 F.3d 88, 93 (2d Cir. 2008).

Because the Second Amended Complaint fails to refute the presumption that the Village Defendants acted in an objectively reasonable manner in its role in securing the lawful arrest of Plaintff, Village Defendants—as government officials performing discretionary duties—are shielded from liability for civil damages. See, Savino v. City of New York, 331 F.3d 63, 75–76 (2d Cir. 2003) (citing Mandell v. Cty. of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003) ("Under the doctrine of qualified immunity, a government official performing discretionary functions is

shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights.").

## CONCLUSION

For the foregoing reasons, the Village Defendants respectfully request that this Court dismiss Plaintiff's Second Amended Complaint in its entirety, together with such other relief as this Court deems just, proper and equitable.


Dated:        Uniondale, New York
              April 17, 2020


                                          HARRIS BEACH PLLC
                                          *Attorneys for the Village Defendants*

                                          s/ *Keith M. Corbett*
                                          Keith M. Corbett, Esq.
                                          Stephanie L. Tanzi, Esq.
                                          The OMNI
                                          333 Earle Ovington Blvd., Suite 901
                                          Uniondale, New York 11553
                                          (516) 880-8484