

Lalit K. Loomba, Esq.
Direct dial: (914) 872-7118
lalit.loomba@wilsonelser.com

May 13, 2020

**By ECF**

Hon. Kathleen A. Tomlinson
United States Magistrate Judge
United States District Court
 for the Eastern District of New York
Alfonse M. D'Amato Federal Building
100 Federal Plaza
Central Islip, NY 11722

Re:   *Joseph Jackson v. Nassau County et al.,* Docket No. 18-cv-3007 (JS) (AKT)
      Our File No.: 12473.00014

Dear Judge Tomlinson:

Wilson Elser represents the County Defendants in the referenced action. We are writing in response to Plaintiff's Rule 37.1 letter motion dated April 6, 2020 (D.E. 281).

### I.   Response to Rule 37(b)(2)(A) Motion

1. Disciplinary Records

   The County Defendants are following up to ensure that all available disciplinary records have been produced with respect to the individual County Defendants. Efforts in this regard have been complicated by the coronavirus emergency, but the County is proceeding as quickly as possible.

2. Photos

   The County Defendants are following up to obtain present-day photographs of the Homicide Squad Interview Room and Polygraph Room used in the Jackson case in 1994. Again, efforts to obtain these photos have been complicated by the coronavirus emergency, but the County is proceeding as quickly as possible.

3. Stationhouse Logbooks

   Plaintiff clarified that he is looking for the logbook that records attendance at the NCPD Homicide Squad. This document is known as the Homicide Squad "Blotter." The

1133 Westchester Avenue • White Plains, NY 10604 • p 914.323.7000 • f 914.323.7001

Albany • Baltimore • Boston • Chicago • Connecticut • Dallas • Denver • Garden City • Houston • Kentucky • Las Vegas • London • Los Angeles • Miami
Milwaukee • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Virginia • Washington, DC • West Palm Beach • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Munich • Paris

wilsonelser.com

8267697v.1

County Defendants have already produced Homicide Squad Blotters for the relevant dates: November 15, 16, 17, 18, 19 and 20 (County Bate Nos. 1595-1620) and December 17, 18, 19, 20 (County Nos. 1621-1634).

## II.     Response to Rule 37.1 Motion

1. Index Sheet and Lead Sheet

   Plaintiff is seeking the index sheet (a document listing the contents) for the homicide file in the Steven Jason homicide investigation. After a diligent search, it appears that no such document was prepared for the Steven Jason homicide investigation.

2. Peddie Jenkins Video Statement with Intelligible Audio

   Plaintiff is seeking a copy of the video taken of a November 18, 1994 interview of Peddie Jenkins, who was a witness to the underlying shooting of Steven Jason. The County Defendants are continuing efforts to locate a copy of this video.

3. Polygraph Records for Tyrone Isaac, Roy Isaac, Peddie Jenkins, and Takita Dorsey

   Plaintiff is seeking polygraph records for Tyrone Isaac, Roy Isaac, Peddie Jenkins and Takita Dorsey in connection with the Steven Jason homicide investigation. All such records have been produced. *See* Tyrone Isaac (Trial Exs. 88, Bates: 2269-2270); Roy Isaac (Trial Ex. 92, Bates: 2271-2272); Peddie Jenkins (Trial Ex. 93, Bates: 2273-2274); Takita Dorsey (Bates: 5029-5037).

4. Spiral Notebooks

   Plaintiff is seeking production of the pages from the memo books for Det. Holland, Det. Herts and Det. Mullen that pertain to the Steven Jason homicide investigation. To the extent such documents exist, they are contained within the homicide file already produced. *See, e.g.,* County Bate Nos. 3113-3128 (Det. Mullen); 787-796 (Det. Herts).

5. Interrogatory Re Identifying Handwriting

   Plaintiff demands that the individual defendants review the 1,925 handwritten documents identified by plaintiff in Interrogatory No. 1 and make an effort to identify the handwriting on each page. The County Defendants objected on the basis of burdensomeness, and have suggested that plaintiff can get this same information at depositions. We already conferred with plaintiff's counsel and noted that some of the documents are clearly attributable to specific defendants, and that plaintiff could also break down documents into specific groups; *i.e.,* groups of documents written in the same hand. Plaintiff did not do that. Nor has plaintiff to date offered any explanation of why, beyond mere curiosity, he needs to know the author of particular handwriting on over 1,900 documents. Without such an explanation, the County Defendants believe forcing

Hon. Kathleen Tomlinson
May 13, 2020
Page 3

each individual defendant to review the thousands of pages of documents and to sign a sworn interrogatory response with respect to each would be unduly burdensome. To the extent there is a good faith basis to know who authored a particular handwritten note, the author(s) can be determined most efficiently at depositions.

6. <u>Written Confirmation of Absence of Records</u>

Plaintiff is seeking production of a copy of a subpoena for production of payphone records and any response (as reflected at County Bate No. 2698); (ii) a photo-pack (as referenced at County Bate Nos. 2648); and (iii) a better copy of County Bate No. 2650. After a diligent search, it appears that a subpoena for payphone records was not prepared or issued; the photo-pack referenced in 2648 was not created; and the best copy of 2650 has already been produced.

7. <u>Dispute Over Confidential Designations and Redactions</u>

A. <u>Confidential Designations</u>

The parties have entered into a confidentiality stipulation which was "so ordered" (D.E. 267), and pursuant thereto, the County Defendants marked certain documents "confidential." Plaintiff is challenging the "confidential" designation with respect to certain of these: County Bate Nos.: 683-2278, 2291-2719, 4354-55, 4357-4359, 4360, 4362-65, 4387, 4389-4390, 4393, 4489, 4491, 4492, 4495, 4497, 4499, 4504-05, 4507, 4509, 4511, 4631-6508. However, under Section 8 of the Confidentiality Stipulation and Order (D.E. 267), plaintiff has an initial burden of providing a "brief statement setting forth the basis for [his] objection." Plaintiff has not met that burden. The email from Plaintiff's counsel objecting to the designations merely states "there is no good cause to designate this material confidential." D.E. 281-10. That is not a good faith basis, it is a conclusion.

Moreover, the documents marked County 683-2278 are exhibits and other documents directly related to plaintiff's underlying criminal trial, and the documents marked County 2291-2719 and 4631-6508 constitute police investigation documents and documents consisting the homicide squad investigation file for the Steven Jason murder. When plaintiff's judgment of conviction was vacated and the indictment dismissed, all of these records became confidential and sealed pursuant to NYCPL 160.50(1)(c). Mr. Jackson authorized only a limited unsealing of these records for the County of Nassau, not to the public generally. His release, a copy of which is attached hereto, states: "These records may be unsealed solely for the purpose of the within notice of claim and *the information will remain confidential between all parties*." (emphasis added). Furthermore, Mr. Jackson, and his attorneys, are already in possession of the documents and can use them in connection with this action according to the terms of the So-Ordered confidentiality stipulation. Accordingly, we believe there is good cause for marking these documents confidential.

Hon. Kathleen Tomlinson
May 13, 2020
Page 4

   Likewise, the documents marked County 4354-4355, 4357-4359, 4360, 4362-4365, 4387, 4389-4390, 4393, 4489, 4491-4492, 4495, 4497, 4499, 4504-4505, 4507, 4509 and 4511 are all part of the Nassau County Police Department file on Indictment No. 91134, which is a narcotics case brought against plaintiff. With the exception of 4360 (a sketch map), as to which the County Defendants agree to remove the confidentiality designation, these documents contain witness names and other contact information. Plaintiff has this information and is at liberty to pursue any and all investigative leads. There is no reason why such information should be disclosed to the general public. Accordingly, we believe there is good cause for designating these documents confidential.

   B. <u>Redaction of Personal Information</u>

In addition to marking certain documents confidential, the County Defendants also redacted certain personal information from documents contained in the Homicide Squad investigation file. This information includes suspect photographs, rap sheets issued by the NYS Division of Criminal Justice Services, and witness and victim information, concerning allegations of criminal activity concerning persons with no confirmed connection with the Steven Jason homicide. *See* 4750-4752, 4759-4763, 4767-4772, 5110-5123, 5124-5133, 5136-5140, 5141-5163, 5164-5177, 5193-5208, 5213-5223, 5392-5422, 5739-5742, 5745-5790, 5908-5957 (rap sheet only), 5965-5991, 5992-6003, 6004-6032, 6082-6121 (rap sheet only), 6167-6269, 6450-6460, 6474-6485. This sensitive information has no relevance to plaintiff's claims and, the County Defendants respectfully submit, should be redacted from disclosure.

8. <u>Dispute Over Privilege Log</u>

   The County Defendants have properly withheld documents on the basis of work-product doctrine. Resolving a nearly identical discovery issue in the wrongful conviction case *Tankleff v. County of Suffolk,* 2011 WL 5884218 (E.D.N.Y. Nov. 22, 2011), Judge Seybert held that documents created by an investigation into Tankleff's conviction by the Office of the Attorney General (OAG) were protected by attorney work product. Judge Seybert agreed that such documents were "created 'in anticipation of litigation,'" *id.* at *3, and rejected plaintiff's argument that work product did not apply because the OAG was merely deciding whether to re-try plaintiff. *Id.* at *4. The court held that "the OAG documents created before it moved to dismiss Plaintiff's indictments qualify for work production protection" because they "were prepared while the OAG was still contemplating whether and how to prosecute Plaintiff and before a final decision was made not to press its case forward." *Id.*

   Here, the documents withheld by the County Defendants on grounds of privilege were prepared by Nassau County Assistant District Attorney Sheryl Anania and the other Conviction Integrity Unit attorneys during the fall of 2017, at a time when the CIU was investigating Mr. Jackson's case. Accordingly, as in *Tankleff,* these documents are protected by the work product doctrine.

8267697v.1

Plaintiff argues that even if these documents are protected attorney work product, he has a substantial need for the re-investigation records because, as plaintiff speculates, they might reveal the true perpetrator. Appeal to sheer speculation should not sufficient to secure *in camera* review of the documents withheld on privilege grounds. In fact, it can be noted that the District Attorney's office has not sought to indict anyone else in the murder of Steven Jason, which is strong evidence of the fact that the re-investigation by the CIU did not shed any additional light on the identity of the perpetrator of Mr. Jason's murder.

Plaintiff also argues that he should be entitled to extract factual portions from document withheld on attorney-work product grounds, specifically citing notes of interviews with witnesses such as Maurice Larrea, Skwanitra Witherspoon, Peddie Jenkins and Roy Isaacs, Jr. This argument fails because it is impossible to parse an attorney's thought processes from the record of a witness interview. *See Securities Exchange Comm. v. Nadel,* 2012 WL 1268297, at *7-8 (E.D.N.Y. April 16, 2012) ("'This court agrees that an attorney's mental processes are revealed to a certain extent even when the attorney's memorandum is factual in nature, merely summarizing what the witness said in response to the attorney's questions. The attorney exercises judgment in determining which witnesses to interview, what subject areas to cover (and not cover), how to frame specific questions and in what order, and how much time to devote to particular topics'") (internal citation omitted). Moreover, "[a] party seeking to compel disclosure of interview notes must, at a minimum, show that the interviewees are not available for questioning." *Id.* at *2. Here, plaintiff cannot demonstrate that Montes, Larrea or any of the other witnesses interviewed by the CIU during the fall of 2017 are not available for questioning directly by his team. Indeed, plaintiff has already deposed Messrs. Montes and Larrea.

### III. Response to Disputes Outside of Discovery

1. <u>Service on Dora Mullen, as Administrator of the Estate of Jerl Mullen</u>

The County Defendants have specifically objected to the sufficiency of service of process on Dora Mullen, as the Administrator of the Estate of Jerl Mullen, and moved to dismiss the second-amended complaint against Ms. Mullen, as Administrator, on grounds that she was discharged as the personal representative of the estate in May 2016, nearly two years before this action was commenced. *See* D.E. 290, at pp.31-33. That issue is currently before the District Court on the County Defendants' motion, *id.,* with plaintiff's opposition due June 18, and the County Defendants' reply due June 1, 2020.

Citing Fed. R. Civ. P. 5(b), plaintiff argues that the filing of notices of appearance for Dora Mullen, as Administrator of the Estate of Jerl Mullen (D.E. 259-261), should allow plaintiff to serve the second-amended complaint on counsel. This argument fails because, by its plain terms, Rule 5(b) only addresses "service under this rule," and Rule 5(a)(1)(B), only addresses pleadings "filed *after* the original complaint." (emphasis added). *See Cruz v. St. Barnabas Hosp.,* 2017 U.S. Dist. LEXIS 107230, at *2 (S.D.N.Y. July 7, 2017). Ms. Mullen, as Administrator of the Estate of Jerl Mullen, was not a

named party in either the original or the first amended complaint; she was named as a defendant for the first time in the second-amended complaint. The case cited by plaintiff, *Simons v. United States,* 2020 U.S. Dist. LEXIS 29070 (S.D.N.Y. Feb. 18, 2020), is inapplicable because the document as to which a service issue was raised was a court order.

Accordingly, service on Ms. Mullen, in her capacity as Administrator of the Estate of Jerl Mullen, pursuant to Rule 5(b) is inappropriate, and service under any manner authorized by Rule 4 would be invalid given Ms. Mullen's discharge as Administrator prior to the commencement of this action.

2. *Dunton* Hearing

Plaintiff indicates that he intends to seek a *Dunton* hearing, but then states that the issue is not yet ripe. The County Defendants see no basis for a hearing, but, subject to the Court's ruling, will await an application by the Plaintiff before responding.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Lalit K. Loomba

Cc: Counsel of Record (via ECF)

8267697v.1

## AUTHORIZATION TO UNSEAL RECORDS

State of New York    )
                     ss.:
County of Nassau     )

JOSEPH JACKSON, Plaintiff, being duly sworn, deposes and says:

I hereby grant the Nassau County Attorney's Office the right to unseal and secure copies of all records, excluding privileged and confidential documents in the custody of the Nassau County Police Department, the Nassau County District Attorney's Office, the Nassau County Correctional Center, and the District Court of Nassau County concerning my arrest records of December 17, 1994 which is the basis of the within notice of claim, all of which may have been sealed pursuant to Criminal Procedure Law Sections 160.50 and 160.55. These records may be unsealed solely for the purpose of the within notice of claim and the information will remain confidential between all parties.

_____
JOSEPH JACKSON

Sworn to before me this 17th day of August, 2018

_____
Notary Public

GABRIEL HARVIS
NOTARY
NO. 02HA619800
QUALIFIED IN
NEW YORK COUNTY
COMM. EXP.
11/17/2018
STATE OF NEW YORK
PUBLIC