UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSEPH JACKSON,

Plaintiff,

-against-

NASSAU COUNTY; THE INCORPORATED VILLAGE OF FREEPORT; DETECTIVE ROBERT DEMPSEY; DETECTIVE GARY ABBONDANDELO; DETECTIVE JOHN M. HOLLAND; DETECTIVE MICHAEL HERTS; DETECTIVE MARTIN ALGER; POLICE OFFICER ROBERT MELENDEZ; DETECTIVE WALTER SWENSON; DETECTIVE ANTHONY KOSIER; DETECTIVE SERGEANT DAN SEVERIN; DORA MULLEN, AS ADMINISTRATOR OF THE ESTATE OF JERL MULLEN; JANE DOE, AS ADMINISTRATOR OF THE ESTATE OF ARTHUR ZIMMER; and JOHN and JANE DOE 1 through 20,

Defendants.

18 CV 3007 (JS) (AKT)

Oral Argument Requested

Plaintiff's Memorandum of Law in Opposition to the Freeport Defendants' Motion to Dismiss

Elefterakis, Elefterakis & Panek
80 Pine Street, 38th Floor
New York, New York 10005

May 18, 2020

<u>Table of Contents</u>

Table of Authorities ................................................................................................ i

Introduction .......................................................................................................... 1

Governing Standard ............................................................................................. 1

Argument ............................................................................................................... 2

    Point I

    The Jurisdictional Arguments are Meritless ................................................ 2

        A.    Plaintiff's Ninety-Day Window to Move for Substitution has not yet Opened ................................................................................................ 2

        B.    There is No Notice of Claim Requirement for § 1983 Actions ..................... 5

    Point II

    The 12(b)(6) Arguments Fail ....................................................................... 6

        A.    Unlawful Pre-Trial Detention ................................................................. 7

        B.    Conspiracy ........................................................................................... 11

        C.    Failure to Intervene ............................................................................. 14

        D.    Fair Trial ............................................................................................. 15

        E.    *Monell* ................................................................................................. 16

        F.    False Imprisonment ............................................................................. 17

        G.    Infliction of Emotional Distress ........................................................... 18

        H.    Malicious Prosecution .......................................................................... 19

    Point III

    Qualified Immunity does not Apply .......................................................... 19

Conclusion ........................................................................................................... 22

Table of Authorities

Cases

*Ahern v. Neve,* 285 F.Supp.2d 317 (E.D.N.Y. 2003) ............................................................5

*Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012) ..............................1

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010).................................................1

*Baker v. McCollan*, 446 U.S. 137 (1979) ...........................................................................10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................1

*Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019)................................................12

*Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008) ...........................................................20

*Brady v. Maryland*, 373 U.S. 83 (1963) .............................................................................12

*Brandon v. City of New York*, 705 F.Supp.2d 261 (S.D.N.Y. 2010) ....................................9

*Brown v. Sprint Corp. Sec. Specialist*, 17 CV 2561 (JS) (ARL), 2019 WL 418100
    (E.D.N.Y. Jan. 31, 2019) ...............................................................................................6

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)............................................1

*Crichlow v. Fischer*, 12 CV 7774 (NSR), 2015 WL 678725 (S.D.N.Y. Feb. 17, 2015) .........3

*Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340 (2d Cir. 1998) ................................21

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001)...........................................................21

*Droz v. McCadden*, 580 F.3d 106 (2d Cir. 2009) ...............................................................21

*Escalera v. Lunn*, 361 F.3d 737 (2d Cir. 2004) .................................................................21

*Goldstein v. Pataki*, 516 F.3d 50 (2d Cir. 2008)..................................................................1

*Grant v. Witherspoon*, 19 CV 2460 (PGG) (BCM), 2020 WL 71052 (S.D.N.Y. Jan.
    3, 2020) ..........................................................................................................................2

*Guerrero v. City of New York*, 16 CV 516 (JPO), 2017 WL 2271467 (S.D.N.Y. May
    23, 2017) .......................................................................................................................14

*Hagans v. Nassau Cty. Police Dep't*, 18 CV 1918 (JS) (AYS), 2020 WL 1289529
    (E.D.N.Y. Mar. 18, 2020) ..............................................................................................7

*Hardy v. Kaszycki & Sons Contractors, Inc.*, 842 F. Supp. 713 (S.D.N.Y. 1993) ....................3

*Hayes v. Sweeney*, 961 F. Supp. 467 (W.D.N.Y. 1997) ....................................................20

*Hincapie v. City of New York*, 18 CV 3432 (PAC) (RWL), 2020 WL 362705
    (S.D.N.Y. Jan. 22, 2020) ..............................................................................................18

*Horvath v. Daniel*, 04 CV 9207 (WCC), 2006 WL 47683 (S.D.N.Y. Jan. 9, 2006)............5

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963) ...........................................................10

*Kogut v. Cty. of Nassau*, 06 CV 6695 (JS) (WDW), 2009 WL 5033937 (E.D.N.Y. Dec. 11, 2009) .........................................................................................................17

*Kreutzberg v. County of Suffolk*, 04 CV 3835 (JS) (WDW), 2006 WL 3370351 (E.D.N.Y. Nov. 20, 2006) ...................................................................................5

*Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004) .........................................................20, 22

*McDonough v. Smith*, 139 S. Ct. 2149 (2019) ...............................................................7, 8

*McKenna v. Wright,* 386 F.3d 432 (2d Cir. 2004) ..............................................................19

*McLennon v. New York City*, 13 CV 128 (KAM) (SMG), 2015 WL 1475819 (E.D.N.Y. Mar. 31, 2015) ..........................................................................19

*Natale v. Country Ford Ltd.*, 287 F.R.D. 135 (E.D.N.Y. 2012)...........................................3

*Newton v. City of New York*, 566 F. Supp. 2d 256 (S.D.N.Y. 2008) ..................................18

*Pearl v. City of Long Beach*, 296 F.3d 76 (2d Cir. 2002)....................................................8

*Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009)............................................................9

*Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995)...................................................8

*Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014)................................................8

*Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123 (2d Cir. 1997) ...................................10

*Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007).......................................6, 7, 10, 11

*Smith v. Planas*, 151 F.R.D. 547 (S.D.N.Y. 1993)..............................................................3

*Tankleff v. Cty. of Suffolk*, 09 CV 1207 (JS) (AYS), 2017 WL 2729084 (E.D.N.Y. June 23, 2017) ........................................................................................22

*U.S. v. Ojeda Rios*, 846 F.2d 167 (2d Cir. 1988) ..............................................................11

*United States v. Orena*, 986 F.2d 628 (2d Cir. 1993) .......................................................11

*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992)...................................................17

*Wallace v. Suffolk Cty. Police Dep't*, 396 F. Supp. 2d 251 (E.D.N.Y. 2005).........................19

*Washington v. Wilmore*, 407 F.3d 274 (4th Cir. 2005).......................................................21

## Statutes

42 U.S.C. § 1983 .........................................................................................5, 7, 12, 21

G.M.L. § 50-h..............................................................................................................6

Immigration and Nationality Act of 1952 ...........................................................................10

<u>Rules</u>

Fed. R. Civ. P. 12 (b)(6) ................................................................................. 1, 19

Fed. R. Civ. P. 25 ............................................................................................. 4

Fed. R. Civ. P. 25(a)(1) .................................................................................... 2

Fed. R. Civ. P. 26(a)(1)(A)(i) ........................................................................... 4

Fed. R. Civ. P. 4 .............................................................................................. 2

Fed. R. Civ. P. 5 .............................................................................................. 2

<u>Treatises</u>

7C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1955 (3d
    ed. 2019) ..................................................................................................... 2, 3

<u>Introduction</u>

If it should please the Court, Robert Melendez and the Incorporated Village of Freeport ("Freeport defendants") present a series of inapplicable and failing legal arguments against the Second Amended Complaint ("SAC"). Plaintiff respectfully addresses them in turn.

<u>Governing Standard</u>

A Rule 12 motion must be denied if the complaint includes "enough facts to state a claim to relief that is plausible on its face," that is, enough factual allegations, taken as true, "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (applying *Twombly*); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

"[I]n determining whether a complaint states a claim that is plausible, the court is required to proceed on the assumption that all the factual allegations in the complaint are true." *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (internal quotation marks and alterations omitted). "The choice between two plausible inferences…is not a choice to be made by the court on a Rule 12…motion." *Id.*

<u>Argument</u>

<u>Point I</u>
<u>The Jurisdictional Arguments are Meritless</u>

Movants' brief at DE #293 ("Freeport Mem.") argues at Points I-II that (i) the Court lacks personal jurisdiction over Arthur Zimmer's estate; and (ii) plaintiff has failed to comply with state law notice of claim requirements. These arguments should be rejected, however, because Freeport has failed to provide plaintiff with information necessary to move for substitution and the federal claims presented are not subject to state law notice of claim requirements.

A.  <u>Plaintiff's Ninety-Day Window to Move for Substitution has not yet Opened</u>

Substitution of deceased defendants in federal court is governed by Rule 25(a)(1) of the Federal Rules of Civil Procedure, which:

> requires that a substitution motion be filed within 90 days after service (on the parties and relevant nonparties) of a valid 'statement noting the death.' In order to trigger the 90-day period, the statement must note the decedent's death, identify the successor(s) or representative(s) who may be substituted in for the decedent, and be served upon any such successor or representative in accordance with Fed. R. Civ. P. 4.

*Grant v. Witherspoon*, 19 CV 2460 (PGG) (BCM), 2020 WL 71052, *3 (S.D.N.Y. Jan. 3, 2020) (citing 7C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1955 (3d ed. 2019) for the proposition that "The statement noting the death must be in writing and identify the representative to be substituted, and it must be served on the parties in accordance with the procedures of Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons.").

2

As relevant to the instant motion, a suggestion of death is "invalid" unless it "identifies the representative or successor who may be substituted as a party." *Id.* (citing *Hardy v. Kaszycki & Sons Contractors, Inc.*, 842 F. Supp. 713, 716 (S.D.N.Y. 1993) and *Smith v. Planas*, 151 F.R.D. 547, 549 (S.D.N.Y. 1993)) (brackets, citation and internal quotation marks omitted).

Here, no suggestion of the death of Arthur Zimmer has been filed (or served) by any party, meaning that plaintiff's time to file for substitution has not yet begun to run, with nine months remaining on the governing statute of limitations. *See* Docket Sheet, *generally.* This is dispositive of Point I of the Freeport defendants' motion. *Grant*, 2020 WL 71052 at *3 ("Plaintiff has not identified the estate representative who would step into the shoes of Senior Counselor William if substituted, and no statement of death has yet been served or filed in this case. Thus, Plaintiff's time to properly file a motion for substitution has not yet run.") (quoting *Crichlow v. Fischer*, 12 CV 7774 (NSR), 2015 WL 678725, *5 (S.D.N.Y. Feb. 17, 2015)).

Of additional concern, Freeport defendants base their misguided argument on the notion that "the estate" has not been properly served, when the estate was never named and the law is clear that, in any event, it would not be a proper party. *See Natale v. Country Ford Ltd.*, 287 F.R.D. 135, 137 (E.D.N.Y. 2012) ("The estate of a deceased party is not a proper party under

Rule 25.... A proper party under Rule 25 must be a legal representative of the deceased.") (citation omitted).[1]

Plaintiff respectfully submits, moreover, that the Freeport defendants present this argument with unclean hands, since they have been long aware of Zimmer's death but have failed to identify the administrator of the estate or any of its distributees. The issue was discussed at a status conference held on March 6, 2020:

> MR. CORBETT:    ...Arthur Zimmer is deceased. We didn't do an investigation. What we're trying to figure out is was there an estate at all? Was it administrated? Did he have a will? We don't know any of those answers...[Melendez and Zimmer] are completely indemnified and held harmless by the Village of Freeport...we're still ourselves trying to get in touch with whoever is the proper person for deceased Arthur Zimmer...

DE #276, p. 28, ln. 10-p. 29, ln. 5.

Accordingly, once plaintiff obtains successor information or any party files and serves a suggestion of death with respect to Arthur Zimmer, plaintiff will then be in a position to move for substitution.[2] *Grant*, 2020 WL 71052 at *3 ("[T]he filing and service of a valid suggestion of death is not a precondition to the filing of a substitution motion.") (citing *Hardy*, 842 F.

---

[1] Notably, these defendants never even disclosed Arthur Zimmer as an individual with knowledge pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i); his involvement was uncovered by plaintiff after reviewing discovery produced by Nassau County. As described at DE #242, in a recording never disclosed to Mr. Jackson in the criminal case, Arthur Zimmer interviews eyewitness Peter Baldwin and reveals the coordinated effort between Freeport and Nassau County to close the case on the Steven Jason homicide. *See* SAC, ¶¶ 50-51, 54, 102, 174-175, 181, 187.

[2] If it should please the Court, plaintiff's counsel has independently attempted to obtain death records for Arthur Zimmer without success.

Supp. at 716). Plaintiff respectfully submits that only at that point will the question of personal jurisdiction over Zimmer's successor become ripe.

B. <u>There is No Notice of Claim Requirement for § 1983 Actions</u>

As demonstrated above, Freeport defendants admitted to the Court in March 2020, long after they learned of the defendant's passing, that they still lack knowledge as to whether an estate was ever established for defendant Zimmer. There is, further, nothing in the record to establish even the defendant's date of death, let alone the timing of any probate proceedings.

Yet these defendants predicate their Point II on plaintiff's alleged failure to comply with estate notice of claim requirements that allegedly run from the "issuance of letters," without knowledge of whether or when any such letters were issued. *See* Freeport Mem., pp. 7-8. If it should please the Court, this alone is cause to reject Freeport defendants' Point II.

But the argument must be denied for a more elementary reason: as this Honorable Court and others have held, there is no notice of claim requirement with respect to § 1983 claims. *Kreutzberg v. County of Suffolk*, 04 CV 3835 (JS) (WDW), 2006 WL 3370351, *3 (E.D.N.Y. Nov. 20, 2006) (Seybert, J.) (citing *Ahern v. Neve,* 285 F.Supp.2d 317, 321 (E.D.N.Y. 2003)); *accord, e.g., Horvath v. Daniel*, 04 CV 9207 (WCC), 2006 WL 47683, *3 (S.D.N.Y. Jan. 9, 2006) ("Courts in this Circuit have repeatedly held that that the notice of claim requirement is not applicable to federal claims under section 1983.") (brackets, citation and internal quotation marks omitted).

Plaintiff asserts four claims against defendant Zimmer, all under § 1983: (i) suppressing exculpatory evidence in violation of *Brady*; (ii) conspiring with Nassau County police to cause

plaintiff's wrongful conviction; (iii) unlawful pre-trial detention pursuant to *Russo v. City of Bridgeport*, 479 F.3d 196, 212 (2d Cir. 2007); and, in the alternative, (4) failure to intervene. *See* SAC, ¶¶ 171-91. No state law claims are pled against defendant Zimmer. *See* SAC, *generally.*

Indeed, the only state law claims asserted in the SAC against the Freeport defendants are asserted against the Village itself and supported by a timely and valid Notice of Claim (which these defendants do not and cannot challenge) and for which plaintiff duly submitted to an examination under G.M.L. § 50-h. *See* SAC, ¶¶ 8-10.

Accordingly, the Court should reject Freeport defendants' arguments at Points I and II.

<u>Point II</u>
<u>The 12(b)(6) Arguments Fail</u>

In Points III-V of their brief, Freeport defendants claim a lack of personal involvement based on a mischaracterization of the SAC and ignore binding Supreme Court precedent to argue untimeliness. But these defendants fail to meet the detailed, plausible allegations narrowly advanced against them and their motion should thus be denied.

Initially, Freeport defendants improperly attach to their opposition and rely upon an unsworn and inadmissible declaration by a current Assistant Chief of Police, who speculates about events in 1994. Freeport Mem., pp. 3, 24; *Brown v. Sprint Corp. Sec. Specialist*, 17 CV 2561 (JS) (ARL), 2019 WL 418100, *3 (E.D.N.Y. Jan. 31, 2019) (Seybert, J.) ("In general, a court may not look outside the pleadings on a Rule 12(b)(6) motion to dismiss.") (citation

and internal quotation marks omitted). For this reason and others discussed below, their motion fails in its entirety.

A.  Unlawful Pre-Trial Detention

In Point III of their motion, Freeport defendants disregard controlling precedent to argue that plaintiff's pre-trial detention claim under *Russo* is untimely. Freeport Mem., pp. 9-11. However, in *McDonough v. Smith*, the Supreme Court recently held that a § 1983 due process claim that calls into question the validity of a conviction does not accrue until favorable termination of the criminal proceedings, which here occurred less than three years ago in February 2018. 139 S. Ct. 2149 (2019); SAC, ¶¶ 109-112; *see Hagans v. Nassau Cty. Police Dep't*, 18 CV 1918 (JS) (AYS), 2020 WL 1289529, *6 (E.D.N.Y. Mar. 18, 2020) (Seybert, J.) ("The statute of limitations for a fabricated-evidence claim does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor.") (citing *McDonough*, 139 S. Ct. at 2154-55) (brackets omitted).

As the Hon. Gerard Lynch explained in his concurrence to the Second Circuit's en banc opinion in *Poventud v. City of New York*, there is no analytical distinction between the suppression of evidence in which the Freeport defendants here are alleged to have engaged and the evidence fabrication at issue in *McDonough*:

> Without question, covering up facts so damaging to the case against a defendant violates the defendant's legal rights. This is not just a matter of the rules of the road. By failing to disclose evidence that would cast significant doubt on the principal evidence of Poventud's guilt, the police did something tantamount to fabricating false evidence of guilt: they deceived the jury into thinking that the evidence of guilt was stronger than

it was. When this misconduct came to light, the state court did what the law, justice, and common decency required, and vacated Poventud's conviction. At that point, the presumption of innocence was restored. Poventud was no longer legally guilty of the four offenses of conviction, and could no longer be punished. By that time, however, Poventud had already served nearly nine years in prison as punishment for crimes of which he was then again presumed innocent.

750 F.3d 121, 140 (2d Cir. 2014) (en banc) (Lynch, J., concurring).

Freeport defendants cite two cases in support of their timeliness argument. The first, *Pearl v. City of Long Beach*, considered whether equitable tolling applied to a case filed approximately twenty-eight years after the underlying criminal case (and associated civil litigation) had been resolved, based on an allegation by the plaintiff that defendants had engaged in fraudulent concealment. 296 F.3d 76, 78 (2d Cir. 2002). There is no arguable connection between *Pearl* and this case, given that plaintiff here commenced this action well within the applicable limitations period and does not rely (or need to rely) on tolling or estoppel principles. *Hagans*, 2020 WL 1289529 at *6 (citing *McDonough*, 139 S. Ct. at 2154-55).

In *Pinaud v. County of Suffolk*, the other case cited by Freeport, the plaintiff also attempted to circumvent the statute of limitations by arguing fraudulent concealment. 52 F.3d 1139, 1156 (2d Cir. 1995). But *Pinaud* is inapplicable for the same reason as *Pearl*, i.e. plaintiff's claims, including his claim under the Fourth Amendment for unlawful pre-trial detention, are timely. *Hagans*, 2020 WL 1289529 at *6 (citing *McDonough*, 139 S. Ct. at 2154-55). Further, to the extent *Pinaud*'s accrual analysis can be read to conflict with *McDonough*, it has been effectively overruled by that recent Supreme Court decision. *See Phelps v. Alameida*, 569 F.3d

8

1120, 1133 (9th Cir. 2009) ("When a decision from the Supreme Court has undercut the theory or reasoning underlying a prior circuit precedent in such a way that the cases are clearly irreconcilable, a three-judge panel of this court and district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled.") (brackets, ellipses, internal quotation marks and citations omitted).

Accordingly, plaintiff's unlawful pre-trial detention claim is timely.

Freeport defendants next argue against this claim in Point IV(A)(iv) of their brief, taking the position that the SAC "fails to state any facts to establish a causal connection between an allegation that Plaintiff's pre-trial detention was excessively long (sic)." Freeport Mem., pp. 17-18. It is hard to decipher the meaning of this statement, or the paragraphs that follow, which appear to be a copy-and-paste of a portion of its failing timeliness argument. *See* Freeport Mem., p. 10. In any event, to the extent Freeport challenges the personal involvement of defendants Zimmer or Melendez, it fails.

The SAC plausibly alleges that Melendez and Zimmer, along with Freeport employees not yet identified, conspired with Nassau County defendants to suppress exculpatory evidence that could have resulted in the dismissal of plaintiff's case pre-trial or his acquittal at trial. SAC, ¶¶ 34-38, 50-54, 61, 72-73, 102, 172, 174-176. These plausible allegations of coordinated evidence suppression are sufficient to sustain a number of plaintiff's claims at the Rule 12 stage, including his Fourth Amendment claims. *See, e.g., Brandon v. City of New York,* 705 F.Supp.2d 261, 276 (S.D.N.Y. 2010) (noting that the Second Circuit has permitted "claims

for both malicious prosecution and a denial of the right to a fair trial" based on the same alleged misconduct) (citing *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130-31 (2d Cir. 1997)) (brackets omitted).

This is, indeed, consistent with the materiality assessment of the Nassau County DA in its motion to set aside the conviction as well as that agency's finding that the Montes and Larrea "32b" statements were maintained in the files of the Village of Freeport Police Department.[3] *See* SAC, ¶ 107.

Movants' legal analysis on this point has no appreciable connection to any issue raised in this case and certainly does not dispose of plaintiff's pre-trial detention claim. Freeport principally relies on a passage in *Kennedy v. Mendoza-Martinez* concerning "the constitutionality of a section…of the Immigration and Nationality Act of 1952." 372 U.S. 144, 163 (1963). As explicitly stated in *Russo*, however, the Second Circuit's conclusion that a Fourth Amendment claim for pre-trial evidence deprivation could be stated was based, not upon any act of Congress, but rather on Supreme Court precedent dating to *Baker v. McCollan*, 446 U.S. 137 (1979). *Russo*, 479 F.3d at 208 ("Today, we hold that the right mentioned in *Baker* and enunciated in the above cited cases protected Russo from a sustained detention stemming directly from the law enforcement officials' refusal to investigate available exculpatory evidence.").

---

[3] If it should please the Court, further discussion of the DA's 440 motion appears at Point I(A) of plaintiff's memorandum in opposition to the Nassau County defendants' motion to dismiss.

The other two cases cited by Freeport are similarly divorced from the issues presented here. In *United States v. Orena*, the Second Circuit reversed Judge Weinstein's determination that "the postponement of trial dates constitutes a new circumstance justifying release under the Bail Reform Act." 986 F.2d 628, 630 (2d Cir. 1993). If it should please the Court, the Bail Reform Act, a federal statute, is not implicated by this civil action and *Orena* does not appear to involve the pre-trial suppression of exculpatory evidence. Plaintiff respectfully submits it is thus unclear why this case is cited by these defendants. Similarly, *U.S. v. Ojeda Rios* also concerns the application of the Bail Reform Act, this time in a federal criminal case arising in Connecticut. 846 F.2d 167, 168 (2d Cir. 1988). Again and for the same reasons, *Ojeda Rios* cannot be applied to bar or circumscribe the civil claims presented here.[4]

In light of the foregoing, Freeport's motion to dismiss plaintiff's unlawful pre-trial detention claim should be denied.

B. <u>Conspiracy</u>

Freeport defendants' argument against plaintiff's § 1983 conspiracy claim consists of repeating the false conclusion that the SAC is bereft of facts. Freeport Mem., pp. 14-15. To the contrary, the SAC clearly and plausibly details concerted suppression of exculpatory

---

[4] Defendants incorrectly contend that the SAC does not describe the length of plaintiff's pre-trial detention. Freeport Mem., p. 18 ("[T]he [SAC] fails to allege that the that the (sic) length of the Plaintiff's pre-trial detention was excessively long. In fact, nowhere in the [SAC] does the Plaintiff even state how long he was incarcerated prior to the homicide trial."). However, it is clear from the allegations in the SAC that plaintiff was held from December 1994 until his conviction in December 1996, a period of approximately two years. *See* SAC, ¶¶ 105-106, 112. To the extent it is relevant, this is more than three times the detention at issue in the *Russo* case. *See* 479 F.3d at 208.

evidence that is actionable as a matter of binding precedential authority.[5] SAC, ¶¶ 34-44, 48, 50-51, 54-55, 61, 102, 104, 107-109, 171-179; *see Bellamy v. City of New York*, 914 F.3d 727, 751 (2d Cir. 2019) ("When police officers withhold exculpatory or impeaching evidence from prosecutors, they may be held liable under § 1983 for violating the disclosure requirements of *Brady v. Maryland*… "); *see also Kogut v. Cty. of Nassau*, 06 CV 6695 (JS) (WDW), 2012 WL 3704710, *4 (E.D.N.Y. Aug. 27, 2012) (sustaining conspiracy claim at summary judgment) ("[C]onspiracies are inherently secretive and may have to be proven by circumstantial, rather than direct, evidence.") (citation and internal quotation marks omitted); *Sea Trade Mar. Corp. v. Coutsodontis,* 09 CV 488 (BSJ), 2012 WL 3594288, *8 (S.D.N.Y. Aug. 16, 2012) ("An individual's intentional participation in the furtherance of the conspiracy can be inferred from the overt acts taken by them.") (quoting *Cleft of the Rock Found. v. Wilson,* 992 F.Supp. 574, 582 (E.D.N.Y. 1998)) (brackets and internal quotation marks omitted).

Notably, the intra-corporate conspiracy doctrine, ordinarily invoked to defend § 1983 conspiracy claims, is inapplicable here. *See, e.g., Bristol v. Queens Cty.*, 09 CV 5544 (JFB) (AKT), 2013 WL 1121264, *14 (E.D.N.Y. Feb. 27, 2013), *report and recommendation adopted*, 2013 WL 1120895 (E.D.N.Y. Mar. 18, 2013) ("Where, as here, a plaintiff alleges a conspiracy between two separate and distinct municipalities…such claims are not defeated by the intra-corporate conspiracy doctrine.") (citations omitted).

---

[5] Nassau County, for its part, concedes the plausibility of these allegations.

The cases cited by Freeport are similarly unavailing. First they rely on *Dwares v. City of New York*, where the Second Circuit reversed a district court's Rule 12 dismissal, finding that the allegations in that plaintiff's complaint, as here, were "far from conclusory." 985 F.2d 94, 100 (2d Cir. 1993). By the same token, plaintiff's claims here are sufficient to allege a § 1983 conspiracy, as they describe a joint effort to deprive Mr. Jackson of his right to a fair trial coupled with specified overt acts and ensuing damages. SAC, ¶¶ 34-44, 48, 50-51, 54-55, 61, 102, 104, 107-109, 171-179; *see Carson v. Lewis*, 35 F. Supp. 2d 250, 270–71 (E.D.N.Y. 1999) (discussing the elements of § 1983 conspiracy and collecting cases). Again, the DA's findings that the suppressed material was possessed by both police departments, coupled with the sworn testimony of Maurice Larrea, referenced in the SAC, underscore the plausibility of plaintiff's specific factual allegations.

*Carson v. Lewis*, a summary judgment decision by this Honorable Court, is also nugatory in this context. In *Carson*, after plaintiffs were given a full opportunity to take discovery and present their best evidence in the Rule 56 phase, the Court dismissed the conspiracy allegations because they were directed at a non-party and the Court held that there was insufficient evidence of an underlying constitutional deprivation. *Carson*, 35 F. Supp. 2d at 271. Here, however, at a more favorable procedural posture, the opposite is true: plaintiff's allegations are directed against the named individual defendants and the constitutional violation (also the object of the alleged § 1983 conspiracy) has been conceded by the Nassau County DA. *See* SAC, ¶¶ 107-109.

Freeport's motion to dismiss the § 1983 conspiracy claim should thus be denied.

C.  Failure to Intervene

In attempting to argue against plaintiff's failure to intervene claim, Freeport defendants state that plaintiff has failed to identify the conduct or party to which the claim is addressed. Freeport Mem., pp. 15-16. Review of the SAC, however, dispenses with this argument. *See* SAC at *e.g.*, ¶¶ 45-46, 52-53, 55-67, 69-75, 190. The SAC also readily defeats the other conclusory assertion by these defendants that plaintiff has not alleged the absence probable cause. *See id.* at, *e.g.*, ¶¶ 45, 57, 60, 62, 64, 66, 69, 104, 114. Plaintiff respectfully notes that he has appropriately pleaded his failure to intervene claim in the alternative. *See Guerrero v. City of New York*, 16 CV 516 (JPO), 2017 WL 2271467, *4 (S.D.N.Y. May 23, 2017) (collecting cases).

The cases Freeport offers in support of its argument are not helpful to its position. The decisions uniformly arise in the summary judgment context and involve plaintiffs who cannot establish the relevant underlying constitutional deprivations. *See Coleman v. City of New York*, 07 CV 1051 (CM), 2010 WL 571986, *1 (S.D.N.Y. Feb. 2, 2010) ("Because plaintiff's complaint and deposition testimony establish beyond peradventure that plaintiff's constitutional rights were not violated, his claim for a…failure to intervene…must also be dismissed.") (citations omitted); *Lucky v. City of New York*, 03 CV 1983 (DLC), 2004 WL 2088557, *7 (S.D.N.Y. Sept. 20, 2004), *aff'd,* 140 F. App'x 301 (2d Cir. 2005) ("The defendants have demonstrated that there was probable cause for Lucky's arrest and prosecution, defeating Lucky's claim that any of the defendants had a duty to prevent that arrest."); *Feinberg v. City of New York*, 99 CV 12127 (RC), 2004 WL 1824373, *4 (S.D.N.Y.

Aug. 13, 2004) ("If the Court determines that the officer's conduct did not violate a constitutional right, however, the [failure to intervene] analysis ends. Thus, since Defendants had probable cause to arrest and charge the Plaintiff, Defendants' motion for summary judgment on this claim is granted.").

Here, to the contrary the failure to intervene allegations address a well-founded constitutional deprivation, resulting in over 23 years of wrongful confinement, that has been substantiated by the Nassau County District Attorney. Thus, the Court should deny Freeport defendants' motion to dismiss the failure to intervene claim.

D. Fair Trial

Without citation to governing authority, Freeport defendants argue that plaintiff has engaged in group pleading and "fails to even allege that any of the Freeport defendants suppressed evidence." Freeport Mem., p. 17. According to these defendants, they are also immune from plaintiff's fair trial claims because the investigation and prosecution was handled by Nassau County. Notably, Freeport defendants offer no citation for this proposition.

Both arguments are, however, refuted by the SAC and binding case law. First, the Nassau County DA concluded that the Village of Freeport possessed the Montes and Larrea statements but never provided them to prosecutors, omissions which plaintiff plausibly alleges were part of an intentional scheme in which the individual Freeport defendants are specifically alleged to have participated. *See* SAC, ¶¶ 51, 54, 102, 107-111, 181-185. This is sufficient as a matter of law to state a *Brady*-based fair trial claim. *Bellamy*, 914 F.3d at 751. The DA's findings have been, moreover, supplemented with evidence adduced in preliminary civil discovery, including

15

the Zimmer-Baldwin interview (conducted by a Freeport employee), which make Freeport's liability on the fair trial claims even more plausible. *Id.*

Indeed, the SAC's allegations are sufficient irrespective of which agency ultimately prosecuted the case. *See Bellamy*, 914 F.3d at 751; *U.S. v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975) (finding that even if A.U.S.A. was not aware of suppressed evidence, agent who participated in investigation could be deemed "arm of the prosecutor" in considering whether suppression was *Brady* violation); *see also Carter v. Harrison*, 612 F. Supp. 749, 756 n.5 (E.D.N.Y. 1985) ("There is little doubt that police officers have a *Brady* obligation to disclose exculpatory information."). Indeed, as Judge Weinstein identified in May 1984 (a decade before plaintiff's arrest): "The Second Circuit rule is that information in the hands of someone who can be viewed as 'the arm of the prosecutor' triggers the application of the *Brady* requirement of disclosure." *Pina v. Henderson*, 586 F. Supp. 1452, 1456-57 (E.D.N.Y. 1984).

E. *Monell*

According to Freeport's brief, plaintiff fails to state a *Monell* claim because "[n]owhere in [the SAC] does [plaintiff] particularize an allegation that the [Freeport defendants] engaged in conduct that violated the Plaintiff's constitutional rights." Freeport Mem., p. 20. This is simply false; the profound injury plaintiff suffered is a matter of record and the SAC plausibly alleges Freeport's responsibility therefor. ¶¶ 45-46, 52-53, 55-67, 69-75, 107-112, 116-119, 149-155.

Plaintiff respectfully submits that the facts in the SAC are sufficient to state a claim that the Village of Freeport was deliberately indifferent to misconduct by its police officers and

their need for supervision and training. *See Kogut v. Cty. of Nassau*, 06 CV 6695 (JS) (WDW), 2009 WL 5033937, *12 (E.D.N.Y. Dec. 11, 2009) ("Having now found that Plaintiffs have sufficiently pled underlying constitutional violations, and taking all facts alleged in the Complaints as true, the Court finds that Plaintiffs have sufficiently pled their *Monell* claims to withstand Defendants' motion to dismiss."); *see also Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) (holding that a heightened pleading standard may not be applied to *Monell* claims); Fed. R. Civ. P. 8(a); *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992) (reversing Rule 12 dismissal of *Monell* claim for failing to train police officers not to commit perjury in order to obtain convictions).

## F.  False Imprisonment

With respect to plaintiff's claim for false imprisonment, Freeport defendants again present arguments that are wrong on the law and failing. Freeport Mem., pp. 20-21. Their premise is that plaintiff "does not meet his burden of adequately pleading a lack of probable cause" for his arrest. *Id.* However, the case law in the Second Circuit is clear: "The defendant has the burden of raising and proving the affirmative defense of probable cause." *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003).

The cases cited by these defendants are easily distinguished and unhelpful to them. *Aretakis v. Durivage* involved an arrest pursuant to a facially valid warrant, unlike plaintiff's warrantless arrest on homicide charges in this case. 07 CV 1273 (RFT), 2009 WL 249781, *9 (N.D.N.Y. Feb. 3, 2009); SAC at ¶¶ 163-166. The other case they cite, *Johnson ex rel. Johnson v. Cty. of Nassau*, did not involve probable cause, but the lower standard of reasonable suspicion

applicable to an investigatory stop. 09 CV 4746 (JS) (MLO), 2010 WL 3852032, *2 (E.D.N.Y. Sept. 27, 2010).

The defendants are also incorrect to argue that plaintiff has not pled facts explaining how the actions of the Freeport defendants resulted in his wrongful imprisonment. *See* SAC, ¶¶ 51, 54-55, 102, 107-111, 181-185.

Accordingly, plaintiff respectfully submits that Freeport defendants' motion to dismiss this claim should be denied.

G.  Infliction of Emotional Distress

Freeport defendants argue that plaintiff has not alleged misconduct extreme or outrageous enough to sustain an emotional distress claim at the Rule 12 stage. This is incorrect. SAC, ¶¶ 69-75, 102-106; *see Newton v. City of New York*, 566 F. Supp. 2d 256, 281 (S.D.N.Y. 2008) ("Plaintiff alleges that the Officer Defendants…maliciously falsified evidence that caused him to spend twenty-two years in prison for a crime he did not commit. There is no question that such conduct is…atrocious, and utterly intolerable in a civilized community.") (quotation marks and citation omitted); *see also, e.g. Hincapie v. City of New York*, 18 CV 3432 (PAC) (RWL), 2020 WL 362705 *10 (S.D.N.Y. Jan. 22, 2020). Further, to the extent Freeport defendants claim that plaintiff has failed to allege a breach of duty on their part, they overlook their obligations to plaintiff under *Brady. See Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (suppression of favorable material evidence is *Brady* violation); *Banks, v. Dretke*, 540 U.S. 668, 696 (2004); *Lewis v. Connecticut Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015).

At this stage, plaintiff's emotional distress claims should thus survive.

H. <u>Malicious Prosecution</u>

Freeport defendants' argument on malicious prosecution relies on the reversed Second Circuit *McDonough* decision and an inadmissible unsworn declaration. Freeport Mem. pp. 23-24. Based on that authority, they argue the initiation prong. This is of no moment, however, given that plaintiff did not assert this claim against any individual Freeport defendant. *See* SAC, ¶¶ 125-131. With respect to the state law claim against the Village, plaintiff respectfully submits that it would be premature to dismiss it without discovery. Accordingly, Freeport defendants' motion to dismiss the state law malicious prosecution claim should be denied.

Point III
<u>Qualified Immunity does not Apply</u>

"[A]lthough a qualified immunity defense may be advanced on a 12(b)(6) motion, it faces a 'formidable hurdle' when advanced at such an early stage in the proceedings." *Wallace v. Suffolk Cty. Police Dep't*, 396 F. Supp. 2d 251, 265 (E.D.N.Y. 2005) (Seybert, J.) (citations and quotation marks omitted).

Indeed, "[t]he Second Circuit has stated that a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route. Not only must the facts supporting the defense appear on the face of the complaint but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McLennon v. New York City*, 13 CV 128 (KAM) (SMG), 2015 WL 1475819, *10 (E.D.N.Y. Mar. 31, 2015) (quoting *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004) (internal citations and quotation marks

19

omitted)); *accord Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008) (Qualified immunity "may be asserted in [a Rule 12 motion] *as long as the defense is based on facts appearing on the face of the complaint.*") (emphasis added).

However, "[t]he qualified immunity defense cannot be established on the pleadings alone where an unconstitutional motive is alleged." *Hayes v. Sweeney*, 961 F. Supp. 467, 477 (W.D.N.Y. 1997). Freeport defendants do not carry their burden of proving they merit qualified immunity from suit.

The constitutional prohibition on engaging in the conduct alleged in the SAC was clearly established. Such acts never merit qualified immunity because, "if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit. Actions taken in contravention of this prohibition necessarily violate due process (indeed, we are unsure what due process entails if not protection against deliberate framing under color of official sanction)." *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004) (citation omitted); *Russo*, 479 F.3d at 212 (2d Cir. 2007) (denying qualified immunity where, as here, plaintiff plausibly alleged intentional suppression of exculpatory evidence); *Kogut*, 2012 WL 3704710 at *1-2 (denying qualified immunity and noting that "it was clearly

established that police had *Brady* obligations at least as early as 1990") (citations omitted) (collecting cases).[6]

While it is true that "an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest," *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004), "[a]rguable probable cause which establishes qualified immunity with respect to a false arrest claim exists [only] when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law." *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) (quotation and emphasis omitted). Yet, as set forth in the SAC and discussed above, the individual Freeport defendants in this case are alleged to have knowingly participated in a scheme to, *inter alia*, suppress exculpatory evidence, suborn perjury and coerce a false confession to orchestrate plaintiff's wrongful conviction. Given that it was well-established in 1994 that such conduct negated probable

---

[6] *See also Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) ("[A] § 1983 action may exist under the Fifth Amendment self-incrimination clause if coercion was applied to obtain a waiver of the plaintiffs' rights against self-incrimination and/or to obtain inculpatory statements, and the statements thereby obtained were used against the plaintiffs in a criminal proceeding."); *Ricciuti*, 124 F.3d at 130 ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."). Specifically, "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government," *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001), even when that fabricated evidence is the defendant's own confession, *Washington v. Wilmore*, 407 F.3d 274, 284-284 (4th Cir. 2005) (affirming denial of qualified immunity to officer who fabricated plaintiff's confession in 1983).

cause, the question is not even arguable. *See Tankleff v. Cty. of Suffolk*, 09 CV 1207 (JS) (AYS), 2017 WL 2729084, *21 (E.D.N.Y. June 23, 2017) (Seybert, J.) ("If…Plaintiff's statements were coerced and the prosecution was initiated based on a confession fabricated by Defendants, the factfinder could conclude that no reasonable officer would believe that there was probable cause to prosecute.") (collecting cases).

No reasonable officer could be mistaken about whether the coercion, deliberate fabrications and intentional suppressions of evidence that police defendants engaged in to effectuate Mr. Jackson's arrest and prosecution were lawful. *See Limone*, 372 F.3d at 44-45. Freeport defendants make no effort to argue otherwise, and cannot, and thus do not merit qualified immunity any more than they merit dismissal for failure to state a claim.

<u>Conclusion</u>

For the foregoing reasons, plaintiff respectfully requests that the Court deny Freeport defendants' motion to dismiss in its entirety and grant such other and further relief as the Court deems just and proper.

Dated:       May 18, 2020
             New York, New York

                                        Elefterakis, Elefterakis & Panek

                                        _____
                                        Gabriel P. Harvis
                                        Baree N. Fett
                                        80 Pine Street, 38th Floor
                                        New York, New York 10005
                                        (212) 532-1116

                                        *Attorneys for plaintiff*