UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JOSEPH JACKSON,

                      Plaintiff,                  Case No.: 18-CV-3007

NASSAU COUNTY; THE INCORPORATED VILLAGE
OF FREEPORT; DETECTIVE ROBERT DEMPSEY;
DETECTIVE GARY ABBONDANDELO; DETECTIVE
JOHN M. HOLLAND; DETECTIVE MICHAEL HERTS;
DETECTIVE MARTIN ALGER; POLICE OFFICER
ROBERT MELENDEZ; DETECTIVE WALTER
SWENSON; DETECTIVE ANTHONY KOSIER;
DETECTIVE SERGEANT DAN SEVERIN; DORA
MULLEN, AS THE ADMINISTRATOR OF THE ESTATE
OF JERL MULLEN; JANE DOE, AS THE
ADMINISTRATOR OF THE ESTATE OF ARTHUR
ZIMMER, and JOHN and JANE DOE 1 through 20,

                      Defendants.
-----------------------------------------------------------------------X

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE VILLAGE DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2), 12(b)(5) and 12(b)(6)

**HARRIS BEACH PLLC**
Keith M. Corbett, Esq.
Stephanie L. Tanzi, Esq.
The OMNI
333 Earle Ovington Blvd., Suite 901
Uniondale, New York 11553
Tel: (516) 880-8484
Fax: (516) 880-8483

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................. 1

POINT I      THE VILLAGE DEFENDANTS ARE ENTITLED TO DISMISSAL OF THE SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM ................................................................................ 1

      A.   The Eleventh Claim For Unlawful Pre-Trial Detention Must Be Dismissed As It is Fatally Defective ......................................... 2

      B.   The Tenth Claim of Brady Violations/Evidence Suppression Fails Against The Village Defendants ............................... 6

      C.   The Conspiracy Claim Must Fail ............................................ 7

      D.   Plaintiff Fails to Establish a Lack of Probable Cause Against The Village Defendants ................................................ 9

POINT II    THE CLAIMS AGAINST THE ADMINSTRATOR FOR THE ESTATE OF ARTHUR ZIMMER FAIL AS THIS COURT DOES NOT HAVE JURISDICTION .......................................................... 10

      A.   Federal Rule of Civil Procedure 25(a)(1) Does Not Apply To This Action And Thus Cannot Waive Plaintiff's Obligations To Effectuate Service Against Defendant Administrator of The Estate of Arthur Zimmer ................................................................ 10

      B.   Plaintiff's Failure to Serve Notice of The Commencement of This Lawsuit Against The Estate of Arthur Zimmer Pursuant to The New York State Surrogate's Court Procedure Act Bars Any Claims Against The Estate .................................................. 11

POINT III   PLAINTIFF FAILS TO REBUT THE PRESUMPTION THAT THE VILLAGE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ................................................................................ 14

CONCLUSION ....................................................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Ahern v. Neve*,
285 F.Supp.2d 317 (E.D.N.Y. 2003) ...................................................................... 12

*Aretakis v. Durivage*,
2009 WL 249781 (N.D.N.Y. 2009) ......................................................................... 9

*Bellamy v. City of New York*,
914 F.3d 727 (2019) ................................................................................................ 8

*Bireline v. Seagondollar*,
567 F.2d 260 (4th Cir.1977) .................................................................................... 4

*Carson v. Lewis*,
35 F.Supp.2d 250 (E.D.N.Y. 1999) ........................................................................ 7

*Carvel v. Godley*,
41 F.Supp.2d 476 (S.D.N.Y. 1999) ........................................................................ 12

*Coleman v. City of New York*,
2010 WL 571986 (S.D.N.Y. Feb. 2, 2010) ............................................................. 10

*Cunninham v. New York City*,
No. 04 Civ. 10232 (LBS), 2007 WL 2743580 (S.D.N.Y. Sept. 18, 2007) .............. 2

*DiPompo v. Ruggiero*,
2018 WL 5045339 (S.D.N.Y. 2018) ....................................................................... 2

*Dzwonczyk v. Syracuse City Police Dept.*,
710 F. Supp. 2d 248 (N.D.N.Y. 2008) .................................................................... 14

*Hinkle v. City of Clarksburg*,
81 F.3d 416 (4th Cir.1996) ...................................................................................... 7

*Horvath v. Daniel, 04 CV 9207 (WCC)*,
2006 WL 47683 (S.D.N.Y. Jan. 9, 2006) ............................................................... 12

*Jocks v. Tavernier*,
316 F.3d 128 (2d Cir. 2003) .................................................................................... 9

*Johnson ex rel. Johnson v. Cty. of Nassau*,
No. 09-CV-4746 JS MLO, 2010 WL 3852032 (E.D.N.Y. Sept. 27, 2010) ............. 9

*Kennedy v. Mendoza–Martinez*,
  372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) .................................................... 3

*Kirnisant v. City of New York*,
  225 F.R.D. 422 (E.D.N.Y. 2005) .................................................................................. 11

*Kogut v. County of Nassau*,
  2012 WL 3704710 (E.D.N.Y. 2012) ............................................................................. 8

*Kreutzberg v. County of Suffolk, 4 CV 3835 (JS)(WDW)*,
  2006 WL 3370351 (E.D.N.Y. Nov. 20, 2006) ............................................................. 12

*Laborers Local 17 Health and Ben. Fund v. Phillip Morris, Inc.*,
  26 F.Supp.2d 593 (S.D.N.Y.1998) ............................................................................... 10

*Mandell v. Cty. of Suffolk*,
  316 F.3d 368 (2d Cir. 2003) ................................................................................... 14, 15

*McDonough v. Smith*,
  139 S. Ct. 2149 (2019) .................................................................................................. 5

*McDonough v. Smith*,
  898 F.3d 259, 2018 WL 3672942 (2d Cir. 2018) ......................................................... 9

*Myers v. Moore*,
  326 F.R.D. 50 (S.D.N.Y. 2018) ............................................................................. 1, 2, 6

*Omni Capital Int'l v. Rudolf Wolff & Co.*,
  484 U.S. 97 .................................................................................................................. 10

*Owens v. Okure*,
  488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 ............................................................. 4

*Paskowski v. Paskowski*,
  361 F. Supp. 981 (E.D.N.Y. 1973) .............................................................................. 12

*Pearl v. City of Long Beach*,
  296 F.3d 76 (2d Cir. 2002) ............................................................................................ 4

*Pinaud v. County of Suffolk*,
  52 F.3d 1139 (2d Cir.1995) ........................................................................................... 4

*Poventud v. City of New York*,
  750 F.3d 121 (2014) ...................................................................................................... 5

*Rende v. Kay*,
  415 F.2d 983 (D.C.Cir.1969) ....................................................................................... 11

*Ricciuti v. N.Y.C. Transit Auth.*,
   124 F.3d 123 (2d Cir.1997)................................................................ 7

*Russo v. City of Bridgeport*,
   479 F3d 196 (2d Cir. 2007)............................................................ 3, 5

*Savino v. City of New York*,
   331 F.3d 63 (2d Cir. 2003) ............................................................. 14

*Siben v. American Airlines*,
   913 F.Supp. 271 (S.D.N.Y. 1996) .................................................... 2

*Spavone v. N.Y. State Dep't of Corr.*,
   Servcs., 719 F.3d 127 (2nd Circ. 2013) .......................................... 1

*United States v. Ojeda Rios*,
   846 F.2d 167 (2d Cir.1988)............................................................. 3

*United States v. Orena*,
   986 F.2d 628 (2d Cir.1993)......................................................... 2, 3

*United States v. Valentine*,
   539 F.3d 88 (2d Cir. 2008)............................................................ 14

*Yonofsky v. Wenick*,
   362 F.Supp. 1005 (S.D.N.Y. 1973) ............................................... 11

**Statutes**

42 U.S.C. § 1983................................................................................ 1, 4

New York Surrogate's Court Procedure Act § 201, ¶ 3 ...................... 12

New York State Surrogate's Court Procedure Act §§ 1002 ................ 13

New York State Surrogate's Court Procedure Act §§ 1411 ................ 13

New York State Surrogate's Court Procedure Act § 1802 .................. 13

New York State Surrogate's Court Procedure Act § 201(3) ............... 12

**Rules**

CPLR § 214(5)...................................................................................... 4

F.R.C.P. 12(b)(2) ........................................................................... 1, 10

F.R.C.P. 12(b)(5) ........................................................................... 1, 10

F.R.C.P. 12(b)(6) ................................................................................................................. 1, 10

F.R.C.P. 25 ........................................................................................................................ 10, 11

F.R.C.P.  25(a)(1) ............................................................................................................... 10, 11

## PRELIMINARY STATEMENT

In this  civil rights action brought pursuant to 42 U.S.C. § 1983 and state law claims, Plaintiff alleges he was maliciously prosecuted and falsely imprisoned in connection with his conviction for the murder of Steven Jason after a trial on March 7, 1997.

Pursuant to Rule 12(b)(2), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants The Incorporated Village of Freeport, Police Officer Robert Melendez, and "Jane Doe" As The Administrator for The Estate of Arthur Zimmer (hereinafter "Village Defendants"), move to dismiss the Second Amended Complaint. The Plaintiff failed to set forth any viable claim against the Village Defendants upon which the relief sought could be granted.  The Village Defendants were not responsible for the investigation, arrest or prosecution of the Plaintiff for the murder of Steven Jason and thus, the Second Amended Complaint must be dismissed in its entirety as and against the Village Defendants.

## ARGUMENT

### POINT I
### THE VILLAGE DEFENDANTS ARE ENTITLED TO DISMISSAL OF THE SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

The entire Amended Complaint fails to identify a Village Defendant with whom the court can reasonably infer is liable for conduct which allegedly caused harm to the Plaintiff. In his opposition papers, Plaintiff still fails to establish a causal connection between the acts or omissions of any of the Village Defendants, and the injury or damages to which he allegedly suffered. Myers v. Moore, 326 F.R.D. 50 (S.D.N.Y. 2018); Spavone v. N.Y. State Dep't of Corr. Servcs., 719 F.3d 127 (2nd Circ. 2013).

As stated in the Village Defendants' moving papers, the Plaintiff failed to particularize any conduct of the Village Defendants to show they participated in or are liable for the allegations

contained in the Second Amended Complaint. <u>Myers v. Moore</u>, 326 F.R.D. 50 (S.D.N.Y. 2018); <u>Siben v. American Airlines</u>, 913 F.Supp. 271 (S.D.N.Y. 1996); <u>DiPompo v. Ruggiero</u>, 2018 WL 5045339 (S.D.N.Y. 2018); <u>Cunninham v. New York City</u>, No. 04 Civ. 10232 (LBS), 2007 WL 2743580 (S.D.N.Y. Sept. 18, 2007).

The Village Defendants did not arrest Plaintiff for the murder of Steven Jason, nor did any Village Defendant lead the investigation, participate in bringing criminal charges against the Plaintiff or in the prosecution of the Plaintiff. Instead, the Nassau County Homicide Squad commanded and controlled the investigation, arrest and prosecution of the Plaintiff, as is normal protocol for homicides in the Village of Freeport. See, Affidavit of Raymond Horton. The crux of Plaintiff's claims are based on the CIU investigation which was initiated related to Plaintiff's criminal conviction, the Nassau County District Attorney's Motion to Vacate the Plaintiff's conviction and the eventual vacatur of the Plaintiff's conviction. The basis for the Nassau County District Attorney's Motion to Vacate is the statements by witnesses Glenn Montes and Maurice Larrea, which were allegedly not turned over to the defense in violation of *Brady v. Maryland.* However, despite Plaintiff's vague assertions of participation, the Village Defendants did not take either of these statements, as the statement of Montes was taken by County Defendants Herts and the statement of Larrea was taken by County Defendant Holland. <u>See</u> Compl. Exhibits 21 and 22.

### A. *The Eleventh Claim For Unlawful Pre-Trial Detention Must Be Dismissed As It is Fatally Defective*

A claim for unlawful pre-trial detention under the 4th Amendment addresses the constitutionality of the length of the pre-trial detention and whether it was excessive. <u>United States v. Orena</u>, 986 F.2d 628, 630 (2d Cir.1993). Absent an expressed intention to punish, whether detention constitutes impermissible punishment or permissible regulation turns on

whether the government has a nonpunitive reason for detention and whether detention " 'appears excessive in relation to' " the nonpunitive purpose. Kennedy v. Mendoza–Martinez, 372 U.S. 144, 169, 83 S.Ct. 554, 568, 9 L.Ed.2d 644 (1963)).

To determine whether the length of pretrial detention has become constitutionally excessive, we must weigh three factors: "(i) the length of detention; (ii) the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence upon which the detention was based," United States v. Orena, 986 F.2d 628, 630 (2d Cir.1993); that is, the evidence concerning risk of flight and danger to the safety of any other person or the community. See id. (applying test to dangerousness); United States v. Ojeda Rios, 846 F.2d 167, 169 (2d Cir.1988) (per curiam) (applying test to risk of flight and dangerousness). Even in the case cited by the Plaintiff in support of this claim, Russo v. City of Bridgeport, the court focuses on the length of time of the pre-trial detention and focuses its analysis on whether the 217 day detention was excessive. Russo v. City of Bridgeport, 479 F3d 196 (2d Cir. 2007).

Plaintiff's Second Amended Complaint fails to even allege that the Village  Defendants' conduct resulted in an excessive pre-trial detention period. Plaintiff fails to even address the first two prongs of the factors used to determine if pre-trial detention is excessive, as the Second Amended Complaint fails to even state how many days the Plaintiff was incarcerated prior to the standing trial. Additionally, the Second Amended Complaint fails to state how any of the Defendants were responsible for the delay of the trial. The Second Amended Complaint fails to lay out a timeline of the criminal proceeding, how many adjournments were requested by both the prosecution and the defense, or any conduct on the part of any defendant in this action which resulted in any delays in the Plaintiff's trial. Furthermore, the Second Amended Complaint fails to state a claim against the Village Defendants for Unlawful Pre-Trial Detention, as it fails to

allege any conduct whatsoever on the part of the Village Defendants which contributed to a delay in the Plaintiff's trial.

Plaintiff, in his Memorandum in Opposition, erroneously argues that the Second Amended Complaint sets forth facts to establish a claim for unlawful pre-trial detention. None of the paragraphs pointed to in the Second Amended Complaint assert a claim that Plaintiff's pre-trial detention was excessively long and therefore, the Eleventh Claim must be dismissed against the Village Defendants.

Plaintiff's unlawful pre-trial detention claim is also time-barred. As stated in the Village Defendants' moving papers, the statutory period by which the Plaintiff's period to bring a claim for Unlawful Pre-Trial Detention expired three years after learning that his pre-trial detention was excessively long. Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002). The Village Defendants, in the moving papers cited the Pearl case to set forth the statute of limitations period for claims arising under 42 U.S.C. §1983 and to so state that said statutory period is found in the "general or residual [state] statute [of limitations] for personal injury actions," which, in New York, is three years (CPLR § 214[5]); Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002); see also, Owens v. Okure, 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 . The Village Defendants also cited to Pearl to the extent that it sets forth that "federal law determines when a section 1983 cause of action accrues", and federal courts have held that a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Pearl, 269 F.3d at 80; quoting Bireline v. Seagondollar, 567 F.2d 260, 263 (4th Cir.1977)); see Pinaud v. County of Suffolk, 52 F.3d 1139, 1156 (2d Cir.1995). The specific underlying facts of Pearl and Pinaud are irrelevant in this analysis, as both were cited in the Village Defendants'

moving papers to establish the statute of limitations period for 1983 claims and to set forth the way in which the federal courts calculate that period.

The Second Amended Complaint raises a claim for Unlawful Pre-trial Detention pursuant to Russo v. Bridgeport, a case where the court focused on the length of time of the pre-trial detention and focused its analysis on whether the 217 day detention was excessive. However, in the Plaintiff's Memorandum in Opposition, Plaintiff cites to cases where the court examines claims for fabrication of evidence claims and Brady/suppression of evidence claims. McDonough v. Smith, 139 S. Ct. 2149 (2019); Poventud v. City of New York, 750 F.3d 121 (2014). In arguing against dismissal of Plaintiff's Unlawful Pre-Trial Detention claim, Plaintiff even states his intention to compare a "suppression of evidence" claim raised in this case with the "evidence fabrication" claim analyzed in McDonough. See, Memorandum in Opp. at Page 7.

The alleged facts Plaintiff attempts to use  to support a claim for Unlawful Pre-Trial Detention are allegations of evidence suppression, which is encompassed in the Tenth Claim for Brady violations/evidence suppression. The Second Amended Complaint raises claims for "State Law False Imprisonment," "Unlawful Pre-Trial Detention," and "Evidence Suppression/Brady Violations/Spoliation & Denial of Access to Courts." Compl. at ¶ 163-166, 180-185, 186-188. The Second Amended Complaint pleads these three claims using identical facts Plaintiff's Memorandum of Law in Opposition further supports the fact that all three claims boil down to allegations of evidence suppression. The only facts by which Plaintiff claims against the Village Defendants for false imprisonment and unlawful pre-trial detention are allegations that the Village Defendants suppressed evidence and violated the Plaintiff's rights under *Brady v. Maryland.*

5

Plaintiff's Unlawful Pre-Trial Detention claim must fail against the Village Defendants as the Second Amended Complaint fails to allege that Plaintiff's pre-trial detention was excessively long, which is fatal to this claim. Additionally, Plaintiff is time barre from bringing a claim that his pre-trial detention was exceedingly long and therefore, the Tenth Claim must be dismissed.

### B. The Tenth Claim of Brady Violations/Evidence Suppression Fails Against The Village Defendants

None of the evidentiary items described by Plaintiff as alleged Brady violations were obtained by the Plaintiff from the Village Defendants, and that the all of which were obtained by the Plaintiff by the County Defendants through discovery in this action. Therefore, any items that were part of the Freeport Police Department record were clearly turned over to the Nassau County Homicide Squad, pursuant to the protocol for homicides in Nassau County. See Affidavit of Raymond Horton.

Plaintiff once again lists paragraphs in the Second Amended Complaint and alleges that these paragraphs establish that the Village Defendants are liable for violations of *Brady* and/or suppression of evidence. All of the paragraphs of the Second Amended Complaint identified by Plaintiff in his opposition papers in support of the Tenth Claim make vague allegations, lumping all defendants together and failure to particularize which defendants Plaintiff is alleging deliberately suppressed which evidence. See Myers v. Moore, 326 F.R.D. 50, 60 (S.D.N.Y. 2018). Plaintiff fails to point to any Village Defendants who allegedly suppressed evidence.

Plaintiff identifies an interview between Detective Zimmer and an alleged informant and claims that the defendants, without naming any specific individuals, suppressed this interview from prosecutors. However, this audio taped interview was not identified by CIU as *Brady* material or as a basis for vacating Plaintiff's conviction. As stated in the Village Defendant's Memorandum in Support of its Motion to Dismiss, the only statement made in the Second

Amended Complaint with regard to the Zimmer-Baldwin interview is that, based on Plaintiff's interpretation, "Baldwin provides several leads that support plaintiff's innocence…" and "observed a perpetrator as a 5'8" Puerto Rican." Comp. ¶ 51. However, Baldwin never states that he saw the shooting during the interview. In fact, he states that he could not see who was in the car that he observed just prior to when he heard gunshots.  More importantly, it is clear that the Village Defendants turned over the Zimmer-Baldwin interview tape to the Homicide Squad, pursuant to protocol, because the taped interview was obtained by the Plaintiff from the County Defendants through discovery in this action. See, Affidavit of Raymond Horton.

### C.  The Conspiracy Claim Must Fail

The Amended Complaint fails to articulate how the Village Defendants conspired with any actor or entity in any way to deprive Plaintiff of any right. Nothing in the Amended Complaint alleges or indicates whatsoever that there was a tacit agreement between parties to violate the Plaintiff's constitutional rights. See Carson v. Lewis, 35 F.Supp.2d 250, 271 (E.D.N.Y. 1999) see, e.g., Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 131 (2d Cir.1997) (citing Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir.1996) (setting forth elements)). It is respectfully submitted, that the Plaintiff fails to set forth any semblance of facts to allege a proper conspiracy claim as there are no viable claims lying against the Village Defendants. The County Defendants were responsible for the investigation, arrest and prosecution of the Plaintiff. Plaintiff's Ninth Claim must be dismissed against the Village Defendants.

The paragraphs of the Second Amended Complaint which Plaintiff points to the Memorandum of Law fail to establish any facts which would allege that the Village Defendants were involved in a tacit agreement to violate Plaintiff's rights. Many of the paragraphs referred to by the Plaintiff have nothing to do with the Village Defendants and contain no allegations

against them, such as paragraphs 43-44 and 48, which address the Nassau County Police Department's morning report, and allegations regarding Defendant Swenson's alleged conduct to suppress evidence respectively. Compl. ¶ 43-44, 48. The Second Amended Complaint offers a confusing and baseless theory that the County and Village Defendants conspired against the Plaintiff for the purpose of protecting their "friend" and "off-duty Officer," Maurice Larrea. Compl. ¶ 41. Plaintiff's ridiculous theory is that because Larrea was intoxicated and was acquainted with some of the Village and County Police Officers, the Village and County Defendants chose conspired together to suppress his statement from prosecutors in an effort to protect Larrea. Plaintiff finds it relevant to note in support of this theory that the statement fails to mention that Larrea was intoxicated at the time he made his statement to police. However, if the statement didn't mention that Larrea was intoxicated, it makes little sense why the two police departments would purposely conspire to conceal the statement.  This theory is illogical and falls short of making a causal connection between the Village Defendants and a conspiracy claim.

The cases Plaintiff cites to in his Memorandum in Opposition to argue that the Village Defendants' were involved in a tacit agreement to violate Plaintiff's rights, can be distinguished from the facts in this case. First, as Plaintiff has done throughout his opposition papers, in an effort to support his conspiracy claim, he cites to a case that does not involve a conspiracy claim. Bellamy v. City of New York, 914 F.3d 727 (2019)(the complaint raised a *Monell* claim and withholding fabrication of evidence claims). Additionally, Plaintiff cites to Kogut v. County of Nassau, a case wherein the plaintiff raised a conspiracy claim rising from identified police informants who allegedly offered false testimony in exchange for various benefits. Kogut v. County of Nassau, 2012 WL 3704710 at 4 (E.D.N.Y. 2012). In the case at bar, Plaintiff offers no facts which could establish that the Village Defendants entered into an agreement with any actor

to violate the Plaintiff's rights, or any conceivable benefit that may have been enjoyed by any actor involved in such an agreement.

### D. Plaintiff Fails to Establish a Lack of Probable Cause Against The Village Defendants

Despite Plaintiff's attempts to persuade this Court that the burden of establishing probable cause rests with the Defendants, it is the Plaintiff who carries the burden in establishing that the Village Defendants lacked probable cause for any involvement they may have had in the underlying incidents alleged.  See Aretakis v. Durivage, 2009 WL 249781, at 8 (N.D.N.Y. 2009) ("It should not elude us that the burden of establishing lack of probable cause rests with [Plaintiff]."). Thus, conclusory, improper allegations that the Defendants lacked probable cause are not sufficient to defeat a motion to dismiss. Johnson ex rel. Johnson v. Cty. of Nassau, No. 09-CV-4746 JS MLO, 2010 WL 3852032, at 2 (E.D.N.Y. Sept. 27, 2010). Plaintiff has failed to carry this burden against the Village Defendants.

As previously stated, the Freeport Police Department was not responsible for leading the investigation in this case and was not responsible whatsoever for the arrest and prosecution of the Plaintiff in this matter. On December 17, 1994, The Village Defendants' participated in the arrest of the Plaintiff on unrelated drug charges and immediately transferred the Plaintiff to the custody of the Nassau County Police Department, who led an investigation for the murder of Steven Jason. Plaintiff fails to carry his burden in establishing that the Village Defendants lacked probable cause in arresting Plaintiff on unrelated drug charges.

As a showing of probable cause defeats a claim for malicious prosecution, false imprisonment and a failure to intervene, those claims must be dismissed against the Village Defendants. McDonough v. Smith, 898 F.3d 259, 2018 WL 3672942 (2d Cir. 2018), cert. granted, 139 S. Ct. 915, 202 L. Ed. 2d 641, 2019 WL 166879 (2019); See Jocks v. Tavernier,

316 F.3d 128, 135 (2d Cir. 2003); <u>Coleman v. City of New York</u>, 2010 WL 571986, at 5

(S.D.N.Y. Feb. 2, 2010)

**POINT II**

**THE CLAIMS AGAINST THE ADMINSTRATOR FOR THE ESTATE OF ARTHUR
ZIMMER FAIL AS THIS COURT DOES NOT HAVE JURISDICTION**

   A. ***Federal Rule of Civil Procedure 25(a)(1) Does Not Apply To This Action And Thus
   Cannot Waive Plaintiff's Obligations To Effectuate Service Against Defendant
   Administrator of The Estate of Arthur Zimmer***

As more fully articulated in the Village Defendants' Memorandum in Support of the Motion

to Dismiss, Plaintiff's Second Amended Complaint against the Village Defendants must be

dismissed for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5).  Without valid

service of process, the court does not obtain personal jurisdiction over a defendant.  <u>See</u>

<u>generally</u> <u>Omni Capital Int'l v. Rudolf Wolff & Co.</u>, 484 U.S. 97, 104 (1987.  If the court does

not have personal jurisdiction over the defendant, the action must be dismissed. <u>See</u> Fed.R.Civ.P.

12(b)(2); <u>Laborers Local 17 Health and Ben. Fund v. Phillip Morris, Inc.</u>, 26 F.Supp.2d 593, 597

(S.D.N.Y.1998). In this case, it is undisputed that Plaintiff did not effectuate service on

Defendant The Administrator of the Estate of Arthur Zimmer. Plaintiff failed to file an Affidavit

of Service as and for Defendant The Administrator of the Estate of Arthur Zimmer.

   Plaintiff attempts to circumvent his obligations to effectuate service with the application

of Federal Rule of Civil Procedure 25 and an attempt to argue that he may seek leave to

substitute Defendant The Administrator of the Estate of Arthur Zimmer. However, Rule 25 is

inapplicable in this case.

F.R.C.P. § 25

   (a) Death.

10

(1) Substitution if the Claim Is Not Extinguished. If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Rule 25(a)(1) does not apply in this case because the Plaintiff sued the Administrator of the Estate of Arthur Zimmer, not Arthur Zimmer. Rule 25(a)(1) applies when an action in commenced against a party and in the course of the litigation, that party dies or his death is learned of during the pendency the action. Yonofsky v. Wenick, 362 F.Supp. 1005 (S.D.N.Y. 1973); Rende v. Kay, 415 F.2d 983 (D.C.Cir.1969); Kirnisant v. City of New York, 225 F.R.D. 422 (E.D.N.Y. 2005). Thereafter, pursuant to Rule 25(a)(1), the Plaintiff may substitute a party within 90 days after service of a statement noting the death of the party. F.R.C.P. 25(a)(1). The time period in which a party must make a motion for substitution under Rule 25(a)(1) begins to run upon written "suggestion of death" by another party. In this case, the Plaintiff was informed of Arthur Zimmer's death before bringing the Second Amended Compliant and brought this action against the Administrator of the Estate of Arthur Zimmer. Substitution pursuant to Rule 25 of the Federal Rules of Civil Procedure does not apply to the facts of this case and therefore cannot be used to extend Plaintiff's time to effectuate service.

**B. *Plaintiff's Failure to Serve Notice of The Commencement of This Lawsuit Against The Estate of Arthur Zimmer Pursuant to The New York State Surrogate's Court Procedure Act Bars Any Claims Against The Estate***

The Second Amended Complaint fails to confer jurisdiction over the newly added defendant The Administrator of the Estate of Arthur Zimmer for failure to serve a Notice of Claim on the beneficiary of the Estate of Arthur Zimmer. The Plaintiff attempts to defeat this argument and defend his failure to serve notice on the decedent's estate by arguing that a Notice of Claim is not required to be served prior to the commencement of a § 1983 claim, citing

Kreutzberg v. County of Suffolk, 4 CV 3835 (JS)(WDW), 2006 WL 3370351 (E.D.N.Y. Nov. 20, 2006), Ahern v. Neve, 285 F.Supp.2d 317, 321 (E.D.N.Y. 2003) and Horvath v. Daniel, 04 CV 9207 (WCC), 2006 WL 47683 (S.D.N.Y. Jan. 9, 2006). The cases cited by Plaintiff in his opposition papers do not involve actions commenced against an estate or a beneficiary or administrator of an estate.

As more fully articulated in the Village Defendant's moving papers, pursuant to § 201(3) of the New York State Surrogate's Court Procedure Act ("SCPA"), New York State surrogate's courts retain exclusive jurisdiction over estate administration. Carvel v. Godley, 41 F.Supp.2d 476 (S.D.N.Y. 1999)(This Court understands that the Surrogate of Westchester County has "full and complete general jurisdiction in law and equity to administer justice in all matters relating to estates and the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any action or proceeding, or between any party and any other person having any claim or interest therein, over whom jurisdiction has been obtained as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires." New York Surrogate's Court Procedure Act § 201, ¶ 3.

"It has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." Paskowski v. Paskowski, 361 F. Supp. 981, 982 (E.D.N.Y. 1973).

The New York Surrogate's Court Procedure Act dictates the proper procedure for bringing any federal claims against estates and affairs of decedents and therefore, Plaintiff's claims against the Administrator of the Estate of Arthur Zimmer are governed by same. Section 1802 of the New York Surrogate's Court Procedure Act requires that prior to the commencement of any lawsuit against an estate, a claimant must file notice of its claim "within seven months from the date of issue of letters"[1] to the estate fiduciary (i.e., the executor or administrator).

Plaintiff also attempts to defend his failure to comply with the notice requirements of the New York State Surrogate's Court Procedure Act by asserting that the Village Defendants did not know whether an estate was administered as and for Arthur Zimmer and if so, whether that estate was still open and whom the administrator is. Plaintiff erroneously asserts that the Village Defendants' lack of knowledge as to whether the issuance of letters of administration were issued for any estate on behalf of Arthur Zimmer is "cause to reject Freeport defendants' Point II." See, Memorandum in Opp. at page 5. The Plaintiffs' attempt to shift the burden on the Village Defendants to obtain and provide information to the Plaintiff as to the status of a deceased individual whom the Plaintiff wishes to bring a lawsuit against is flat out wrong. It seems the Plaintiff expected the Village Defendants to inform him within the statutory period following the death of Arthur Zimmer of his death in anticipation that the Plaintiff would wish to bring a lawsuit against him in connection with this action and for failure to do so, Plaintiff is relieved of his obligation to follow the procedure set forth under the New York State Surrogate's Court Procedure Act. The argument that the Defendants in this action are obligated to assist the

---

[1]   Letters testamentary/letters of administration give the estate fiduciary (executor/executrix or administrator/administratrix) the authority to distribute assets under the will or laws of intestacy (*see* SCPA §§ 1002, 1411).

13

Plaintiff in commencing a proper action and in crafting a proper complaint is a theme the Plaintiff has attempted to set forth throughout this litigation.

## <u>POINT VI</u>
### PLAINTIFF FAILS TO REBUT THE PRESUMPTION THAT THE VILLAGE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Plaintiff has not refuted the presumption that the Village Defendants are entitled to qualified immunity for the claims brought against them.  Plaintiff's opposition fails to refute the presumption that the Village Defendants acted in an objectively reasonable manner in its role in securing the lawful arrest of Plaintiff, thus shielding the Village Defendants, as government officials performing discretionary duties, from liability for civil damages. <u>See</u>, <u>Savino v. City of New York</u>, 331 F.3d 63, 75–76 (2d Cir. 2003) (<u>citing</u> <u>Mandell v. Cty. of Suffolk</u>, 316 F.3d 368, 385 (2d Cir. 2003); <u>Dzwonczyk v. Syracuse City Police Dept.</u>, 710 F. Supp. 2d 248 at 264 (N.D.N.Y. 2008) (<u>quoting</u> <u>United States v. Valentine</u>, 539 F.3d 88, 93 (2d Cir. 2008).

The Second Amended Complaint alleges that on December 17, 1994, Plaintiff was arrested and brought to the Nassau County Homicide squad and was interrogated. Compl,. ¶ 66. As previously stated at different stages of this action, Plaintiff was arrested on December 17, 994 for unrelated drug charges, specifically, for criminal sale of a controlled substance in the fifth degree, criminal sale of a controlled substance in the third degree, and criminal possession of a controlled substance in the third degree. However, nowhere in the Second Amended Complaint or in Plaintiff's opposition papers, does Plaintiff claim that the arresting officers, did not have probable cause to arrest Plaintiff for the drug sale offense. Plaintiff fails to set forth any viable claims of any further involvement of the Freeport officers in connection with the homicide charges being brought against Jackson.

14

In fact, as stated herein, the Village Defendants were not involved whatsoever in charging Plaintiff with the murder of Steven Jason, or with any part of the prosecution thereafter. Accordingly, the Plaintiff fails to rebut the presumption that the Village Defendants acted "objectively reasonably" and that there was "arguable" probable cause to make the arrest for the drug sale offense, and thus that they are entitled to qualified immunity. See, Mandell v. Cty. of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003).

## CONCLUSION

For the foregoing reasons, the Village Defendants respectfully request that this Court dismiss Plaintiff's Second Amended Complaint in its entirety, together with such other relief as this Court deems just, proper and equitable.

Dated:        Uniondale, New York
              June 1, 2020

                                        HARRIS BEACH PLLC
                                        *Attorneys for the Village Defendants*

                                        s/ *Keith M. Corbett*
                                        Keith M. Corbett, Esq.
                                        Stephanie L. Tanzi, Esq.
                                        The OMNI
                                        333 Earle Ovington Blvd., Suite 901
                                        Uniondale, New York 11553
                                        (516) 880-8484

15