UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------- x

JOSEPH JACKSON,                                   :    Docket No.

                                           :    18-CV-3007 (JS)(AKT)

                          Plaintiff,          :

                                           :

                -against-                   :

                                           :

NASSAU COUNTY; THE INCORPORATED VILLAGE   :
OF FREEPORT; DETECTIVE ROBERT DEMPSEY;      :
DETECTIVE GARY ABBONDANDELO; DETECTIVE    :
JOHN M. HOLLAND; DETECTIVE MICHAEL HERTS;   :
DETECTIVE MARTIN ALGER; POLICE OFFICER       :
ROBERT MELENDEZ, DETECTIVE WALTER         :
SWENSON, DETECTIVE ANTHONY KOSIER;         :
DETECTIVE SERGEANT DAN SEVERIN; DORA      :
MULLEN, AS ADMINISTRATOR OF THE ESTATE OF   :
JERL MULLEN; JANE DOE, AS ADMINISTRATOR OF   :
THE ESTATE OF ARTHUR ZIMMER, and JOHN and    :
JANE DOE 1 through 20,                          :

                                           :

                           Defendants.        :

----------------------------------------------------------------------- x

## COUNTY DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND-AMENDED COMPLAINT AND MOTION TO STRIKE EXHIBITS

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for County Defendants
1133 Westchester Avenue
White Plains, NY  10604
(914) 323-7000

8297873v.1

# <u>TABLE OF CONTENTS</u>

Page

Table of Authorities ........................................................................................................... iii

Introduction ...................................................................................................................... 1

Argument ......................................................................................................................... 1

POINT I     THE SECOND-AMENDED COMPLAINT VIOLATES RULE 8(a), RULE 10(c) AND RULE 12(f) OF THE FEDERAL RULES OF CIVIL PROCEDURE ............................................................... 1

POINT II     THE SECOND-AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE CERTAIN CLAIMS ............................................................... 2

     A.     The Malicious Prosecution Claims .................................................. 2

     B.     Plaintiff Does Not Plausibly Allege the Participation of Det. Severin or Det. Alger ...................................................................... 6

     C.     Plaintiff Does Not Plausibly Allege a Coercion Claim against Det. Kosier ...................................................................................... 7

     D.     Plaintiff does not Plausibly Allege a Supervisory Liability Claim ................................................................................................ 8

     E.     Plaintiff Does Not Allege a Plausible *Monell* Claim ...................... 9

     F.     The Common-Law False Imprisonment Claim Should be Dismissed ........................................................................................ 9

     G.     The Claim For Intentional or Negligent Infliction of Emotional Distress Fails .............................................................................. 10

     H.     The *Brady* Violation Claim Should be Dismissed ........................ 10

     I.     Plaintiff's Prolonged Detention Claim Fails ................................. 12

     J.     The Failure to Intervene Claim Fails ............................................ 13

POINT III     THE SECOND-AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AS AGAINST THE ESTATE OF JERL MULLEN .............................................................................. 13

     A.     There was no Waiver Because as Plaintiff's Substitution Motion was Improper .................................................................. 13

-i-

B.    Plaintiff's Choice of Law Argument is Incorrect and Irrelevant .. 16

POINT IV    PLAINTIFF'S PROCEDURALLY DEFECTIVE APPLICATION TO DISQUALIFY WILSON ELSER SHOULD BE REJECTED ................. 18

Conclusion ................................................................................................................... 20

8297065v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angevin v. City of New York,*
  204 F. Supp. 3d 469 (E.D.N.Y. 2016) ..................................................................... 10

*Astoria Fed. Mortg. Corp. v. Pellicane,*
  78 A.D.3d 622 (2d Dep't 2010) .............................................................................. 17

*AXA Marine & Aviation Inx. (UK) v. Seajet Indus.,*
  84 F.3d 622 (2d Cir. 1996) .................................................................................... 11

*Bachorik v. Allied Control Co.,*
  290 N.Y.S.2d 70 (Sup. Ct. N.Y. Cnty. 1968) ......................................................... 17

*Baez v. Hennessy,*
  853 F.2d 73 (2d Cir. 1988) .................................................................................... 11

*Bellamy v. City of New York,*
  914 F.3d 727 (2d Cir. 2019) ................................................................................. 6, 7

*Boone Assocs., L.P v. Oaster,*
  257 A.D.2d 370 (1st Dep't 1999) ........................................................................... 17

*Boyd v. Sandling,*
  210 N.C. App. 455 (2011) ..................................................................................... 15

*Bruno v. Cunningham,*
  2004 U.S. Dist. LEXIS 20402 (S.D.N.Y. Oct. 8, 2004) ........................................... 8

*Buccoleri v. Gangemi,*
  2019 U.S. Dist. LEXIS 20943 (E.D.N.Y. Feb 8, 2019).......................................... 14

*Carson v. Lewis,*
  35 F. Supp. 2d 250 (E.D.N.Y. 1999) ....................................................................... 6

*Crews v. County of Nassau,*
  996 F. Supp. 2d 186 (E.D.N.Y. 2014) ...................................................................... 2

*Crosson v. Conlee,*
  745 F.2d 896 (4th Cir. 1984) ................................................................................. 17

*Daughtry v. New York,*
  2015 U.S. Dist. LEXIS 68627 (E.D.N.Y. Feb. 23, 2015)........................................ 10

8297065v.1

*Donohue v. CBS Corp.,*
    2018 U.S. Dist. LEXIS 60314 (S.D.N.Y. Apr. 6, 2018).........................................................12

*Dukes v. City of New York,*
    879 F. Supp. 335, at n.2 (S.D.N.Y. March 7, 1995) .................................................................12

*Dunton v. County of Suffolk,*
    729 F.2d 903 (2d Cir. 1984) .....................................................................................................19

*Gadsden v. City of New York,*
    2017 U.S. Dist. LEXIS 190129 (E.D.N.Y. Sept. 15, 2017) .................................................3, 4

*Garcia v. City of New York,*
    2009 U.S. Dist. LEXIS 7870 (E.D.N.Y. Feb. 4, 2009)............................................................17

*Gaslow v. Phillips Nizer Benjamin Krim & Ballon, LLP,*
    286 A.D.2d 703 (2nd Dept. 2001) ...........................................................................................17

*Graham v. Henderson,*
    224 F.R.D. 59 (N.D.N.Y. 2004) ...............................................................................................14

*Gross v. Griffin,*
    800 F. Supp. 2d 293 (D. Me. 2011) ..........................................................................................17

*Guerrero v. City of New York,*
    2017 U.S. Dist. LEXIS 78343 (S.D.N.Y. May 23, 2017) ........................................................13

*Gusler v. City of Long Beach,*
    2015 U.S. Dist. LEXIS 79277 (E.D.N.Y. June 18, 2015) ........................................................17

*Hoyos v. City of New York,*
    999 F.Supp.2d 375 (E.D.N.Y. 2013) ...............................................................................2, 4, 5, 6

*Hygh v. Jacobs,*
    961 F.2d 359 (2d Cir. 1992) .....................................................................................................12

*Jenkins v. City of New York,*
    478 F.3d 76 (2d Cir. 2007) .........................................................................................................3

*Jocks v. Tavernier,*
    316 F.3d 128 (2d Cir. 2003) .......................................................................................................3

*Keith v. City of New York,*
    641 Fed. Appx. 63 (2d Cir. 2016).............................................................................................6

*Kogut v. County of Nassau,*
    06-CV-6695 (JS)........................................................................................................................9

-iv-

*Mercado v. City of New York*,
    2010 U.S. Dist. LEXIS 103635 (S.D.N.Y. Sept. 2010) ........................................................ 20

*Morse v. Spitzer*,
    2012 U.S. Dist. LEXIS 110241 (E.D.N.Y. Aug. 3, 2012) ................................................. 2, 3, 4

*Naples v. Stefanelli*,
    2015 U.S. Dist. LEXIS 16251 (E.D.N.Y. Feb. 7, 2015) .......................................................... 12

*Newton v. City of New York*,
    566 F. Supp. 2d 256 (S.D.N.Y. 2008) ..................................................................................... 10

*Oquendo v. City of New York*,
    2017 U.S. Dist. LEXIS 223189 (E.D.N.Y. Nov. 15, 2017) ................................................... 2, 5

*Pateman v. City of White Plains*,
    2020 U.S. Dist. LEXIS 48191 (S.D.N.Y. March 19, 2020) ..................................................... 8

*Powell v. Murphy*,
    593 Fed. Appx. 25 (2d Cir. 2014) ............................................................................................. 6

*Ramos v. City of New York*,
    285 A.D.2d 284 (1st Dep't 2001) ............................................................................................ 11

*Restivo v. County of Nassau*,
    06-CV-6720 (JS) ........................................................................................................................ 9

*Ricciuti v. New York City Transit. Auth.*,
    124 F.3d 123 (2d Cir. 1997) ...................................................................................................... 3

*Richardson v. City of New York*,
    2006 U.S. Dist. LEXIS 69577 (E.D.N.Y. Sept. 27, 2006) ........................................................ 3

*Russo v. City of Bridgeport*,
    479 F.3d 196 (2d Cir. 2007) .................................................................................................... 12

*Torres v. City of New York*,
    2017 U.S. Dist. LEXIS 158883 (E.D.N.Y. Sept. 27, 2017) ............................................. 4, 5, 6

*United States v. Macaluso*,
    2018 U.S. Dist. LEXIS 9833 (E.D.N.Y. Jan. 22, 2018) ........................................................... 3

*United States v. Nolan*,
    956 F.3d 71 (2d Cir. 2020) ........................................................................................................ 2

**Statutes**

New York Estates, Powers & Trusts Law § 1-2.13 .................................................................... 16

8297065v.1

N.Y. E.P.T.L. § 3-5.1(b)(2) .................................................................................................. 17

N.Y. Surrogates Court Procedures Act §§ 703, 720 ..................................................... 16

N.Y.C.P.L. § 1.20(1) ............................................................................................................ 14

N.Y.C.P.L. § 440 ........................................................................................................... 14, 23

North Carolina General Statute § 30-15 ...................................................................... 15

**Other Authorities**

1A Wigmore on Evidence § 26 .............................................................................................. 3

6 Moore's Federal Practice - Civil § 25.10 (2020) ......................................................... 15

6 Moore's Federal Practice - Civil § 25.12 (2020) .................................................... 14, 15

**Rules**

Local Rule 6.1 ......................................................................................................................... 18

## Introduction

The County Defendants[1] respectfully submit this reply memorandum of law in support of their motion to dismiss plaintiff's second-amended complaint and, in the alternative, motion to strike certain exhibits that plaintiff proposes to annex to the second-amended complaint.

## Argument

### POINT I   THE SECOND-AMENDED COMPLAINT VIOLATES RULE 8(a), RULE 10(c) AND RULE 12(f) OF THE FEDERAL RULES OF CIVIL PROCEDURE

In their main brief, the County Defendants demonstrated that plaintiff's second-amended complaint, taken together with all 56 of the proposed exhibits, violates Fed. R. Civ. P. 8(a).  *See* Main Br. at Point I.  Likewise, the County Defendants demonstrated that the vast majority of the proposed exhibits violates Rule 10(c) and/or 12(f) of the Federal Rules.  *Id.* at Point II.  Plaintiff does not oppose these arguments.  In fact, plaintiff takes the position that he "never sought to file exhibits with the Second-Amended Complaint," that the parties "never discussed motion practice" with respect to the proposed exhibits, and that he will "gladly remove[] the exhibit list and references."  Opp. Mem. at 8.[2]

As plaintiff does not oppose dismissal of his second-amended complaint in its current form (*i.e.,* with the exhibits included), the County Defendant's motion should be granted. Plaintiff should be compelled to file a third-amended complaint without any of the exhibits listed in paragraph 20, and consistent with the Court's rulings on the other aspects of the County Defendants' motion to dismiss, as well as the Village Defendants' motion to dismiss.

---

[1]  The County Defendants shall refer to Nassau County, Det. Robert Dempsey, Det. Gary Abbondelo, Det. John M. Holland, Det. Michael Herts, Det. Martin Alger, Det. Walter Swenson, Detective Anthony Kosier, Det. Sgt. Dan Severin and Dora Mullen, as Administrator of the Estate of Jerl Mullen.

[2]  Motion practice with respect to the 56 exhibits listed and linked to plaintiff's second-amended complaint was, in fact, discussed and reduced to a stipulation, So-Ordered by this Court.  D.E. 277-3, and Docket Entry dated April 1, 2020.  The Stipulation and Order provides, in relevant part, that "all parties reserve all rights with respect to whether the 56 exhibits listed in paragraph 20 of the proposed second-amended complaint may properly be attached to the complaint and/or whether such exhibits may be publicly filed."  *Id.*

**POINT II     THE SECOND-AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE CERTAIN CLAIMS**

A.        <u>The Malicious Prosecution Claims</u>

As demonstrated in the main brief, even where, as alleged by plaintiff herein, a "malicious prosecution is based on fabricated evidence, 'the existence of probable cause *independent* of the fabricated evidence is a defense to that claim.' 'To hold otherwise would untether the malicious prosecution claim from its Fourth Amendment roots.'" *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 390 (E.D.N.Y. 2013) (emphasis added), quoting *Morse v. Spitzer*, 2012 U.S. Dist. LEXIS 110241 (E.D.N.Y. Aug. 3, 2012). Here, the statements, identifications and testimony of Ms. Witherspoon represent an independent basis of probable cause, and the malicious prosecution claims should therefore be dismissed.

In opposition, plaintiff concedes that the proposition discussed in *Hoyos* is "uncontroversial." Opp. Mem. at 21. He instead offers a laundry list of arguments, supported by endless string cites of essentially inapplicable cases, all of which, to one degree or another, attempt to cast doubt on Ms. Witherspoon's evidence. None of these arguments is persuasive.

Thus, at page 12 of his opposition, plaintiff suggests that his malicious prosecution claim should survive because in 2020 the Second Circuit stated that eyewitness identifications are "notoriously prone to error." *United States v. Nolan,* 956 F.3d 71, 75 (2d Cir. 2020). But the *Nolan* decision cites research published in 2014, which did not exist when plaintiff was being prosecuted for the 1994 murder of Mr. Jason. Moreover, *Noland* does not overturn the multitude of decisions holding that an eyewitness identification, absent evidence to question veracity, is sufficient to establish probable cause. *E.g., Crews v. County of Nassau,* 996 F. Supp. 2d 186, 205 (E.D.N.Y. 2014).

Second, at page 13 of his opposition, plaintiff argues that Ms. Witherspoon should be

disregarded because she did not actually see the muzzle flash of the gun.  Plaintiff relies on *Jenkins v. City of New York,* 478 F.3d 76 (2d Cir. 2007), but that reliance is misplaced.  *Jenkins* merely stands for the proposition that probable cause cannot be based on a generalized description.  *Jenkins* is inapplicable here because plaintiff was not arrested on the basis of Witherspoon's March 20, 1994 statements, but on the basis of her photo-pack identification.  Also, the fact that Witherspoon did not have eyes on the shooter at the moment he fired – because she sensibly turned and ran the other way after seeing plaintiff aim a gun directly at her friend -- does not make her identification any less reliable.  Circumstantial evidence can be just as strong as direct evidence under such circumstances.  *United States v. Macaluso,* 2018 U.S. Dist. LEXIS 9833, at *5 (E.D.N.Y. Jan. 22, 2018) (citing 1A Wigmore on Evid. §26 at p.961).

Third, at pages 13-17 of the opposition, plaintiff argues that Ms. Witherspoon's evidence cannot form a basis for probable cause because certain of the individual defendants are alleged to have withheld other exculpatory evidence and fabricated other incriminating evidence.  This argument is incorrect.  Plaintiff relies primarily on *Richardson v. City of New York,* 2006 U.S. Dist. LEXIS 69577 (E.D.N.Y. Sept. 27, 2006), in which the district court offered an analysis of two second circuit cases, *Ricciuti v. New York City Transit. Auth.,* 124 F.3d 123 (2d Cir. 1997), and *Jocks v. Tavernier,* 316 F.3d 128 (2d Cir. 2003), and concluded that if a law-enforcement officer "fabricated material evidence against a suspect and forwarded it to prosecutors . . . the existence of probable cause based on non-fabricated evidence ceases to be a defense for the fabricator."  *Richardson,* 2006 U.S. Dist. LEXIS 69577, at *21.

But later-decided cases from this District have refused to follow *Richardson* because to do so "would untether the malicious prosecution claim from its Fourth Amendment roots." *Morse v. Spitzer,* 2012 U.S. Dist. LEXIS 110241, at *11 (E.D.N.Y. Aug. 2, 2012); *see Gadsden*

*v. City of New York,* 2017 U.S. Dist. LEXIS 190129, at *10 (E.D.N.Y. Sept. 15, 2017); *Hoyos v. City of New York,* 999 F. Supp. 2d 375, (E.D.N.Y. 2013) (following *Morse v. Spitzer); Torres v. City of New York,* 2017 U.S. Dist. LEXIS 158883, at *11 (E.D.N.Y. Sept. 27, 2017) (same).

Notably, in *Richardson,* the evidence of plaintiff's guilt, based on observations of police officers, was alleged to have been faked, and hence there was no independent basis for probable cause. Here, by contrast, the evidence forming the independent basis for probable cause is the sworn testimony and identification of a lay person, Ms. Witherspoon. Where, as here, there is no allegation that the defendants fabricated that evidence,[3] this independent basis for probable cause defeats the malicious prosecution claim.

Fourth, at pages 17-20 of the opposition, plaintiff raises a hodgepodge of arguments, none of which are successful, attempting generally to undermine the credibility of Ms. Witherspoon's testimony. Specifically, plaintiff argues that Ms. Witherspoon's account should be questioned because: (i) other members of the Nassau County Police Department were accused of wrongdoing during the same era, *see* Opp. Mem. at 17; (ii) Assistant District Attorney Anania, who represented the People of the State of New York, allegedly argued that Ms. Witherspoon's testimony is contradicted by Montes and Larrea, *id.* at 17; (iii) the allegedly suppressed evidence (the Montes and Larrea statements, the alleged 911 call, the Valdez Note and the Zimmer-Baldwin recording) would have changed the outcome of the criminal trial, *id.* at 17-19; and (iv) the individual defendants' conduct in allegedly suppressing and fabricating evidence should have given them reason to doubt Ms. Witherspoon's statements *Id.* at 19-20. However, each of these

---

[3] Plaintiff alleges that Dets. Abbondandelo, Dempsey and Mullen corrupted the account of Ms. Witherspoon to suggest that she had been the sole eyewitness and had identified plaintiff as the perpetrator. *See* SAC (Ex. G), at ¶46. But Ms. Witherspoon's statements only describe what she saw, she does not state or imply that there were no other persons in the vicinity; and her identification of plaintiff was based on her actually being on the scene, seeing the shooter, and then later identifying plaintiff as the shooter. Plaintiff's conclusory allegation should be disregarded.

-4-

8297873v.1

arguments, to one extent or another, conflates a malicious prosecution claim, grounded on the Fourth Amendment, and a fair trial claim grounded in the Fourteenth Amendment -- *i.e.,* the very doctrinal error identified in Judge Amon's well-reasoned decision in *Morse v. Spitzer.  See Morse,* 2012 U.S. Dist. LEXIS 110241, at *11.  Significantly absent from Plaintiff's attack on Ms. Witherspoon is any suggestion that the individual County Defendants improperly influenced her to identify Plaintiff as the shooter by, for example, preparing an overly suggestive photo array.  Indeed, Plaintiff already challenged the sufficiency of Ms. Witherspoon's identifications at the suppression hearing, and failed.  *See* **Exhibit S**, at 15.

Finally, at pages 20-23 of the opposition, Plaintiff attempts to distinguish the cases relied on by the County Defendants, but these efforts also fail.  As Plaintiff concedes, *Hoyos* stands for the uncontroversial point of law that probable cause, independent of allegations of fabrication, is fatal to a malicious prosecution claim.  In *Hoyos,* the plaintiff attempted to salvage his malicious prosecution claim by arguing, as plaintiff does here, that his prosecution was based on fabricated evidence.  The court rejected the argument because there was evidence, independent of any alleged fabrication, to support probable cause.  999 F. Supp. 2d at 389-390.  So too here.

Contrary to plaintiff's argument, *Oquendo v. City of New York,* 2017 U.S. Dist. LEXIS 223189 (E.D.N.Y. Nov. 15, 2017), was not cited by the County Defendants in an attempt to draw an equivalency between an alleged failure to investigate, and the fabrication of evidence.  Rather, the County Defendants cited footnote 6 of the decision, where the court rejected the argument that false testimony by a defendant was enough to make out a claim for malicious prosecution. The court quoted *Hoyos* for the proposition above, and held, "It is a rule that controls here as well."  *Id.* at *17 n.6.

Likewise, plaintiff attempts to distinguish *Torres v. City of New York,* 2017 U.S. Dist.

LEXIS 158883, at *11 (E.D.N.Y. Sept. 27, 2017), by arguing that the officers there had no reason to doubt the identification and were not engaged in anything other than a bona fide criminal investigation. But, again, the court in *Torres* quoting *Hoyos,* stated "whether or not [the officer] provided false information to the [Kings County] DA . . . is irrelevant as to plaintiffs' malicious prosecution claim because . . . there was independent probable cause to prosecute plaintiffs based solely on the complaining witness." *Torres,* 2017 U.S. Dist. LEXIS 15883, at *12. In sum, contrary to plaintiff's suggestion, the case law fully supports the County Defendants' argument that even where a particular officer is alleged to have been involved in the fabrication of evidence, where there is a basis for probable cause independent of the alleged fabrication, a malicious prosecution claim cannot prevail.[4]

The individual defendants are also entitled to qualified immunity because reasonable officers could disagree as to whether Ms. Witherspoon's evidence would establish probable cause to prosecute plaintiff. *See Keith v. City of New York,* 641 Fed. Appx. 63, 66 (2d Cir. 2016).[5]

B.      Plaintiff Does Not Plausibly Allege the Participation of Det. Severin or Det. Alger

As demonstrated in the main brief, the second-amended complaint does not plausibly allege the personal participation of Det. Severin or Det. Alger in the alleged fabrication of evidence. In opposition, plaintiff relies on *Bellamy v. City of New York,* 914 F.3d 727, 745 (2d Cir. 2019), which states that to plausibly assert a fabrication claim, a plaintiff must allege, *inter*

---

[4] Plaintiff's efforts to distinguish *Powell v. Murphy,* 593 Fed. Appx. 25, 27 (2d Cir. 2014), and *Carson v. Lewis,* 35 F. Supp. 2d 250, 260 (E.D.N.Y. 1999), to cast further doubt on Ms. Witherspoon's identification, also fail. *Powell* and *Carson* stand for the unremarkable proposition that the testimony of an eyewitness can support probable cause to arrest and prosecute. Here, Ms. Witherspoon, an eye-witness, provides an independent basis of probable cause.
[5] Plaintiff argues that qualified immunity is not available where, as here, there are allegations that evidence was fabricated. *See* Opp. Mem. at 31-34. But the County Defendants are not seeking qualified immunity on plaintiff's coercion or fabricated evidence claims. They are entitled to qualified immunity on the malicious prosecution claim because reasonable officers could disagree as to the existence of an independent basis for probable cause.

8297873v.1

*alia,* that the evidence in question was "likely to influence a jury's verdict." *Id.* Here, the only alleged fabrication by Det. Severin is that he allegedly prepared the morning report without reference to Montes or Larrea. A morning report is a preliminary document designed to describe notable developments from the night before. The omission of Montes's and Larrea's names in the morning report, without more, was not likely to influence the jury's decision. This is particularly the case when the existence of both Montes and Larrea, and a summary of their written statements, had been disclosed to Plaintiff's defense attorneys by means of the Freeport Police Report, which was marked as Exhibit 42 at trial.[6] At the very least, Det. Severin would be entitled to qualified immunity on this claim.

With respect to Det. Alger, plaintiff argues that he sufficiently alleged his participation by claiming that he "corruptly coordinated" the accounts of Peddie Jenkins and Skwanitra Witherspoon. SAC (Ex. G), at ¶60. It is not clear what "corruptly coordinated" means, or what Det. Alger is alleged to have done, but plaintiff contradicts himself within a couple of paragraphs by alleging that Peddie's statements and Witherspoon's testimony are "irreconcilably contradictory." *Id.* at ¶63 n.3. Moreover, Det. Alger did not take any of Ms. Witherspoon's statements. *See* Ex. I. In short, this bare conclusory allegation is not sufficient to plausibly allege Det. Alger's participation in any allegedly wrongful conduct. At the least, Det. Alger would be entitled to qualified immunity from a claim that he "corruptly coordinated" two witnesses' accounts where there is no evidence that he had any involvement with one of them.

C.      Plaintiff Does Not Plausibly Allege a Coercion Claim against Det. Kosier

As demonstrated in the main brief, the coercion claim should be dismissed as against Det. Kosier because (i) allegations that Kosier "lied to and coerced" plaintiff are purely conclusory

---

[6]  In fact, while the morning report was marked as a trial exhibit (Ex. 41) for purposes of *Rosario* disclosure, a review of the trial transcript demonstrates that it was not admitted into the evidence.

and need not be credited by this Court; and (ii) even assuming plaintiff was kept uncomfortably cold during Kosier's polygraph examination, the nearly 20-hour gap between the end of the examination and when plaintiff confessed is too lengthy to conclude that temperature conditions in the polygraph room forced plaintiff to confess.  *See Bruno v. Cunningham,* 2004 U.S. Dist. LEXIS 20402, at *37-38 (S.D.N.Y. Oct. 8, 2004).

Plaintiff's opposition ignores this 20-hour gap, and his attempt to distinguish *Bruno* fails because while *Bruno* was a habeas case, the attenuation doctrine discussed and applied there was developed in non-habeas cases and is fully applicable here.  *Bruno* discussed three factors to determine whether prior events carry over to unfairly influence a later confession: (i) the time between the two interrogations, and a change in (ii) the location and/or (iii) identity of the interrogators.  *Bruno,* 2004 U.S. Dist. LEXIS 20402, at *37-38.  Here, 20 hours elapsed, the interrogation leading to his signed confession was in a separate room from the polygraph examination, and Det. Kosior was not involved in the later questioning of plaintiff.  In short, the coercion claim against Det. Kosior should be dismissed.  At the least, Det. Kosior would be entitled to qualified immunity because officers of reasonable competence could disagree as to whether conducting a polygraph examination in a cold room violated any constitutional rights.

D.     Plaintiff does not Plausibly Allege a Supervisory Liability Claim

As demonstrated in the main brief, the Supervisory Liability claim should be dismissed because plaintiff does not assert, beyond a bare conclusory allegation, that Det. Severin actually failed to fulfill any supervisory responsibility.  In opposition, plaintiff argues essentially that Severin should be liable as a supervisor because he was directly involved in the alleged violations.  To that extent, however, the "supervisory liability" claim should be dismissed as duplicative.  *Pateman v. City of White Plains,* 2020 U.S. Dist. LEXIS 48191, at *77 (S.D.N.Y. March 19, 2020).  As discussed, above, Det. Severin is also entitled to qualified immunity.

E.       Plaintiff Does Not Allege a Plausible *Monell* Claim

Plaintiff's argument on *Monell* is that if enough separate plaintiffs make boilerplate

allegations as to the existence of a policy, custom or practice, then other plaintiffs should be able

to point to the "probative force of the similar allegations in those cases" to survive a motion to

dismiss.  Opp. Mem. at 27-28.  This argument is absurd.

Plaintiff rests his *Monell* claim on a comparison between the *Monell* claims alleged in

*Kogut* and *Restivo*.  But as demonstrated in the main brief: (i) *Kogut* ended in a defense verdict,

*see Kogut v. County of Nassau,* 06-CV-6695 (JS), at DE 450; and (ii) the only individual County

Defendant in the instant case who was also named in *Restivo* -- Det. Dempsey -- was dismissed

from the *Restivo* case.  *See Restivo v. County of Nassau,* 06-CV-6720 (JS), at DE 178.

Moreover, as referenced in the February 28, 2014 Joint Pre-Trial Order in *Restivo*, the *Monell*

claim was bifurcated from the remaining claims, and was not tried.  *See id.* at DE 153, at pp 3-4;

*see also* DE 163, at p.12 (referencing bifurcation).  Ultimately, the jury found in favor of

plaintiffs John Restivo and Dennis Halstead against an individual defendant, Det. Volpe, on

claims of denial of the right to a fair trial and malicious prosecution.  *See id.* at DE 198.  There

was no finding of liability against the County, including on the *Monell* claim.  *Id.*  In short,

plaintiff's boilerplate allegations of a policy are not sufficient.

F.       The Common-Law False Imprisonment Claim Should be Dismissed

Plaintiff does not contest that to the extent his false arrest claim is based upon his arrest

on December 17, 1994 on narcotics charges, his guilty plea to those charges is fatal to his claim

for relief.  *See* Opp. Mem. at 28-29.

With respect to plaintiff's arrest in March 1995 on murder charges, the County

Defendants demonstrated that there was probable cause based on Ms. Witherspoon's statements

about the events that occurred on the night of the Jason shooting as well as her identification of

plaintiff from a photo-pack on December 20, 1994.  Plaintiff's attempt to distinguish *Angevin v.*

*City of New York,* 204 F. Supp. 3d 469, 479 (E.D.N.Y. 2016), fails.  The procedural posture of

that case is irrelevant here, as the legal standards defining probable cause are the same regardless

of whether a motion is made under Rule 12(b) or Rule 56.  *Angevin* was cited for the proposition

that eye-witness identification of an assailant from a photo-pack can support probable cause,

which is what occurred here.  *Daughtry v. New York,* 2015 U.S. Dist. LEXIS 68627, at *8-9

(E.D.N.Y. Feb. 23, 2015), was cited and stands for the same proposition.

Finally, plaintiff does not contest that his false arrest claim should be dismissed as

against Det. John M. Holland; Det. Michael Alger; Det. Michael Herts, Det. Kosier Det. Sgt.

Severin and Det. Swenson on grounds of lack of personal participation.

G.      The Claim for Intentional or Negligent Infliction of Emotional Distress Fails

Plaintiff all but admits that his intentional and/or emotional distress claim should fail.  He

attempts to rely on *Newton v. City of New York,* 566 F. Supp. 2d 256 (S.D.N.Y. 2008), but that

case does not apply.  In *Newton,* defendants only moved to dismiss the infliction of emotional

distress claim on grounds that the alleged conduct did not rise to a sufficient level of

"outrageous" behavior.  Although the court held that the plaintiff's allegations met that standard,

*id.* at 281, the *Newton* court was not presented with, and thus never considered, the argument that

public policy bars the state-law claim of infliction of emotional distress.  Hence, for the reasons

cited in the main brief, the infliction of emotional distress claim should be dismissed.

H.      The *Brady* Violation Claim Should be Dismissed

As demonstrated in the main brief, Plaintiff's *Brady* claim should be dismissed because:

(i) Plaintiff cannot meet the suppression element with respect to the Montes and Larrea

Statements; (ii) Larrea's recent deposition testimony casts doubt as to whether he even made a

911 call; and (iii) neither the Swenson Note nor the Zimmer-Baldwin interview is exculpatory. In opposition, Plaintiff ignores these arguments and asserts, instead, that the County Defendants should be judicially estopped from seeking dismissal of the *Brady* claim by reason of the District Attorney's Office motion to vacate his conviction, *see* Opp. Mem. at 4-7, and because the *Brady* argument was waived when the County Defendants did not raise it in moving to dismiss plaintiff's first-amended complaint. *Id.* at p.30. Both arguments fail.

First, the estoppel argument fails because when ADA Anania moved to vacate Plaintiff's judgment of conviction, she did so not as a representative of Nassau County, but of the People of the State of New York. It is well established under New York Law that "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the County." *Baez v. Hennessy,* 853 F.2d 73, 77 (2d Cir. 1988); *see also Ramos v. City of New York,* 285 A.D.2d 284, 302-303 (1st Dep't 2001).

"A party invoking judicial estoppel must show that . . . the party against whom judicial estoppel is being asserted advanced an inconsistent factual position in a prior proceeding." *See AXA Marine & Aviation Inx. (UK) v. Seajet Indus.,* 84 F.3d 622, 628 (2d Cir. 1996). Accordingly, because ADA Anania was acting in her capacity and position as an Assistant District Attorney and performing her prosecutorial function when she filed the CPL 440 motion, it was the People of the State of New York, not the County of Nassau that advanced the legal position that Plaintiff's conviction should be vacated. The County is not bound by ADA Anania's factual positions or her opinions set forth in that motion. *Baez,* 853 F.2d at 77.

Second, Plaintiff's waiver argument fails because this Court did not rule on the County Defendants' motion to dismiss the first-amended complaint, but rather "terminated" the motion and granted plaintiff leave to file a second-amended complaint. *See* Electronic Order, at

-11-

February 26, 2020.  Because the earlier motion was terminated, and not granted or denied, it cannot form the basis of a waiver.  Even where a party withdraws a motion, it is treated as if the motion was never made.  *See Donohue v. CBS Corp.,* 2018 U.S. Dist. LEXIS 60314, at *14-16 (S.D.N.Y. Apr. 6, 2018).

Plaintiff's reliance on *Naples v. Stefanelli,* 2015 U.S. Dist. LEXIS 16251, *13-14 (E.D.N.Y. Feb. 7, 2015), to support his waiver argument is therefore misplaced.  Plaintiff ignores the integral procedural difference that exists here.  In *Naples,* a previous motion to dismiss was fully submitted and ruled on by the Court.  *Id.* at 3-4.  Here, by contrast, the Court has not made a ruling on any motion to dismiss submitted by the Defendants, on any set of allegations.  Therefore, the Defendants have a right to challenge the sufficiency of each and every claim for relief contained in the second-amended complaint, including the *Brady* claim.  For the reasons set forth in the main brief, and as discussed above, the *Brady* claim fails.

I.      Plaintiff's Prolonged Detention Claim Fails

As demonstrated in the main brief, plaintiff's prolonged detention claim is based on a particular case, *Russo v. City of Bridgeport,* 479 F.3d 196 (2d Cir. 2007), and should be judged against the facts of that particular case.  There is simply no comparison between the facts in *Russo,* where the plaintiff spent 200 days in custody while a videotape definitively proving his innocence sat unwatched in a detective's desk drawer, and the impact, if any, of the Montes and Larrea Statements, any 911 call, the Valdez Note and the Zimmer-Baldwin recording on plaintiff's case.  The facts alleged here are not sufficient to establish a prolonged detention claim.[7]

---

[7]  Moreover, the prolonged detention claim recognized in *Russo* is based on the Fourth Amendment's protection against an unreasonable seizure, *i.e.,* a false arrest.  *Russo,* 479 F.3d at 209.  The injury for a false arrest accrues from the moment of arrest until the moment the arrestee is arraigned.  *See Hygh v. Jacobs,* 961 F.2d 359 (2d Cir. 1992); *Dukes v. City of New York,* 879 F. Supp. 335, at n.2 (S.D.N.Y. March 7, 1995).  Here, plaintiff was arrested on March 7, 1995 and was arraigned on March 8, 1995, by Judge Galasso, in Part A, and remanded for a felony

-12-

J.      The Failure to Intervene Claim Fails

As demonstrated in the main brief, plaintiff's unspecified allegation that unidentified defendants failed to intervene cannot withstand a motion to dismiss.  Citing *Guerrero v. City of New York,* 2017 U.S. Dist. LEXIS 78343 (S.D.N.Y. May 23, 2017), plaintiff argues that he is entitled to plead this claim in the alternative.  But in *Guerrero,* the plaintiff alleged that each of the defendant officers was present when the plaintiff was arrested.  *Id.* at *8-9.  Here, by contrast, plaintiff has not, and cannot, allege that each defendant was present, or otherwise involved, during the relevant events underlying his arrest and prosecution.

**POINT III     THE SECOND-AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AS AGAINST THE ESTATE OF JERL MULLEN**

Plaintiff does not dispute that the North Carolina court having jurisdiction over the matter terminated Dora Mullen's appointment as personal representative of the Estate of Jerl Mullen (the "Estate") on May 23, 2016, and thus Ms. Mullen had no authority to act on behalf of the Estate when plaintiff attempted to serve her in October 2019.  Plaintiff does not cite any authority for the proposition that a former personal representative may accept service on behalf of an estate (or be substituted as a party for a decedent).  Nor does plaintiff dispute that, under the North Carolina non-claim statute, his claims against the Estate are barred.  Instead, plaintiff attempts to avoid these arguments by (1) falsely asserting that Dora Mullen was a distributee of the Estate; (2) asserting that North Carolina law is irrelevant; and (3) arguing that Dora Mullen should be barred from raising any arguments because she did not object to a motion to substitute which plaintiff never served on her.  Plaintiff's arguments are meritless and all claims against Dora Mullen and the Estate should be dismissed with prejudice.

A.      There was no Waiver Because Plaintiff's Substitution Motion was Improper

---

examination.  *See* **Exhibit T** (File Jacket).  Hence, any prolonged detention or false arrest claim, assuming they were to survive this motion, would be limited to a period of one day.

8297873v.1

Plaintiff's waiver argument fails for multiple reasons.  First, substitution was improper because it appears plaintiff never served Dora Mullen with his motion to substitute.  Rule 25(a)(3) provides "[a] motion to substitute, together with a notice of hearing, must be served … on nonparties as provided in Rule 4."  *Id*.; *see also* 6 Moore's Federal Practice - Civil § 25.12 (2020).  When a motion to substitute has been improperly granted due to the movant's failure to comply with Rule 25(a)(3), the proper remedy is vacatur of the substitution order.  *See Buccoleri v. Gangemi*, 2019 U.S. Dist. LEXIS 20943, *15-16 (E.D.N.Y. Feb 8, 2019).  Here, plaintiff filed the motion for substitution on August 9, 2019, and it was granted on September 23, 2019.  Dora Mullen was not given notice of this lawsuit until October 23, 2019, DE #240.  Upon receiving notice, Dora Mullen promptly retained counsel, sought to have the clerk's entry of default against her lifted, and filed the instant motion to dismiss.  DE #259, #269, #270.  Accordingly, there was no waiver and the order granting the motion to substitute must be vacated for failure to comply with Rule 25(a)(3).

Second, plaintiff's motion to substitute was improper because Rule 25(a) is inapplicable.  Rule 25(a) applies when a litigant dies during a litigation, not before it is commenced.  *See* 6 Moore's Federal Practice - Civil § 25.10 (2020) (collecting cases).  Here, Jerl Mullen died on January 4, 2015, long before Plaintiff filed this action in May 2018.

Finally, even if Rule 25(a) applied, substitution is not permitted here because Dora Mullen was not, and is not, a "proper party" for substitution.  Proper parties for substitution of a deceased defendant include (1) the successor of the estate, *i.e.,* "a distributee of the decedent's estate if the decedent's estate has been distributed at the time the motion for substitution has been made," as here, or (2) a court-appointed representative of the estate.  *Graham v. Henderson*, 224 F.R.D. 59, 64 (N.D.N.Y. 2004).  A district court has discretion to deny substitution "in the

-14-

exercise of sound discretion if the motion is made long after death and circumstances make it unfair to allow substitution."  6 Moore's Federal Practice - Civil § 25.12.

Dora Mullen ceased to be a personal representative of the Estate in May 2016, and thus is not a proper party under that prong.[8]  Nor is Ms. Mullen a distributee of the Estate, contrary to plaintiff's unsupported assertion.  The final account of the Estate—received from the North Carolina Superior Court --shows that there were no distributees of the Mullen estate.  Ex. P at p.1 (line for Distributions is $0) at p.2 ("Part V Distributions (Inheritance to Heirs)" is blank).  There were no distributees because the Estate did not have any assets to distribute.  Instead, all of the Estate's assets ($54,542.90) were used to pay "Debts and Administrative Expenses."  *Id.* at 1-2.[9] Plaintiff's statement at page 9 of his brief, describing Dora Mullen as "a distributee" is baseless, and clearly refuted by the probate record.

Dora Mullen did receive a partial spousal allowance after her husband's death, Ex. P at page 7 ("Exhibit A"); however, such amount is not a "distribution," which is why it is accounted for as a "debt or expense" of the estate.  *Id;* see also North Carolina General Statute § 30-15 (providing that the statutory allowance "*shall be exempt from any lien, by judgment or execution, acquired against the property of the deceased spouse[.]*") (emphasis added).  Thus, receipt of a spousal allowance is not a distribution, and does not make a surviving spouse a "distributee" or "successor" for purposes of substitution.  *See* 6 Moore's Federal Practice - Civil § 25.12 (2020) (determination of "proper party" is a substantive question determined according to state law). Accordingly, Dora Mullen is not a distributee or personal representative and thus is not a "proper

---

[8] *Boyd v. Sandling*, 210 N.C. App. 455 (2011), cited by plaintiff, does not hold otherwise.  There, the plaintiff notified the executrix of her claims against the estate and the decedent's insurance policy before the estate was closed and the plaintiff later successfully moved the probate court to reopen the estate and re-appoint the executrix. Plaintiff did not notify Dora Mullen of his claim before the estate was closed and has not moved the North Carolina courts to reopen the estate.
[9] *See also* Page 4 of Exhibit P which contains a header "Beneficiaries/Heirs Schedule" and a handwritten note "No funds left to distribute."

party" for substitution under Rule 25(a).

Where the decedent died long before the commencement of suit, the estate was closed years before suit with insufficient assets to make any distributions, and there is no personal representative, substitution is not permissible or appropriate.  Accordingly, there was no "waiver," and this Court should dismiss all claims asserted against Dora Mullen as an Administrator of the Estate, or as a substitute for Jerl Mullen.

B.       Plaintiff's Choice of Law Argument is Incorrect and Irrelevant

Plaintiff's invocation that "New York law . . . governs whether a person is a proper successor or representative of the decedent," Pl. Opp. at 10, is a red herring that does not save his claims.

First, whether New York or North Carolina law is applied, Dora Mullen was not a "personal representative" of the Estate in October 2019, when plaintiff attempted service.  Dora Mullen's appointment as personal representative was terminated on May 23, 2016, along with any authority to act for the Estate.  The result is the same under New York law.  New York Estates, Powers & Trusts Law § 1-2.13 defines "personal representative" as "a person who has received letters to administer the estate of a decedent."  New York law further provides that such letters constitute evidence of authority to act, "until the decree granting them is reversed . . . or the letters are . . . revoked by the court granting them."  N.Y. Surrogates Court Procedures Act §703; *see also id.* § 720 (upon order revoking letters, representative's "powers . . . cease").  Consequently, under New York law, Dora Mullen ceased to be a personal representative of the estate on May 23, 2016, and could not be served as administrator of the estate in October 2019.[10]

---

[10] Moreover, plaintiff's argument is internally inconsistent.  He wishes to rely on the North Carolina court's appointment of Dora Mullen as a personal representative of the Estate in 2015, pursuant to North Carolina law, but ignore the court's order terminating that appointment.  Plaintiff cannot have it both ways.

Additionally, New York law looks to North Carolina to determine whether Dora Mullen is a "distributee" of the estate. Under the choice of law provision of the New York EPTL, the "disposition of personal property, and the manner in which such property devolves when not disposed of by will, are determined by the law of the jurisdiction in which the decedent was domiciled at death." N.Y. E.P.T.L. § 3-5.1(b)(2). Thus, North Carolina law, which provides that there were no distributees of the Mullen estate, controls here.

Finally, the North Carolina nonclaim statute applies to plaintiff's claims against the Estate. New York courts consistently apply the non-claim statutes of other states, including their limitations periods, to preclude claims against non-domiciliary estates. *See, e.g., Astoria Fed. Mortg. Corp. v. Pellicane*, 78 A.D.3d 622, 624 (2d Dep't 2010) (applying Florida's nonclaim statute); *Gaslow v. Phillips Nizer Benjamin Krim & Ballon, LLP*, 286 A.D.2d 703, 705 (2nd Dept. 2001) (same); *Boone Assocs., L.P v. Oaster*, 257 A.D.2d 370 (1st Dep't 1999) (same); *Bachorik v. Allied Control Co.*, 290 N.Y.S.2d 70, 72 (Sup. Ct. N.Y. Cnty. 1968) (applying Connecticut's nonclaim statute). Federal courts similarly apply such statutes. *See Gross v. Griffin*, 800 F. Supp. 2d 293, 302 (D. Me. 2011) *cited in* Def. Mem. at 35.[11]

Neither *Gusler v. City of Long Beach*, 2015 U.S. Dist. LEXIS 79277 (E.D.N.Y. June 18, 2015), nor *Garcia v. City of New York*, 2009 U.S. Dist. LEXIS 7870 (E.D.N.Y. Feb. 4, 2009), cited by plaintiff, concern non-domiciliary decedents; rather, they held that New York law controlled "proper party" status for New York decedents. Also, *Gusler* and *Garcia* denied motions to substitute because neither proposed party was a currently appointed personal representative of the estate, and in *Garcia*, the movant failed to present evidence that the proposed party was a distributee. Here, Dora Mullen has presented evidence that she is not the

---

[11] *See also Crosson v. Conlee*, 745 F.2d 896, 903 (4th Cir. 1984) (Virginia district court had no jurisdiction over claims against Florida estate where claims would be barred by Florida nonclaim statute).

personal representative of the Estate and was not a distributee of the Estate.  Plaintiff has

presented no evidence to the contrary.  The SAC should be dismissed as against Dora Mullen as

Administrator of the Estate of Jerl Mullen.

**POINT IV    PLAINTIFF'S PROCEDURALLY DEFECTIVE APPLICATION TO
DISQUALIFY WILSON ELSER SHOULD BE REJECTED**

Finally, plaintiff argues that Wilson Elser should be disqualified because of "several

apparent conflicts."  Opp. Mem. at 34.  This application is both procedurally defective and fails

on the merits.

Plaintiff did not file a notice of motion or notice of cross-motion seeking Wilson Elser's

disqualification; he has simply sought disqualification in the context of his opposition to the

County Defendants' motion to dismiss.  *See* Opp. Mem. at Point IV.  Plaintiff's application is

therefore procedurally defective, as no motion has been made for such relief.  *See* Local Rules

for the United States District Courts for the Southern and Eastern Districts of New York, Rule

6.1 (a notice of motion, supporting affidavits and memoranda shall be served and filed in support

of "any motion").

Plaintiff's argument also fails on the merits.  Citing interrogatory responses, plaintiff

states that Det. Herts and Det. Holland "cast blame on defendants Abbondandelo and Severin for

failing to disclose" the Montes and Larrea statements, while "Abbondandelo and Severin, in turn,

claim never to have seen" the statements.  Opp. Mem. at 34.  Plaintiff has misrepresented

interrogatory responses provided by these defendants.  Concerning the Montes and Larrea

statements, Det. Herts and Det. Holland state only that they would have handed the statements to

Det. Abbondandelo or Det. Severin on March 20, 1994, shortly after they took them.  *See* Harvis

Decl. Ex. 6, at response 8.  Meanwhile, Det. Abbondandelo and Det. Severin, whose

interrogatory responses are not even attached to plaintiff's motion, do not claim they never saw

the statements; in fact, *they were never asked that question*.  Instead, plaintiff's interrogatory

asks Abbondandelo and Severin whether they "[h]ave ever *spoken* to Glenn Montes or Maurice

Larrea?"  **Exhibit U** (interrogatory responses), at No. 5 (emphasis added).  Det. Abbondandelo

responds that he does "not recall speaking with" either Montes or Larrea.  *Id.*  Det. Severin

responds that he has "no recollection of Maurice Larrea or Glenn Montes."  *Id.* at No. 5.[12]

Therefore, plaintiff's contention that Det. Abbondandelo and Det. Severin swore that they never

saw the statements is contradicted by the very discovery responses that form the basis of his

argument.

Second, plaintiff suggests that the individual officers might wish to distance themselves

by admissions of the County of Nassau with respect to *Brady* violations.  However, as noted

above, when ADA Anania filed the CPL 440 motion she did not do so on behalf of the County,

but rather on behalf of the People of the State of New York.  Hence, the County made no

admissions from which to be distanced.  Third, contrary to plaintiff's assertion, his *Monell*

allegations do not incentivize the County to disclaim the officers' conduct.  In fact, it remains to

be seen whether the *Monell* claim will even survive this motion.  Finally, contrary to plaintiff's

suggestion that Nassau County and the District Attorney's Office are conflicted over the *Brady*

issue, there is no conflict because the position that the failure to disclose Larrea's and Montes's

statements was a *Brady* violation was taken by the People of the State of New York.

*Dunton v. County of Suffolk,* 729 F.2d 903 (2d Cir. 1984), cited by plaintiff, is

inapplicable.  In *Dunton,* a Suffolk County police officer and his wife were attending a

retirement party being held for one of the wife's colleagues.  The officer allegedly beat up the

---

[12]  Plaintiff also suggests that Det. Severin is "particularly exposed" to a potential conflict with other individual defendants because he did not reference Montes or Larrea in the morning report.  But this argument, which is based simply on a report that is not signed by Det. Severin, is premature without more information as to the actual circumstances of the drafting of the report.

plaintiff after observing him making advances on his wife.  In defending the case, the Suffolk

County Attorney's Office represented both the County and the officer.  However, the County

Attorney's Office took the position at trial that the officer had not acted as a police officer, but

rather as an "irate husband."  *Id.* at 907.  The Second Circuit held that this created a conflict of

interest.  No such conflict exists, or has been demonstrated, here.  *Mercado v. City of New York,*

2010 U.S. Dist. LEXIS 103635 (S.D.N.Y. Sept. 2010), is similarly inapplicable because as noted

above, the individual County Defendants have not taken positions that are in conflict with each

other.  In short, there are no valid grounds to disqualify Wilson Elser from representing the

County Defendants in this action.

**Conclusion**

The County Defendants' motion should be granted in its entirety.  Plaintiff's purported

"motion" to disqualify should be denied.

Dated: White Plains, New York
      June 5, 2020

                Respectfully submitted,

                WILSON, ELSER, MOSKOWITZ,
                EDELMAN & DICKER LLP
                Attorneys for County Defendants

                Lalit K. Loomba

                _____
                Peter A. Meisels
                Janine Mastellone
                Lalit K. Loomba

                1133 Westchester Avenue
                White Plains, NY 10604
                (914) 323-7000
                Our File No.  12473.00014