```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
        JOSEPH JACKSON


                        Plaintiff,           ORDER
              -against-                      CV 18-3007 (JS)(AYS)



        NASSAU COUNTY, ET AL.,




                        Defendants.
----------------------------------------------------------X
```

**ANNE Y. SHIELDS, United States Magistrate Judge:**

Plaintiff Joseph Jackson ("Plaintiff" or "Jackson") served more than twenty years in prison for the 1994 murder of Steven Jason. His conviction was vacated in 2018 after the Nassau County District Attorney's Conviction Integrity Unit (the "CIU") investigated Jackson's claim of innocence and later moved to vacate his sentence.

In May of 2018, shortly after his release from prison, Jackson commenced this lawsuit alleging violation of his civil rights in connection with his vacated murder conviction. The presently operative pleading is Plaintiff's third amended complaint (the "TAC"), appearing as Docket Entry ("DE") [339] herein. The TAC was filed after the District Court ruled on several motions to dismiss. See Jackson v. Nassau Cty., 2021 WL 3207168, *1 (E.D.N.Y. July 28, 2021). Briefly, the TAC alleges claims of malicious prosecution, fabrication and withholding of evidence, forcing an unconstitutional confession, failure to train and supervise, conspiracy, suppression of evidence, and state law claims of malicious prosecution and false imprisonment.

1

Named as Defendants in the various counts of the TAC are the County of Nassau and eight Nassau County police officers who were involved in Plaintiff's accusation and conviction of murder.

Presently before this Court is Plaintiff's motion to compel production of documents as to which Defendants assert work product privilege. For the reasons set forth below, all claims of privilege are rejected, the motion is granted and Defendants are ordered to produce all documents at issue.

## BACKGROUND

I.  Procedural Background of the Motion

The present motion to compel is addressed to documents set forth in Defendants' revised privilege log (the "Documents"). See DE [341]. The motion was briefed before the previously assigned Magistrate Judge, see DE [335], and the Documents have been provided to this Court for in camera inspection. On March 8, 2022 this Court held a conference to set discovery deadlines and to discuss the motion. During that conference defense counsel clarified the identity of certain individuals referred to in the Documents and confirmed that a certain document was referred to twice. In a letter submitted following the March 8, 2022 conference the County clarified the identity of an individual referred to in one of the Documents. The Court is confident that it now understands the Documents and the context in which each was created.

II.  Facts

The Court outlines here only the facts necessary to comprehend the discoverability of the Documents and to provide a proper backdrop to determine the claims of privilege. As noted, Plaintiff's murder conviction was vacated upon request of the CIU of the office of the Nassau County District Attorney. The CIU investigation of Plaintiff's conviction was undertaken in

2017, at Plaintiff's request. Jackson, 2021 WL 3207168, *4. As the name implies, the CIU investigates the "integrity" of past convictions. Defendants did not provide any documents setting forth a mission statement with respect to the CIU. In the context of the present case it is clear to the Court that the CIU is charged with determining whether a person was properly charged and/or convicted. With the exception of one document generated in 1997, all of the Documents were generated during the course of the CIU investigation.

Defendants claim that the Documents are protected by the attorney work product privilege. Specifically, they claim that all were created in anticipation of litigation in that they were created, at least in part, to determine whether to re-try Jackson on the charge of murder. All Documents are also said to contain some type of legal analysis. The revised privilege log, which is the subject of the present motion, groups the Documents into two categories: those Defendants argue contain "*express* legal analysis" (emphasis added; provided to the Court as Exhibit A for in camera review) and those described to "*reflect* legal analysis" (emphasis added; provided to the Court as Exhibit B for in camera review). The Documents, identified by Bates Stamp numbers, are described by the Court below.

III.    The Documents

    A.    Documents Alleged to Contain 'Express" Legal Analysis

    1.    Bates Nos. 2843-2853; 2899 and 3438-3448:

"Memorandum on the Case People v. Joseph Jackson" (the "Anania Memo")

This document is an eleven page memorandum. It was authored by Sheryl Anania, Esq., ("Anania"). Anania is an Assistant District Attorney within the CIU who investigated Plaintiff's conviction. The Court refers to this document as the "Anania Memo." The Anania Memo also appears as the document bearing Bates Nos. 2899 (first page only) and 3438-3448 (entire

document). Bates No. 2843 and 2899 also contain handwritten notes (presumably notes written by Anania). The handwritten notes are barely legible. As described below, the Anania Memo is divided into subsections.

First, the Anania Memo contains background information about Jackson's conviction, including reference to his letter requesting that the CIU review his case. The first six pages of the Anania Memo detail the facts of the Steven Jason murder case and evidence introduced at Jackson's trial. It is clear that this section of the Anania Memo is nothing more than a summary of the pretrial and trial proceedings at Jackson's trial, which Anania prepared after reading the file and transcripts. It contains no legal analysis as to the prosecution's case or any retrial; it merely recounts the evidence. Thus, the Anania Memo states that the prosecution introduced the testimonies of Skwanitra Witherspoon ("Witherspoon") and Peddie Jackson and summarizes their testimonies. The Anania Memo also notes that Jackson's confession (which in this action he alleges was coerced) was introduced at trial. The Anania Memo refers to two other witnesses to the murder of Steven Jason. It appears that these witnesses, Glenn Montes ("Montes") and Maurice Larrea ("Larrea") were not disclosed to Jackson and were not referred to at his trial.

After outlining the facts of the trial, the Anania Memo recounts the 2017 interviews of several witnesses and summarizes their statements. During her investigation, Anania interviewed Larrea, Montes, Witherspoon, Peddie Jackson, Roy Isaacs, Detective Gary Abbondandelo ("Abbondanelo"), and Detective Bob Dempsey ("Dempsey"). Anania also travelled to Plaintiff's then place of incarceration. Along with Assistant District Attorney Caryn Stepner ("Stepner") she interviewed Jackson and his lawyer Scott Brettschneider. At that interview Jackson stood by his claim of innocence, and detailed the circumstances surrounding his allegedly false confession.

4

The final section of the Anania Memo is entitled "Next Steps." That section does not set forth any step to be taken. Instead, it simply sets forth the texts of Rule 3.8(g) of the Rules of Professional Responsibility applicable to prosecutors, and Section 440.10 of the New York State Rules of Criminal Procedure, which refers to motions to vacate judgments. After setting forth these texts, the Anania Memo states the questions to be decided, i.e., whether statements of Larrea and Montes constitute material that should have been disclosed to the defense under Brady v. Maryland. It goes on to state the next question, which is whether there is a reasonable probability that disclosure of those statements would have affected the outcome of Jackson's trial, if such statements were known to the defense. The "next question" stated is "whether or not to retry the defendant after his judgment has been vacated." Importantly, the Anania Memo reaches no legal conclusion as to these questions - it merely states the questions without analyzing or advocating for any legal position whatever.

2.   Bates No. 3043

This document dated October 26, 2017, is an inter-office memo from Tammy Smiley, Esq., Chief of the Appeals Bureau of the Nassau County District Attorney's Office ("Smiley") to Anania regarding Dempsey. This memo relates Smiley's attempts to retrieve certain records. It does not analyze those records. It also refers to judicial opinions in other cases involving Dempsey and offers to contact another Deputy County Attorney. This memo contains no legal opinion or analysis regarding Jackson's conviction or Dempsey - it only restates Dempsey's position denying allegations as to his conduct.

3.   Bates Nos. 3192-3206

These documents are handwritten notes authored by Anania and Stepner. The quality of copies provided to the Court makes it difficult to state dates with certainty. However the dates on

5

Bates No. 3192 appear to reflect interviews conducted between late 2017 and early 2018. These documents are summaries of witness and Jackson's interviews. The witnesses referred to in these notes are Witherspoon, Larrea, Montes and Peddie Jenkins. These notes are summaries. They contain no legal analysis.

    4.      Bates No. 3207

This document dated October 26, 2017, is an inter-office memorandum, from Smiley to Anania. It attaches a judicial opinion. It mentions the difficulties in retrieving documents in sealed cases. It contains no legal analysis.

    5.      Bates Nos. 3436-3437

This document, dated January 22, 1997, is an inter-office memorandum from Mike Walsh, Esq. the Nassau County Assistant District Attorney who prosecuted Jackson, to Dan Looney, Esq. At oral argument of the motion to compel Defense Counsel was unable to identify who Dan Looney is, but the County has since clarified that Looney is an attorney who was involved in Plaintiff's murder prosecution. See DE [350]. The memo references the date of Jackson's sentencing and mentions two individuals who had an interest in that proceeding. Handwritten notes on this document may have been written by Walsh. They appear to refer to possible sentences. This document contains no legal analysis of those possible sentences; they are only stated in numbers and acronyms that are not explained.

    B.      Documents Argued to "Reflect" Legal Analysis

    1.      Bates No. 3157-4124

These documents are all notes of witness interviews conducted during the course of the CIU investigation of Jackson's murder conviction. The bottom half of Bates No. 3162 contains

handwritten notes relating to a mortgage and related amortization assessment and shares. These notations are either personal notes of the writer or refer to a different matter.

## DISCUSSION

I. Legal Principles

    A. Burden of Proof

Whatever the privilege asserted, the burden is on a party claiming privilege to provide evidence sufficient to establish the essential elements of the privileged relationship. *In re Grand Jury Subpoena*, 750 F.2d 223, 224-25 (2d Cir. 1984) (citing In re Bonanno, 344 F.2d 830, 833 (2d Cir. 1965); United States v. Kovel, 296 F.2d 918, 923 (2d Cir. 1961)) (internal quotation marks omitted); see also United States v. Stern, 511 F.2d 1364, 1367 (2d Cir. 1975) (citing Bonanno, 344 F.2d at 833) (applying standard to attorney-client privilege). Here, the burden is on Defendants to show that the claimed privilege applies.

    B. The Work Product Privilege

Defendants seek to shield the Documents from discovery as "work product" under the descriptions above, i.e., those that "contain" legal analyses and those that "reflect" legal analyses.

"The attorney work product privilege protects 'the files and the mental impressions of an attorney ... reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways' prepared in anticipation of litigation." Tankleff v. Cty. of Suffolk, 2011 WL 5884218, at *2 (E.D.N.Y. Nov. 22, 2011) (quoting Hickman v. Taylor, 329 U.S. 495, 510–11, 67 S. Ct. 385, 393, 91 L. Ed. 451 (1947)). The work product doctrine creates "a 'zone of privacy' that allows an attorney to prepare for litigation 'free from unnecessary intrusion by his adversaries.'" Id.; see Gonzalez v.

City of N.Y., No. 08–CV–2699, 2009 WL 2253118, at *3 (E.D.N.Y. July 28, 2009) (quoting United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998)).

The work product doctrine is codified by Federal Rule of Civil Procedure 26(b)(3), which affords protection to party documents, but is also available to non-parties pursuant to the common law. See Tankleff, 2011 WL 5884218, at *2 (allowing assertion of the work product privilege by the office of the New York State Attorney General, which assumed responsibility for possible prosecution of a case previously handled by party defendant therein Suffolk County).

    1.    Rule 26(b)(3)

Rule 26(b)(3) of the Federal Rules of Civil Procedure provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," save that "those material may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A) (emphasis added).

"In order to be protected as work product, the materials must be (1) documents or tangible things, (2) that were prepared in anticipation of litigation, and (3) were prepared by or for a party, or by or for his representative. Documents prepared in anticipation of litigation are those that, 'in light of the nature of the document and the factual situation in the particular case ... can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'" Sovereign Cape Cod Investors LLC v. Eugene A. Bartow Ins. Agency, Inc., 2022 WL 624553,

*1 (E.D.N.Y. Mar. 3, 2022) (quoting United States v. Adlman, 134 F.3d at 1202 (emphasis in original).

      2.      Common Law Work Product Privilege

Like Rule 26(b)(3), the common law work product protection applies to documents prepared in anticipation of litigation. The doctrine is appropriate to apply where disclosure of documents would "(1) alter attorney behavior, (2) reward sloth, or (3) interfere with ongoing litigation." Tankleff, 2011 WL 5884218, at *2. The third factor to consider in the common law work product analysis (interference with ongoing litigation), has been interpreted to include instances where there is a possibility of future litigation. In particular, work product has been applied to shield documents from disclosure in a case where documents were prepared in anticipation of the possible future prosecution of an exonerated defendant. See Tankleff, 2011 WL 5884218, at *3.

The common law work product privilege is also qualified. Thus, it may be overcome. If documents are deemed to contain "core" work product, i.e., those documents "that contain the mental impressions, opinions, or legal theories of counsel", the privilege is overcome only by a showing of a "strong" presumption of what has been described as a privilege that is "near absolute." Tankleff, 2011 WL 5884218, at *5. Where documents reflect so-called "core" work product, protection from disclosure is necessary to avoid the "chilling effect on when and how" prosecuting attorneys "commit their thoughts to paper." Tankleff, 2011 WL 5884218, at *2. On the other hand, where privileged documents contain facts that cannot be obtained elsewhere, the party seeking disclosure may overcome the presumption by the showing of "substantial need" for the documents. Tankleff, 2011 WL 5884218, at *5.

9

II.     Status of the Documents as Party or Non-Party Documents

Here, Defendants seek protection of the Documents - which are either CIU documents or those of the office of the District Attorney - as "party" documents that are entitled to protection pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure. Defendants take this position even though neither the Office of the Nassau County District Attorney nor any individual Assistant District Attorney is a defendant herein. Defendants make this "party" argument on the ground that the Nassau County Charter provides for the County Attorney to represent all "departments, institutions, officers, agencies or offices" of the County. Since the District Attorney's Office (and presumably the CIU thereof) falls within the category of entities "to be represented" by the County Attorney, Defendants argue that the office of the District Attorney is a party, and that therefore its documents (and those of the CIU) are those of a party herein. Defendants make this argument even while asserting during the March 8, 2022 conference that counsel to the County does not represent Assistant District Attorney Anania in connection with her likely upcoming deposition. Defendants also make an alternative argument seeking to attach work product protection to the Documents as those of a non-party under the common law work product privilege. See DE [340].

Before turning to discussing the Documents and the merits of the claims of privilege the Court makes clear its rejection of the notion that because the County Attorney is empowered to represent all branches of the County of Nassau it necessarily follows that the District Attorney's documents are always "party" documents within the meaning of Rule 26(b)(3). This is in accord with prior similar cases. See Gonzalez, 2009 WL 2253118, at *2 (rejecting application of Rule 26(b)(3) where the New York City Corporation Counsel did not represent the District Attorney in the matter before the court); accord Kogut v. Cty. of Nassau, 2011 WL 13284713, *2

(E.D.N.Y. Nov. 9, 2011). cf. Tankleff, 2011 WL 5884218, *2 ("there is no dispute that the [Attorney General] as a non- party, may not invoke Rule 26").

Accordingly, the only work product claim available to Defendants is pursuant to the common law. However, because the Documents are, as discussed below, not covered by any work product doctrine, it matters not whether Rule 26 or the common law applies - neither doctrine affords protection to any of the Documents.

III.   Disposition of the Motion

    A.   Scope of Discovery; Facts Are Not Protected Under the Work Product Doctrine

No party argues that the Documents are outside of the scope of discovery in this matter. The Court agrees. Further, no party argues that documents containing only facts are outside of any iteration of the work product doctrine. Indeed, Defendants have already once revised their privilege log to reflect reversal of their earlier position as to certain documents -- they now concede that such documents contain no legal analysis. While these documents have not been provided to the Court as part of its in camera review, the descriptions thereof make clear that they contain only factual information or publicly available records. See, e.g., DE [340] (abandoning claims of privilege because documents "contain no legal analysis", including documents described as, inter alia, "emails re: factual investigation and email exchange" "re Bob Dempsey and Gary Abbondandelo" and "Criminal History info re Roy Isaacs, printed November 14, 2017").

The abandonment of claims of privilege as to certain documents was correct. As recognized by Defendants, documents containing only facts are unquestionably not privileged. See Moroughan v. Cty. of Suffolk, 2018 WL 11268801, at *6 (E.D.N.Y. Feb. 6, 2018). Indeed, the law is clear that documents devoid of legal analysis, including notes of factual interviews

11

which are summaries and not verbatim transcripts, fall outside of any work product doctrine. Id. at *7. This is true even if such interview notes are written by an attorney. Id. (noting that witness statements are treated as "factual rather than opinion work product, even where those statements have been summarized by counsel").

    B.    Rulings As to Bates Nos. 3157-4124

Application of the foregoing legal principles disposes of the present motion with respect to all of the Documents argued to "reflect" legal analysis, i.e., those bearing Bates Nos. 3157-4124 (Exhibit B to Documents provided in camera; DE [340]). These documents fall squarely within the category of non-privileged material. They are nothing more than notes of factual interviews. As such, they are not entitled to any work product protection.

Defendants' reliance on S. E. C. v. Nadel, 2012 WL 1268297 (E.D.N.Y. Apr. 16, 2012) to distinguish these documents from the general principal that interview notes are not privileged is misplaced. In Nadel, the court held that SEC interview notes were protected by the work product privilege because they were created during the course of an investigation by the SEC, at a time when the agency was contemplating an enforcement action. In that case there was no question but that the interview notes were prepared in anticipation of litigation. As held below, that is not the case here. Further distinguishable from this case, the court in Nadel held that the interview notes revealed the mental impressions of lawyers. This was because the attorneys preparing the notes exercised judgment regarding which witnesses to interview, "what subject areas to cover (and what not to cover), how to frame specific questions and in what order, and how much time to devote to particular topics." Nadel, 2012 WL 1268297 at *7-8. The considerations underpinning the Nadel holding are completely absent in this case. Here, the identity of witnesses to be interviewed in connection with determining whether Jackson was

12

wrongfully convicted was no secret to Jackson or anyone else. The subject matter of inquiry - the Steven Jason murder - is likewise no mystery known only to lawyers. The questions asked to each witness can be described as simply as "tell me what you remember." Such a question was likely preceded or followed by Anania's explanation of the mission of her interview, which appears on one of the Documents, i.e., she was investigating Jackson's claim of innocence. See Bates No. 4108. In sum, Nadel is completely inapposite, and for the foregoing reasons none of the witness interview notes appearing as Bates Nos. 3157-4124 are protected by the work product privilege.

As to the remaining Documents (those provided as Exhibit A for in camera review) the Court's review reveals, as discussed below, that they also fall outside of the zone of protection claimed. Some are unprotected for the same reason that Bates Nos. 3157-4124 are unprotected. All are unprotected because they were not prepared in anticipation of any litigation (neither this civil case or a retrial of Jackson). Moreover, none contain any legal analysis.

      C.      <u>The Documents Were Not Prepared in Anticipation of Litigation</u>

None of the documents at issue were prepared in anticipation of litigation which, as noted, is essential to any claim of work product protection. In their effort to satisfy this element of the privilege asserted. Defendants rely almost exclusively on the decision in Tankleff. This reliance is the focus of Defendants' claim of privilege with respect to the Anania Memo and, by extension, to all documents created in connection with the CIU investigation. To fit within the decision in Tankleff, Defendants argue that one of the aims of the CIU investigation was to determine whether to re-try Jackson for murder. But there is no evidence of this supposed goal of the CIU - with respect to Jackson or any defendant whose conviction is under review. Indeed, as

earlier noted, when introducing herself to witnesses Anania stated that the purpose of her interviews was to investigate Jackson's claim of innocence. See Bates No. 4108.

A review of Tankleff and the nature of the investigation of the Tankleff murders readily limits and distinguishes that case. In Tankleff, the documents at issue were created pursuant to a particular investigation created under an executive order of the Governor of the State of New York. That order appointed the Office of the Attorney General to a specific prosecutorial function, directing that it "'investigate the alleged commission of any indictable offense or offenses'" in relation to the Tankleff murders and 'prosecute the person or persons believed to have committed' the crimes." Tankleff, 2011 WL 5884218, at *3. Here, unlike Tankleff, there is no evidence that the CIU was charged with determining whether to re-try Plaintiff or anyone else in connection with the murder of Steven Jason. Nor is there any document appointing the CIU to such a purpose. Instead, it was the purpose of the CIU in Jackson's case, and presumably in any case it investigates, to determine whether there was a wrongful conviction - not to cynically prepare for the fallout of seeking justice.

In weak support of its argument relying on Tankleff, Defendants state with confidence that the "Next Steps" section of the Anania Memo states that ADA Anania "was charged with" investigating "*whether or not to retry the defendant."* (emphasis in DE [340], but not in original Anania Memo appearing as Bates No. 2853). But the Anania Memo states no such mission. Indeed, apart from relying on one-half of a sentence on the last page of the Anania Memo, Defendants have submitted no document in support of their claim of Anania's prosecutorial intent.

For the foregoing reasons the Court holds that neither the Anania Memo, nor any of the documents created in connection therewith (which, with the exception of the 1997 document,

14

constitute the remainder of the Exhibit A documents) were prepared in anticipation of litigation. This finding is fatal to any claim of work product privilege. Cf. Galloway v. Cty. of Nassau, 19-CV-5026, Electronic Order dated 9/22/21 (rejecting work product privilege with respect to Anania's work in the CIU in a different case and holding "[s]aid differently, the opinion sought by Plaintiff's counsel was not prepared by [ADA Anania] with an eye toward [this] litigation. Hickman, 329 U.S. at 511). As stated in Galloway, "ADA Anania's peripheral involvement in this case stems only from her work to exonerate Plaintiff, work that was not completed at the behest of Defendants in anticipation of this litigation. Defense counsel's reliance on the work product privilege was therefore improper." 19-CV-5026, Electronic Order dated 9/22/21.

As a final word on this matter, the Court notes that it is aware that Defendants argue that the Documents were prepared in anticipation of future criminal prosecution of Jackson, and not in anticipation of this civil litigation. The Court holds, however, that the Documents were not prepared in anticipation of <u>any</u> litigation; but only to investigate a claim of innocence.

    D.    <u>The Documents Contain No Legal Analysis</u>

Even if the Court were to accept the notion that the Anania Memo was created in anticipation of litigation, neither that document nor any of the other Documents contain any legal analyses whatever. This is another reason to reject Defendants' claims of privilege.

The Documents contain neither legal analyses nor the mental impressions of lawyers. The most detailed document, the Anania Memo, is nothing more than a summary of Anania's investigation into Jackson's claim of innocence. Thus, for example, when the Anania Memo discusses Jackson's pretrial and trial proceedings it simply details what happened during those proceedings. The Anania Memo then turns to summarizing the notes of her factual interviews of witnesses and Jackson. These notes fall squarely outside of the scope of material protected by

any privilege. Even if deciding whether to re-try Jackson was one of Anania's instructions (which the Court above has already rejected), the Anania Memo reflects no legal analysis whatever as to what course to take.

Defendants again rely on the "Next Steps" section of the Anania Memo in support of their work product claims. Thus, in addition to supporting their prosecutorial function argument Defendants rely on this section to show legal analysis. The passing reference to the procedural basis for vacating a conviction and retrial fails because the "Next Steps" section does nothing more than set forth the text of a Rule of Professional Responsibility, and a provision of the New York State Criminal Procedure Law.

To be clear, the Anania Memo never enters into a legal analysis as to whether any rule or law was violated in Jackson's case. The single half sentence relied upon by Defendants states no decision, analysis or recommendation as to whether to seek an order vacating Jackson's conviction or re-try him for murder. While the facts here make it obvious that such a decision was made, there is nothing in the Anania Memo that recommends taking that, or any action, much less any legal analysis in support thereof.

The remainder of the documents argued to "contain express legal analysis" similarly contain no such analysis. Bates No. 3043 is an interoffice memorandum that refers to prior judicial opinions without comment. The mere fact that such communications were occurring between lawyers does not reveal legal strategy. Bates Nos. 3192-3206 are notes of witness interviews. Like earlier referred to documents, they contain nothing more than facts not entitled to protection. Bates No. 3207 is an inter-office memorandum transferring a judicial opinion from the sender to the recipient. Bates No. 3046 is an interoffice memorandum and handwritten notes referring to Jackson's sentencing. As to that document, in addition to being devoid of legal

16

analysis, as stated above, it strains credulity to characterize a 1997 memorandum as being prepared in anticipation of 2018 post-exoneration litigation or a retrial of a recently convicted defendant. Finally, Bates No. 3438-3448 are duplicates of the Anania Memo.

    E.    <u>Plaintiff's Need for the Documents</u>

While the holdings above make it unnecessary to determine whether any work product privilege is overcome by a showing of need, the Court nonetheless finds that Plaintiff's need for the documents is sufficient to require their production. This is true whether the Documents were protected by Rule 26(b)(3) or the common law. As all agree, the documents sought to be produced are certainly within the scope of discovery. Information gleaned during the course of the CIU will be important to any determination regarding the legality of the conduct alleged in the TAC. The Court is well aware that the information regarding witness statements is factual in nature, and that many witnesses interviewed by the CIU have, or will soon be deposed. Still, memories fade over time, and Plaintiff will certainly need to compare earlier testimony of witnesses to properly prepare for their trial testimony. Thus, Defendants' arguments are no answer to the issue of need under any standard.

## CONCLUSION

Plaintiff's motion to compel appearing as Docket Entry [335] herein, is granted in its entirety. Defendants are directed to produce all documents listed in their revised privilege log.

Dated: Central Islip, New York
       March 14, 2022

                                             /s/ Anne Y. Shields
                                               ANNE Y. SHIELDS
                                            United States Magistrate Judge