WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER, LLP
Attorneys for County Defendants
1133 Westchester Avenue
White Plains, NY 10604
(914) 323-7000
Attn:  Peter A. Meisels, Esq.
       Janine Mastellone, Esq.
       Lalit K. Loomba, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
JOSEPH JACKSON,                                    : Docket No. 18-CV-3007
                                                   : (JS)(AYS)
                        Plaintiff,                 :
                                                   :
        -against-                                  :
                                                   :
NASSAU COUNTY; DETECTIVE ROBERT DEMPSEY; : **DECLARATION OF DR. I.**
DETECTIVE GARY ABBONDANDELO; DETECTIVE             : **BRUCE FRUMKIN, Ph.D**
JOHN M. HOLLAND; DETECTIVE MICHAEL HERTS;  :
DETECTIVE MARTIN ALGER; DETECTIVE WALTER           :
SWENSON; DETECTIVE ANTHONY KOSIER;                 :
DETECTIVE SERGEANT DAN SEVERIN; and JOHN           :
and JANE DOE 1 through 20,                         :
                                                   :
                        Defendants.                :
                                                   :
------------------------------------------------------------------- X

I. BRUCE FRUMKIN, hereby declares under penalty of perjury and pursuant to 28 U.S.C. §1746, as follows:

1.      I am a licensed psychologist, and have a Diplomate in Forensic Psychology from the American Board of Forensic Psychology.  There are approximately 350 board certified forensic psychologists nationwide.

2.      I have been retained by Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, attorneys for defendants in the above-captioned action, as an independent expert witness in the

-1-

areas of false confessions and psychological damages.

3. In order to conduct my analysis, I will perform a forensic psychological evaluation of the plaintiff, and during the evaluation will likely administer certain psychological tests.

4. I understand that plaintiff is refusing to produce himself for an in-person evaluation, and instead wants me to conduct the evaluation remotely, via a remote conferencing platform such as Zoom.

5. I cannot, consistent with my professional standards and best practices in the area of forensic psychology, conduct a forensic evaluation and administer psychological tests remotely. The interview and testing process must take place in person.

6. There are a number of reasons why an in-person setting is required. For example, I will be conducting a forensic psychological evaluation. A forensic psychological evaluation is different in nature than a clinical psychological evaluation. In the latter, the results of the evaluation is used for treatment purposes. In the former, the goal is to assess psychological functioning past and present and integrate the data with psycholegal criteria.

7. In the clinical psychological evaluation, the client is the person being evaluated. In a forensic psychological evaluation, the client is the retaining attorney, and the results of the evaluation could be shared with the trier of fact.

8. In a forensic psychological evaluation, in order to get the most relevant, valid information, rapport must be sufficiently established. It is difficult to establish rapport with someone whom the psychologist has never met in person.

9. In addition, important behavioral cues could be missed if the evaluation is done remotely. For example, leg shaking could be indicative of anxiety; tears could be indicative of

depression or strong emotional reaction; clenched fists could be indicative of anger.

10. In a clinical psychological evaluation, it is unlikely that the evaluee would purposefully minimize or exaggerate psychological symptoms because he is going to a psychologist for help. In a forensic psychological evaluation, the psychologist knows that malingering and deception is always a strong possibility. This is because the person being evaluated is not the client going for treatment, but rather the results are to be used for legal purposes.

11. Also, technical difficulties with the internet connection or the cellphone used to connect remotely with the psychologist could easily interfere with the interview process and the psychological testing. One example, would be that it is more difficult to attend or concentrate to the psychological test stimuli when presented remotely than in person.

12. The psychologist would have no control over the evaluation environment if the evaluation was conducted remotely. For example, it would be quite difficult to determine whether a third person was giving answers to the interviewee or otherwise providing a point of contact other than the psychologist during the evaluation. During breaks the examinee may consult with others or look up answers to test questions.

13. In addition to these problems, conducting psychological tests remotely poses a series of problems as well. First, psychological tests are designed to be administered in person. For tests to be valid, they must be administered in a standardized fashion. That is, tests are administered the same for all examiners. One cannot compare tests results when tests are administered remotely, to tests results generated from an in-person assessment. There has not been adequate research to equate remote vs. in-person psychological testing.

14. Psychologists have not been trained in how to conduct remote forensic

psychological evaluations, nor how to interpret results from such evaluations. Indeed, because remote evaluations are in their infancy, there has been little research in this area. There is no consensus among forensic psychologists regarding validity and reliability of a remotely-administered forensic psychological evaluation.

15. I further understand that plaintiff's attorneys seek to preclude me from questioning the plaintiff about his interrogation by members of the Nassau County Homicide Squad. It is the standard of practice in conducting a forensic psychological evaluation in an alleged coerced or false confession case to discuss the evaluee's perceptions of what transpired during the interrogation. The restriction that plaintiff's attorneys are seeking would negatively affect my evaluation because the content of plaintiff's description of his interrogation, as well as the way in which he describes it, will provide important and relevant information.

16. In sum, conducting a forensic psychological evaluation remotely, *i.e.,* via Zoom, could affect the reliability and validity of the evaluation. In order to reliably and validly evaluate plaintiff's claims regarding an alleged false confession and alleged psychological damages, an in-person interview and in-person administration of psychological testing is necessary. In a complex case such as the instant one, and where I have never met the plaintiff, I cannot consistent with my professional standards conduct a forensic interview or administer psychological testing remotely.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __ day of June 2022.

_____
I. Bruce Frumkin, Ph.D., ABPP
Clinical Psychologist

Diplomate in Forensic Psychology
American Board of Professional Psychology