

John A. Vitagliano, Esq.
Direct dial: (914) 872-7367
john.vitagliano@wilsonelser.com

July 27, 2022

**By ECF**

Hon. Anne Y. Shields
United States Magistrate Judge
United States District Court
Eastern District of New York
Alfonse M. D'Amato Federal Building
100 Federal Plaza
Central Islip, NY 11722

Re:   *Joseph Jackson v. Nassau County et al.,* Docket No. 18-cv-3007 (JS) (AYS)
        Our File No.: 12473.00014

Dear Judge Shields:

Wilson Elser represents the defendants in the referenced action. We submit this letter in opposition to plaintiff's renewed motion for sanctions filed on July 25, 2022 (D.E. 366), in connection with plaintiff's allegations that defendants failed to preserve 911 evidence.

Plaintiff originally moved for spoliation sanctions on September 6, 2019 during the preliminary stages of discovery. *See* D.E. 206-208 (moving papers), D.E. 213-215 (opposition), D.E. 216-217 (reply). After a discovery status conference on March 6, 2020, plaintiff was granted leave to withdraw the motion, continue with discovery and refile at a later date. *See* D.E. 276 (transcript), p. 33, ln. 18 – p. 36, ln. 18. Even after the completion of discovery, and after plaintiff cherry-picked certain facts to support its renewed application, plaintiff still cannot meet the threshold warranting sanctions pursuant to Fed. R. Civ. P. 37(e). Therefore, plaintiff's renewed application for sanctions should be denied.

Pertinent Facts

Steven Jason was shot and killed in the early morning hours of March 20, 1994. On that early morning, Maurice Larrea was in a moving car being driven by Glenn Montes when he heard gun shots. *See* EBT Transcript of Maurice Larrea, annexed as County Exhibit 1, p. 20, ln. 16-24, p. 25, ln. 18-21, p. 26, ln. 5-7. After Mr. Larrea heard the gunshots, he looked in the direction of where the shots came from. *See id.* at p. 27, ln. 4-7, p. 30, ln. 9. Mr. Montes did not stop the moving vehicle after Mr. Larrea heard the gunshots. *See id.* at p. 140, ln. 19-21. Mr. Larrea did

1133 Westchester Avenue • White Plains, NY 10604 • p 914.323.7000 • f 914.323.7001
Albany • Baltimore • Boston • Chicago • Connecticut • Dallas • Denver • Garden City • Houston • Kentucky • Las Vegas • London • Los Angeles • Miami
Milwaukee • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Virginia • Washington, DC • West Palm Beach • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Munich • Paris
wilsonelser.com

273637304v.1

not see the shooting and did not see Mr. Jason's shooter. *See id.* at p. 27, ln. 10-13, p. 30, ln. 9-19, p. 116, ln. 5-10, p. 137, ln. 4-5. All Mr. Larrea saw was a number of people on the sidewalk in the area where he heard the gun shots, but did not know why people were standing outside. *See id.* at p. 116, ln. 5-14, p. 139, ln. 2-11. Mr. Larrea told Glenn Montes to pull over to the next payphone, which was approximately one block away from where the car was when he heard the gun shots. *See id.* at p. 26, ln. 14, p. 27, ln. 14-17, p. 140, ln. 22-24.

While at the payphone, Maurice Larrea "called I don't know if I called Freeport numbers 378-0700 or I might have just called 911. I don't remember exactly. I just remember saying that there was shooting." *See id.* at p. 26, ln. 14-24, p. 36, ln. 8-12, p. 117, ln. 18-23. Mr. Larrea was on the phone reporting this shooting for approximately 30 seconds. *See id.* at p. 38, ln. 2-4. Mr. Larrea also stated that he believed the person that he was speaking to was with the Village of Freeport Police Department ("FPD"), and not the Nassau County Police Department ("NCPD"). *See id.* at p. 118, ln. 15-19, p. 119, ln. 8-12, p. 142, ln. 23-25). While on this phone call, no person walked by Mr. Larrea. *See id.* at p. 38, ln. 5-8.

*After* Mr. Larrea hung up the phone and while he was walking back to the car, a black male ran passed him on the sidewalk. (emphasis added) *see id.* at p. 41, ln. 3-16, p. 119, ln. 13-17. Mr. Larrea was unable to see the face of this male and would be unable to identify him. *See id.* at p. 53, ln. 2-11, p. 164, ln. 11-16. Other than the fact that this black male was running from the scene, Mr. Larrea had no other reason to think this male was involved in the shooting. *See id.* at p. 120, ln. 5-8. Mr. Larrea then chased this male but ultimately lost sight of him. *See id.* at p. 57, ln. 10-15. Subsequently, Mr. Larrea went back to the location where he heard the shots. *See id.* at p. 60, ln. 7-12. Ultimately, Mr. Larrea did sign a statement of his recollection of what transpired when he heard the gun shots. *See* Plaintiff's Exhibit 1 – D.E. 366-1.

In March of 1994, a 911 call from a payphone made within the Village of Freeport would have been received, initially, by the NCPD Communications Bureau. *See* Declaration of Jan Gaddist, dated September 20, 2019, annexed as County Exhibit 2, at ¶3. After the 911 operator determined that the emergency was within the Village of Freeport, which had (and has) its own independent Police Department, the call could have been transferred to FPD. *Id.* at ¶4. In 1994, as well as currently, 911 calls received by the NCPD's Communications Bureau were automatically recorded. *Id.* But in the case of a call transferred to a local police department, the NCPD's audio recording of the call would have ended after the call was transferred to the local department and the NCPD operator disconnected. *Id.* at ¶6. Accordingly, if Mr. Larrea had made a 911 call from the indicated location, the recording automatically created by the NCPD Communications Bureau would be limited to the initial portion of the call, *i.e.,* the part of the call prior to transfer to the local department.

More importantly, the NCPD and the FPD are two separate independent police departments that have their own communications bureau's with separate recording systems for any emergency calls. *See* Declaration of Jan Gaddist, dated July 27, 2022, annexed as County Exhibit 3, at ¶¶ 3-4. In March of 1994, a phone call from a payphone made within the Village of Freeport, and made directly to the FPD would have been received by the Village of Freeport. *Id.* If this call was made to the FPD directly, the NCPD Communications Bureau would have never received

Hon. Anne Y. Shields
July 27, 2022
Page 3

this call, would never have recorded this call because it was never received, and there would be no documentation or paperwork within the possession of the NCPD Communications Bureau that this phone call was ever made to the FPD. *Id.* at ¶5. Accordingly, if Mr. Larrea called the FPD directly, the NCPD Communications would have never received this call, and there would be no recording of this call for the NCPD to preserve. *Id.* at ¶7.

Pursuant to the NCPD's retention policy, a 911 call made in 1994 would have been retained for a period of ten (10) years. *See* County Exhibit 2, at ¶9. The NCPD does not presently possess a recording of a 911 call made from a payphone in the vicinity of Sunrise Highway and Church Street, in Freeport, NY, on March 20, 1994. *Id.* at ¶10. Plaintiff's counsel previously served the Village of Freeport, a former co-defendant in this lawsuit, with a demand for interrogatories to the Village to "state whether any efforts were made by the Village of Freeport to preserve the 911 call placed by Maurice Larrea on March 20, 1994." *See* Village of Freeport's Response to the Plaintiff's First Demand for Interrogatories to the Village of Freeport, signed on April 28, 2021, annexed as County Exhibit 3, at ¶5. The Village of Freeport objected to this demand. *Id.* After this request, plaintiff never made any further inquiries with the Village of Freeport with respect to whether a recorded call from Mr. Larrea existed, or whether the Village of Freeport took any steps to preserve any recorded phone call from Mr. Larrea.

Standard

As Plaintiff correctly observes, the Second Circuit defines spoliation as the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in *pending or reasonably foreseeable litigation*." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999) (emphasis added). In *West,* an inflated tire (and rim) and a tire mounting machine constituted evidence central to the plaintiff's personal injury claim. *Id.* However, after plaintiff had hired an attorney and transferred the tire (and rim) to his attorney's care, the attorney deflated the tire, thus altering its condition. *Id.* Later, plaintiff sold the tire mounting machine to a third party who allowed it to be exposed to the elements. *Id.* Under these facts, the plaintiff was found to have spoliated relevant evidence because it was materially altered after he well knew that litigation was reasonably foreseeable. As will be discussed below, Jackson cannot meet this threshold standard.

Plaintiff also correctly observes that Fed. R. Civ. P. 37(e) governs sanctions for failure to preserve Electronically Stored Information ("ESI").[1] Rule 37(e) has two categories of sanctions, with the more severe category reserved for parties who "acted with the intent to deprive another party of the information's use *in the litigation.*" Fed. R. Civ. P. 37(e)(2) (emphasis added). This "intent to deprive" language in Rule 37(e)(2) "is not merely the intent to perform an act that

---

[1] Fed. R. Civ. P. 37(e)(2): Failure to Preserve Electronically Stored Information: "If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (a) presume that the lost information was unfavorable to the party; (b) instruct the jury that it may or must presume the information was unfavorable to the party; or (c) dismiss the action or enter a default judgment."

Hon. Anne Y. Shields
July 27, 2022
Page 4

destroys ESI but rather the intent to actually deprive another party of evidence." *Stanbro v. Westchester Cty. Health Care. Corp.,* No. 19-Civ-10857, at *43, 2021 U.S. Dist. LEXIS 163849 (S.D.N.Y. Aug. 27, 2021) [citations omitted].

Under current Rule 37(e), the moving party seeking spoliation sanctions "must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Best Payphones, Inc. v. City of New York,* No. 1-CV-3934, at *11, 2016 U.S. Dist. LEXIS 25655 (E.D.N.Y. February 26, 2016); *see also Chin v. Port Auth. of New York & New Jersey,* 685 F.3d 135, 162 (2d Cir. 2012). Under the 2015 amendments to Fed. R. Civ. P. 37(e)(2), a culpable state mind means having a specific intent to destroy evidence, and not negligence or gross negligence. *See* Committee Notes on 2015 Amendment to Rule 37(e). Jackson cannot meet these elements.

The movant must first demonstrate that the spoliating party had an "obligation to preserve [the spoliated evidence] at the time it was destroyed." *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998). The duty to preserve "arises when the party has notice that the evidence is relevant to litigation – most commonly when [a] suit has already been filed…but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Id*. A party that "reasonably anticipates litigation" must maintain all evidence that they knew or "should have known … may be relevant" to that litigation." *Fujitsu Ltd. V. Federal Express Corp.,* 247 F.3d 423, 436 (2d Cir. 2001).

Next, the movant must establish that the party alleged to have destroyed the evidence in question did so negligently or knowingly. *See Byrnie v. Town of Cromwell, Board of Education,* 243 F.3d 93, 109 (2d Cir. 2001). Then, the movant must also demonstrate that the "the spoliated evidence was relevant to its claims or defenses, such that a reasonable trier of fact could find that it would support those claims or defenses." *Adorno v. Port Authority of New York and New Jersey,* 258 F.R.D. 217, 227 (S.D.N.Y. 2009), quoting *Residential Funding Corp. v. DeGeorge Financial Corp.,* 306 F.3d 99, 108-09 (2d Cir. 2002).

The moving party also must establish that the "sought-after evidence exist[ed]" before spoliation. *Offor v. Mercy Med. Ctr.,* 15-CV-2219, at *1, 2019 U.S. Dist. LEXIS 172890 (E.D.N.Y. Oct. 4, 2019); *see also In re Estate of Jackson v. County of Suffolk,* 12-1455, at *22-24, 2014 U.S. Dist. LEXIS 46521 (E.D.N.Y. Mar. 31, 2014); *see also Kosmidis v. Port Auth. of N.Y. & N.J.,* 18-CIV-08413, at *10, 2020 U.S. Dis. LEXIS 159863 (S.D.N.Y. Aug. 27, 2020). If the existence of evidence is based on speculation and plaintiff cannot establish that it actually existed, plaintiff has not met the burden to warrant sanctions pursuant to Rule 37(e). *See Tri-County Motors, Inc. v. Am. Suzuki Motor Corp.,* 494 F.Supp.2d 161, 177 (E.D.N.Y 2007) ("[S]peculative assertions as to the existence of documents do not suffice to sustain a motion for spoliation of evidence"); *see also Offor, supra*. In the instant case, Jackson cannot establish that any recording of Mr. Larrea's 911 call actually existed.

Plaintiff Cannot Establish that Larrea's Alleged Phone Call to the NCPD Actually Existed or that Nassau County ever had Control Over Larrea's Phone Call

As described above, on March 20, 1994, Mr. Larrea placed a call from a payphone in Freeport, New York. Mr. Larrea is unsure if he called 911, or if he called FPD's phone number directly. *See* County Exhibit 1 at p. 26, ln. 14-24, p. 36, ln. 8-12, p. 117, ln. 18-23. *If this call was a 911 call*, the call would have been initially received by the NCPD and then transferred to the FPD. (emphasis added). The NCPD would have retained a recording of its portion of the call, *if this call was a 911 call*, for a period of ten (10) years. (emphasis added). *If this call was made to FPD*, then the NCPD would have never received a call, there would be no call to record, and thus no call to preserve. (emphasis added). The NCPD never came into possession of any call recorded by the FPD.

Assuming that Mr. Larrea made a 911 call on March 20, 1994, the NCPD recording of the call would have ceased after the call was transferred to the FPD and the NCPD operator then disconnected. *See* County Exhibit 2 at ¶8. The remainder of the call would have been recorded, if at all, by the FPD. Accordingly, if Mr. Larrea called 911 as opposed to FPD, the NCPD never had control over any potentially relevant evidence; i.e., the part of the 911 call in which Larrea might have provided details, if any, regarding the nature of the emergency, what he observed and why a police response was needed. Even that portion of the call could not contain any relevant information as Mr. Larrea testified that he did not see the shooting, did not see the identity of the shooter, had not actually seen anyone at, near or potentially involved in the shooting until *after* the call was over. (emphasis added) *See* County Exhibit 1 at p. 27, ln. 10-13, p. 30, ln. 9-19, p. 116, ln. 5-10, p. 137, ln. 4-5.

Plaintiff's motion is carefully drafted; he cherry-picks only the facts that are helpful to his position, but does not give this Court the entire picture. A review of Mr. Larrea's entire deposition transcript clearly indicates he is unsure if he called 911, which would be initially answered by an operator with the NCPD Communications Bureau, and then subsequently transferred to the FPD, or if the call was made to the FPD directly. It is mere speculation that NCPD had recorded or was in possession of any part of Mr. Larrea's phone call made on March 20, 1994. If any entity had possession of a recording of Mr. Larrea's phone call, it would be the Village of Freeport, about which plaintiff never bothered to inquire further after receiving objections to his demand for interrogatories. Accordingly, on this very basic level plaintiff's motion should be denied. *See Offor, supra; see also in re Estate of Jackson, supra; see also Kosmidis, supra.*

Plaintiff Cannot Establish That Nassau County had an Obligation to Preserve Larrea's Call

Notwithstanding the fact that we do not know if any part of Mr. Larrea's phone call to law enforcement was ever in the possession of NCPD or Nassau County, plaintiff also cannot establish that the County had an obligation to preserve Larrea's recorded call, if it even existed. Rule 37(e)(2) states that "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation", which specifically refers to the *instant* litigation, which is Mr. Jackson's instant civil action and not any other litigation.

Plaintiff cannot even attempt to argue that it would be reasonably foreseeable that this instant civil rights action would arise from his prosecution for Mr. Jason's murder and that the County had an obligation to preserve Mr. Larrea's 911 recorded call, assuming it existed. *See Thompson v. Clark,* 2018 U.S. Dist. LEXIS 105225) (S.D.N.Y. June 11, 2018). Is it clear that the NCPD routinely preserved any 911 calls made to the NCPD Communications Bureau for ten (10) years. There was no pending civil rights litigation, or any case for that matter involving Mr. Jackson, wherein the County could have reasonably foreseen that this call made by Mr. Larrea, which may have been destroyed by the NCPD, should have been preserved.

The last appeal of Mr. Jackson's criminal conviction was denied on September 23, 2002, *see People v. Jackson,* 98 N.Y.2d 730 (2002), and the instant civil action was not commenced until 2018. Accordingly, if NCPD did have a recording of Larrea's call, in March 2004, when any NCPD's recording of a 911 call was erased, there was no pending criminal case and neither the County nor Det. Abbondandelo were aware of pending or reasonably foreseeable civil litigation wherein any speculative 911 call made by Mr. Larrea might constitute relevant evidence. The NCPD portion of any potential 911 call would have been erased in March 2004, pursuant to the regular operation of the NCPD's standard retention policy. At that time, Plaintiff had exhausted all of the appeals from his criminal conviction and had not filed a civil action, nor otherwise filed a FOIL request or other request to preserve evidence. Erasure of any potential recording therefore does not constitute spoliation of evidence.

*Weiss v. Bellevue Maternity Hospital,* 121 A.D.2d 1480 (3d Dep't 2014), is instructive. In *Weiss,* parents brought a lawsuit on behalf of their 10-year-old son, alleging that his severe and permanent physical disabilities were caused by a hospital's mismanagement of the mother's labor and the failure to timely deliver the child by cesarean section. During discovery, plaintiffs learned that the labor and delivery room records, which were kept separately from the mother's medical records, had been destroyed in 2008 pursuant to the hospital's records retention policy. Plaintiffs moved for spoliation sanctions, requesting that the court strike the defendant's answer. The court denied the motion, noting that "'[i]n the absence of pending litigation or notice of a specific claim, a defendant should not be sanctioned for discarding items in good faith and pursuant to its normal business practices.'" *Id.* at 1481, quoting *Steuhl v. Home Therapy Equip., Inc.,* 23 A.D.3d 825, 826-827 (3d Dep't 2004). The court also noted that plaintiffs would have the opportunity to depose the mother's obstetrician and hospital personnel regarding the events that transpired. *Id.* at 1482.

Here, as in *Weiss,* there is no evidence that the NCPD deleted the recording of this speculative 911 call in bad faith, i.e., with knowledge that Jackson had commenced or was contemplating commencing an action in which that recording might have some relevance. Instead, if this recording existed, the recording was deleted in 2004 in the regular course of business and in accordance with the NCPD's preexisting retention policy.

Plaintiff argues that the NCPD had an obligation to preserve any 911 call because 911 calls in general should be automatically preserved as *Brady* material. However, the cases cited by plaintiff to support this broad proposition are distinguishable. For example, *People v. Stubbs,*

154 Misc.2d 792 (Rochester City Ct. June 24, 1992), did not involve a 911 call rather the failure to preserve a police report that was specifically requested in discovery in the criminal case. *People v. Fleishman,* 92 Misc.2d 156 (Sup. Ct. Suffolk Cty. 1977), likewise did not involve a 911 call. *People v. Karpeles,* 146 Misc.2d 53 (N.Y.C. Crim. Ct. Richmond Cty. 1989), contains a general discussion on relevancy and materiality but does not specifically address 911 calls. *People v. Hale,* 167 Mis.2d 872 (Sup. Ct. Kings Cty. 1996), involved the issue of whether the court should issue an order directing the preservation of evidence, including 911 calls, and not the failure to preserve a recording of a 911 call.

In *Southerland v. Gourd,* 269 F. Supp.2d 48 (E.D.N.Y. 2003), the court accepted the premise that there was an obligation to preserve a 911 call, but in light of other available evidence held the failure to do so was irrelevant. *People v. Armstrong,* 11 A.D.3d 721 (3d Dep't 2004), did involve a 911 call, but the decision actually supports the County. In *Armstrong,* the court disregarded the failure to preserve a 911 call where, as was the case here, the witness provided a subsequent and more detailed account of the incident, which was provided to Armstrong. The facts in *People v. Bramble,* 158 Misc.2d 411 (Sup. Ct. Kings Cty. 1993), is distinguishable because the case involved a *Rosario* issue, and the evidence in question was a recording of a witness who subsequently testified against the criminal defendant. Here, Mr. Larrea was not called as a witness against Mr. Jackson.

Finally, *McEachron v. Glans,* 1999 WL 33601543 (N.D.N.Y. 1999), is unequivocally distinguishable from the facts here, although Plaintiff relies on this case stating "defendants' duty to preserve the missing 911 tapes 'is self-evident.'" D.E. 366, p. 3; *McEachron, supra.* In *McEachron,* the County defendants admitted that the Sheriff's Department altered the computer log almost a day after the accident. *Id.* The County defendants also admitted that the Sheriff's Department destroyed or irretrievably lost the tape record of the relevant 911 call, well *after* the plaintiff's family had retained counsel and the defendants were served with Notices of Claim. *Id.* Here, if there ever was a 911 call, the NCPD did *not* destroy the recorded call at any time related to the instant lawsuit; any recorded call would have been destroyed pursuant to the NCPD's pre-existing retention policy long after all criminal appeals were exhausted and long before commencement of this action.

Any argument that any 911 call placed by Mr. Larrea would itself constitute *Brady* material would also fail. As noted above, Mr. Larrea's deposition testimony, and his written statement, indicates that he only *heard* gunshots, not that he saw anything or anyone. It was not until *after* Mr. Larrea made the call to report the incident that he ran back towards the scene and encountered, and briefly chased, a black male, and the sole reason he believed this black male may have been the shooter was because he was running from the scene and nothing more. Mr. Larrea did not see the shooting, did not see the direction in which the shooter ran and could not give a description of the shooter, or for that matter, the black male he encountered *after* he made the call. It follows logically that Mr. Larrea would not have been able to provide any description of the shooter, or anyone else, when he called either 911 or the FPD.

Hon. Anne Y. Shields
July 27, 2022
Page 8

<u>If Any Recording of the 911 Call Existed, Said Recording was Not Erased Intentionally</u>

Plaintiff cannot demonstrate that any 911 call existed, or that it was erased with the necessary culpable state of mind, *i.e.,* with the specific intent to destroy evidence. *See* FRCP 37(e), Committee Notes to 2015 Amendments. If a recording existed, the County's recording of the 911 call would have been erased in 2004, about 14 years *before* Plaintiff commenced this action and two years after he had exhausted all appeals of his criminal conviction. Accordingly, in contrast to cases where evidence is destroyed after an action is commenced, or at a time when a party should reasonably foresee that an action would be commenced, here any call was erased only pursuant to the County's regular retention policy. As noted above, "'In the absence of pending litigation or notice of a specific claim, a defendant should not be sanctioned for discarding items in good faith and pursuant to its normal business practices.'" *Weiss,* 121 A.D.2d at 1481, quoting *Steuhl,* 23 A.D.3d at 826-827.

It should also be noted that plaintiff's claim that "disclosing the very existence of the 911 call would have led Mr. Jackson to Larrea and Montes and, in the view of the District Attorney's office, to a likely acquittal" is palpably false. D.E. 366, p. 5. During the course of Mr. Jackson's criminal trial, plaintiff's criminal defense counsel (Scott Brettschneider) had possession of a Freeport police report which was marked as Exhibit 42 at a pretrial hearing in the criminal case. Freeport Case Report, annexed as County Exhibit 4; EBT Transcript of Scott Brettschneider, annexed hereto as County Exhibit 5, p. 75, ln. 20 – p. 77, ln. 2-5. That report identified Mr. Larrea (and Mr. Montes), identified Mr. Larrea as an employee of the NYPD and provided his telephone number. *Id.* The report states that Mr. Larrea canvassed the area along with the reporting officer and then responded to headquarters to give "32 B's" (written statements) to detectives. *See* County Exhibit 4, p. 2. Accordingly, plaintiff's criminal defense counsel was aware of Mr. Larrea's presence at the scene of the shooting, that he had made a written statement, and even had his telephone number. Mr. Brettschneider, who was Mr. Jackson's second attorney who tried the criminal case, admitted that he was in possession of this Freeport police report which contained Mr. Larrea's contact information, and that he possibly did not contact Mr. Larrea and Mr. Montes because it was possible that his testimony may not have been favorable to Mr. Jackson. EBT Transcript of Scott Brettschneider, annexed hereto as County Exhibit 5, p. 76, ln. 25, p. 77, ln. 2-12. Mr. Brettschneider also admitted that Mr. Jackson's prior criminal attorney was in possession of this Freeport Case Report containing the contact information of Mr. Larrea and Mr. Montes at a pre-trial hearing almost a year before trial. *Id.* at p. 78, ln. 4-19.

Mr. Brettschneider *knew* of the existence of Mr. Larrea, had his contact information, and still did not make any efforts whatsoever to contact him to assist with his representation of Mr. Jackson at his criminal trial. Nothing stopped defense counsel from requesting a copy of Mr. Larrea's written statement or from calling Larrea on the phone to find out what he had to say. Simply put, there is no evidence that anyone intentionally destroyed any 911 call and any assertion to the contrary is baseless.

273637304v.1

Hon. Anne Y. Shields
July 27, 2022
Page 9

The Speculative 911 Call Would Not be Relevant

Plaintiff cannot demonstrate the third element of a spoliation claim, namely that evidence or material which has been destroyed would be relevant to claims in the action. Relevance under this standard can either be inferred when a record is destroyed with a sufficiently culpable sense of mind, or established by extrinsic evidence tending to demonstrate that the missing record would have been favorable to the moving party. *See Chan v. Triple 8 Palace, Inc.,* 2005 WL 1925579, at *8 (S.D.N.Y. Aug. 11, 2005). The first option is not available to Plaintiff because, as demonstrated above, any speculative recording of the 911 call was not intentionally destroyed.

Plaintiff likewise cannot meet the second option. Plaintiff cannot demonstrate that the County's portion of the 911 call would have contained any more detail than the written statement already in his possession. In fact, *if Mr. Larrea called 911,* the NCPD recording would likely consist of preliminary questions about the location and nature of the emergency, and then an instruction to wait while the call was being transferred to the FPD. (emphasis added). Obviously, Mr. Larrea's statement – which has been in plaintiff's possession since at least since 2007 – contains all that information and more.

Even more fundamentally, Mr. Larrea did not see the shooter and his call was placed *before* he actually saw anyone at, near or possibly involved in the shooting. Accordingly, if Mr. Larrea called 911, even the full recording of the 911 call after it was transferred to the FPD, would not contain any more information than is contained in Mr. Larrea's written statement, which plaintiff has had in his possession since 2007.

In short, plaintiff cannot prevail on a spoliation claim against the County and his motion should be denied.


Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP


_____
John A. Vitagliano

Cc: Counsel of Record (via ECF)

273637304v.1