

eeplaw.com
80 Pine Street, 38th Floor
New York, New York 10005
T. 212.532.1116 F. 212.532.1176

New Jersey Office
576 Main Street, Suite C
Chatham, New Jersey 07928

August 3, 2022

<u>BY ECF</u>
Honorable Anne Y. Shields
United States Magistrate Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

 Re: *Jackson v. Cty. of Nassau, et al.*, 18 CV 3007 (JS) (AYS)

Your Honor:

 I represent plaintiff in the above-referenced matter. I write in further support of plaintiff's sanctions motion at DE #366 to respectfully reply to defendants' opposition at DE #367. If it should please the Court, there is no merit to the opposition and sanctions should issue.

 In their opposition, defendants first accuse plaintiff of "cherry-picking" evidence. DE #367, pp. 1, 5. According to defendants, the entirety of Maurice Larrea's 2020 deposition transcript is needed to determine whether Larrea dialed 911 on March 20, 1994. *Id.* at 5.

 But this is specious – Larrea's sworn statement from that night (DE #366-1) proves beyond cavil that he "dialed 911" and Larrea's guarded deposition testimony over a quarter-century later further corroborates this fact. *See* DE #366, pp. 1, 4 & n.5 (citing Larrea's testimony that he "definitely" did not put a coin in the payphone, confirming his earlier statement that 911 was dialed). This is consistent with Larrea's statements to prosecutors when he was interviewed as part of the County's 2017 reinvestigation. *See id.* (citing notes reflecting Larrea told prosecutors he "called 911"). Indeed, when Nassau County moved to vacate plaintiff's conviction in 2018, its NYCPL § 440.10 motion included the finding that Larrea had called 911 and that this fact had been withheld from plaintiff. *See* DE #366, p. 1 & n.1 ("The 911 call was not disclosed to the defense."). Since that time, defendants have admitted in discovery that "[t]he 911 call made by Maurice Larrea on March 20, 1994 was not preserved." *See id.* (citing DE #366-5 at Response 2). Yet in the face of this evidence – and without confronting it – defendants offer selective citations to Larrea's recent deposition transcript that merely reflect the vagaries of his memory of the remote events and do nothing to undermine Larrea's detailed and contemporaneous sworn account. Indeed, the lapses in Larrea's memory illustrate the lingering consequences of defendants' suppression of evidence related to this eyewitness.

 Moreover, we respectfully submit that, on this record, the County should be equitably barred from arguing that Larrea did not call 911 or did not witness the crime – even if there were credible evidence to support such arguments, which there is not. *See* DE #366, p. 1 & n.1. This is because the County previously prevailed in the underlying state court exoneration proceeding based on its representations that Larrea saw the crime and called 911 and that the call was not disclosed. *Id.*; *see Motrade v. Rizkozaan, Inc.*, 95 CV 6545 (DC), 1998 WL 108013, *6 (S.D.N.Y. Mar. 11, 1998) ("The doctrine

Hon. Anne Y. Shields
Aug. 3, 2022

of judicial or equitable estoppel forbids a litigant to repudiate a legal or factual position on which it has prevailed.") (quoting *Continental Illinois Corp. v. Comm'r of Internal Revenue,* 998 F.2d 513, 518 (7th Cir. 1993), *cert. denied,* 510 U.S. 1041 (1994) (internal quotation marks and brackets omitted)); *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact.") (citation omitted) (collecting case); *In re Velasquez,* 19 I & N Dec. 377, 382 (B.I.A. 1986) ("Absent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission"), *cited with approval in Ali v. Reno,* 22 F.3d 442, 446 (2d Cir. 1994); *United States v. Tarantino*, 08 CR 655 (JS), 2011 WL 1153914, *2 (E.D.N.Y. Mar. 27, 2011) (Seybert, J.) ("As the Government acknowledges, a Government lawyer's statement may in certain circumstances be used against the Government as a party.") (citing *United States v. Ford,* 435 F.3d 204 (2d Cir. 2006)).

In its fact section, the County presents inaccurate statements at odds with official records from its own conviction integrity investigation. *Compare* DE #367, pp. 1-3 ("Mr. Larrea did not see the shooting and did not see Mr. Jason's shooter.") *with* Notes of Executive ADA and CIU Chief Sheryl Anania of Phone Interview of Maurice Larrea on October 2, 2017 (DE #366-3) ("[Larrea] heard shots and *saw a male standing over the body shooting*.") (emphasis added). Plaintiff respectfully submits that beyond its lack of candor, the County's purported factual summary is remarkable for its failure to mention the *Brady* violations that Nassau County's own CIU substantiated decades after plaintiff's wrongful conviction, which formed the basis of plaintiff's exoneration by the County and are the subject of civil damages claims now pending against defendants. *See Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 361, 375 (E.D.N.Y. 2021) (discussing *Brady* claim and related facts). Plaintiff respectfully submits that defendants' spoliation of the 911 evidence can only be appropriately considered through the lens of the *Brady* violations as substantiated by the County itself, which in our view renders the culpable intent of the officer-defendants undeniable.

After reciting the applicable standard, defendants speculate about the content of the 911 call and whether it may have been transferred to Freeport at some point, without mentioning defendants' admitted failure to document or disclose the existence of the call. *See* DE #367, p. 5. But since the record establishes Larrea called 911 and defendants' affidavits admit that the call was recorded and possessed by Nassau County for years before being erased with plaintiff unaware of its existence (DE #367-2,3), we respectfully submit it is irrelevant whether a third party such as Freeport may have also recorded a portion of Larrea's call. *See also* DE #366, pp. 1-4.

Defendants then argue they had no duty to preserve the 911 evidence because they succeeded in preventing plaintiff from learning about it until after the evidence had been destroyed. DE #367, pp. 5-7. Such argument, however, impermissibly weaponizes defendants' misconduct and is unavailing. *See Hice v. Lemon*, 19 CV 4666 (JMA) (SIL), 2021 WL 6053812, *6 (E.D.N.Y. Nov. 17, 2021), *report and recommendation adopted*, 2021 WL 6052440 (E.D.N.Y. Dec. 21, 2021) ("The Second Circuit has noted that holding an allegedly prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence would subvert the prophylactic and punitive purposes of the adverse inference, and would allow parties who have intentionally destroyed evidence to profit from that destruction.") (quoting *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998)) (internal quotation marks omitted).

Hon. Anne Y. Shields
Aug. 3, 2022

In *Hice*, the plaintiff, who alleged that a CNN anchor had sexually assaulted him at a bar in the Hamptons, deleted data from his phone and Twitter account shortly after commencing litigation, despite a duty to preserve that information. *Id.* at *3. There, as here, the alleged spoliator claimed that the destroyed information was irrelevant and insufficiently identified by the movant. *Id.* at *6. In granting Rule 37(e)(2) sanctions and awarding an adverse inference and reasonable costs to the injured party, the Hon. Steven I. Locke explicitly rejected these arguments. *Id.* ("[T]he Court rejects Hice's arguments that the missing evidence is not essential to an element of the claims at issue, or that Lemon has not offered exactly what he is deprived of by not having the missing documents.") (citing *Kronisch*, 150 F.3d at 128) (quotation marks omitted). Indeed, the instant facts are more compelling than those presented in *Hice* because circumstantial evidence in the form of the Larrea and Montes "32b" written statements and the CIU reinvestigation notes and findings, as well as civil discovery, makes clear that Larrea and Montes were the only eyewitnesses to the murder and provided exonerative information that was critical to plaintiff's defense. *See* DE #366, pp. 1-2 & n.1; *Hice*, 2021 WL 6053812 at *6.

Defendants mistakenly rely on a state court case, *Weiss v. Bellevue Maternity Hospital*, 121 A.D.2d 1480 (3d Dep't 2014), in which a hospital destroyed records without notice of potential suit in good-faith compliance with a standardized retention policy. DE #367, p. 6. The circumstances (and applicable standards) here could not be more different, where the defendant officers knowingly disregarded their core law enforcement duty to document, collect and disclose the only 911 call in a murder case made by an eyewitness that the District Attorney later determined tended to exonerate plaintiff. Moreover, unlike the hospital in *Weiss*, the officers here who elected not to document or disclose Larrea's 911 call did so knowing their conduct would lead to plaintiff being deprived of such evidence, and that he could not even challenge the deprivation until the nondisclosure was uncovered. Likewise, defendants incorrectly rely on *Thompson v. Clark*, which involved officers who apparently had no knowledge that a 911 call had been placed. *See* 14 CV 7349 (JBW), 2018 WL 3128975, *15 (E.D.N.Y. June 26, 2018) (noting duty to preserve where officers "actually hear" 911 call).

The next section of defendants' argument, on p. 7, attempts without success to distinguish some of the cases cited by plaintiff regarding the law enforcement duty to collect, document and disclose relevant evidence in a criminal case. For example, defendants argue that *People v. Bramble*, 158 Misc.2d 411 (Sup. Ct. Kings Cty. 1993) is inapplicable because "Mr. Larrea was not called as a witness" at plaintiff's trial. DE #367 at 7. We respectfully submit that this argument underscores the need for sanctions because it highlights a consequence of defendants' knowing suppression, *i.e.* that plaintiff was unable to call Larrea or Montes at his criminal trial. By the same token, defendants' attempt to distinguish *McEachron ex rel. McEachron v. Glans*, 97 CV 885 (LEK) (DRH), 1999 WL 33601543, *3 (N.D.N.Y. June 8, 1999) misses the mark because defendants' summary of *McEachron*'s facts, including the admitted knowing deletion of relevant information by County officials in that case, is on all fours with the evidence presented here. *See Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010) (rejecting as "frivolous" defendant's argument that a police detective "had no obligation to preserve the case file" during a criminal case and before civil litigation commenced); *see also, e.g., People v. Karpele*s, 146 Misc. 2d 53, 61 (Crim. Ct. 1989) ("This duty to disclose necessarily exists in every criminal case and need not be preceded by a request or showing of need. This obligation carries a correlative duty to preserve material, exculpatory evidence.") (citations omitted) (collecting cases).

If it should please the Court, the opposition repeats two false points at the bottom of DE #367, p. 7: that Larrea allegedly "did not see anything or anyone" before he called 911 and that "the sole reason

Hon. Anne Y. Shields
Aug. 3, 2022

[Larrea] believed [the black male he stopped at gunpoint and chased] may have been the shooter was because he was running from the scene and nothing more." *Id*. These statements are directly contradicted by more probative admissible evidence in the form of Glenn Montes's 32b statement and Larrea's statements to prosecutors, both of which have indicia of reliability and were made far closer to the events in question than Larrea's deposition. As mentioned above, Larrea specifically told County prosecutors in 2017 that he "saw a male standing over the body shooting" *before he called 911* and Montes swore in 1994 that he had screamed to Larrea as Larrea stopped the suspect at gunpoint "that's him, that's the guy!" *See* DE #366-3; DE #366-11. Thus, the notion underpinning defendants' opposition that Larrea is somehow not a witness is a fabrication worthy of flat rejection.

In their penultimate argument, defendants claim that they could not have intended to deprive plaintiff of the 911 evidence because limited information about Larrea and Montes may have been appended to a Freeport Incident Report allegedly produced during pre-trial hearings. But this argument is baseless. As the County itself concluded in an admissible and binding determination by its District Attorney, the Freeport Incident Report, if it was turned over in unredacted form (a matter in dispute), does not reveal the existence of the 911 call or any of the myriad exonerative information contained in the Larrea and Montes 32b statements. *See* DE #366-4,13. Further, plaintiff notes that this Freeport Incident Report, like the 32b statements, were authored by Freeport employees and defendants, employees of the defendant County, made no notation of Larrea, Montes or the 911 call.

The opposition also argues that plaintiff's criminal defense attorney should have contacted Larrea and Montes based on the Freeport Incident Report. DE #367, p. 8. However, there is no support in the law for this argument and it was explicitly rejected by the County in its reinvestigation based on a full review of the facts. *See* DE #366-13 at P13-14. Indeed, the Supreme Court has admonished that this type of "prosecutor may hide, defendant must seek" standard "is not tenable in a system constitutionally bound to accord defendants due process." *Banks v. Dretke*, 540 U.S. 668, 696 (2004).

Plaintiff and his defense attorney had an absolute right to exculpatory evidence known to the defendant officers, including, *inter alia*, records related to the 911 call and the Montes and Larrea 32b statements. But as the key exculpatory evidence was never disclosed to the prosecutor, plaintiff "cannot be faulted for…relying on th[e] representation" that all exculpatory evidence had been disclosed. *Banks*, 540 U.S. at 693. Accordingly, the *Banks* Court flatly rejected the precise argument made by defendants. There, the government argued that it had not suppressed exculpatory material because the petitioner could have interviewed the witness who possessed the information. 540 U.S. at 695. The Court disagreed, stating: "Our decisions lend no support to the notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed." *Id.* at 695.

Likewise, the Second Circuit has refused to allow a "blame the defense" rationale to absolve the government of its *Brady* obligations. *See Lewis v. Connecticut Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) ("[*Brady*] imposes no duty upon a defendant, who was reasonably unaware of exculpatory information, to take affirmative steps to seek out and uncover such information in the possession of the prosecution ….").[1] Thus, in *United States v. Payne*, the Second Circuit held that a witness's

---

[1] District courts in this Circuit have similarly held that "[p]enalizing [the defendant] for failing to fact check the government's erroneous stipulation" with respect to disclosure of *Brady* material "would turn due process on its head."

Hon. Anne Y. Shields
Aug. 3, 2022

affidavit was "suppressed," even though it was available in a public court file and the identity of the witness was known to the defendant. 63 F.3d 1200, 1208-09 (2d Cir. 1995). The court explained that, although the defendant theoretically had access to the affidavit and knew some information about the witness, he had no reason to believe that the additional document existed—and thus no obligation under *Brady* to seek it out. *Id.* at 1209; *see also United States v. Jackson*, 345 F.3d 59, 73 (2d Cir. 2003) (evidence pertaining to a nontestifying confidential informant was suppressed as there was no basis to conclude defendants "knew or should have known about these materials or their contents," despite fact that the government had identified the informant to defendants).

The Second Circuit acknowledged this exact point in an analogous scenario. In *Shih Wei Su v. Filion*, the government argued that due diligence required the defense to learn through cross-examination that the government's previous representations about a witness were erroneous. 335 F.3d 119 (2d Cir. 2003). Rejecting that argument, the court observed that "in order to do what the state suggests [plaintiff] should have done, [plaintiff] would have been required to assume that the prosecutor had lied. This would involve enormous tactical danger." *Id.* at 128. The court pointed out that because "conscientious counsel can rely on prosecutors to live up to their obligations," the plaintiff could not be faulted "for not proceeding in his cross-examination on the assumption that the prosecutor is a liar."[2] *Id.*

The record shows that defendant Abbondandelo—who was unquestionably a member of the prosecutorial team with *Brady* obligations, *see Kyles v. Whitley*, 514 U.S. 419, 437 (1995)—failed to disclose material information, including Larrea's 911 call, that was unknown to the defense. As the County previously correctly determined, this violates *Brady*. *See Banks*, 540 U.S. at 696; *Lewis*, 790 F.3d at 121.

In conclusion, plaintiff has established the elements under Rule 37(e) including the intent to deprive and prejudice and, accordingly, respectfully requests that the Court issue an order granting spoliation sanctions in the form of an adverse inference or default judgment and reasonable costs.

Thank you for your consideration of this request.

Respectfully submitted,

Gabriel P. Harvis

cc: All Counsel

---

*United States v. Thomas*, 981 F.Supp.2d 229, 240 (S.D.N.Y. 2013); *see also Turner v. Schriver*, 327 F Supp. 2d 174, 185 (E.D.N.Y. 2004) (when a prosecutor's representation or practice indicates that all exculpatory information was disclosed, an argument that the defense was "insufficiently diligent" would be "without merit").

[2] Moreover, proper disclosure of *Brady* material is imperative so that the defense can effectively prepare for trial. *See, e.g., Leka v. Portuondo*, 257 F.3d 89, 103 (2d. Cir 2001); *St. Germain v. United States*, 03 CV 8006, 99 CR 339, 2004 WL 1171403, *18 (S.D.N.Y. May 11, 2004). Allowing defendants to conceal *Brady* material pre-trial and thereafter punish plaintiff for not seeking it out during trial would be contrary to the Court's guidance in *Banks*, 540 U.S. at 696.