UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

JOSEPH JACKSON

                              Plaintiff,                **ORDER**
-against-                            CV 18-3007 (JS)(AYS)

NASSAU COUNTY, ET AL.,

                              Defendants.
----------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Plaintiff Joseph Jackson ("Plaintiff" or "Jackson") served more than twenty years in prison for the 1994 murder of Steven Jason. Plaintiff's conviction was vacated in 2018, after the Nassau County District Attorney Conviction Integrity Unit (the "CIU") moved to vacate his sentence. The presently operative pleading is Jackson's third amended complaint (the "TAC"), appearing as Docket Entry ("DE") 339 herein. The TAC was filed after the District Court ruled on several motions to dismiss. See Jackson v. Nassau County, 2021 WL 3207168, *1 (E.D.N.Y. July 28, 2021). Briefly, the TAC alleges claims of malicious prosecution, fabrication and withholding of evidence, forcing an unconstitutional confession, failure to train and supervise, conspiracy, suppression of evidence, and state law claims of malicious prosecution and false imprisonment. Named as Defendants in the various counts of the TAC are the County of Nassau,

1

and eight Nassau County police officers who were involved with Plaintiff's prosecution and conviction.

Presently before the Court is Plaintiff's motions for sanctions pursuant to Rule 37(e) of the Federal Rules of Civil Procedure ("Rule 37(e)"). It is a renewed motion that was originally made in 2019. See DE [206]; [212], and [216]. The motion was denied in 2019, with leave to renew after the parties had the opportunity to engage in discovery. Now that discovery is closed, Plaintiff renews his motion, which was fully briefed on August 3, 2022. DE [369]. In particular, Plaintiff seeks the most extreme sanction for the alleged spoliation of evidence, i.e., the terminating sanction of a judgment of default or, at the very least, an adverse inference to be read to the jury at trial. For the reasons that follow, the motion is denied.

## BACKGROUND

Plaintiff's motion seeks the imposition of sanctions pursuant to Rule 37(e) as a consequence of Defendants' alleged spoliation of evidence. The evidence alleged to have been wrongfully destroyed, or withheld, is the transcript (or any recording) of a 911 emergency call made on the night of the Jason murder (the "911 Call" or the "Call"). Plaintiff asserts that Defendants have wrongfully destroyed or wrongfully withheld from discovery any such evidence.

While Defendants agree that the 911 Call was placed, they note that it was placed in 1994 - twenty four years prior to both Jackson's exoneration, and the commencement of this lawsuit. For reasons explained in greater detail below, Defendants argue that they have breached no duty to preserve or produce any such information. They therefore oppose the motion completely.

The Court turns to a description of relevant facts and the merits of the motion.

BACKGROUND

I.   Factual Background

The facts forth herein are drawn from the parties' submissions in connection with the original and renewed motion. Those submissions included the pre-trial deposition testimony of Maurice Larrea ("Larrea"), taken in this case on February 6, 2020 (annexed as Exhibit 1 to the present motion as DE [367-1]). They also include statements made by Larrea and Glenn Montes ("Montes") to the Freeport Police Department on the night of the 1994 murder of Steven Jason. (Larrea statement annexed as Exhibit 1 to the present motion as DE [366-1]) (hereinafter the "Larrea 32b Statement") (Montes statement annexed as Exhibit 11 to the present motion as DE [366-11] (hereinafter the "Montes 32b Statement")). Also relied upon by the Court are declarations of a witness with knowledge of the procedures in effect in 1994 with respect to the routing and recording of emergency calls.

The parties are in agreement that neither the facts of the 911 Call nor the Larrea's statement (or that of Montes) were disclosed to the defense during the course of Jackson's murder trial. See DE [366-4] at ¶¶ 10-11;18. No transcript of the Call was preserved. Therefore, while the written statements of Larrea and Montes have been produced in discovery in this case, no emergency call transcript was produced herein. See DE [366-5] at ¶ 2.

The 911 Call was made by Larrea on March 20, 1994 - the night of the Steven Jason murder. It was placed by Larrea from a pay telephone. When he made the Call, Larrea was an off-duty NYPD police officer who was the passenger in a car that was being driven by Montes. Shortly after hearing gunshots, Larrea told Montes to pull over to a pay phone where he placed the Call. See Transcript of Deposition of Maurice Larrea ("Larrea Tr."), at 26, DE [367-1]. Larrea does not recall precisely whether he called the Freeport Police Department directly, or

dialed 911. Larrea Tr. at 26; 36-37; 115-18. He stated, however, that a call to the Freeport Police Department would have required the use of money, which he states that he definitely did <u>not</u> do. Larrea Tr. at 117-18. However, Larrea stated it was his understanding that he had reached the Freeport Police Department since the person who answered the phone was familiar enough with the local Freeport area to have corrected Larrea's reference to the "Knights of Columbus" Hall to that of the "American Legion" Hall. Larrea Tr. at 26; 118.

Larrea recollected, consistent with his statement made on the night of the Jason murder, that from his vantage point where he made the Call, he saw a man run across Sunrise Highway into an OTB parking lot and thereafter, out of his sight toward a Long Island Railroad Station. Larrea Tr. at 56-57. Larrea gave immediate chase to the individual but stopped when he arrived at the Sunrise Highway median, thinking at the time, that on-duty law enforcement would later apprehend the person. Larrea Tr. at 59. Montes stated that he saw the shooter run across Sunrise Highway, and that the person assumed to have been the shooter climbed a fence. <u>See</u> Notes of NCIU interview of Glenn Montes, DE [366-12]. Later that night, both Larrea and Montes made statements to Freeport Village police regarding what he had seen on the night of the murder. DE [366-1] (handwritten statement dated March 20, 1994). The statements are consistent regarding the facts of their recollection of the events surrounding the Jason murder. There is no question but that any transcript of the 911 Call was not preserved, and has therefore never been produced during the course of discovery herein. While the statements of Larrea and Montes were not produced during the Jason murder trial, they were produced in discovery herein.

Defendants agree, as a factual matter, that no transcript of any emergency call was ever produced during the course of discovery herein. They rely on certain facts, however, that undercut Plaintiff's argument that they engaged in sanctionable conduct with respect to the

4

failure to produce. In particular, Defendants note that discovery has revealed a lack of clarity as to whether Larrea, who placed the call, dialed the Village of Freeport or the County of Nassau when placing the emergency call. Defendants have submitted affidavit testimony setting forth the procedures in effect for the receipt, transfer and recording of emergency calls made in 1994. These procedures are explained by Jan Gaddist, a witness with actual knowledge, in two separate declarations annexed to the County's response to the present motion. See Declarations of Jan Gaddist dated September 20, 2019 and July 27, 2022 (the "Gaddist Declarations") annexed as Exhibits 2 and 3 to Defendants' Opposition ("Defs.' Opp."), DE [367-2] and [367-3]. The Gaddist Declarations support Defendants' position that a 1994 call made directly to the Village of Freeport would have not gone through the Nassau County 911 emergency call system, and therefore there would never have been a 911 recording in the County's possession. If, on the other hand, the 1994 call was made directly to the Nassau County 911 system, it would have been routed immediately to the Freeport Village's separate Police Department, and any 911 recording made by the Nassau County system would consist only of the re-routing of the call. The distinction of the number dialed in 1994 is therefore important to determine whether such a recording ever existed, and the scope thereof. This distinction is also important because The Village of Freeport is not a defendant in this case; the County of Nassau is. Thus, no Defendant herein may ever have been in possession of any recording at all. In any event, Defendants state that they have produced all documents as to which they have access and the requirements for sanctions under Rule 37(e) have not been met.

II.  The Motion

Plaintiff moves, pursuant to Rule 37(e) for spoliation sanctions. He seeks imposition of the terminating sanction of a judgment of default, or, at the very least, that an adverse inference

5

be read to the jury at trial. In support of the motion, Jackson submits argument demonstrating the importance of the evidence alleged to have been destroyed. He contended in the State proceedings (and here) that statements made by Larrea and Montes were withheld from him in violation of his Constitutional rights under Brady v. Maryland, 373 U.S. 83 (1963). In particular, he argued that descriptions contained in any emergency call were different from those of witnesses who testified at his criminal trial. See Affirmation in Support of Motion to Vacate Judgment Pursuant to C.P.L. § 440.10(1)(h) ("Vacate Aff. ") at ¶19, DE [366-4]. As set forth in the affidavit and memorandum of law submitted in support of vacating Jackson's murder conviction, the Nassau County District Attorney's office appears to have agreed. Id. at ¶ 29; see also Memorandum of Law, DE [366-13]. Plaintiff seeks the most extreme of discovery sanctions on the ground that there was undoubtedly a duty to preserve evidence of the 911 Call. He further argues that Defendants' failure to preserve such evidence rises to a showing of intentional conduct, and that Jackson has suffered prejudice herein within the meaning of Rule 37(e).

In opposition to the motion, Defendants rely in part on the Gaddist Declarations to show that it is unclear as to whether any recording of the 911Call was ever in the custody of Nassau County. In addition to the questionable nature of the claim that any 911 recording even exists, Defendants argue that Plaintiff can show no duty to preserve such evidence over a 24-year period. Thus, Defendants argue that they have violated no discovery obligation and the facts herein show that no sanction, much less the extreme sanctions sought by Plaintiff, should be imposed.

ANALYSIS

I.      Legal Principles: Rule 37(e)

Rule 37(e) allows for the imposition of sanctions for spoliation, which is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d. 776, 779 (2d Cir. 1999); Orbit One Commc'ns, Inc. v. Numerex Corp., 271 F.R.D. 429, 435 (S.D.N.Y. 2010). With respect to electronically stored information ("ESI") the current version of Rule 37(e) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e); Hice v. Lemon, No. 19-cv-4666 (JMA) (SIL), 2021 WL 6053812, at *4 (E.D.N.Y. Nov. 17, 2021), report and recommendation adopted, No. 19-cv-4666 (JMA) (SIL), 2021 6052440 (E.D.N.Y. 2021). If a Court holds that a sanction should be imposed, the nature of that sanction lies within the sound discretion of the court," which is exercised and "assessed on a case by case basis". Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001). "In general, a court should impose the least harsh sanction that can provide an adequate remedy."

Lokai Holdings LLC v. Twin Tiger USA LLC, No. 15-cv-9363 (ALC) (DF), 2018 WL 1512055, at *8 (S.D.N.Y. Mar. 12, 2018) (internal quotation marks and citation omitted). Courts consider a range of sanctions from allowing additional discovery, to the imposition of monetary sanctions such as cost-shifting and fines, to the more extreme standards of recommending that adverse inference instructions be provided to the jury, preclusion or evidence and to the most extreme sanction - entry of a judgment of default. See Hice, 2021 WL 6053812, at *4.

Rule 37(e) sets forth three separate requirements to be met before the sanctions sought by Jackson may be imposed. Thus, in accord with the plain language of the Rule 37(e)(2), a party seeking sanctions must show: (1) that ESI that should have been preserved has been lost; (2) that the party responsible for the loss of such information has acted with "intent to deprive" the other party of the ESI and (3) that the party seeking sanctions has made a showing of prejudice. See Fed. R. Civ. P. 37(e).

As to the first element, the duty "to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Ltd., 247 F.3d at 436. "A party must retain all relevant evidence in existence when the duty to preserve attaches and any relevant evidence created thereafter." Hice, 2021 WL 6053812, at *4. To meet this duty, parties are required to suspend their "routine document retention/destruction polic[ies] and put in place a 'litigation hold' to ensure the preservation of relevant documents." Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 431 (S.D.N.Y. 2004) (citation omitted). Thereafter, counsel "must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents." Id. at 432.

If a duty to preserve ESI is found to exist and has been breached, the Court considers whether the loss of the information is prejudicial to another party. Where such prejudice exists the Court, as discussed above, may impose an appropriate sanction. The most extreme sanctions - those which are sought by Plaintiff here - are imposed only if the Court finds that the party who failed to preserve the ESI acted with intent to deprive the other party of information. Fed. R. Civ. P. 37(e)(2)(A).

II.     Disposition of the Motion

Applying the standards of Rule 37(e) to the present case, the Court holds that Plaintiff's motion fails at every level. At the outset, it is unclear whether the ESI sought to be produced even existed. While it is clear that the 911 Call was made, it remains unclear whether that call was made to the Village of Freeport or the County of Nassau. As set forth in the Gaddist Declarations, if the Call was made directly to the Village of Freeport no recording thereof would ever have been in the possession of Nassau County. See Declaration of Jan Gaddist dated July 27, 2022. Even if the call was made to party defendant Nassau County, there is no reason to discredit the Gaddist testimony that any such call would have been re-routed immediately to the Village of Freeport. Any recording in the possession of Nassau County would therefore be a recording of nothing more than the re-routing information. See Declaration of Jan Gaddist, dated September 20, 2019, ¶ 4-8. A brisk routing of the 911 Call to a Village of Freeport operator explains why the person who took the information from Larrea was able to identify with specificity the location of the shooting. As Larrea testified, that operator was knowledgable enough to correct Larrea's identification of the murder location from the Knights of Columbus Hall to that of the American Legion. This explains Larrea's perhaps mistaken belief that he was at all times on the phone with Freeport, and not with the County. For the foregoing reasons, the

Court holds that Plaintiff has failed to show that any 911 recording was ever in the possession of the County defendant. Failure to show such possession requires a holding that Plaintiff cannot to meet the first prong of his motion, i.e., that evidence of a 911 recording containing information regarding a description of any suspect other than Jackson exists.

Moreover, even if there was a showing that ESI in the form of a recorded 911 Call existed in 1994, Plaintiff fails to show that the County had or breached a duty to have retained such evidence. Rule 37(e) sanctions can be imposed only if a party can show a duty to preserve ESI "in the anticipation or conduct of litigation". Fed. R. Civ. P. 37(e). To be precise, Plaintiff fails to show a duty to preserve any ESI allegedly created in 1994 so that it could be produced in the context of a civil case commenced more than two decades later. In 1994, the County had a document retention policy of ten years. The duty to retain ESI arises when litigation is anticipated. The facts here show no duty to extend that document retention policy beyond that period of time. Indeed, a twenty-four year period of anticipation of litigation is undoubtedly beyond any time frame when litigation is anticipated within the meaning of Rule 37. In short, the Court declines to construe Rule 37 to create a duty to preserve any evidence for such a long period of time, when civil litigation was nowhere close to being on the horizon. Because there was no duty to preserve the ESI sought (if it even ever existed), Plaintiff cannot show any failure to take reasonable steps to preserve the ESI.

Finally, even if Plaintiff could show that a 911 recording existed, was in the County's possession, and was destroyed when litigation was on the horizon - none of which are shown - there is no basis for imposition of the extreme spoliation sanctions sought. The Court may only act in accord with the Federal Rules' grant of such powers upon a finding that the County "acted

with the intent to deprive" Jackson of the 911 ESI. The facts here do not support any such finding.

As a final matter, the Court notes that the bulk of Plaintiff's motion is devoted not to a discussion of the civil discovery standards arising under Rule 37(e), but to the argument that Jackson's <u>Brady</u> rights were violated in the context of his criminal prosecution. It is <u>Brady</u> that is alleged to establish the duty to preserve evidence, and it is the <u>Brady</u> violation that forms the foundation of the present discovery motion. <u>See</u> DE [366] at 3. While <u>Brady</u> imposes a prosecutor's duty to produce evidence, it does not, in this case, create the civil litigation duty to preserve ESI as set forth in Rule 37(e). Thus, even if it is ultimately held that Jackson's <u>Brady</u> rights were violated, the <u>Brady</u> violation does not compel a holding that the County failed to preserve ESI that should have been preserved in anticipation of this litigation.

## <u>CONCLUSION</u>

For the foregoing reasons the Court denies Plaintiff's motion for the imposition of discovery sanctions, appearing as Docket Entry 366 herein, in its entirety.

Dated: Central Islip, New York
September 19, 2022

                                            /s/ Anne Y. Shields
                                              ANNE Y. SHIELDS
                                       United States Magistrate Judge