

John A. Vitagliano, Esq.
Direct dial: (914) 872-7367
john.vitagliano@wilsonelser.com

September 30, 2022

Hon. Joanna Seybert
United States District Judge
Eastern District of New York
Alfonse M. D'Amato Federal Building
100 Federal Plaza
Central Islip, NY 11722

**Re**:   *Joseph Jackson v. Nassau County et al.*, Docket No. 18-cv-3007 (JS) (AYS)

Dear Judge Seybert:

Wilson Elser represents the County and the Individual Defendants in the above-referenced action. The Defendants wish to move for summary judgment dismissing all of plaintiff's claims. This is a civil rights action filed against Nassau County along with former members of the Nassau County Police Department ("NCPD"). Plaintiff's claims arise from his vacated December 9, 1996 murder conviction.

In short, on March 20, 1994, Steven Jason ("Mr. Jason") was shot and killed in Freeport, New York. Mr. Jason was scheduled to testify in a grand jury proceeding against one of Plaintiff's friends, Tony Jackson. Plaintiff told his cousin Peddie Jenkins ("Mr. Jenkins") that he wanted to kill Mr. Jason for "snitching" on Tony Jackson.

On the night of the murder, Mr. Jenkins was a bouncer at Mr. Jason's birthday party. As Mr. Jason left the party, Mr. Jenkins tipped off Plaintiff who was armed and lying in wait around the corner. Skwanitra Witherspoon ("Ms. Witherspoon") left the party with Mr. Jason when Plaintiff approached them. Plaintiff pulled out a revolver and shot Mr. Jason. Ms. Witherspoon and Mr. Jenkins both heard gunshots ring out as they ducked for cover. Mr. Jenkins then saw Mr. Jason grabbing his chest as he repeatedly uttered his last word, "Star" (referring to Plaintiff's nickname, "Star King"). Martha Campbell, another witness within close proximity of the shooting, heard these same gunshots, saw a black male run to a getaway car that drove south on Guy Lombardo Avenue, and then saw Mr. Jason laying in the street shaking.

While Glenn Montes ("Mr. Montes") and Maurice Larrea ("Mr. Larrea") were driving east on Sunrise Highway, past the area of the murder, they heard gunshots and one of them saw muzzle flashes. They drove at least a block away and Mr. Larrea, an off-duty police officer, called the police to report the incident. After making this call, Mr. Larrea saw an individual fleeing the area on foot, in the opposite direction that Martha Campbell saw the getaway car leaving the crime scene, and pulled out his firearm. After police officers arrived, both men were taken to the Freeport Police Department ("FPD") station where they provided sworn affidavits ("the Montes and Larrea statements") to NCPD detectives. FPD officers also wrote an incident report that contained a witness list ("the Freeport Report") which included Mr. Larrea and Mr. Montes names, their contact information, a summary of their observations, and that they gave sworn written statements ("32b's").

Several months later, Mr. Jenkins told NCPD detectives that Plaintiff shot Mr. Jason and relayed his involvement in the murder. On December 17, 1994, Plaintiff was placed into custody on unrelated warrants and then arrested on unrelated charges. While awaiting arraignment, he was questioned, admitted to the murder and signed a 15-page written confession. The confession was largely corroborated by the NCPD detectives investigation and evidence in the case. While in custody, he was fed, he slept, and permitted to use a restroom. Based on pictures of the Plaintiff and a report on his physical condition, he suffered no injuries while in police

Hon. Joanna Seybert
September 30, 2022
Page 2

custody. Subsequently, Ms. Witherspoon was presented with a photo array and positively identified Plaintiff as Mr. Jason's shooter. On March 7, 1995, Plaintiff was arrested and was later indicted by a Nassau County Grand Jury for killing Mr. Jason. Plaintiff then participated in a line-up and Ms. Witherspoon again positively identified Mr. Jackson as Mr. Jason's shooter.

After Plaintiff's arrest, Det. Abbondandelo, the lead NCPD detective in this case, went to the DA's office with all of his evidence, including the Montes and Larrea statements. He discussed these statements with the assigned Assistant District Attorney, Mike Walsh ("ADA Walsh"), who discounted their version of events. The DA's office also received the Freeport Report, which was subsequently turned over to Plaintiff and marked for identification as evidence at Plaintiff's pre-trial suppression hearing. Plaintiff's motion to suppress was denied with the court finding that the photo array and line-up were not unduly suggestive and that Plaintiff's constitutional rights were not violated. Plaintiff also testified at his pre-trial hearing, making many of the same claims about his interrogation that he makes here, with the state court judge finding his confession voluntary.

Mr. Jenkins cooperated with law enforcement and testified at Plaintiff's trial in exchange for leniency in the prosecution for his role in the crime. Ms. Witherspoon also testified at the trial. The jury convicted Plaintiff of Murder in the Second Degree and other related charges and he was sentenced to 25 years in prison.

In 2007, Plaintiff served a FOIL demand on the DA and obtained the Montes and Larrea statements. In 2017, ten years later, Plaintiff requested that the DA's Conviction Integrity Unit ("CIU") review his conviction. On February 16, 2018, after CIU's investigation, the DA determined that the Montes and Larrea statements were *Brady* material that should have been turned over and moved to vacate Plaintiff's conviction as a result of a constitutional violation. The court vacated Plaintiff's conviction and the indictment was ultimately dismissed.

On May 22, 2018, Plaintiff commenced the instant action. Plaintiff's third amended complaint ("TAC") filed on August 12, 2021 alleges: 1) seven federal causes of action, under 42 U.S.C. § 1983, for malicious prosecution, fabrication of evidence, coercion, *Monell* liability, conspiracy, failure to intervene, evidence suppression/*Brady* violations/spoliation and denial of access to Courts; and 2) two state law causes of action for malicious prosecution and false imprisonment against the County and the Individual Defendants.

**Plaintiff's Federal and State Law Claims for Malicious Prosecution and False Imprisonment Must Fail:**
Police had probable cause to initiate and continue the prosecution of Plaintiff based solely on the inculpatory statements given by Mr. Jenkins and Ms. Witherspoon, as well as Ms. Witherspoon's positive identifications. *See Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 476 (E.D.N.Y. 2016); *Nnodimele v. Derienzo*, 2016 U.S. Dist. LEXIS 9881, at *24 (E.D.N.Y. Jan. 27, 2016). In addition, the Defendants are entitled to qualified immunity because, at a minimum, reasonable police officers could disagree on whether probable cause existed based on the independent evidence. *See Barcomb v. Sabo*, 487 Fed. Appx. 645, 647 (2d Cir. 2004).

**Plaintiff's Coercion and Fabrication of Evidence Claims with Respect to Plaintiff's Confession Fail**:
Plaintiff's confession was made voluntarily and in conformity with state and federal law. *Green v. Scully*, 850 F.2d 894, 901 (2d Cir. 1988). Plaintiff was interrogated for a fraction of the time that he was in police custody while he awaited arraignment on an unrelated drug charge and valid warrants. Plaintiff also was not represented by an attorney in the shooting investigation and knowingly and voluntarily waived his *Miranda* rights. When he left police custody, as evidenced by photographs and paperwork, he did not have any injuries. Lastly, he was fed, he slept and he used a restroom throughout his time in custody. Additionally, in Plaintiff's TAC, he does not allege how any of the individual Defendants were personally involved in the alleged false confession, as is required by law. *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

**Defendants Remaining Fabrication of Evidence Claims Fail:** Although Detective Kosior participated in the investigation of Plaintiff, there is no evidence that his polygraph examination of Plaintiff in any way

constituted fabricated evidence. *Grullon*, *supra* at 133. Likewise, there is no evidence that Detective Alger, who conducted a line-up identification, fabricated any evidence. *Id*. Plaintiff's claim that witness testimony was "corruptly coordinated" to implicate Plaintiff as the shooter is entirely baseless.

**Plaintiff's *Monell* Claim Fails:** There is no evidence that the County failed to train its officers, nor were they deliberately indifferent in this respect. *Chiaro v. Cty. of Nassau N.Y.*, 2011 U.S. Dist. LEXIS 94229, at *18-19 (E.D.N.Y. July 29, 2011) (*aff'd*, *Chiaro v. Cty. of Nassau*, 488 F. App'x 518, 519 (2d Cir. 2012)). Plaintiff cannot prove that the County Defendant failed to supervise or discipline its officers despite extensive discovery of Nassau County's disciplinary records and supervisory mechanisms. *See Hill v. City of N.Y.*, 2005 U.S. Dist. LEXIS 38926, at *29 (E.D.N.Y. Dec. 29, 2005). Plaintiff's reliance on a single, previous lawsuit involving Det. Dempsey, bolstered by dismissed, unfounded complaints and newspaper clippings, is entirely inadequate to establish a claim under *Monell*. *See Dorsainvil v. City of N.Y.*, 2020 U.S. Dist. LEXIS 206407, at *13 (E.D.N.Y. Nov. 4, 2020); *see also Rasmussen v. City of N.Y.*, 766 F. Supp. 2d 399 (E.D.N.Y. 2011).

**Plaintiff's *Brady* Claim Fails:** The individual Defendants discharged their duties under *Brady* by providing the prosecutor with the Freeport Report. The Freeport Report listed Mr. Montes and Mr. Larrea as witnesses to the shooting, contained their contact information, and was furnished to Plaintiff's criminal defense attorney on the record in open court. By turning over the names of witnesses with potentially exculpatory information, the Defendants satisfied their *Brady* obligations. *See Pereira v. Superintendent*, Wyo. Corr. Facility, 2005 U.S. Dist. LEXIS 41990, at *26 (E.D.N.Y. Aug. 19, 2005); *see also U.S. v. Volpe*, 42 F. Supp. 2d 204, 227 (E.D.N.Y. 1999); *U.S. v. Al Malik Alshahhi*, 2022 U.S. Dist. LEXIS 110730, at *73 (E.D.N.Y. June 22, 2022); *U.S. v. Reddy*, 190 F. Supp. 2d 558, 575 (S.D.N.Y. 2002). The Defendants also discharged their duties under *Brady* by delivering the Montes and Larrea statements to the DA's office. *Greene v. City of N.Y.*, 2017 U.S. Dist. LEXIS 219506, at *5 (E.D.N.Y. May 24, 2017); *Horn v. Stephenson*, 11 F.4th 163, 171 (2d Cir. 2021); *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992). As to the 911 call, Plaintiff cannot prove that this evidence existed in the first place, and cannot demonstrate that the Swenson note and the Zimmer-Baldwin interview amounted to *Brady* material that, if disclosed, the result of plaintiff's criminal conviction would have been different. *See U.S. v. Ulbricht,* 858 F.3d 71, 112 (2d Cir. 2017).

**Plaintiff's Failure to Intervene and Conspiracy Claims Fail:** The failure to intervene claim fails as Plaintiff's constitutional rights were not violated. *See supra* p. 1-3; *Martinez v. City of N.Y.*, 564 F. Supp. 3d 88, 106 (E.D.N.Y. 2021). Plaintiff's conspiracy claim against the individual Defendants fails under the intra-corporate conspiracy doctrine. *See East v. Roosevelt Union Free Sch. Dist.*, 2020 U.S. Dist. LEXIS 138849, at *64 (E.D.N.Y. July 31, 2020). All of the alleged co-conspirators here are members of a single municipal entity.

While the foregoing represents the main arguments in support of the motion, the Defendants respectfully reserve the right to bring additional arguments that may come to light as work and research on the motion progresses. In light of the above, the Defendants request a briefing schedule to move for summary judgment.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

_____
John A. Vitagliano

Cc: Counsel of Record (via ECF)