

eeplaw.com
80 Pine Street, 38th Floor
New York, New York 10005
T. 212.532.1116 F. 212.532.1176

New Jersey Office
576 Main Street, Suite C
Chatham, New Jersey 07928

October 7, 2022

**BY ECF**
Honorable Joanna Seybert
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re: *Jackson v. Cty. of Nassau, et al.*, 18 CV 3007 (JS) (AYS)

Your Honor:

    I represent plaintiff in the above-referenced matter. I write in accordance with Rule III.B.1 of the Court's Individual Practices to respectfully respond to the pre-motion application filed at DE #376. Defendants misrepresent the summary judgment record and advance legal theories lacking merit, including some previously rejected by this Honorable Court.

    First, defendants assert that decisions following suppression hearings in the underlying criminal case have preclusive effect in the instant civil action. *See* DE #376, p. 2 (citing denial of suppression to argue that "Plaintiff's confession was made voluntarily and in conformity with state and federal law."). However, if it should please the Court, Your Honor rejected this same argument when Nassau County presented it over a decade ago in *Kogut v. Cty. of Nassau*, another wrongful conviction in which defendant Dempsey was accused of coercing false confessions. 06 CV 6695, 06 CV 6720 (JS). There, as here, Nassau County claimed voluntariness was conclusively established by decisions of the state hearing court. 2009 WL 5033937, *10 (E.D.N.Y. Dec. 11, 2009). Your Honor reasoned that "[s]ince the trial court has discretion to reopen a suppression hearing after an appellate court has remitted the case for a new trial, it should have similar discretion upon the granting of a motion to vacate a judgment of conviction." *Id.* at *10 & n.10. Following that logic, this Honorable Court rejected Nassau County's collateral estoppel defense, holding: "Although the Identical Issue was Necessarily Decided in the Prior Action, a Vacated Judgment Cannot have any Preclusive Effect on Subsequent Proceedings," and thus, because his conviction was vacated, "collateral estoppel does not bar Kogut from relitigating whether [his] confession was voluntary...." *Id.* at *9-*10; *accord Tankleff v. Cty. of Suffolk*, 09 CV 1207 (JS) (WDW), 2010 WL 5341929, *5 (E.D.N.Y. Dec. 21, 2010) (same) (citation omitted); *McCray v. City of New York*, 03 CV 9685 (DAB), 03 CV 9974 (DAB), 03 CV 10080 (DAB), 2007 WL 4352748, *11 (S.D.N.Y. Dec. 7, 2007) ("Given the vacatur of the judgments of conviction, and the dismissal of charges against [him], the suppression ruling against Plaintiff[] cannot be said to have existed in any legally effective way at the inception of this federal suit.").

    Here, Mr. Jackson, who was exonerated on the Nassau County DA's motion based on its conclusion that he was "wrongly convicted" and suffered *Brady* violations, has maintained that Dempsey and others threatened and abused him inside the Homicide Squad over a thirty-nine hour

Hon. Joanna Seybert
Oct. 7, 2022

period until plaintiff signed a false fifteen-page statement written by the officers.[1] Contrary to defense counsel's representations at pp. 1-2 of DE #376, the statement attributed to Mr. Jackson is uncorroborated, internally inconsistent and undermined by better evidence, including statements and lie detector results of Takita Dorsey, a supposed intermediary in the murder plot who was later cleared.

In another wrongful conviction involving an alleged coerced false confession, the Hon. Paul A. Crotty recently denied summary judgment, holding that the officer-defendants who allegedly manufactured the inculpatory statement could be liable on plaintiff's fabrication of evidence, coercion and malicious prosecution claims. *See Hincapie v. City of New York*, No. 18 CV 3432 (PAC), 2022 WL 2870411, *11 & n.23, *13-14 (S.D.N.Y. July 21, 2022).[2] We respectfully submit that, based on the false confession evidence in this case alone, the same result is warranted here. *See id.*; *Tankleff v. Cty. of Suffolk*, 09 CV 1207 (JS) (AYS), 2017 WL 2729084, *21 (E.D.N.Y. June 23, 2017) ("If…Plaintiff's statements were coerced and the prosecution was initiated based on a confession fabricated by Defendants, the factfinder could conclude that no reasonable officer would believe that there was probable cause to prosecute.") (collecting cases); *id.* ("If the confession was fabricated, that alone could be sufficient to rebut the presumption of probable cause.") (citation omitted); *Morel v. Reed*, 11 CV 1808 (DLI) (LB), 2015 WL 3755976, *4 (E.D.N.Y. June 16, 2015) ("The case law…is incredibly clear. When law enforcement officers fabricate evidence…the existence of probable cause based on non-fabricated evidence ceases to be a defense for the fabricator.") (citations and internal quotation marks omitted) (collecting cases).

Second, the *Brady* violations, which the Nassau County District Attorney concluded resulted from defendants' failure to disclose exonerative witness statements to prosecutors, provide an independent and compelling further reason to deny summary judgment. *See Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 1992) (noting that "withholding *Brady* material will virtually always lead to a substantial violation of constitutional rights"). As plaintiff argued in his Rule 12(b)(6) opposition, Nassau County's successful motion to vacate plaintiff's conviction in state court, based on the County's representations that *Brady* violations had occurred, binds it to its prior representations as judicial admissions. *Motrade v. Rizkozaan, Inc.*, 95 CV 6545 (DC), 1998 WL 108013, *6 (S.D.N.Y. Mar. 11, 1998) ("Once a party has 'sold' its position to one court it cannot turn around and repudiate it in order to have a second victory. The doctrine seeks to insure the sanctity of the oath and the integrity of the judicial process.") (citations and internal quotation marks omitted) (collecting cases); *United States v. Tarantino*, 08 CR 655 (JS), 2011 WL 1153914, *2 (E.D.N.Y. Mar. 27, 2011) ("As the Government acknowledges, a Government lawyer's statement may in certain circumstances be used against the Government as a party.") (citing *United States v. Ford*, 435 F.3d 204 (2d Cir. 2006)); *see also* New York Rule of Professional Conduct 3.8(c). Plaintiff respectfully submits that, even if judicial estoppel is not ultimately deemed to apply, the County's prior admissions will provide strong prudential grounds to deny summary judgment, particularly when coupled with the substantial additional evidence adduced in discovery related to plaintiff's civil *Brady* claims.

---

[1] Approximately a dozen other criminal suspects have, like Mr. Jackson, reported abusive interrogation tactics by defendant Dempsey, including violence. But Nassau County admits that defendant Dempsey was never investigated or disciplined in connection with these allegations.

[2] The *Hincapie* defendants did not move on coercion, conceding genuine disputes of material fact. *See id.* at *9 n.20.

Hon. Joanna Seybert
Oct. 7, 2022

Third, discovery has foreclosed any credible argument that Peddie Jenkins or Skwanitra Witherspoon provide independent probable cause for plaintiff's arrest or prosecution. Mr. Jenkins testified at his deposition that he was chased from the scene armed with a gun and with the decedent's blood on his clothing – directly contradicting Jenkins' trial testimony and revealing Jenkins as the likely shooter. Jenkins also matches the description provided by Skwanitra Witherspoon, Glenn Montes and Maurice Larrea, who each described a perpetrator who, like Jenkins, was approximately five inches shorter than plaintiff. Ms. Witherspoon's purported identifications of plaintiff are also undermined by plaintiff's designated eyewitness identification expert, Dr. Jennifer E. Dysart, who reviewed the record and concluded that "there was good reason to doubt that Ms. Witherspoon's selection of Mr. Jackson was an accurate identification of the true perpetrator." *See Rosario v. City of New York*, 18 CV 4023 (LGS), 2021 WL 1930293, *4-6 (S.D.N.Y. May 13, 2021) (describing Dr. Dysart as "well qualified to testify about police practices relating to eyewitness identification" and as presenting "precisely the kind of opinion that is not intuitive and may be helpful to the jury").

Fourth, for the same reasons that this Honorable Court denied qualified immunity in *Kogut*, denial is warranted here: evidence suggests that defendants framed Mr. Jackson for the Steven Jason murder and, by the County's own admission, suppressed evidence that would have likely resulted in plaintiff's acquittal. *See Kogut v. Cnty. of Nassau*, 06 CV 6695 (JS) (WDW), 2012 WL 3704710, *1-2 (E.D.N.Y. Aug. 27, 2012) (citing *Limone v. Condon,* 372 F.3d 39, 48 (1st Cir. 2004), *Newsome v. McCabe,* 260 F.3d 824 (7th Cir. 2001) and *Blake v. Race,* 487 F.Supp.2d 187, 216 n. 21 (E.D.N.Y. 2007)).

Fifth, plaintiff's *Monell* claim, premised on a failure by the County to train or discipline defendant Dempsey, has previously survived summary judgment before this Honorable Court. *See Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 380-81 (E.D.N.Y. 2021) ("Plaintiff has alleged, and this Court concluded in *Kogut* based on uncontroverted statements of fact filed in connection with summary judgment motions, that the County failed to investigate and discipline officers for their conduct. Stated differently, Plaintiff has plausibly pleaded deliberate indifference by alleging enough facts to support an inference that the County persistently failed to investigate complaints or discipline officers whose conduct[] prompted the complaints.") (citation omitted). Discovery has now bolstered plaintiff's allegations, supplementing the record that this Honorable Court deemed sufficient in *Kogut* and providing a stronger basis to deny summary judgment on the *Monell* claim here.

Lastly, it is beyond cavil that the defendant officers had an affirmative constitutional duty to intervene in the alleged violations, and that the lengthy investigation and prosecution of Mr. Jackson offered opportunities for defendants to step in and prevent the coerced confession and the fabrication and suppression of evidence. *See, e.g., Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014) ("Whether the officer had a realistic opportunity to intervene is normally a question for the jury…") (citation and quotation marks omitted).

Thank you for your attention to this matter.

                                                        Respectfully submitted,

                                                        Gabriel P. Harvis

cc:      All Counsel