UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------- x

JOSEPH JACKSON,                                         :     Docket No.
                                                       :     18-CV-3007 (JS) (AYS)
                                    Plaintiff,          :
                                                       :
              -against-                                 :
                                                       :
NASSAU COUNTY; DETECTIVE ROBERT DEMPSEY; :
DETECTIVE GARY ABBONDANDELO; DETECTIVE   :
JOHN M. HOLLAND; DETECTIVE MICHAEL HERTS; :
DETECTIVE MARTIN ALGER; DETECTIVE WALTER :
SWENSON; DETECTIVE ANTHONY KOSIER;        :
DETECTIVE SERGEANT DAN SEVERIN; and JOHN  :
and JANE DOE 1 through 20,                 :
                                                       :
                                    Defendants.         :
                                                       :

----------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION *IN LIMINE* TO PRECLUDE TESTIMONY OF
PLAINTIFF'S EXPERT WITNESSES**

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendants
1133 Westchester Avenue
White Plains, NY  10604
(914) 323-7000

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

LEGAL STANDARD............................................................................................. 2

    I.    Jennifer Dysart ....................................................................................... 5

        A.    Dysart's Expert Opinions Are Not Relevant to Plaintiff's Remaining Claims. ....................................................................... 6

        B.    Dysart Should Be Barred Under Rule 403................................. 9

        C.    Dysart's Opinions are Inadmissible On Their Face................. 10

    II.    Hayley Cleary. ..................................................................................... 11

        A.    Cleary Must Be Precluded as Federal Courts in the Second Circuit Routinely Preclude False Confession Expert Witness Testimony And Her Testimony is Unnecessary as it Will Not Assist the Trier of Fact And Will Usurp the Role of the Jury. ........................................... 12

        B.    Cleary Must Be Precluded Because Her Expert Opinions Fails to Satisfy FRE 702, Her Opinions Are Inadmissible On Their Face, And Barred Under Rule 403. ..................................... 13

    III.    Jeffrey Noble........................................................................................ 17

        A.    Noble's Expert Opinions Are Not Relevant to Plaintiff's Remaining Claims. ................................................................... 17

        B.    Noble's Opinions Regarding the "Reasonable Officer" are Inadmissible Legal Conclusions. ........................................... 199

        C.    Noble Should Be Bared Under Rule 403.................................. 20

    IV.    Kristin Kucsma ..................................................................................... 222

        A.    Kucsma Must Be Precluded Due to Plaintiff's Failure to Comply with Fed. Civ. P. Rule 26(2)(a)(B). ........................................ 23

CONCLUSION.................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrams v. Dept of Public Safety*,
    764 F.3d 244 (2d Cir. 2012)....................................................................6

*Alexander v. Lewis*,
    2024 U.S. Dist. LEXIS 156327 (D. Conn. Aug. 30, 2024) ......................6

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002).............................................................4, 14

*Aniero Concrete Co. v. N.Y. City Sch. Const. Auth.*,
    2002 U.S. Dist. LEXIS 2892 (S.D.N.Y. Feb. 21, 2002)........................23

*Arisa Records LLC v. Usenet.com, Inc.*,
    608 F. Supp. 2d 409 (S.D.N.Y. 2009)..............................................8, 20

*Arizona v. California*,
    460 U.S. 605 (1983)..............................................................................6

*Ash v. City of New York*,
    2020 U.S. Dist. LEXIS 2340 (S.D.N.Y. Jan. 6, 2020)..........................20

*B.C.F. Oil Ref. v. Consolidated Edison Co.*,
    171 F.R.D. 57 (S.D.N.Y. Jan. 29, 1997)..............................................24

*Bee v. Novartis Pharm. Corp.*,
    18 F. Supp. 3d 268 (E.D.N.Y. 2014) ....................................................4

*Bell v. Ercole*,
    No. 05-CV-4532, 2011 WL 5040426 (E.D.N.Y. Oct. 21, 2011)...........13

*Boucher v. U.S. Suzuki Motor Corp.*,
    73 F.3d 18 (2d Cir. 1996)................................................................4, 20

*Callahan v. Wilson*,
    863 F.3d 144 (2d Cir. 2017)................................................................19

*Citing United States v. Deputee*,
    349 F. App'x 227 (9th Cir. 2009) ........................................................13

*Commonwealth v. Robinson*,
    449 Mass. 1, 864 N.E.2d 1186 (2007) ................................................13

*Constr. Indus Servs. Corp. v. Hanover Ins. Co.*,
    206 F.R.D. 43 (E.D.N.Y. 2001) ........................................................................23

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) .........................................................................1, 4, 5, 7

*Fate v. Village of Spring Valley*,
    2013 U.S. Dist. LEXIS 83425 (S.D.N.Y. June 12, 2013) .................................19, 21

*Ham v. Klusek*,
    2022 U.S. Dist. LEXIS 184971 (E.D.N.Y. Oct. 10, 2022) ....................................6

*Hannah v. Wal-Mart Stores, Inc.*,
    2017 U.S. Dist. LEXIS 23681 (D. Conn. Feb. 21, 2017)
    *aff'd Hannah v. Walmart Stores, Inc.*,
    803 F. App'x 417 (2d Cir. Feb. 3, 2020) ............................................................6

*Highland Capital Mgmt., L.P. v. Schneider*,
    551 F. Supp. 2d 173 (S.D.N.Y. 2008) ...............................................................8

*Hygh v. Jacobs*,
    961 F.2d 359 (2d Cir. 1992) ...........................................................................19

*Jackson v. City of White Plains*,
    2016 U.S. Dist. LEXIS 6469 (S.D.N.Y. Jan. 19, 2016) ........................................2

*Jean-Laurent v. Hennessy*,
    840 F. Supp. 2d 529 (E.D.N.Y. 2011) ................................................................2

*Kerman v. City of New York*,
    261 F.3d 229 (2d Cir. 2001) .............................................................................5

*Kerman v. DiLucia*,
    2000 U.S. Dist. LEXIS 10636, at *10 (S.D.N.Y. July 31, 2000) ............................5

*Kogut v. City of Nassau*,
    2013 U.S. Dist. LEXIS 102198 (E.D.N.Y. July 22, 2013) ...................................13

*Kogut v. County of Nassau*,
    789 F.3d 36 (2d Cir. 2015)
    *aff'd in part sub nom. Restivo v. Hessemann*,
    846 F.3d 547 (2d Cir. 2017) ...........................................................................13

*Krys v. Sugrue*,
    2012 U.S. Dist. LEXIS 185904 (S.D.N.Y. Apr. 9, 2012) ..................................5, 6, 7

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ........................................................................................3

*Estate of Loury v. City of Chicago*,
   2021 U.S. Dist. LEXIS 50171 (E.D. Ill. Mar. 27, 2021) ......................................................21

*Luce v. U.S.*,
   469 U.S. 38, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984) ...........................................................2

*In re Methyl Tertiary Butyl Ether Products Liability Litigation*,
   2008 U.S. Dist. LEXIS 37331 (S.D.N.Y. May 7, 2008)....................................................3, 16

*Moody v. CSX Transp. Inc.*,
   271 F. 3d 410 (W.D.N.Y. 2017) .............................................................................................5

*NAACP v. A.A. Arms Inc.*,
   2003 U.S. Dist. LEXIS 4867 (E.D.N.Y. Mar. 21, 2003)......................................................23

*Nimely v. City of New York*,
   414 F3d 381 (2d Cir. 2005)................................................................................................3, 4

*Nnodimele v. Derienzo*,
   2016 U.S. Dist. LEXIS 83357 (E.D.N.Y. June 27, 2016) ...............................................10, 16

*Palmieri v. Defaria*,
   88 F.3d 136 (2d Cir. 1996)......................................................................................................2

*Passino v. Tucker*,
   2021 U.S. Dist. LEXIS 124086 (N.D.N.Y. July 1, 2021)......................................................19

*Pope v. City of New York*,
   2012 U.S. Dist. LEXIS 21727 (S.D.N.Y. Feb. 9, 2012)........................................................24

*Povetund v. City of New York*,
   750 F.3d 121 (2d Cir. 2014)..................................................................................................11

*Ramaj v. Conagra Foods, Inc.*,
   2024 U.S. Dist. LEXIS 216759 (E.D.N.Y. Aug. 15, 2024)..................................................5, 6

*In re Rezulin Prods. Liability Litig.*,
   309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004)..........................................................8, 9, 20, 21

*Rivera v. Guevara*,
   2018 U.S. Dist. LEXIS 248453 .................................................................................................7

*Scentsational Techs., LLC v. Pepsi, Inc.*,
   2018 U.S. Dist. LEXIS 24375 (S.D.N.Y. Feb. 14, 2018).....................................................4, 8

*Schwab v. Philip Morris USA, Inc.*,
   2006 U.S. Dist. LEXIS 11047 (E.D.N.Y. Mar. 20, 2006)....................................................23

*Sparks v. Seltzer*,
　 2007 U.S. Dist. LEXIS 6234 (E.D.N.Y. Jan. 29, 2007) ....................................................23, 24

*Stern v. Shammas*,
　 2015 U.S. Dist. LEXIS 97879 (E.D.N.Y. 2015)...............................................................19, 21

*Tikkun v. City of New York*,
　 265 F.R.D. 152 (S.D.N.Y. Feb. 17, 2010) ...............................................................................23

*U.S. v. Litvak*,
　 808 F.3d 160 (2d Cir. 2015)......................................................................................................2

*United States v. Almonte*,
　 956 F.2d 27 (2d. Cir. 1992)......................................................................................................7

*United States v. Bermudez*,
　 529 F.3d 158 (2d Cir. 2008)......................................................................................................3

*United States v. Bilzerian*,
　 926 F.2d 1285 (2d Cir. 1991)....................................................................................................5

*United States v. Duncan*,
　 42 F.3d 97 (2d Cir. 1994)........................................................................................................20

*United States v. Mamah*,
　 332 F.3d 475 (7th Cir. 2003) ..................................................................................................13

*United States v. Mazzeo*,
　 2000 U.S. App. LEXIS 818 (2d Cir. Jan. 21, 2000) ..........................................................3, 13

*United States v. Motovich*,
　 2024 U.S. Dist. LEXIS 116769 (E.D.N.Y. July 2, 2024) ......................................................13

*United States v. Strother*,
　 49 F.3d 869 (2d Cir. 1995)........................................................................................................7

*United States v. Thomas*,
　 214 F. Supp. 3d 187 (E.D.N.Y. 2016) ....................................................................................13

*Yang Feng Zhao v. City of N.Y.*,
　 No. 07-CV-3636, 2008 WL 3928238 (S.D.N.Y. Aug. 20, 2008)............................................13

*Zambito v. United States*,
　 2025 U.S. Dist. LEXIS 44255 (E.D.N.Y. Mar. 11, 2025) .....................................................24

**Statutes**

42 U.S.C. § 1983....................................................................................................................1, 2, 7

**Rules**

Fed. R. Civ. P. 26 .................................................................................................25

Fed. R. Civ. P. 26(a) .............................................................................................24

Fed. R. Civ. P. 26(a)(2) .........................................................................................23

Fed. R. Civ. P. 26(a)(2)(B) ...........................................................................2, 23, 24

Fed. R. Civ. P. 26(a)(2)(B)(ii) ................................................................................23

Fed. R. Civ. P. 26(a)(2)(B)(iii) ...............................................................................23

Fed. R. Civ. P. 26(b)(3) .........................................................................................23

Fed. R. Civ. P. 26(e)(2) .........................................................................................24

Fed. R. Civ. P. 37(c)(1) .........................................................................................24

Fed. R. Evid. 401 ...................................................................................................12

Fed. R. Evid. 402 ...............................................................................................2, 12

Fed. R. Evid. 403 ...........................................................................2, 3, 9, 12, 13, 20

Fed. R. Evid. 613 .....................................................................................................7

Fed. R. Evid. 702 ...................................................................3, 4, 5, 11, 12, 13, 14

Fed. R. Evid. 801(d) .................................................................................................7

## PRELIMINARY STATEMENT

Defendants Robert Dempsey ("Dempsey"), Gary Abbondandelo ("Abbondandelo"), John Holland ("Holland"), Michael Herts ("Herts"), Martin Alger ("Alger"), Walter Swenson ("Swenson"), Anthony Kosior ("Kosior"), and Dan Severin ("Severin") (referred to collectively as "defendants"), respectfully move this Court for the entry of an Order *in limine*: 1) to preclude the proffered expert opinion and testimony of Plaintiff's disclosed experts: i) Jennifer Dysart (eyewitness identification) ("Dysart"); ii) Hayley Cleary (false confessions) ("Cleary"); iii) Jeffrey Noble (police practices) ("Noble"); and iv) Kristin Kucsma (economist) ("Kucsma"); or 2) in the alternative, request this Court hold pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and its progeny.

The claims proceeding to trial are extremely narrow. Specifically, five (5) of the Plaintiff's nine (9) claims were dismissed in their entirety. *See* ECF No. 396. Of Plaintiff's four (4) remaining claims, many of the defendants and theories of purported liability have been dismissed, leaving two (2) issues for trial: i) claims related to the Glenn Montes ("Montes") and Maurice Larrea ("Larrea") written statements; and 2) claims related to Plaintiff's written confession. *Id.*

The elements of Plaintiff's remaining claims are as follows:

- 42 U.S.C. § 1983 Fabrication of Evidence claim – "an (1) investigating official (2) fabricate[d] information (3) that [wa]s likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result." *See* ECF No. 396, p. 70.

- 42 U.S.C. § 1983 Coercion claim – "coercion was applied to obtain a waiver of the plaintiff's rights against self-incrimination and/or to obtain inculpatory statements, and the statements thereby obtained were used against the plaintiff in a criminal proceeding." *See* ECF No. 396, p. 82. A totality of the circumstances test is used to determine whether plaintiff's confession was improperly obtained through coercion and whether a statement was made knowingly and voluntarily. *Id.*

- 42 U.S.C. § 1983 Evidence Suppression/*Brady* violations claim – are "(1) the evidence at issue [the Glenn Montes and Maurice Larrea written statements] must be favorable

to Plaintiff, either because it is exculpatory or impeaching, (2) the evidence must have been suppressed, and (3) prejudice must have ensued, which requires Plaintiff to demonstrate that the suppression of the evidence at issue "undermine[d] confidence in the outcome of the trial." *Id.*, p. 62.

- 42 U.S.C. § 1983 Failure-to-intervene claim – "[i] the officer had a realistic opportunity to intervene and prevent the harm; [ii] a reasonable person in the officers position would know that the [Plaintiff]'s constitutional rights were being violated; and [iii] the officer d[id] not take reasonable steps to intervene." *Id.*, p. 105.

As will be more fully set forth below, it is respectfully submitted that this Court should exclude the proffered testimony of Dysart, Cleary, Noble and Kucsma at trial, in their respective entirety, because their testimony does not meet the standards of admissibility of expert opinions as set forth in *Daubert*, their testimony is irrelevant to Plaintiff's remaining claims, or Plaintiff has failed to disclose all material relied upon by the expert pursuant to Fed. R. Civ. P. 26(a)(2)(B).

## LEGAL STANDARD

"The purpose of an in limine motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *see also Luce v. U.S.*, 469 U.S. 38, 40 n. 2, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). The scope of admissible evidence is governed first by the claims in the case and then by the concept of relevancy. *See U.S. v. Litvak*, 808 F.3d 160, 179-180 (2d Cir. 2015); *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011). "Irrelevant evidence is not admissible." FRE 402. Additionally, "[r]elevant evidence may still be excluded by the Court 'if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Jackson v. City of White Plains*, 2016 U.S. Dist. LEXIS 6469, at *3 (S.D.N.Y. Jan. 19, 2016) (quoting Fed. R. Evid. 403). The district court has

-2-

"broad discretion to balance probative value against possible prejudice" under Rule 403. *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

Under Fed. R. Evid. 702, which governs the admissibility of expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert*, 509 U.S. 579 (1993), the United States Supreme Court explained that, under Fed. R. Evid. 702, district courts must act as "gatekeepers" when faced with proposed expert testimony by "ensuring that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand" (emphasis added). 509 U.S. at 597. "Rule 702 governs the district court's responsibility to ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Nimely v. City of New York*, 414 F3d 381, 396 (2d Cir. 2005) (quoting *Daubert*, 509 U.S. at 589); *United States v. Mazzeo*, 2000 U.S. App. LEXIS 818 at *5 (2d Cir. Jan. 21, 2000) ("[b]efore admitted proffered scientific testimony, the trial court must first determine that it is both reliable or trustworthy and relevant."). In serving its "gatekeeping" function, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Nimely*, 414 F.3d at 396 (2d Cir. 2005) *citing Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). "[A]n expert who is qualified in one field cannot offer an opinion about aspects of the case in another field for which she is not qualified." *In re Methyl*

*Tertiary Butyl Ether Products Liability Litigation*, 2008 U.S. Dist. LEXIS 37331, at *20, n.48 (S.D.N.Y. May 7, 2008).

The Court must determine whether a proposed expert's testimony passes muster on three (3) bases: 1) whether the witness is qualified as an expert; 2) whether the opinion is based upon reliable data and methodology; and 3) whether the expert's testimony on a particular issue will assist the trier of fact. *See Nimely*, 414 F.3d at 396-97.   In determining whether an expert's analysis is unreliable, "the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate exclusion of that unreliable opinion testimony." *Id.* at 266.   In addition, expert testimony should be excluded if it is "speculative or conjectural," if it is "based on assumptions that are so unrealistic and contradictory as to suggest bad faith," or to be "in essence an apples to oranges comparison." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996). "Admission of expert testimony based on speculative assumptions is an abuse of discretion." *Id.* at 22.   The party proffering the expert testimony has the burden of establishing that it complies with Rule 702. *See Bee v. Novartis Pharm. Corp.*, 18 F. Supp. 3d 268, 300, 301 (E.D.N.Y. 2014).

Courts should "preclude an expert from testifying as to the credibility of other witnesses or evidence." *Scentsational Techs., LLC v. Pepsi, Inc.*, 2018 U.S. Dist. LEXIS 24375, at *6 (S.D.N.Y. Feb. 14, 2018) (collecting cases).   "[A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on

-4-

those facts." *United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir. 1991).  Moreover, expert

opinions which concern dismissed claims should be precluded as they are not "helpful" to the trier

of fact under Rule 702. *See Krys v. Sugrue*, 2012 U.S. Dist. LEXIS 185904, *41-51 (S.D.N.Y.

Apr. 9, 2012).  As explained by the court in *Krys*:

> To be admissible under Fed. R. Evid. 702, an expert's testimony must "fit" the facts
> of the case. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591, 113 S.
> Ct. 2786, 125 L. Ed. 2d 469 (1993). "Fit" is an aspect of relevance, and it means
> that an expert's testimony must be "sufficiently tied to the facts of the case that it
> will aid the jury in resolving a factual dispute." *Id*. To the extent the experts here
> are opining about the merits of dismissed claims, they fail the *Daubert* "fit"
> requirement for the simple reason that those merits have already been determined
> and are no longer relevant to the proceedings.

*Krys*, 2012 U.S. Dist. LEXIS 185904, at *41-42 (collecting cases); *Ramaj v. Conagra Foods, Inc.*,

2024 U.S. Dist. LEXIS 216759, at *29-30 (E.D.N.Y. Aug. 15, 2024) ("[w]ith plaintiff's triable

causes of action winnowed to three, much of the remaining testimony proffered by the parties is

no longer relevant to the resolution of this case. As Rule 702 specifies for expert testimony, the

expert testimony must help the trier of fact to understand the evidence or determine a fact in issue

and that requirement goes primarily to relevance.") (internal quotations omitted); *Moody v. CSX

Transp. Inc.*, 271 F. 3d 410, 422 (W.D.N.Y. 2017); *Kerman v. DiLucia*, 2000 U.S. Dist. LEXIS

10636, at *10 (S.D.N.Y. July 31, 2000) (in civil rights lawsuit, police practices expert's opinions

related to dismissed claims "are not relevant and therefore may not be the subject of expert

testimony.") *reversed on other grounds Kerman v. City of New York*, 261 F.3d 229 (2d Cir. 2001).

## I.    Jennifer Dysart

Plaintiff has disclosed Dysart as an expert witness. Dysart's opinion relates to "the

eyewitness identification evidence relating to the conviction of [plaintiff]" and exclusively

"focus[es] on the only eyewitness who participated in viewing identification procedures and also

identified [Plaintiff] at trial – [Skwanitra Witherspoon]. *See* **Exhibit A**, pp. 1, 5.  However, Dysart

must be precluded because her opinions are irrelevant to any of Plaintiff's remaining claims and, even if somehow relevant, admission of her opinions would significantly prejudice the defendants.

A.  Dysart's Expert Opinions Are Not Relevant to Plaintiff's Remaining Claims.

The substance of, and the methodology utilize to formulate, Dysart's opinions have no place at trial in this case.  This Court conclusively ruled that Plaintiff cannot proceed on any claim premised upon the alleged manufacturing of Ms. Witherspoon's positive photo array and line-up identifications of the Plaintiff, that these identifications were tainted and unduly suggestive, or that Ms. Witherspoon's identifications were unreliable. *See* ECF No. 396, pp. 75-80.

Where claims, or theories of liability for a claim, have been dismissed on summary judgment, evidence and testimony – including expert witness testimony – regarding the dismissed claims should be precluded during a jury trial.  *See Abrams v. Dept of Public Safety*, 764 F.3d 244, 257 (2d Cir. 2012); *Hannah v. Wal-Mart Stores, Inc*., 2017 U.S. Dist. LEXIS 23681, at *5-6 (D. Conn. Feb. 21, 2017) *aff'd Hannah v. Walmart Stores, Inc.,* 803 F. App'x 417, 422 (2d Cir. Feb. 3, 2020); *Ham v. Klusek*, 2022 U.S. Dist. LEXIS 184971, at *7 (E.D.N.Y. Oct. 10, 2022) ("plaintiff may not introduce evidence unless it is relevant to the claims he is presenting at trial."); *Krys*, 2012 U.S. Dist. LEXIS 185904, at *41-42; *Ramaj*, 2024 U.S. Dist. LEXIS 216759, at *29-30.  This Court's prior rulings are "law of the case" and Plaintiff is not permitted to relitigate issues already determined by this Court. *See Alexander v. Lewis*, 2024 U.S. Dist. LEXIS 156327, at *9 (D. Conn. Aug. 30, 2024) *citing Arizona v. California*, 460 U.S. 605, 618 (1983).

Dysart's opinion, relating solely to issues that this Court has already determined, may not form the basis of liability for any remaining claim in this case. *See* ECF No. 396.  Any evidence related to Witherspoon's identification procedures cannot form a basis for liability against defendants.  Nor do any of Dysart's opinions inform any fact at issue as to whether the Montes and Larrea statements were suppressed, whether the purported suppression of this evidence was

-6-

material to the outcome of the case, and whether Plaintiff's written confession was either obtained through coercion or fabricated. *See* **Exhibit A**.  Nowhere within Dysart's twenty-two (22) page report does she offer an opinion that addresses any facts in issue that is relevant to any element of Plaintiff's remaining claims. *Id.*

To permit proposed expert witness testimony, the Court must assess and determine if the expert's opinions will assist the jury in determining a factual issue that is actually relevant to a legal claim in this case. *See Krys*, 2012 U.S. Dist. LEXIS 185904, at *41-42.  As the Court in *Daubert* specifically noted:

> The study of the phases of the moon, for example, may provide valid scientific "knowledge" about whether a certain night was dark, and if darkness is a fact in issue, the knowledge will assist the trier of fact.  However (absent creditable grounds supporting such a link), evidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behave irrationally on that night.

*Daubert*, 509 U.S. at 591.  Dysart has already been excluded from testifying as an expert witness in a § 1983 trial where a claim related to an unduly suggestive identification procedure was not before the jury. *See Rivera v. Guevara*, 2018 U.S. Dist. LEXIS 248453, at *2-6 N.D. Ill. May 30, 2018).  Here, this Court has already ruled – making it abundantly clear – that the issues on which Dysart opines are not triable issues of fact on which Plaintiff can proceed.

Any argument that Dysart opines on any of the relevant remaining trial issues is misplaced and without merit.  While Dysart's report discusses Montes and Larrea and incorrectly states that the individual that they were chasing was the shooter[1] (*see* **Exhibit A**, pp. 3-5, 9 [n.22], 12 [n.34]),

---

[1] This speculative and conclusory assertion that Montes and Larrea were chasing the shooter is based on inadmissible hearsay – notes of a conversation Montes had with ADA Sheryl Anania over twenty (20) years after Montes made his observations.  ADA Anania's note is inadmissible hearsay and cannot be attributed as Montes' prior statement since he never subscribed to Anania's characterization. *See* FRE 613, 801(d); *United States v. Strother*, 49 F.3d 869 (2d Cir. 1995) (collecting and citing cases); *United States v. Almonte*, 956 F.2d 27, 29 (2d. Cir. 1992) ("in the absence of endorsement by the witness, a third party's notes of a witness's statement may not be admitted as a prior inconsistent statement unless they are a verbatim transcript of the witness's own words.").

this is not an expert opinion as contemplated by *Daubert*, but instead an inappropriate factual

narrative that usurps the role of the jury.  It is important to note that:

> experts are not percipient witnesses.  They are witnesses who, by virtue of
> specialized expertise, are able to provide opinions or information beyond the
> ken of the layperson.  ***It is therefore inappropriate for experts to act as a
> vehicle to present a factual narrative of interesting or useful documents for
> a case, in effect simply accumulating and putting together one party's
> "story."*** See Highland Capital Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173,
> 187 (S.D.N.Y. 2008) (precluding an expert from providing a factual
> narrative); In re Rezulin Prods. Liability Litig., 309 F. Supp. at 551
> (precluding an expert may from providing a "narrative of the case which a
> juror is equally capable of constructing").  It is certainly is certainly the case
> that an expert may and often must rely on facts – and that the expert will state
> them in a report.  But if the statements go beyond recitation of how a
> document is supportive of an opinion and ***are instead a characterization of
> the document for the purposes of having the fact finder accept that
> interpretation as fact, the expert goes too far.***
>
> Acting simply as a narrator of the facts does not convey opinions that are
> based on an expert's knowledge and expertise; not is such a narration
> traceable to a reliable methodology…. narration of facts of the case may
> easily invade the province of the jury, providing a separate basis for
> exclusion.

*Scentsational Techs., LLC*, 2018 U.S. Dist. LEXIS 24375, at *8-10.  Further, "[i]t is inappropriate

for experts to become a vehicle for a factual or speculative narrative that simply accumulates and

puts together pieces of a story.  Acting as a narrator of the facts does not convey opinions that are

based on an expert's knowledge and expertise; nor is such a narrative traceable to a reliable

methodology." *Id.*, at *23.  With respect to Montes and Larrea, all Dysart has done is regurgitate

a narrative of the evidence in order to put plaintiff's "story" together.  *See* **Exhibit A**.  The jury is

equally capable of listening to witness testimony, reviewing the evidence and analyzing whatever

contradictions lie therein.  However, the jury does not need an expert to regurgitate a spun version

of the facts to them. *See Arisa Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 424-25

(S.D.N.Y. 2009) ("[a]n expert who simply regurgitates what a party has told him provides no

assistance to the trier of fact through application of specialized knowledge."); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004). Allowing Dysart to present such a speculative factual narrative, which requires no expertise and is not traceable to any reliable methodology, "supplant[s] the role of counsel in making argument at trial or the role of the jury in interpreting the evidence." *Id.*, at 541 (citation omitted).

Accordingly, based on a plethora of case law and common sense, Plaintiff cannot offer Dysart's testimony at trial.

B. Dysart Should Be Barred Under Rule 403.

Assuming *arguendo* that Dysart's opinions were even tangentially relevant to the remaining trial issues, to allow Plaintiff to parade a retained expert before the jury on issues exclusively related to legal claims that have already been dismissed would clearly run afoul of Fed. R. Evid. 403. Allowing an expert to call into question the reliability of the eyewitness who came forward and identified Plaintiff as the shooter and critiquing the configuration of lineups or methods used in photo arrays would create a laundry list of false premises and significantly prejudice the defendants.

Introduction of such expert testimony would create the inference of misconduct that defendants cannot be held liable for. Dysart's opinions would invite jurors to speculate on irrelevant issues and would suggest that defendants could not have relied on Witherspoon's identifications in conjunction with the mountain of evidence that this Court already determined provided defendants with ample probable cause. Her opinions would tend to suggest that the jurors at the criminal trial should not have believe Witherspoon, that the jurors in this matter should doubt her identifications, would imply that the defendants are somehow at fault for the identifications, that the investigation was flawed and that Plaintiff was either somehow wronged and possibly innocent – which is entirely irrelevant – regardless of the facts and remaining claims at issue.

These are just a few of the many examples of the risk of extreme prejudice this Court must consider.  Dysart's testimony would be confusing to the jury, would be highly prejudicial under the specific issues to be presented to the jury, and must not be allowed.

C. Dysart's Opinions are Inadmissible On Their Face.

Along with being irrelevant and highly prejudicial, Dysart must be precluded as her opinions are inadmissible on their face.  Dysart's report is riddled with speculative assumptions, she opines on the credibility of witnesses, she proffers herself to be an expert in both eyewitness identification and police practices, and impermissibly challenges clearly established legal principles and Second Circuit case law that this Court's summary judgment decision is based on.

Here, Dysart is not qualified to testify as an expert as to police practices in the Nassau County Police Department ("NCPD") in 1994, as she does not have any superior knowledge, education, or skills concerning NCPD's police practices during that time. *See* **Exhibit A**, pp. 23-47.  However, her expert report is riddled with opinions regarding how law enforcement officials should conduct identification procedures, including irrelevant policies that were not in place in 1994. *See* **Exhibit A**.  Moreover, many of Dysart's assertions are unsupported by science, are *ipse dixit*, and purely speculative. *Id.*  With respect to Witherspoon, whom Dysart has never met, interviewed, and was not present when Witherspoon observed Plaintiff shoot Steven Jason, Dysart's assertions that "these estimator variables *likely* created a scenario where it would have been…" and that "her memory for the perpetrator was *likely* weak or limited" are purely speculative. *Id.*, pp. 11, 13   In addition, Dysart's conclusion – "based on these factors there was good reason to doubt that Ms. Witherspoon's selection of [Plaintiff] was an accurate identification of the true perpetrator" (*id.*, p. 22) – is a legal conclusion that is irrelevant to any factual issue related to the remaining claims and improperly suggests Plaintiff is innocent, which is impermissible. *See Nnodimele v. Derienzo*, 2016 U.S. Dist. LEXIS 83357, at *33 (E.D.N.Y. June

-10-

27, 2016) ("plaintiff's actual innocence is irrelevant to his fair trial claims.") *citing Povetund v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014).

Moreover, Dysart spends several pages of her report incorrectly summarizing the testimony of other witnesses and relevant evidence in this case. *See* **Exhibit A**. Dysart's proffered testimony is cumulative, and she should be precluded from regurgitating the testimony of other witnesses, something that the jury is capable of, rendering this testimony unnecessary. Lastly, if permitted to testify, Dysart should be barred from testifying about eyewitness identification errors in other actual cases, especially cases involving DNA exonerations. *Id.* In her report, Dysart repeatedly leans on a study stating that "there have been mistaken eyewitness identifications in nearly 70% of post-conviction DNA exonerations in the United States." *Id.*, pp. 8-9, 19-20. Simply put, this is not a DNA exoneration case. After Plaintiff's convictions were vacated, "the issues of Plaintiff's innocence was not litigated" (*see* ECF No. 396, p. 51), and Plaintiff's unjust conviction and imprisonment claim filed in the Court of Claims was dismissed. *See* ECF No. 387-22.

Overall, Dysart's proposed testimony is irrelevant to any of the remaining issues, is highly prejudicial to defendants, is unnecessary, fails to satisfy the requirements of Rule 702, and would only serve to confuse the jury. Thus, Dysart's expert witness testimony must be precluded.

## II. Hayley Cleary.

Plaintiff has disclosed Cleary as an expert witness. Cleary's opinion relates to "the potential presence of factors that could have contributed to a coerced, unreliable, or false confession." *See* **Exhibit B**, p. 1. However, Cleary's opinion focuses not on the conduct of the officers viewed through a 1994 constitutional lens[2], but rather whether Plaintiff's confession was false, without ever meeting, speaking with, or interviewing the Plaintiff. *See* **Exhibit B**; **Exhibit**

---

[2] Only two (2) of the forty-one (41) research citations within Cleary's report were available in 1994 when Plaintiff's signed his written confession. *See* **Exhibit B**, pp. 24-27.

**C**, 57:23-25, 61:17-22, 62:23-63:4, 90:25-91:4.  What is further astounding is that, although Cleary identifies four (4) ways to prove that a "false confession" did not occur (*see* **Exhibit B**, p. 3, n.1), and identifies three (3) "risk factors" that are purportedly associated with propensity towards false confessions (*see* **Exhibit B**, p. 4), Cleary admits that Plaintiff's confession cannot be proven as "false" and that there was no evidence – beyond speculation – that any of the "risk factors" were applicable to Plaintiff. *See* **Exhibit C**, 69:18-75:6.

Notably absent from the materials Cleary reviewed when preparing her expert report is the court's pre-trial hearing decision finding Plaintiff's written confession was voluntarily made, photographs taken of Plaintiff during his time in custody that demonstrate Plaintiff had no signs of physical abuse after he signed the confession, any guidelines or policies issued by law enforcement organizations relating to acceptable procedures and standards for interrogations, and close to 9,000 pages of relevant NCPD files and discovery material produced by defendants, with Cleary only reviewing 27 pages. *See* **Exhibit B**, p. 2; **Exhibit C**, 59:16-20, 61:17-63:4, 78:7-11, 85:11-22.  Cleary's failure to consider a plethora of relevant material, and lack of knowledge of the acceptable guidelines for interrogations in New York in 1994, significantly undermines the reliability and completeness of her analysis.  Her expert report is riddled with opinions and assertions that are purely speculative, conclusory, irrelevant, unnecessary, confusing, and prejudicial to defendants, warranting the preclusion of her testimony. *See* FRE 401, 402, 403, 702.

A.  <u>Cleary Must Be Precluded as Federal Courts in the Second Circuit Routinely Preclude False Confession Expert Witness Testimony And Her Testimony is Unnecessary as it Will Not Assist the Trier of Fact And Will Usurp the Role of the Jury.</u>

This Court has previously precluded plaintiffs from introducing testimony from a false confessions expert Saul Kassin, and recognized that "[f]ederal courts, including within this Circuit, have consistently considered, and excluded, expert testimony on the topic of false confessions."

See *Kogut v. City of Nassau*, 2013 U.S. Dist. LEXIS 102198, at *20-24 (E.D.N.Y. July 22, 2013)[3]. The Second Circuit agreed that precluding testimony from a false confessions expert was not an abuse of discretion. *See Kogut v. County of Nassau*, 789 F.3d 36, 47 (2d Cir. 2015) *aff'd in part sub nom. Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017) (affirming basis for and reasoning behind precluding false confession expert testimony predicated, in part, on the logic that "[e]ssentially, this is an area that the jurors can decide for themselves. The jury can determine if Kogut was exhausted, high, or submitted to constant clues given to him by Detectives Volpe, Sirianni, and Dempsey, or that Kogut believe he failed the test, was terrified of the detectives and finally that he was worn down by refusals to allow him to call a lawyer or his girlfriend.") (internal quotations and citation omitted); *United States v. Motovich*, 2024 U.S. Dist. LEXIS 116769, at *51-56 (E.D.N.Y. July 2, 2024); *United States v. Thomas*, 214 F. Supp. 3d 187, 191-92 (E.D.N.Y. 2016) (false confession expert precluded as he "would substitute his opinion as to the credibility and testimony of the witnesses" and "usurp the jury's role").

Cleary must be precluded on the same basis, as her report is riddled with opinions attacking the credibility of witnesses and attempting to bolster Plaintiff's credibility (*see* **Exhibit B**), especially since Cleary never met with, interviewed, or spoke with the Plaintiff, never administered any available susceptibility or personality tests. *See* **Exhibit C**, 57:23-25, 61:17-22, 62:23-63:4, 90:25-91:4; *Mazzeo*, 2000 U.S. App. LEXIS 818, at *5-6; **Exhibit M**, p. 9.

B.  Cleary Must Be Precluded Because Her Expert Opinions Fails to Satisfy FRE 702, Her Opinions Are Inadmissible On Their Face, And Barred Under Rule 403.

To be relevant, an expert's opinion must be based on "sufficient facts or data" and the

---

[3] *Citing United States v. Deputee*, 349 F. App'x 227, 229 (9th Cir. 2009), *United States v. Mamah*, 332 F.3d 475, 475 (7th Cir. 2003), *United States v. Mazzeo*, 205 F.3d 1326, 2000 WL 323032, at *2 (2d Cir. 2000), *Yang Feng Zhao v. City of N.Y.*, No. 07-CV-3636, 2008 WL 3928238, at *2 (S.D.N.Y. Aug. 20, 2008), *Bell v. Ercole*, No. 05-CV-4532, 2011 WL 5040426, at *13 (E.D.N.Y. Oct. 21, 2011), and *Commonwealth v. Robinson*, 449 Mass. 1, 5-6, 864 N.E.2d 1186, 1189-90 (2007).

witness must be able to "appl[y] the principles and methods reliability to the facts of the case." *Amorgianos v. Amtrak*, 303 F.3d 256, 265 (2d Cir. 2002) *citing* Fed. R. Evid. 702.  However, Cleary's opinion relates to "the potential presence of factors that could have contributed to a coerced, unreliable, or false confession." *See* **Exhibit B**, p. 1.  In other words, Clearly dwells on general factors, which she deems may be catalysts likely to cause, or indicia that may identify, a false confession without ever taking a definitive position as to whether such factors were actually at work during the questioning of Plaintiff in this case.  Since Cleary does not close the gap and render an opinion on specific facts, her views fail the first of the requirements for admissibility pursuant to Fed. R. Evid. 702.

Further, as relayed above, to be admissible under Fed. R. Evid. 702, an expert's testimony must "fit" the facts of the case. *See Daubert*, 509 U.S. at 591.  In this case, the defendants' actions must be viewed through the standards that reasonable police officers were constitutionally mandated to follow in 1994, not on Cleary's "best practices standard" developed decades later based on studies and research unavailable in 1994. *See* **Exhibit B**.  Moreover, as referenced in County's expert Dr. Bruce Frumkin's expert report (*see* **Exhibit M**, p. 9-10), Cleary's cited research (*see* **Exhibit B**, p. 3, n.1) is inapplicable to the facts of this case.  Her report fails to identify that of the 366 cases that involved individuals who falsely confessed, "34% were under the age of 18 at the time of the offense and 78% were under the age of 14. (This is the more updated data current as of April 10, 2022 which involved 3060 exonerees).  Plaintiff was not a juvenile but was age 24 at the time the murder was committed." *See* **Exhibit M**, p. 9.  As Cleary has no knowledge of the generally accepted police procedures in New York relating to the interrogation of suspects in 1994 (*see* **Exhibit C**, 61:17-63:4), her "research" is inapplicable to this facts of this case, and her analysis is based on information from research and studies not available until well

-14-

after Plaintiff signed a fifteen (15) page written confession, her testimony is unreliable, irrelevant to any of the remaining trial issues, and must be precluded.

In addition, Cleary fails to establish that her proffered testimony will be reliable.  Her opinions are not made to a reasonable degree of certainty (*see* **Exhibit B**, p. 23) and are either speculative – consistently using words such as "may", "might", "could have" or "could easily"[4] – or conclusory[5] and is unable to provide any support.  Clearly also fails to provide sufficient information about the methodologies of the studies she cites, their acceptance in the relevant scientific community, or their applicability to the facts of this case. *See* **Exhibit B**.  Notably, in her report, Cleary explains:

> Patterns have certainly emerged, and social scientists now understand more about specific personal and situational facts that are associated with false confessions.  However, it is important to underscore that while these patterns provide helpful context for understanding what factors increase the likelihood that someone would confess to a crime they did not commit, there is no single "profile" of a false confessor.  For example, we know that false confessions have occurred in both brief and long interrogations, for serious and relatively non-serious crimes, and among suspects of different ages, gender identities, and racial and ethnic identities.  Some false confessors plead guilty while others do not.  Some testify at their trials while others do not.  Specific risk factors that are empirically associated with false confessions are discussed in subsequent sections.

*See* **Exhibit B**, p. 3.  But when Cleary was questioned at her deposition, she testified that there

---

[4] A few examples of Cleary's purely speculative opinions contained within her report are as follows: "I conclude that there are numerous factors present in this case that *could have* contributed to false, unreliable and/or coerced statements." (*see* **Exhibit B**, p. 9), "[m]erely being in police custody for that length of time – irrespective of active questioning – *could easily* overbear a suspect's will via the accumulated fear and stress from isolation" (*id.*, p. 13) and "if what [Peddie Jenkins] told police is not true." *See* **Exhibit C**, 108:4-5. Cleary's deposition testimony also demonstrates that her opinions are based on mere speculation. *See* **Exhibit C**, 83:23-86:6, 98:9-101:7.

[5] A few examples of Cleary's conclusory opinions are as follows: Cleary provides no support for her comments that defendants did not fully investigate Plaintiff's alibi. *See* **Exhibit C**, pp. 106-107.  Clearly provides no support that defendants' account of what transpired while Plaintiff was in custody is incomplete, as numerous defendants and non-party witness' wrote out precise timelines of the events that occurred. *See* **Exhibit** C, pp. 87-88; **Exhibit B, p. 10.** Cleary provides no citation to her opinion that defendants account of what transpired during Plaintiff's custody "contrasts starkly with decades of research on the limits of human memory and raise questions about the validity of detectives' accounts" and fails to consider that prosecutors routinely prepare detectives' prior to their testimony in criminal court, which includes reviewing detectives' detailed notes of what transpired. *See* **Exhibit B**, p. 9.

-15-

was no evidence that any of the "risk factors" were applicable to Plaintiff. *See* **Exhibit C**, 69:18-75:6. Cleary herself notes that the scientific theories and principles in the field of false confessions is not fully developed, rendering it unreliable, and does not "fit" to the specific facts in case, rendering her opinions as inadmissible.

Moreover, Cleary is not qualified to testify as an expert witness about a plethora of opinions she asserts. She is not a police practices expert (*see* **Exhibit D**), was never employed in law enforcement, and does not have the requisite knowledge to testify about NCPD police practices related to interrogations of suspects in 1994. *See* **Exhibit B**; **Exhibit C**, 61:14-16, 61:17-22. Cleary was never a polygraphist and testified that she has no expertise in the field of polygraphy, yet offers a significant amount of dialogue and opinions on the polygraphs administered in this matter. *See* **Exhibit D**, **Exhibit C**, 97:23-25, **Exhibit B**. Cleary is not an endocrinologist and yet opines on blood glucose levels having no expertise on this topic. *See* **Exhibit D**, **Exhibit B**, p. 15. Clearly cannot offer expert testimony related to multiple fields where she lacks the requisite knowledge or expertise. *See In re Methyl*, 2008 U.S. Dist. LEXIS 37331, at *20, n.48.

Lastly, Cleary impermissibly challenges and contradicts this Court's determination – which is law of the case – that probable cause existed by opining that she "did not see any reliable information corroborating [Plaintiff's] signed confession statement in the case record" (*see* **Exhibit B**, pp. 20-21), although she failed to extensively review the case record as this Court did in deciding the County's summary judgment motion. *See* ECF No. 396, pp. 92-96. Cleary improperly opines on Plaintiff's potential innocence, which is irrelevant to the remaining issues in this case and extremely prejudicial to defendants. *See* **Exhibit B**, pp. 18-19, 22; *Nnodimele*, 2016 U.S. Dist. LEXIS 83357, at *33. Cleary testified that even if a detective makes statements to a suspect that the detective believes to be true or that are in fact true, this conduct is still categorized

as a "false evidence ploy" or a "ploy" which is extremely confusing and misleading to the jury and is undoubtedly not coercive conduct. *See* **Exhibit B**, pp. 17-19; **Exhibit C**, pp. 108-110.  Cleary's constant reference to a lack of a recording of Plaintiff's confession would mislead and confuse the jury, especially in light of NCPD's 1994 policy that detective would, after a suspect confessed, ask whether the suspect wanted to be video recorded, which is what occurred here after Plaintiff signed the written confession. *See* **Exhibit B**.  Clearly referenced studies related to false confessions and wrongful convictions that were overturned via DNA evidence, which is irrelevant and highly prejudicial to defendants as Plaintiff's innocence was never litigated or determined by a court or fact-finder. *See* ECF No. 396, p. 51; ECF No. 387-22.

The prejudice of introducing Cleary's unreliable, speculative, unnecessary and conclusory expert witness testimony cannot be understated.  As such, Cleary's expert witness testimony must be precluded.

**III. Jeffrey Noble**

Plaintiff has disclosed Noble as an expert witness in police practices.[6] *See* **Exhibit E**. However, Noble must be precluded as his opinions on defendants' conduct are irrelevant to any of Plaintiff's remaining claims, and his opinions that are arguably relevant would significantly prejudice the defendants as they are unreliable, impermissible legal conclusions, pure speculation, credibility judgments, and unnecessary to assist the jury.

A. <u>Noble's Expert Opinions Are Not Relevant to Plaintiff's Remaining Claims.</u>

Just as with Dysart (*see* Point I(A) *supra*), Noble's opinions have no place at this trial as they primarily relate to claims that have been dismissed.  *See* ECF No. 396.

---

[6] Although Noble was designated as Plaintiff's proposed police practices expert, he did not provide an expert opinion on Plaintiff's time in custody and interrogation that led to Plaintiff's written confession. *See* **Exhibit E**.  As such, Noble must be precluded from offering any testimony on this topic.

While Noble opines on the defendants' purported failure to disclose Maurice Larrea's 911 call (*see* **Exhibit E**, pp. 25-26), this Court's dismissal of Plaintiff's spoliation of evidence claim (*see* ECF No. 396, pp. 66-67, n.16), precludes Noble's testimony on this topic. While Noble opines on the failure to produce the Eliza Valdez notes and Peddie Baldwin interview (*see* **Exhibit E**, pp. 9, 17-18, 26-27), this Court's dismissal of Plaintiff's claims related to the suppression of both pieces of evidence (*see* ECF No. 396, pp. 66-67, n.16), precludes Noble's testimony on this topic. While Noble opines on the line-up procedure where Witherspoon identified Plaintiff (*see* **Exhibit E**, pp. 28-29), this Court conclusively ruled that Plaintiff cannot proceed on any claim premised upon the alleged manufacturing of Witherspoon's photo array and line-up identifications of the Plaintiff, that these identifications were tainted and unduly suggestive, or that Ms. Witherspoon's identifications were unreliable. *See* ECF No. 396, pp. 75-80.[7] None of Noble's above-referenced opinions address any of Plaintiff's remaining claims[8] or facts at issue as to whether the Montes and Larrea statements were suppressed, whether the purported suppression was material to the outcome of the case, and whether Plaintiff's written confession was either obtained through coercion or fabricated. Noble opines on topics which cannot form a basis for liability. Thus, his testimony would confuse and mislead the jury and would be highly prejudicial to defendants.

---

[7] This Court highlighted that "Plaintiff was not prejudiced by having all subjects be seated during the procedure. Indeed, there is ample case law from this Circuit highlighting were, as allegedly occurred here, there are discrepancies in height between a suspect and the fillers in a line-up, a seated line-up is a permissible means of minimizing the discrepancy." *Id.*, p. 79. Noble's opinion on the in-person line-up specifically undermines this Court's – and courts throughout the Second Circuit – prior determination that the line-up was not unduly suggestive or that it failed to comply with accepted police practices. *See* **Exhibit E**, pp. 28-29.

[8] This Court also determined that the defendants had "sufficient, independent, probable cause to arrest and prosecute Plaintiff" and identified the significant corroboration that the defendants had to support this Court's prior ruling. *Id.*, pp. 93-96. However, Noble's opinions and analysis of the evidence impermissibly opine on the contradictions between the evidence, which may be perceived as challenging this Court's prior determination that probable cause existed.

B. Noble's Opinions Regarding the "Reasonable Officer" are Inadmissible Legal Conclusions.

An expert's opinion or testimony about whether a police officer's behavior conforms to constitutional standards or about the "reasonableness" of police officer behavior are inadmissible legal conclusions and must be precluded. *See Callahan v. Wilson*, 863 F.3d 144, 153 (2d Cir. 2017) ("affirmed district court's preclusion concerning reasonableness of an officer's actions because it "intrude[d] on the jury's exclusive role as the finders of facts."); *Passino v. Tucker*, 2021 U.S. Dist. LEXIS 124086, at *9 (N.D.N.Y. July 1, 2021) ("[i]t would not be appropriate … for the expert to testify as to whether the conduct of the police officers was objectively reasonable or unreasonable, as that decision is for the jury to make based upon its application of [the court's] instruction and their common sense.") *citing Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."); *Stern v. Shammas*, 2015 U.S. Dist. LEXIS 97879, at *8 (E.D.N.Y. 2015) ("[the expert witness] cannot testify as an expert regarding any opinions that the force used by [the d]efendants was 'unreasonable' …"); *Fate v. Village of Spring Valley,* 2013 U.S. Dist. LEXIS 83425, at *18 (S.D.N.Y. June 12, 2013) ("[The expert witness] may not testify that the defendant officers acted in accord with the standard of reasonableness imposed by the Fourth Amendment, nor may he assert in his testimony that actions deemed reasonable when measured against standard police practices are 'reasonable' as a matter of constitutional law.").  An expert's opinion concerning the "reasonableness" of an officer's conduct is an impermissible legal conclusion, not a fact-based opinion.

However, Noble opines that "[a]ny reasonable police officer would have interviewed Mr. Montes and Mr. Larrea to further determine their exact location and their ability to observe what

they were reporting"[9] (*see* **Exhibit E**, p. 21) and "[a]ny reasonable police officer would know that they had an obligation to provide the statements of Mr. Montes and Mr. Larrea, regardless of their belief of their credibility, to the prosecutor as they contained exculpatory evidence that may be beneficial to the defense." *Id.*, p. 25. These opinions, regarding the reasonableness of the defendants[10], are inadmissible legal conclusions.

    C. <u>Noble Should Be Bared Under Rule 403.</u>

As Noble's opinions are either irrelevant to Plaintiff's remaining claims or are impermissible legal conclusions, his testimony must be precluded. Even if Noble's opinions were arguably relevant to Plaintiff's remaining claims, his testimony must be precluded pursuant to Rule 403. The Second Circuit has held that expert testimony is not admissible where the expert usurps the jury's role at trial, relies on speculative assumptions, or provides conclusory opinions without any support. *See United States v. Duncan*, 42 F.3d 97, 103 (2d Cir. 1994); *Boucher*, 73 F.3d at 22. Noble's testimony would be speculative, conclusory, mislead and confuse the jury, improperly opine on the credibility of witnesses and evidence, and would usurp the jury's role in this trial.

Here, Noble's report is essentially a narrative of the evidence and witness testimony that he reviewed. *See* **Exhibit E**. The jury is equally capable of listening to witness testimony and reviewing the evidence and does not need an expert to regurgitate the facts to them. *See Arisa Records*, 608 F. Supp. 2d at 424-25; *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 551. Allowing an expert to present a factual narrative "supplant[s] the role of counsel in making argument at trial or the role of the jury in interpreting the evidence." *Id.*, at 541 (citation omitted).

---

[9] Noble's opinion that Montes and Larrea should have been interviewed is also irrelevant to Plaintiff's remaining claims. Noble acknowledges that Montes and Larrea were in fact previously interviewed by members of law enforcement. *See* **Exhibit F**, 112:19-113:5. Plaintiff also never asserted – and the Second Circuit has not recognized – a claim for failure to investigate, rendering Noble's opinion irrelevant. *See Ash v. City of New York*, 2020 U.S. Dist. LEXIS 2340, at *22-24 (S.D.N.Y. Jan. 6, 2020) (collecting cases).

Noble also provides definitions of exculpatory evidence and material evidence – a role that is specifically reserved for this Court, not an expert witness. *See* **Exhibit E**, p. 21.

Moreover, Noble's testimony would make improper credibility determinations and inappropriately opine on defendants' motive, intent, or state of mind. *See Stern*, 2015 U.S. Dist. LEXIS 97879, at *9-10 (police practices expert precluded from making credibility determinations or offer opinions on defendant police officer's motives, intent or state of mind); *Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 547 ("[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony."); *Fate*, 2013 U.S. Dist. LEXIS 83425, at *17 (police practices expert precluded from "offer[ing] testimony about what he believes actually happened or about the credibility of any witness"); *Estate of Loury v. City of Chicago*, 2021 U.S. Dist. LEXIS 50171, at *14 (E.D. Ill. Mar. 27, 2021) (Noble precluded from offering testimony regarding officer's state of mind). Noble is also not permitted to testify as to what certain defendants thought about the materiality or credibility of the Montes and Larrea statements, or that the defendants believed other witnesses to be more credible. A jury is well equipped to analyze the evidence and whatever contradictions that lie therein, making Noble's expert testimony cumulative and unnecessary.

Nor is Noble permitted to testify that defendants attempted to "cover up Mr. Larrea's intoxication and subsequent misrepresentation to his NYPD supervisors [as] the driving force behind [Plaintiff's] allegation of *Brady* violations." This assertion is blatant speculation, unreliable, and conclusory, the same bases on which Noble's testimony has been precluded in the past. *See* **Exhibit F**, pp. 96-99; *Loury*, 2021 U.S. Dist. LEXIS 50171, at *14-15.

### IV. Kristin Kucsma

Plaintiff disclosed Kucsma as an expert witness. Kucsma "was retained to evaluate economic losses suffered by [Plaintiff] resulting from wrongful conviction[11] and incarceration." *See* **Exhibit H**, p. 4.  On March 8, 2022, this Court set May 6, 2022 as the deadline to complete fact discovery. *See* Mar. 8, 2022 Electronic Doc. Order.  Subsequently, on May 31, 2022, Plaintiff served his Rule 26 expert witness disclosures in compliance with this Court's expert discovery deadline, which included Kuscma's expert report. *See* **Exhibit L**; **Exhibit H** (dated May 31, 2022). On August 16, 2022, defendants deposed Kucsma.  During her deposition, she testified that her basis for a majority – if not all – of the information she relied upon to formulate her opinion was "provided in [a] fact-finding questionnaire that I reviewed." *See* **Exhibit I**, 21:21-22:4; 22:19-23:9, 23:13-25:18, 28:10-21, 29:17-30:2, 55:3-56:4, 57:2-23; **Exhibit H**, pp. 6-7 (Sobel Tinari Economics Group Fact-Finding Questionnaire (FFQ)).  This questionnaire that was provided to Kucsma included information that answered questions specifically related to how she developed her analysis of Plaintiff's alleged economic loss including Plaintiff's highest level of education, information related to college classes Plaintiff took while incarcerated, information related to employment and earnings prior to the incident, information related to Plaintiff's ability to work in particular professions while incarcerated, and information related plaintiff's employment and earnings since his release from incarceration. *See* **Exhibit I**, 21:21-22:4; 22:19-23:9, 23:13-25:18, 28:10-21, 29:17-30:2, 55:3-56:4, 57:2-23.  This questionnaire also included information related to Plaintiff's physical condition, specifically that Plaintiff suffered a gunshot wound *See* **Exhibit I**, 36:6-14.  On August 16, 2022, less than five (5) hours after Kucsma's deposition was completed, defendants served Plaintiff with post-deposition discovery demands requesting production of the

---

[11] Defendants filed a separate motion *in limine* precluding any evidence, testimony (including expert witness testimony), or argument that Plaintiff was wrongfully convicted.

questionnaire that a majority of Kucsma's analysis and opinions are based. *See* **Exhibit J**, p. 2; **Exhibit K**. Plaintiff responded that the post-deposition discovery demand was untimely and has failed to produce this questionnaire to this day.

A majority – if not all – of Kucsma's opinions are based off of material provided to Kucsma that defendants requested, but Plaintiff has refused to produce. As a result of Plaintiff's refusal to disclose required materials that provide almost the entire basis of Kucsma's opinion, Plaintiff must be precluded from calling Kucsma as a witness at trial.

A. Kucsma Must Be Precluded Due to Plaintiff's Failure to Comply with Fed. Civ. P. Rule 26(2)(a)(B).

Pursuant to Fed. R. Civ. P. 26(a)(2)(B), expert witnesses who provide a written report are required to include "the facts or data considered by the witness in forming" the expert's opinion, along with "any exhibits or charts that that summarize or support the expert's opinions." *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) and (iii); Fed. R. Civ. P. 26(a)(2) Advisory Committee Note to 1993 Amendment; *Tikkun v. City of New York*, 265 F.R.D. 152, 155 (S.D.N.Y. Feb. 17, 2010); *Schwab v. Philip Morris USA, Inc.*, 2006 U.S. Dist. LEXIS 11047, at *9 (E.D.N.Y. Mar. 20, 2006) ("[u]nder Rule 26(a)(2)(B), the requirement of disclosure applies not only to information actually relied upon by a testifying expert, but also to information that was relied upon, but considered by the expert."); *NAACP v. A.A. Arms Inc.*, 2003 U.S. Dist. LEXIS 4867, at *8-9 (E.D.N.Y. Mar. 21, 2003) (court granted, in part, defendants' *in limine* application to preclude expert opinions, analysis and reliance materials not previously disclosed – "[a]s a general rule, experts' opinions are those in the reports; materials not fairly disclosed may not be relied upon."); *Constr. Indus Servs. Corp. v. Hanover Ins. Co.*, 206 F.R.D. 43, 50 (E.D.N.Y. 2001) ("[d]ocuments and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing

his report."); *Aniero Concrete Co. v. N.Y. City Sch. Const. Auth.*, 2002 U.S. Dist. LEXIS 2892, at *7-12 (S.D.N.Y. Feb. 21, 2002).  The Rule 26(a)(2)(B) requirement to disclose "any material considered by [a party's expert]" trumps the "protection otherwise accorded opinion work product under Rule 26(b)(3)." *Sparks v. Seltzer*, 2007 U.S. Dist. LEXIS 6234, at *3-5 (E.D.N.Y. Jan. 29, 2007) (court ordered party "to disclose any material considered by their experts, including material that is otherwise protected by the attorney work product doctrine.") (collecting cases); *B.C.F. Oil Ref. v. Consolidated Edison Co.*, 171 F.R.D. 57, 62-63 (S.D.N.Y. Jan. 29, 1997) ("[t]here is ample authority that any facts provided to an expert, even if provided by an attorney, are required to be disclosed."). Disclosure of materials considered or relied upon by a party's expert, including materials covered by the work product doctrine, "creates a level playing field by providing a party with the information necessary to effectively cross-examine an opposing party's expert witness. Counsel wishing to maintain the protections afforded by the work product doctrine may do so by choosing not to provide an expert witness with the counsel's opinion work product." *Sparks*, 2007 U.S. Dist. LEXIS 6234, at *6-7.

Moreover, a party who provided said expert's report and intends to offer testimony of the expert has a "duty to supplement [] information included in the report and [] information given during the expert's deposition." *See* Fed. R. Civ. P. 26(e)(2); *Pope v. City of New York*, 2012 U.S. Dist. LEXIS 21727, at *2-3 (S.D.N.Y. Feb. 9, 2012) ("[t]he obligation to provide the information required by Rule 26(a)(2)(B) is imposed on the party who has hired the expert").  When a party fails to produce information relied upon by an expert, which is required to be disclosed pursuant to Fed. R. Civ. P. 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence [] at a trial." Fed. R. Civ. P. 37(c)(1); *Zambito v. United States*, 2025 U.S. Dist. LEXIS 44255, at *13-14 (E.D.N.Y. Mar. 11, 2025) ("[t]he underlying information and [] expert report and

-24-

opinion are precluded as a sanction for Defendant's failure to timely disclose the underlying records."); *Pope*, 2012 U.S. Dist. LEXIS 21727, at *2-3 (failure to produce Rule 26(a)(2)(B) required expert information may result in "preclusion of the expert.").

Here, Kucsma specifically testified that she heavily relied upon a questionnaire provided by Plaintiff when analyzing and ultimately offering an opinion on Plaintiff's purported economic damages. *See* **Exhibit I**, 21:21-22:4; 22:19-23:9, 23:13-25:18, 28:10-21, 29:17-30:2, 55:3-56:4, 57:2-23.  Her expert report cites this questionnaire as a source for information she relied upon to support her opinion. *See* **Exhibit H**, pp. 6-7.  Kucsma's expert report was produced after the close of fact discovery. *See* **Exhibit H**.  Within hours of completing Kuscma's deposition and learning the importance of the information contained in this questionnaire, defendants served a discovery demand seeking production of this material – which Plaintiff was required to disclose or supplement its disclosure pursuant to Fed. R. Civ. P. 26 – that Kucsma's opinion heavily relies upon. *See* **Exhibit J**, p. 2; **Exhibit K**.  Without this questionnaire, defendants cannot adequately prepare for Kucsma's cross-examination, which will result in substantial prejudice.  Due to Plaintiff's blatant failure to produce the required reliance material that is the primary basis for Kucsma's opinion, Kucsma's testimony must be precluded.

## **CONCLUSION**

For the reasons set forth above, the defendants' motion should be granted in its entirety.

Dated:     White Plains, New York
           August 29, 2025

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

John A. Vitagliano
Janine A. Mastellone
John M. Flannery

-25-