UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSEPH JACKSON,

Plaintiff,

-against-

NASSAU COUNTY; DETECTIVE ROBERT DEMPSEY; DETECTIVE GARY ABBONDANDELO; DETECTIVE JOHN M. HOLLAND; DETECTIVE MICHAEL HERTS; DETECTIVE MARTIN ALGER; DETECTIVE WALTER SWENSON; DETECTIVE ANTHONY KOSIER; DETECTIVE SERGEANT DAN SEVERIN; and JOHN and JANE DOE 1 through 20,

Defendants.

Docket No. 18-CV-3007 (JS) (AYS)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF PURPORTED INNOCENCE, EVIDENCE AND TESTIMONY FROM NCDA CIU REINVESTIGATION AND TO BIFURCATE TRIAL**

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendants
1133 Westchester Avenue
White Plains, NY 10604
(914) 323-7000

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

LEGAL STANDARD .......... 2

ARGUMENT .......... 2

I. Plaintiff Should Be Precluded From Presenting Any Testimony, Evidence or Arguing That He Was Innocent or That He Was Wrongfully Convicted. .......... 2

II. Plaintiff Should Be Precluded From Presenting Testimony or Evidence From Richard "Woody" Miller. .......... 3

III. Plaintiff Should Be Precluded From Introducing Evidence and Testimony Related to NCDA CIU'S Reinvestigation of His Criminal Conviction, and Precluded From Introducing Testimony From ADA Sheryl Anania and ADA Tammy Smiley .......... 4

1. Preclusion of Tammy Smiley's Witness Testimony. .......... 5

2. Preclusion of Sheryl Anania's Witness Testimony. .......... 6

3. Preclusion of All Evidence and Testimony Related to NCDA CIU's reinvestigation of Plaintiff's Criminal Conviction. .......... 8

IV. Pursuant to Fed. R. Civ. P. 42(b), the Liability and Damages Phases of this Trial Should Be Bifurcated. .......... 10

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. City of New York*,
993 F. Supp. 2d 306 (E.D.N.Y. 2014) .......... 7

*Amato v. City of Saratoga Springs*,
170 F.3d 311, 316 (2d Cir. 1999) .......... 11

*Banushi v. Palmer*,
2011 U.S. Dist. LEXIS 419 (E.D.N.Y. Jan. 4, 2011) .......... 12, 14

*Buckley v. Fitzsimmons*,
20 F.3d 789 (7th Cir. 1994) .......... 4

*Cameron v. City of New York*,
598 F.3d 50 (2d Cir. 2010) .......... 7

*Cicero v. City of New York*,
2011 U.S. Dist. LEXIS 80880 (E.D.N.Y. July 25, 2011) .......... 14

*Jackson v. City of White Plains*,
2016 U.S. Dist. LEXIS 6469 (S.D.N.Y. Jan. 19, 2016) .......... 2

*Jean-Laurent v. Hennessy*,
840 F. Supp. 2d 529 (E.D.N.Y. 2011) .......... 2, 5, 8

*Jeanty v. Cerminaro*,
2021 U.S. Dist. LEXIS 124089 (N.D.N.Y. July 2, 2021) .......... 9

*Kogut v. Nassau County*,
Docket No. 06-CV-06695 .......... 11

*Luce v. U.S.*,
469 U.S. 38, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984) .......... 2

*Mandal v. City of New York*,
2006 U.S. Dist. LEXIS 83891 (S.D.N.Y. Nov. 20, 2006) .......... 11

*Nnodimele v. Derienzo*,
2016 U.S. Dist. LEXIS 83357 (E.D.N.Y. June 27, 2016) .......... 3, 7, 9, 10, 11, 13, 14

*Palmieri v. Defaria*,
88 F.3d 136 (2d Cir. 1996) .......... 2

*Phillips v. City of New York*,
2009 U.S. Dist. LEXIS 100716 (E.D.N.Y. Oct. 28, 2009) .......... 12

*Schlant v. Victor Belata Belting Co.*,
2001 U.S. Dist. LEXIS 16539 (W.D.N.Y. Oct. 2, 2001) ........ 11

*Smith v. Perez*,
2023 U.S. Dist. LEXIS 121265 (D. Conn. July 14, 2023) ........ 10

*U.S. v. Bermudez*,
529 F.3d 158 (2d Cir. 2008) ........ 2

*U.S. v. Litvak*,
808 F.3d 160 (2d Cir. 2015) ........ 2

*United Stated v. Morgan*,
385 F.3d 196 (2d Cir. 2004) ........ 10

*United States v. Almonte*,
956 F.2d 27 (2d. Cir. 1992) ........ 10

*United States v. Chartier*,
2021 U.S. Dist. LEXIS 161972 (E.D.N.Y. Aug. 26, 2021) ........ 10

*United States v. Strother*,
49 F.3d 869 (2d Cir. 1995) ........ 10

*Vichare v. AMBAC, Inc.*,
106 F.3d 457 (2d Cir. 1996) ........ 10, 15

*Waiters v. Lee*,
2018 U.S. Dist. LEXIS 172077 (E.D.N.Y. Oct. 3, 2018) ........ 10

*Walker v. City of Buffalo*,
2025 U.S. Dist. LEXIS 47995 (W.D.N.Y. Mar. 17, 2025) ........ 3

*Wisdom v. Undercover Police Officer #C0127*,
879 F. Supp. 2d 339 (E.D.N.Y. 2012) ........ 11, 15

**Statutes**

Criminal Procedure Law § 440.10(1)(h) ........ 8

**Rules**

Fed. R. Civ. P. 42(b) ........ 1, 10, 11, 15

FRE 401 ........ 3, 4, 5, 6, 8, 9

FRE 402 ........ 2, 3, 4, 5, 6, 8, 9

FRE 403 ........ 2, 3, 4, 5, 6, 7, 8, 9

FRE 404 ........ 6

FRE 602 .......... 4, 5, 6, 8, 9

FRE 613 .......... 10

FRE 801 .......... 6, 8, 9

FRE 801(d) .......... 10

FRE 802 .......... 6, 8, 9

FRE 803 .......... 6, 8, 9

FRE 804 .......... 6, 8, 9

FRE 805 .......... 6, 8, 9

FRE 807 .......... 6, 8, 9

Rule 26(a) .......... 5

Rule 803(8)(A)(iii) .......... 6

Rule 807 .......... 10

**PRELIMINARY STATEMENT**

While this Court significantly narrowed the scope of this lawsuit to two (2) main issues – i) claims related to the Glenn Montes and Maurice Larrea written statements; and ii) claims related to Plaintiff's written confession (*see* ECF No. 396) – Plaintiff's pre-trial submissions demonstrates he will attempt to introduce evidence to try to prove his innocence, as well as inadmissible evidence and witness testimony from the Nassau County District Attorney's Office ("NCDA") Conviction Integrity Unit ("CIU") reinvestigation of his criminal conviction. Introduction of such unreliable evidence and witness testimony would defy this Court's prior orders and would inappropriately inject irrelevant evidence unrelated to Plaintiff's remaining claims. Further, such evidence would confuse and mislead this jury requiring their examination of topics not at issue resulting in significant prejudice towards defendants. Moreover, as relayed below, in order to promote efficiency, given that the trial issues are significantly limited and the heightened potential of prejudice towards defendants, the liability and damages phases of this case should be bifurcated.

Accordingly, the defendants, Robert Dempsey ("Dempsey"), Gary Abbondandelo ("Abbondandelo"), John Holland ("Holland"), Michael Herts ("Herts"), Martin Alger ("Alger"), Walter Swenson ("Swenson"), Anthony Kosior ("Kosior"), and Dan Severin ("Severin"), respectfully submit this memorandum of law in support of their motion *in limine* seeking to: (1) preclude Plaintiff from introducing evidence, referencing, suggesting, and arguing that he was innocent or that he was wrongfully convicted; (2) preclude evidence and witness testimony from Richard Miller; (3) preclude all evidence and testimony from the NCDA CIU reinvestigation of Plaintiff's criminal conviction; (4) preclude witness testimony of Sheryl Anania; (5) preclude witness testimony of Tammy Smiley; and (6) pursuant to Fed. R. Civ. P. 42(b), bifurcate the liability and damages phases of this trial.

## LEGAL STANDARD

"The purpose of an in limine motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *see also Luce v. U.S.*, 469 U.S. 38, 40 n. 2, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). The scope of admissible evidence is governed first by the claims in the case and then by the concept of relevancy. *See U.S. v. Litvak*, 808 F.3d 160, 179-180 (2d Cir. 2015); *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011). "Irrelevant evidence is not admissible." FRE 402. Additionally, "[r]elevant evidence may still be excluded by the Court 'if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Jackson v. City of White Plains*, 2016 U.S. Dist. LEXIS 6469, at *3 (S.D.N.Y. Jan. 19, 2016) (quoting FRE 403). The district court has "broad discretion to balance probative value against possible prejudice" under Rule 403. *U.S. v. Bermudez,* 529 F.3d 158, 161 (2d Cir. 2008).

## ARGUMENT

### I. Plaintiff Should Be Precluded From Presenting Any Testimony, Evidence or Arguing That He Was Innocent or That He Was Wrongfully Convicted.

Upon information and belief, Plaintiff intends to offer evidence and argue that he was innocent of Steven Jason's murder and that he was wrongfully convicted. While Plaintiff correctly references in the joint pre-trial order ("JPTO") that Plaintiff's innocence is irrelevant to his remaining claims[1], he specifically contradicts this assertion by proffering Richard "Woody" Miller

[1] *See* ECF No. 405, p. 101 ("[m]any of these exhibits relate to plaintiff's guilt or innocence, which is irrelevant to the constitutional violations at issue.").

to testify "that plaintiff was not the perpetrator" responsible for killing Steven Jason. *See* ECF No. 405, p. 7. However, "plaintiff's actual innocence is irrelevant to his fair trial claims. Neither his claim for fabricating evidence nor his claim for withholding evidence requires plaintiff to show that he was actually innocent or that he would have been acquitted but for the misconduct alleged." *Nnodimele v. Derienzo*, 2016 U.S. Dist. LEXIS 83357, at *33 (E.D.N.Y. June 27, 2016) *citing Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) ("[w]hile Brady ensures a fair trial, a defendant's right to pre-trial disclosure under Brady is not conditioned on his ability to demonstrate that he would or even probably would prevail at trial if the evidence were disclosed, much less that he is in fact innocent.") (internal citations and quotations omitted); *Walker v. City of Buffalo*, 2025 U.S. Dist. LEXIS 47995, at *20 (W.D.N.Y. Mar. 17, 2025) ("[m]ateriality of the allegedly withheld *Brady* materials … does not implicate factual guilt or innocence, or anyone's opinion (lay or expert) on factual guilt or innocence.").

As such, any testimony (including expert witness testimony), evidence or argument asserting that Plaintiff is innocent, that he did not commit Steven Jason's murder, or that he was wrongfully convicted must be precluded as it is not only irrelevant, but extremely prejudicial to the defendants and would be designed to make it more likely that jurors will find in Plaintiff's favor on liability issues. *See* FRE 401, 402, 403; *Nnodimele*, 2016 U.S. Dist. LEXIS 83357, at *33 (court precluded evidence which plaintiff argued is relevant to his actual innocence, and precluded witnesses from opining on plaintiff's guilt or innocence).

## II. Plaintiff Should Be Precluded From Presenting Testimony or Evidence From Richard "Woody" Miller.

With respect to Richard Miller, not only should he be precluded from testifying that Plaintiff was not the perpetrator, but his testimony must be precluded in its entirety. This Court significantly narrowed the scope of this trial to two (2) main issues: 1) claims related to the Glenn

Montes and Maurice Larrea written statements; and 2) claims related to Plaintiff's written confession. *See* ECF No. 396. Plaintiff proffers that Richard Miller "will testify, consistent with his affidavit" (*see* ECF No. 405, p. 7), which was designated as Plaintiff's proposed trial exhibit 41. *See* ECF No. 389-12. However, Richard Miller lacks personal knowledge of, and his testimony is irrelevant to, any of Plaintiff's remaining claims. *See* FRE 401, 402, 403, 602; ECF No. 389-12. Richard Miller's irrelevant testimony would be purely speculative[2] and conclusory as he fails to identify any police officers that allegedly pressured him to name Plaintiff as the perpetrator, and would do nothing but prejudice the defendants and confuse the jury. As such, his testimony and hearsay affidavit (*see* ECF No. 389-12) must be precluded.

### III. Plaintiff Should Be Precluded From Introducing Evidence and Testimony Related to NCDA CIU'S Reinvestigation of His Criminal Conviction, and Precluded From Introducing Testimony From ADA Sheryl Anania and ADA Tammy Smiley

Plaintiff intends to call former NCDA prosecutor Sheryl Anania and NCDA prosecutor Tammy Smiley as trial witnesses (*see* ECF No. 405, pp. 5, 9), and attempt to introduce a substantial number of documents related to the NCDA CIU reinvestigation of his criminal conviction. For a plethora of reasons, the testimony of both of these witnesses, along with all evidence related to NCDA CIU's reinvestigation, must be precluded.

---

[2] In his affidavit, Richard Miller does not identify which police officers came to his house the day after Steven Jason was murder, or which department these police officers were from. *See* ECF No. 389-12, ¶¶25-27. He then asserts that "a few days later, officers came back to my home", that "the officers showed me photographs and pressured me to identify Joseph Jackson as the perpetrator" and that "the officers explained that Mr. Jackson was a 'piece of shit' and they 'needed to get him' for the crime" but failed to identify who these officers were. *Id.*, ¶¶28-30. Plaintiff was not known as a suspect until November 18, 1994, more than six (6) months after Steven Jason was murdered, which contradicts Richard Miller's belief that the police came back "a few days" after the murder and pressured him to identify plaintiff as the perpetrator. *Id.*; ECF No. 396, p. 14. Lastly, Richard Miller's anticipated speculative testimony is irrelevant, immaterial and does not amount to a violation of Plaintiff's constitutional rights since the unidentified officers never procured, fabricated, or provided prosecutors with any evidence that Mr. Miller identified the plaintiff in an identification procedure, or that this non-existent evidence was utilized during plaintiff's criminal trial. *See Buckley v. Fitzsimmons*, 20 F.3d 789, 795 (7th Cir. 1994) (observing that if a prosecutor tortured a witness to obtain a statement implicating a criminal defendant and put the statement "in a drawer, or framed it and hung it on the wall but took no other step," no constitutional right would be violated).

1. Preclusion of Tammy Smiley's Witness Testimony.

Initially, Tammy Smiley's testimony should be precluded as Plaintiff failed to disclose her as a witness pursuant to Rule 26(a). *See* **Exhibit A**. Plaintiff proffers that Ms. Smiley "worked with ADA [Sheryl] Anania to investigate whether Dempsey had been involved in prior false confessions. Ms. Smiley will testify about her role in the investigation and facts she uncovered." *See* ECF No. 405, p. 9. However, Ms. Smiley did not uncover any "facts" and her role was limited to forwarding irrelevant hearsay and information related to unsubstantiated allegations made against Dempsey – all of which is inadmissible[3]. At her deposition, Sheryl Anania testified that she spoke with Ms. Smiley about other cases involving Dempsey, that Ms. Smiley was aware of civil litigation involving Dempsey, that Ms. Smiley provided this information to Sheryl Anania, but otherwise, Ms. Smiley played no role in the reinvestigation of Plaintiff's conviction. *See* ECF No. 386-11, 61:20-62:8, 124:19-125:13, 132:8-16.

Plaintiff's remaining claims relate only to the Glenn Montes and Maurice Larrea statements and the circumstances related to Plaintiff's written confession, events in which Ms. Smiley had no involvement and was not present for. As Ms. Smiley lacks "personal knowledge" of any of the issues related to Plaintiff's remaining claims, her testimony is irrelevant, would do nothing but prejudice the defendants and must be precluded. *See* FRE 401, 402, 403, 602; *Jean-Laurent*, 840 F. Supp. 2d at 547-48 (court precluded prosecutor's testimony since all of plaintiff's claims involved circumstances surrounding his arrest, to which the prosecutor lacked personal knowledge of and had no involvement).

Moreover, any testimony of, or e-mails[4] sent by, Tammy Smiley regarding allegations

[3] Defendants filed a parallel motion *in limine* seeking to preclude this improper character evidence.
[4] Defendants request includes preclusion of plaintiff's proposed trial exhibits 40 (*see* ECF No. 389-5, p. 12) and 234 (*see* ECF No. 389-5, p. 149) as referenced in the JPTO. *See* ECF No. 405.

made against Dempsey is improper character evidence and inadmissible as it is based on multiple levels of uncorroborated hearsay, and each level of hearsay fails to satisfy an exception to the hearsay rule. *See* FRE 801, 802, 803, 804, 805, 807. As addressed in further detail in defendants' parallel motion *in limine*, any uncorroborated allegations against Dempsey are inadmissible as said evidence would be introduced solely as improper propensity evidence. *See* FRE 404. As Ms. Smiley offers no information or knowledge that sheds light on any of the remaining trial issues, her testimony is irrelevant, would significantly prejudice defendants, and must be precluded. *See* FRE 401, 402, 403, 602.

2. Preclusion of Sheryl Anania's Witness Testimony.

Plaintiff proffers that Sheryl Anania "was the Chief of NCDA's Conviction Integrity Unit who reinvestigated plaintiff's conviction and filed a 440 [motion] to vacate his conviction on the basis of a *Brady* violation. Ms. Anania will testify about the factual findings of her investigation." *See* ECF No. 405, p. 5. Again, for a plethora of reasons, Sheryl Anania's testimony is irrelevant, inadmissible, hearsay, and would unduly prejudice the defendants in violation of Rule 403.

First, contrary to Plaintiff's absurd position, Anania's opinion that plaintiff's constitutional rights were violated is not a *factual* finding that would be admissible pursuant to Rule 803(8)(A)(iii) as a hearsay exception. With respect to Rule 803(8)(A)(iii), the Notes of Committee on the Judiciary, House Report No. 93-650 demonstrates that "[t]he Committee intend[ed] that the phrase "factual findings" be strictly construed and that evaluations or opinions contained in public reports shall not be admissible under this Rule." Thus, Anania's opinion is not a factual finding and is inadmissible. Second, whether or not the Montes and Larrea statements were "suppressed", or whether defendants' alleged conduct constitutes a *Brady* violation, is for the jury to decide, not the opinions of the prosecutor who had no involvement in Plaintiff's prosecution until she

reviewed the conviction 23 years later. In *Nnodimele*, the court was presented with the same *in limine* application, where it precluded opinion testimony from prosecutors and other attorneys regarding alleged *Brady* violations, opining that:

> Because it is the role of the jury in this case to determine materiality with respect to plaintiff's Brady claims, evidence regarding the opinions of others on that issue is improper and inadmissible. To the extent such evidence has any relevance to the jury's determination, its probative value is substantially outweighed by the danger of confusing the issues, misleading the jury, and wasting time. See Fed. R. Evid. 403. ***What matters to the jury is the weight it assigns to the allegedly withheld evidence, not the weight assigned to it by the attorneys who prosecuted plaintiff or reviewed his conviction*. *Testimony regarding the latter poses a risk of polluting the jury's determination with the opinions of others. The fact that such opinions were held by lawyers, and presented to judges, makes that risk especially great.***
>
> Accordingly, proposed witnesses from the Center for Appellate Litigation may not testify regarding reasons for actions taken or not taken by the New York County District Attorney's Office. Specifically, they may not testify that the Conviction Integrity Unit in that office cited the alleged self-identification statements as a reason for not dismissing the criminal charges against plaintiff, nor may they reference the district attorney's comments on the relevance of Ms. Boyle's statements to its decision to recommend dismissal of charges. Such evidence is inadmissible because it intrudes upon the jury's role in assessing the materiality of the allegedly withheld evidence…
>
> [T]his court will not permit testimony from prosecutors regarding [plaintiff's guilt or innocence] because their opinions are not relevant and they intrude upon the role of the jury as the arbiter of materiality on the Brady claim.

*Nnodimele*, 2016 U.S. Dist. LEXIS 83357, at *36-39 (emphasis added). In civil rights lawsuits, courts routinely preclude prosecutors from providing opinion testimony on the issues to be determined by the jury. *See Cameron v. City of New York*, 598 F.3d 50, 62-64 (2d Cir. 2010) (finding prosecutor witnesses' opinion as to existence of probable cause and credibility of officers inadmissible); *Adams v. City of New York*, 993 F. Supp. 2d 306, 324-27 (E.D.N.Y. 2014) ("witnesses may not present testimony in the form of legal conclusions" and prosecutor not permitted to testify to opinion that probable cause existed). Thus, Sheryl Anania's opinions

regarding the basis for vacating plaintiff's conviction must be precluded. Lastly, as with Tammy Smiley, Sheryl Anania lacks "personal knowledge" of any of the issues related to Plaintiff's remaining claims, rendering her testimony irrelevant, based on uncorroborated hearsay with no applicable exception, and would do nothing but prejudice the defendants. *See* FRE 401, 402, 403, 602, 801, 802, 803, 804, 805, 807; *Jean-Laurent*, 840 F. Supp. 2d at 547-48.

3. Preclusion of All Evidence and Testimony Related to NCDA CIU's reinvestigation of Plaintiff's Criminal Conviction.

Not only should Sheryl Anania's testimony be precluded, but several of plaintiff's proposed trial exhibits[5], which consist of documents prepared in connection with NCDA CIU's reinvestigation, are either inadmissible hearsay evidence or irrelevant to Plaintiff's remaining claims and must be precluded. Letters[6] written by, and e-mails written and received by, Sheryl Anania in 2017 requesting to discuss the 1994 prosecution against Plaintiff have no probative value, would mislead the jury and would prejudice the defendants. Notes[7], memorandum[8] and Criminal Procedure Law § 440.10(1)(h) motion papers[9] prepared by Sheryl Anania regarding her reinvestigation of Plaintiff's conviction, along with her affirmation to produce the Plaintiff to appear in court at the time his convictions were vacated[10], are based on inadmissible hearsay,

---

[5] Defendants request includes preclusion of plaintiff's proposed trial exhibits 38 (*see* **Exhibit M** [ECF No. 389-5, pp. 1-11 – redacted]), 40 (*see* ECF No. 389-5, p. 12), 121 (*see* **Exhibit B**), 123 (*see* **Exhibit C**), 124 (*see* **Exhibit D**), 125 (*see* **Exhibit E**), 126 (*see* **Exhibit F**), 127 (*see* **Exhibit G**), 128 (*see* **Exhibit H**), 129 (*see* **Exhibit I**), 147 (*see* **Exhibit J**), 155 (*see* **Exhibit K**), 194-196 (collectively, *see* ECF No. 391-3), 229 (*see* ECF No. 389-5, p. 13), 230 (*see* ECF No. 389-5, p. 15), 231 (*see* ECF No. 389-5, pp. 16-17), 232 (*see* ECF No. 389-5, pp. 18-21, 53), 233 (*see* ECF No. 389-5, pp. 22-28), 234 (*see* ECF No. 389-5, p. 149), 235 (*see* ECF No. 389-5, p. 30), 236 (*see* ECF No. 389-5, p. 43), 237 (*see* ECF No. 389-5, p. 58), 238 (*see* ECF No. 389-5, p. 44), 239 (*see* ECF No. 389-5, p. 45), 242 (*see* ECF No. 389-5, pp. 51-52), 244 (*see* ECF No. 389-5, pp. 56-57) and 245 (*see* ECF No. 389-5, pp. 59, 61) as referenced in the JPTO. *See* ECF No. 405.

[6] Plaintiff's proposed trial exhibits 40 (*see* ECF No. 389-5, p. 12), 121, 123-128 and 234 as referenced in the JPTO. *See* ECF No. 405.

[7] Plaintiff's proposed trial exhibits 147 (*see* **Exhibit J**), 155 (*see* **Exhibit K**) and 232 (*see* ECF No. 389-5, pp. 18-21, 53) as referenced in the JPTO. *See* ECF No. 405.

[8] Plaintiff's proposed trial exhibit 38 (*see* **Exhibit M** [ECF No. 389-5, pp. 1-11 – redacted]) as referenced in the JPTO. *See* ECF No. 405.

[9] Plaintiff's proposed trial exhibits 194-196 (collectively, *see* ECF No. 391-3) as referenced in the JPTO. *See* ECF No. 405.

[10] Plaintiff's proposed trial exhibit 129 (*see* **Exhibit I**) as referenced in the JPTO. *See* ECF No. 405.

contain inadmissible opinion evidence regarding the basis to vacate Plaintiff's conviction that would confuse, mislead and intrude upon the jury's role to decide the remaining issues, lacks "personal knowledge" of any of the remaining trial issues, and would severely prejudice the defendants. *See* FRE 401, 402, 403, 602, 801, 802, 803, 805; *Nnodimele*, 2016 U.S. Dist. LEXIS 83357, at *36-39; *Jeanty v. Cerminaro*, 2021 U.S. Dist. LEXIS 124089, at *45-46 (N.D.N.Y. July 2, 2021) (motion filed in Plaintiff's criminal case precluded). Sheryl Anania's notes from conversations with Skwanitra Witherspoon[11], Peddie Jenkins,[12] Roy Issac[13] and other individuals[14] are inadmissible hearsay, are irrelevant to the remaining claims and would mislead the jury resulting in prejudice to the defendants.

Any potential relevance of hearsay notes from conversations with Plaintiff and Gary Abbondandelo[15] is outweighed by prejudice and confusion under Rule 403, and are cumulative since they will be testifying in court at trial. Ms. Anania's notes from conversations with Glenn Montes and Maurice Larrea[16] are also inadmissible hearsay not subject to any exception. *See* FRE 401, 402, 403, 602, 801, 802, 803, 804, 805, 807. The alleged statements within these notes cannot be used to impeach the witnesses, or be introduced as extrinsic evidence as a prior inconsistent statements, since Montes and Larrea were not the authors of these notes, these alleged statements were not prior testimony given under penalty of perjury, and cannot be deemed prior statements made by Montes or Larrea given that they never subscribed to or adopted the characterizations

---

[11] Plaintiff's proposed trial exhibits 239 (*see* ECF No. 389-5, p. 45) and 245 (*see* ECF No. 389-5, pp. 59, 61) as referenced in the JPTO. *See* ECF No. 405.

[12] Plaintiff's proposed trial exhibits 236 (*see* ECF No. 389-5, p. 43), 237 (*see* ECF No. 389-5, p. 58) and 244 (*see* ECF No. 389-5, pp. 56-57) as referenced in the JPTO. *See* ECF No. 405.

[13] Plaintiff's proposed trial exhibit 238 (*see* ECF No. 389-5, p. 44) as referenced in the JPTO. *See* ECF No. 405.

[14] Plaintiff's proposed trial exhibit 242 (*see* ECF No. 389-5, pp. 51-52) as referenced in the JPTO. *See* ECF No. 405.

[15] Plaintiff's proposed trial exhibits 229 (*see* ECF No. 389-5, p. 13) and 233 (*see* ECF No. 389-5, pp. 22-28) as referenced in the JPTO. *See* ECF No. 405.

[16] Plaintiff's proposed trial exhibits 230 (*see* ECF No. 389-5, p. 15), 231 (*see* ECF No. 389-5, pp. 16-17) and 235 (*see* ECF No. 389-5, p. 30) as referenced in the JPTO. *See* ECF No. 405.

contained within these notes. *See* FRE 613, 801(d); *United States v. Strother*, 49 F.3d 869 (2d Cir. 1995) (collecting and citing cases) (a third party's characterization of a witness's statement can only constitute a prior statement of the witness where the witness has "subscribed to that characterization."); *United States v. Almonte*, 956 F.2d 27, 29 (2d. Cir. 1992) ("in the absence of endorsement by the witness, a third party's notes of a witness's statement may not be admitted as a prior inconsistent statement unless they are a verbatim transcript of the witness's own words."); *United States v. Chartier*, 2021 U.S. Dist. LEXIS 161972, at *130-31 (E.D.N.Y. Aug. 26, 2021) (where witness did not adopt statements contained within FBI report as his own, confronting witness with "the FBI report would have constituted inadmissible extrinsic impeachment evidence."); *Waiters v. Lee*, 2018 U.S. Dist. LEXIS 172077, at *45, n. 7 (E.D.N.Y. Oct. 3, 2018). Lastly, all of the evidence referenced in this paragraph is inadmissible pursuant to Rule 807 because it does not bear on a material fact, is not the most probative evidence bearing on any material fact left to be tried, admission is inconsistent with the rules of evidence or lacks the guarantee of trustworthiness required for admission. *See United Stated v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004); *Smith v. Perez,* 2023 U.S. Dist. LEXIS 121265 (D. Conn. July 14, 2023).

Thus, all documents, notes and records related to NCDA CIU's reinvestigation of Plaintiff's criminal conviction must be precluded.

## IV. Pursuant to Fed. R. Civ. P. 42(b), the Liability and Damages Phases of this Trial Should Be Bifurcated.

Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, the trial court is empowered with the discretion "to order a separate trial of one of more separate issues or claims for convenience, to avoid prejudice, or to expedite and economize." *Nnodimele*, 2016 U.S. Dist. LEXIS 83357, at *4; *Vichare v. AMBAC, Inc.*, 106 F.3d 457, 467 (2d Cir. 1996) ("[t]he interests served by bifurcated trials are convenience, negation of prejudice, and judicial efficiency."). Given

that this Court's summary judgment decision significantly narrowed the scope of this lawsuit to two (2) main liability issues upon which Plaintiff can proceed at trial, and with Plaintiff's purported damages sharing no connection with these issues, this trial should be bifurcated into a liability phase and damages phase.

As the Second Circuit has noted:

> Rule 42(b) of the Federal Rules of Civil Procedure affords a trial court the discretion to order separate trials where such an order will further convenience, avoid prejudice, or promote efficiency. … Therefore, bifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue, … or where one party will be prejudiced by evidence presented against another party[.]

*Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999) (internal citations omitted) (Second Circuit affirmed trial court's decision to bifurcate the trial); *Mandal v. City of New York*, 2006 U.S. Dist. LEXIS 83891 (S.D.N.Y. Nov. 20, 2006) (liability and damages bifurcated in civil rights case); *Nnodimele*, 2016 U.S. Dist. LEXIS 83357 (liability and damages bifurcated in civil rights case with claims of fabrication of evidence and *Brady* violations); *Wisdom v. Undercover Police Officer #C0127*, 879 F. Supp. 2d 339, 342 (E.D.N.Y. 2012) (liability and damages bifurcated in civil rights case); *Schlant v. Victor Belata Belting Co.*, 2001 U.S. Dist. LEXIS 16539, *2 (W.D.N.Y. Oct. 2, 2001) (liability and damages bifurcated in Title VII discrimination case); **Exhibit L**, pp. 4-5 (In *Kogut v. Nassau County*, Docket No. 06-CV-06695, this Court bifurcated consolidated civil rights trial of John Restivo, Dennis Halstead and John Kogut into three (3) phases – i) individual defendants' liability; ii) municipal liability (*Monell*); and iii) damages). Here, several reasons not only support bifurcation, but demonstrates its necessity.

Here, "the issues presented at the liability and damages phases are largely if not entirely distinct: the former will require the jury to determine the conduct of the defendants, whereas the latter will require the jury to assess the effect of that conduct on the plaintiff." *Nnodimele*, 2016

U.S. Dist. LEXIS 83357, at *5. Plaintiff's damages – both economic and emotional – are irrelevant to, and significantly different from, the two (2) remaining liability issues surrounding the Montes and Larrea statements and the procurement of Plaintiff's confession. Whether Plaintiff's time in custody caused his purported emotional damages and what his pre-incarceration earnings might have been if not for his time in custody have no connection to whether the defendants violated his civil rights, whether the Montes and Larrea statements were intentionally suppressed or whether Plaintiff's confession was procured through coercion. *See Banushi v. Palmer*, 2011 U.S. Dist. LEXIS 419, at *9-11 (E.D.N.Y. Jan. 4, 2011) (testimony regarding plaintiff's injuries precluded during liability phase of trial as it is only relevant during damages phase of trial); *Phillips v. City of New York*, 2009 U.S. Dist. LEXIS 100716, at *5-6 (E.D.N.Y. Oct. 28, 2009) (in a bifurcated civil rights trial, testimony regarding plaintiff's emotional injuries was not permitted until damages phase because it was not relevant to liability). It is not until Plaintiff is able to establish liability before his damages even become a relevant matter for the jury to consider. Here, the jury does not need to consider information regarding Plaintiff's alleged damages in order to determine if Plaintiff's written confession was procured through coercion or whether the Montes and Larrea statements were suppressed. As such, the damages and liability issues are drastically different from one another warranting a bifurcated trial.

Further, this matter is being tried before a jury. Bifurcation would reduce the potential prejudice to defendants from the introduction of evidence regarding Plaintiff's emotional damages, including his emotional distress from his conditions of confinement and incidents that allegedly occurred while he was incarcerated for twenty-three (23) years. This testimony would undoubtedly evoke undue sympathy from jurors prior to its deliberation on the liability issues and

may cause the jury to side punish defendants and side with Plaintiff before even hearing all of the relevant liability evidence. Thus, bifurcation would reduce the prejudice to defendants.

Moreover, bifurcation will drastically and efficiently expedite this proceeding. There will be "little if any overlap between the documentary and testimonial evidence presented in conjunction with the respective" liability and damages phases. *See Nnodimele*, 2016 U.S. Dist. LEXIS 83357, at *5. Testimony from Plaintiff and the parties' damages experts – psychologists Dr. Michael Fraser and Dr. Bruce Frumkin, and economist Kristin Kucsma – regarding Plaintiff's incarceration, emotional state and economic status, including related documents, shed no light on the remaining liability issues; such evidence will not assist the jury when determining if Plaintiff's written confession was procured through coercion or whether the Montes and Larrea statements were suppressed. In addition, a majority of Plaintiff's proposed witnesses[17] – which defendants seek to preclude in this and parallel motions *in limine* – are (arguably) relevant only to the remaining liability issues, not Plaintiff's purported damages.

Significantly, bifurcation will further promote efficiency since the damages portion of this trial is likely to last longer than the liability portion. While this Court significantly limited the liability issues, there is a substantial amount of evidence tending to show Plaintiff failed to mitigate his damages. Plaintiff was well aware of the Montes and Larrea written statements as early as 2005 – with his criminal defense attorneys' aware of these witnesses even earlier – but failed to request NCDA review his conviction until 2017, over a decade later. *See* ECF No. 396, pp. 48-49. However, none of this anticipated testimony or documentary evidence – including Plaintiff's FOIL

[17] Witness testimony from Maurice Larrea, Glenn Montes, Sheryl Anania, Fred Klein, Michael Walsh, Glenn McGovern, Robert Melendez, Richard Miller, Takita Dorsey, Peddie Jenkins, Jennifer Dysart, Jeffrey Noble, Hayley Cleary, Tyrone Isaac, Roy Issac, Tammy Smiley, Shonnard Lee, John Restivo, Anibal Martinez, Darryl Grate, Charles Clink, Joseph Porto and John Kogut are only arguably relevant to liability, not Plaintiff's damages. *See* ECF No. 405, pp. 4-10.

requests and responses received and correspondence between Anthony Mayol, Scott Brettschneider and NCDA requesting documents – as well as Plaintiff's time spent in custody, are relevant to the liability issues remaining to be tried. The jury may get confused as to why testimony and evidence is being presented regarding the Montes and Larrea written statements ***after*** Plaintiff's criminal trial was completed and while he was incarcerated since – on liability – these topics are irrelevant to whether his confession was procured through coercion or whether he or his attorney knew or should have known of the existence of these witnesses prior to the criminal trial and whether the information contained within these statements would have effected the outcome of Plaintiff's criminal trial.

Lastly, there will be no prejudice to Plaintiff if this trial is bifurcated. Indeed, bifurcation will prevent any potential prejudice towards Plaintiff. Courts have held that a plaintiff's prior incarceration and arrest history[18] is relevant to a jury's damages determination since a plaintiff "who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never before been detained." *See Banushi*, 2011 U.S. Dist. LEXIS 419, at *7-8 *citing Wilson v. City of New York*, 2006 U.S. Dist. LEXIS 90050, at *1-2 (E.D.N.Y. Dec. 13, 2006); *Cicero v. City of New York*, 2011 U.S. Dist. LEXIS 80880, at *11-12 (E.D.N.Y. July 25, 2011) ("[a] plaintiff who has previously been incarcerated may suffer less damage as a result of a subsequent wrongful incarceration") (internal quotation and citations omitted). However, courts have recognized the risk of prejudice that this type of evidence has on a plaintiff when a jury

[18] Defendants do not concede that evidence related to Plaintiff's prior arrests, including his arrest where he signed a *Miranda* card on April 4, 1990, are irrelevant to the liability issues in this trial. As this Court highlighted in the summary judgment decision, defendants submit that the fact that Plaintiff previously signed a *Miranda* card and his knowledge of the criminal justice system evidenced by his numerous arrests is highly relevant as it specifically contradicts Plaintiff's assertion that he did not know that he was signing a *Miranda* card while in custody prior to signing every page of a 15-page written confession. *See* ECF No. 396, pp. 31-32, 83-84; *Nnodimele*, 2016 U.S. Dist. LEXIS 83357, at *5-6 (although court bifurcated civil rights trial into liability and damages phase, court recognized that "[t]o the extent that aspects of plaintiff's character or experience are admissible and relevant to assessing his credibility, bifurcation does not prevent defendants from inquiring into them during the liability phase.").

determines liability and have bifurcated civil rights trials as a result. *See Wisdom*, 879 F. Supp. 2d at 342 (court held prior arrests were relevant, but bifurcated trial to liability and damages phase given potential prejudice that jury could infer based on prior arrests).

Thus, pursuant to Fed. R. Civ. P. 42(b), in light of the "convenience, negation of prejudice, and judicial efficiency" bifurcation of this trial into a liability phase and damages phase is warranted. *See Vichare*, 106 F.3d at 467.

**CONCLUSION**

For the reasons set forth above, the defendants' motion should be granted in its entirety.

Dated: White Plains, New York
August 29, 2025

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

John A. Vitagliano
Janine A. Mastellone
John M. Flannery