UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
JOSEPH JACKSON,

               Plaintiff,                 ORDER
                                          18-CV-3007(JS)(AYS)

    -against-

DETECTIVE ROBERT DEMPSEY;
DETECTIVE GARY ABBONDANDELO;
DETECTIVE JOHN M. HOLLAND;
DETECTIVE MICHAEL HERTS;
DETECTIVE MARTIN ALGER; DETECTIVE
WALTER SWENSON; DETECTIVE ANTHONY
KOSIOR; DETECTIVE SERGEANT DAN
SEVERIN[1];

               Defendants.
--------------------------------X
APPEARANCES
For Plaintiff:     Baree N. Fett, Esq.
                  Gabriel Paul Harvis, Esq.
                  Elefterakis, Elefterakis & Panek
                  80 Pine Street, 38th Floor
                  New York, New York 10005

For Defendants:    Janine A. Mastellone, Esq.
                  John Martin Flannery, Esq.
                  John Vitagliano, Esq.
                  Wilson, Elser, Moskowitz, Edelman & Dicker,
                  LLP
                  1133 Westchester Avenue
                  West Harrison, New York 10604


SEYBERT, District Judge:

          Presently before the Court are seven motions _in limine_

filed by the parties to this case.  Defendants Robert Dempsey,

Gary Abbondandelo, John M. Holland, Michael Herts, Martin Alger,

---

[1] The Court GRANTS Defendants' Motion to amend the case caption.
See ECF No. 425 at 12-13.

Walter Swenson, Anthony Kosior, and Dan Severin ("Defendants") have filed six separate motions in limine; Plaintiff Joseph Jackson ("Plaintiff," collectively with Defendants, the "Parties") has filed a single omnibus motion in limine.  The Court proceeds to rule on the Parties' respective motions in Limine, listed below:

1. Defendants' Motion in Limine to Preclude Reference to Indemnification, Request for Specific Dollar Amount and General Police Misconduct (ECF No. 411-1, the "References Motion");

2. Defendants' Motion in Limine to Preclude Polygraph Evidence and Witness Testimony (ECF No. 414, the "Polygraph & Dorsey Motion");

3. Defendants' Motion in Limine to Preclude Testimony of Plaintiff's Expert Witnesses (ECF No. 417, the "Experts Motion");

4. Defendants' Motion in Limine to Preclude Rule 404(B) and Rule 608(B) Evidence (ECF No. 420, the "Prior Acts Motion");

5. Defendants' Motion to Preclude Evidence of Purported Innocence, Evidence, and Testimony from the Nassau County District Attorney's Office Conviction Integrity Unity Reinvestigation, and to Bifurcate Trial (ECF No. 423, the "Innocence & Bifurcation Motion");

6. Defendants' Motion <u>in Limine</u> to Preclude Evidence of Dismissed Claims (ECF No. 425, the "Dismissed Claims Motion"); and

7. Plaintiff's Motion <u>in Limine</u> (ECF No. 432, the "Omnibus Motion").

<u>BACKGROUND</u>

I.   <u>FACTS</u>

The Court assumes the parties' familiarity with the factual background giving rise to this civil rights action (hereinafter, the "Action"), as documented in the summary judgment order, which is incorporated by reference herein.[2]  <u>See generally Jackson v. Nassau County et al.</u>, No. 18-CV-3007, 2024 WL 4252047 (E.D.N.Y. Sept. 20, 2024) (hereafter, the "Summary Judgment Order").  However, for context and convenience, the Court briefly reiterates the relevant facts.

On March 20, 1994, Victim Steven Jason was murdered.  In December 1994, Plaintiff confessed to murdering Victim, but has maintained his confession was coerced ever since.  (<u>Id.</u> at 33-37.)  On December 9, 1996, Plaintiff was convicted of murdering Victim and sentenced to 25-years-to-life in prison.  (<u>See</u> Summary Judgment

---

[2]  The terms of art defined in the Court's Summary Judgment Order are, likewise, incorporated by reference herein, familiarity with which is also presumed.

Order at 47-48.)   In 2018, Nassau County ADA and Conviction Integrity Unity ("CIU") Chief Sheryl Anania moved to vacate Plaintiff's conviction, after the CIU learned Plaintiff never received statements made by Larrea and Montes, who identified Victim's shooter as someone not matching Plaintiff's description. (Id. at 20-24, 49-51.)

Plaintiff subsequently brought the Action, alleging a variety of constitutional and civil rights violations related to the investigation into Victim's murder.   (Id. at 54-55.) After various Court rulings, Plaintiff's causes of action that remain for trial are: (1) fabrication of evidence; (2) coercion; and (3) failure to intervene claims, all related to Plaintiff's interrogation and subsequent confession to murdering Victim; and (4) a Brady claim, related to the Larrea and Montes statements. (Id. at 109-10.) As to the interrogation claims, Plaintiff alleges he signed the confession statement Dempsey prepared only after he was repeatedly beaten, threatened, and isolated from his attorney during a multi-day interrogation, wherein he was also deprived of sleep and food.  (Id. at 33-37.) As to the Brady claim, Plaintiff alleges Defendants withheld the Larrea and Montes statements, which he believes are exculpatory.  (Id. at 66-68.)

4

II.  In Limine Motions, Generally

As thoroughly explained by Honorable Katherine B. Forrest of the Southern District of New York:

> In limine motions can play an especially important and useful role in a jury trial, allowing the parties to seek rulings in advance as to issues that otherwise may require extensive side bars or argument that can interrupt the proceedings. See Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996); accord Highland Capital Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008).  Well-grounded in limine motions may also require the parties to sharpen their focus on the real issues in a case and streamline their presentations. See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 517 F. Supp. 2d 662, 666–67 (S.D.N.Y. 2007). . . .  The Court's role with regard to such pretrial rulings is grounded in [R]ule 104 of the Federal Rules of Evidence.  That rule "requires that a court make a preliminary determination of the admissibility of all evidence." SEC v. Tourre, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013).  In the context of a pre-trial in limine ruling, challenged evidence "should only be precluded when it is 'clearly inadmissible on all possible grounds.'" (quoting Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc., No. 01 Civ. 3796, 2005 WL 1026515, at *3 (S.D.N.Y. May 2, 2005)).  In limine rulings are "necessarily preliminary—and [ ] subject to change when the case unfolds." Id. at 676 (citing Highland Capital Mgmt., 551 F. Supp. 2d at 176; Commerce Funding, 2005 WL 1026515, at *4).  "A foundation may be laid contrary to expectations; relevance may appear where previously considered unlikely; the balancing of factors under Rule 403 may change as events in the courtroom drama unfold.  The Court recognizes that trials often contain unexpected moments and developments, and[, thus,] the parties should bear those

5

developments in mind when determining whether to drop or re-raise an issue decided by this order." Id.

Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie, No. 11-CV-0681, 2015 WL 5459662, at *1 (S.D.N.Y. Sept. 16, 2015); see also Williams v. Geraci, No. 14-CV-5742, 2020 WL 5848738, at *5 (E.D.N.Y. Sept. 30, 2020) (discussing MIL standard).

## III. Defendants' Motions in Limine

### A. The References Motion

#### 1. Suggesting Indemnification & Reference to "County Attorneys"

Defendants argue Plaintiff should be barred from (a) suggesting the County will indemnify Defendants and (b) referring to defense counsel as "County Attorneys." (References Motion at 2-3.) Plaintiff asserts he does not plan to refer to defense counsel as "county attorneys" and will only raise indemnification if Defendants first suggest they will be personally liable. (ECF No. 437, the "References Motion Opposition," at 1.) The Court accordingly DENIES this Motion as moot, but will revisit the issue at trial if Defendants reference personal liability. Accord Ashley v. Civil, No. 14-CV-5559, 2019 WL 1441124, at *10 (E.D.N.Y. Apr. 1, 2019).

#### 2. Plaintiff's Request for Specific Dollar Amount

Defendants additionally seek to bar Plaintiff from requesting a specific dollar amount from the jury. (References

6

Motion at 3-4.) Plaintiff contends such guidance is particularly warranted in complex wrongful conviction cases involving multiple harms, such as loss of liberty and emotional injury. (References Motion Opposition at 3-4.)

Whether a party may request a specific damage amount is "best left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." Lightfoot v. Union Carbide Corp., 110 F.3d 898, 912 (2d Cir. 1997). Courts in this Circuit often allow plaintiffs to submit specific damages figures for "compensable damages, such as previously incurred or foreseeable medical expenses, if supported by admissible evidence," but "prohibit[t] [p]laintiff[s] from submitting to the jury a request for a specific dollar amount regarding [their] non-economic damages." Woolfolk v. Baldofsky, No. 19-CV-3815, 2022 WL 2600132, at *4 (E.D.N.Y. July 8, 2022). The Court accordingly takes this approach and GRANTS this Motion in part: Plaintiff may supply compensable damages figures if substantiated or foreseeable, but may not request a specific non-economic damages figure.

3. <u>Unrelated Claims of Police Misconduct and Terminology</u>

Defendants seek to prohibit Plaintiff from referencing unrelated claims of police misconduct and from using perceived anti-police language such as "testilying," "blue wall of silence," and related terms. (References Motion at 4-5.) Plaintiff states he does not plan on using these terms, but believes a "broader prohibition would unduly infringe on" his prosecution of the Action. (References Motion Opposition at 5.) The Court accordingly GRANTS this Motion without prejudice to renew and will address any "broader prohibition" arguments if they arise at trial.

B. <u>Polygraph & Dorsey Motion</u>

1. <u>All Polygraph Evidence Except From Defendant</u>

Defendants seek to preclude investigation-related polygraph evidence—including the fact polygraphs even took place—from all individuals other than Plaintiff. (Polygraph & Dorsey Motion at 1-3 (citing, <u>e.g.</u>, <u>United States v. Fraser</u>, 206 F. App'x 100, 101 (2d Cir. 2006) (instructing Supreme Court and Second Circuit "have repeatedly upheld the exclusion of polygraph evidence because of its unreliability, its potential to confuse the issues and mislead the jury, and the danger of unfair prejudice posed by its admission")).) Plaintiff argues polygraph evidence, while unreliable and inadmissible for its truth, is relevant to

8

illustrate how Defendants selectively used polygraphs to further coercive interrogation tactics and as bad-faith manipulation of evidence.  (ECF No. 438, "Polygraph & Dorsey Motion Opposition," at 2-4.)

Although courts in this Circuit typically do not admit polygraph <u>results</u>, they are more flexible for non-result polygraph evidence.  For example, in <u>Kogut v. County of Nassau</u>, 789 F.3d 36, 47-48 (2d Cir. 2015), this Court permitted parties to show polygraphs had taken place during a police investigation, but barred their results.  <u>Kogut</u>, 789 F.3d at 47-48.  The Court accordingly GRANTS the Motion in part on this basis: Parties may introduce evidence that polygraphs took place but may not introduce polygraph results.[3]

### 2. <u>Takita Dorsey's Testimony</u>

Per Plaintiff's characterization in the proposed Joint Pre-Trial Order ("PTO"), "Takita Dorsey is described in the December 18, 1994 statement attributed to [P]laintiff as having served as a messenger between [P]laintiff and Tony Jackson [("Tony")], but Ms. Dosey truthfully denied these allegations in a 1995 polygraph exam administered by NCPD. Ms. Dorsey will testify about her recollection of the events."  (ECF No. 405, the "Proposed

---

[3] The Court addresses Plaintiff's polygraph evidence in a separate section of this M&O.

PTO," at 7.) Defendants assert such testimony does not relate to the narrowed scope of the trial, which focuses on the alleged coerced confession and Brady claims, but, instead pertains to Plaintiff's innocence, especially because the prosecutors did not make a charging decision based on Dorsey's testimony. (Polygraph & Dorsey Motion at 3-4 (citing Haskins v. Jackson, No. 15-CV-2016, 2020 WL 6705640, at *10 (E.D.N.Y. Nov. 10, 2020)).) Plaintiff considers Dorsey's testimony relevant because it undermines Defendants' drafted confession, as it purportedly shows Defendants' state of mind and selective use of polygraph evidence. (Polygraph & Dorsey Motion Opposition at 9-12.) Plaintiff also attempts to cast Dorsey's testimony as evidence of Plaintiff's innocence. (Id. at 11-12.)

This claim is accordingly GRANTED in part and DENIED in part such that Dorsey's polygraph result is inadmissible, but she may testify to her experiences with the investigation and can assert she did not pass messages between Plaintiff and Tony. Such testimony may bear some relevance to the coercion claim, given her interactions with Defendants.

C. Experts Motion[4]

1. Dr. Jennifer Dysart

Plaintiff proffers Dr. Jennifer Dysart ("Dr. Dysart") as an expert on eyewitness identifications. (ECF No. 416-1, the "Dysart Report.") Dr. Dysart is an Associate Professor of Psychology at John Jay College and has researched, taught, and testified extensively on the subject. (See id. at 1.) The Dysart Report discusses how variables beyond law enforcement control ("Estimator Variables") and within law enforcement control ("System Variables") render some eyewitness identifications unreliable. (Id. at 5.) She discusses both categories generally and as applied to Skwanitra Witherspoon's identification of Plaintiff. (Id.) In Dr. Dysart's view, Estimator Variables such as limited opportunity to observe the shooter, stress induced by witnessing the murder, the nine-month delay between the Victim's murder and investigation, and the mismatch between Witherspoon's description and Plaintiff's physique render her identification of Plaintiff unreliable. (Id. at 9-13.) As to System Variables, Dr. Dysart states the photo array, line-up processes, and law enforcement instruction and feedback undermined the reliability of Witherspoon's identification. (Id. at 13-22.) Plaintiff asserts Dr. Dysart is qualified to provide relevant scientific insights to

_____

[4] Defendants initially objected to Plaintiff's damages expert, Kristin Kucsma, but subsequently withdrew the objection. (ECF No. 447 at 11.)

assist the jury's assessment of materiality. (ECF No. 439, the "Expert Witness Opposition," at 14 (citing United States v. Nolan, 956 F.3d 71, 82 (2d Cir. 2020); Rosario v. City of N.Y., No. 18-CV-4023, 2021 WL 1930293 (S.D.N.Y. May 13, 2021) (admitting similar Dr. Dysart eyewitness identification testimony)).)

Defendants contend Dr. Dysart's analysis should be excluded, as it is not relevant to Plaintiff's coercion or materiality claims. (Experts Motion at 5-6.) Because all claims related to the photo array and line-up have been dismissed, Defendants argue Dr. Dysart's testimony relates primarily to dismissed claims and is thus not a "fit" on Daubert grounds. (Id. at 6-7 (citing In re Refco Inc. Sec. Litig., No. 07-MD-1902, 2012 WL 7007795, at *5 (S.D.N.Y. Nov. 29, 2012), report and recommendation adopted sub nom., In re Refco Sec. Litig., No. 07-MDL-1902, 2013 WL 452400 (S.D.N.Y. Feb. 6, 2013)).) To the extent the testimony relates to non-dismissed claims, Defendants maintain Dr. Dysart relays "an inappropriate factual narrative" not subject to expert testimony. (Id. at 7-8 (citing Scentsational Techs., LLC v. Pepsi, Inc., No. 13-CV-8645, 2018 WL 1889763, at *4 (S.D.N.Y. Apr. 18, 2018), aff'd sub nom., ScentSational Techs. LLC v. PepsiCo, Inc., 773 F. App'x 607 (Fed. Cir. 2019)).) Defendants alternatively assert Dr. Dysart should be precluded on Rule 403 grounds because her testimony risks creating unfair prejudice, confusing the issues, and misleading the jury by implying they are

liable for previously-dismissed theories misconduct and providing speculative analysis. (Id. at 9-11.)

To be admissible under Rule 702, an expert's testimony must "fit" the facts of the case. Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 591 (1993). The Systems Variable analysis is not a strong "fit," as this Court dismissed the photo array and line-up claims. At the very least, such testimony has strong potential to confuse the jury. Refco, 2012 WL 7007795, at *5 ("The expert opinions here, to the extent they evaluate the merits of dismissed claims, are simply seeking to relitigate adverse determinations rendered by the court in this case."). But the Estimator Variables testimony could be helpful to the Brady claim, as "[a] lay juror would not know . . . about the likely impact on perception of extreme stress and weapon focus" in assessing eyewitness reliability. Nolan 956 F.3d at 82. Hence, Dr. Dysart may testify as to Estimator Variables generally, but she may not narrate facts or discuss witnesses in the case at all. Defendants' Motion on this point is thus GRANTED in part and DENIED in part.

### 2. Dr. Hayley Cleary

Dr. Hayley Cleary is an Associate Professor of Criminal Justice at Virginia Commonwealth University. (ECF No. 391-15, the "Cleary Report," at 1.) Dr. Cleary specializes in police

13

interrogation tactics, particularly as they relate to false or coerced confessions. (Id.) The Cleary Report concludes Plaintiff's confession may have been coerced because numerous "risk factors" for a coerced confession were present throughout the investigation. (See generally id.) Although Plaintiff cites to several cases, mostly from other circuits and state courts, upholding coerced confession expert testimony (see Experts Opposition at 19-24), this Court explained in Kogut that Second Circuit courts "have consistently considered, and excluded, expert testimony on the topic of false confessions." Kogut v. County of Nassau, No. 06-CV-6695, 2013 WL 3820826, at *7 (E.D.N.Y. July 22, 2013) (collecting cases), aff'd in part, 789 F.3d 36 (2d Cir. 2015), and aff'd in part sub nom., Restivo v. Hessemann, 846 F.3d 547 (2d Cir. 2017). Because such testimony is disfavored in the Second Circuit, the Court accordingly GRANTS Defendants' Motion as to Dr. Cleary, and thereby excludes his testimony.

### 3. Jeffrey Noble

Plaintiff's police procedures expert, Jeffrey Noble ("Noble"), contends Defendants' investigation conduct departed from generally accepted police procedures. (ECF No. 439-12, the "Noble Report.") Noble concludes Defendants: conducted an investigation biased toward confirming Plaintiff's guilt; failed to investigate the Larrea and Montes statements; failed to properly

preserve and disclose statements such as: a tip from Elisa Valdez, notes from an interview with Peddie Baldwin, and the Larrea and Montes 911 call; and employed tactics that risked obtaining a false confession.[5]  (See generally Noble Report.)  Noble frames many of these conclusions as departures from what a "reasonable police officer" would do in the circumstances.  (Id.)

Defendants contend Noble's testimony should be excluded for largely opining on dismissed investigation-related issues. (Experts Motion at 18.)  Defendants also characterize Noble's "reasonable officer" claims as impermissible legal conclusions. (Id. at 19 (citing, e.g., Callahan v. Wilson, 863 F.3d 144, 153 (2d Cir. 2017) (precluding expert testimony that an officer "did not act reasonably under the circumstances" because such testimony "intrude[s] on the jury's exclusive role as the finder of facts")).)  Plaintiff, on the other hand, maintains Noble's testimony provides the jury with a baseline understanding of accepted investigative standards and can help the jury determine whether Defendants' departures from those standards were reckless or intentional.  (Experts Opposition at 28-29.)  Any discussion of

_____

[5] Specifically, Valdez's tip was found neither material nor exculpatory, Plaintiff waived his argument as to Baldwin, and the Court granted summary judgment on the spoliation claim.  (See Summary Judgment Order at 66-67 n.16, 110.)

dismissed claims, in Plaintiff's view, serves "as circumstantial evidence of [D]efendants' liability and state of mind."  (Id.)

In Restivo v. Hessemann, 846 F.3d 547, 579 (2d Cir. 2017), the Second Circuit explained "expert testimony on applicable professional standards is relevant because it 'can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights.'" (Id. at 3 (citing Restivo, 846 F.3d at 580 (additional citation omitted).) Consistent with Restivo, the Court GRANTS Defendants' Motion in part and DENIES it in part.  Therefore, Noble: (a) may not testify as to the (i) Valdez tip, (ii) Baldwin interview, (iii) Witherspoon identification processes, and (iv) the spoilation claims, which are likely to confuse the jury with issues not being tried; (b) may not testify as to what a "reasonable police officer" would do in a given circumstance; but (c) may testify as to whether actions relevant to the coercion or Brady claims strayed from police protocols, as not all lay jurors have knowledge of specialized practices around policing.

D. <u>Prior Acts Motion</u>

1. <u>Evidence Related to Defendants' Disciplinary Records or Civilian Complaints</u>

Defendants contend Plaintiff should be barred from asking about several proposed exhibits related to Defendants' police disciplinary histories or civilian complaints. (Prior Acts Motion at 6-8.) Plaintiff states he will not offer such evidence. (ECF No. 440, the "Prior Acts Motion Opposition," at 2.) Defendants' Motion on this point is accordingly DENIED as moot.

2. <u>Evidence Related to Robert Moore & Jose Anibal Martinez</u>

Defendants move to preclude Plaintiff from proffering testimony or documents about Robert Moore and Jose Anibal Martinez, two individuals unrelated to the facts of the case but who have had experiences with particular Defendants. (Prior Acts Motion at 8-11.) Plaintiff has similarly stated he does not seek to offer such testimony. (Prior Acts Motion Opposition at 7-8.) Therefore, Defendants' Motion on this point is also DENIED as moot.

3. <u>Evidence Related to John Restivo, Dennis Halstead, and John Kogut</u>

Plaintiff seeks to proffer the testimony of John Restivo, Dennis Halstead, and John Kogut, three individuals whose convictions on an unrelated 1984 murder were subsequently vacated after DNA evidence proved their innocence. (Prior Acts Motion Opposition at 1-2); <u>Kogut</u>, 894 F. Supp. 2d at 233-34. Because

17

Kogut falsely confessed to that unrelated murder after being interrogated by Dempsey, Plaintiff seeks, pursuant to Federal Rules of Evidence 404(b) and 608(b), to have Kogut, Restivo, and Halstead testify to demonstrate a purported pattern of Dempsey's "of obtaining and untruthfully defending false confessions." (Prior Acts Motion Opposition at 10); Restivo, 846 F.3d at 554. Defendants maintain such evidence is impermissible propensity evidence. (Prior Acts Motion at 12-13.)

In Kogut, this Court denied a request to permit similar unrelated witnesses to testify against Dempsey, explaining "the jury very likely would have been confused, by, and considered evidence regarding, Dempsey's prior conduct in other cases to conclude that Dempsey acted in conformity therewith and used coercive tactics to obtain false witness statements in this case. The prejudicial impact of such testimony cannot be understated." Kogut, 2013 WL 3820826, at *14. The Court takes the same approach here. The Restivo, Halstead, and Kogut cases are too distant in time and distinct in kind to be considered pure "pattern" evidence under Rule 404(b), which typically involves clear "earmark[s of] the accused" or repetitive practice such as "applying handcuffs too tightly, falsely claiming injury from the citizen to cover up his own inappropriate use of physical force, and filing false charges for the same purpose." Carroll v. Trump, 124 F.4th 140,

168 (2d Cir. 2024) (quoting <u>United States v. Sliker</u>, 751 F.2d 477, 487 (2d Cir. 1984)); <u>Ismail v. Cohen</u>, 706 F. Supp. 243, 253 (S.D.N.Y. 1989), <u>aff'd</u>, 899 F.2d 183, 188-89 (2d Cir. 1990). Moreover, there has been no finding Dempsey was dishonest in this case, thus, rendering potential witnesses Restivo, Halstead, and Kogut a poor fit for Rule 608(b) testimony. If the Court were to allow Restivo, Halstead, and Kogut to testify, it could lead to the Parties having to conduct a "trial within a trial" on a completely unrelated set of facts. That will not do. Defendants' Motion is accordingly GRANTED on this point.

### 4. Evidence Related to Shonnard Lee

Plaintiff seeks to proffer the testimony of and evidence related to Shonnard Lee, who is also unrelated to the case, on similar grounds. (Prior Acts Motion at 14-15.) In 1997, Lee signed a homicide confession statement authored by Dempsey. (Omnibus Motion at 4.) Although criminal charges were initially brought against Lee, they were dismissed in 1998 after he alleged he did not know he was signing a confession statement. (<u>Id.</u> at 5-6; ECF No. 431-3.) Later, Lee prevailed in a civil suit against Dempsey, where the jury found Lee proved Dempsey (a) misled him about what he was signing, and (b) knew the confession contained false information and would likely influence a jury's decision. (<u>Id.</u>) Defendants oppose Lee's testimony and any evidence related to his

case.  (Prior Acts Motion at 15 (citing <u>Kogut</u>, 2013 WL 3820826, at *13-14 (prohibiting testimony and documents related to Lee)).) Except as to the jury's credibility finding in the civil suit, which is discussed separately, the Court GRANTS Defendants' Motion on this claim.  As with Restivo, Halstead, and Kogut, the proposed Lee evidence is too remote in time and different in kind to be considered Rule 404(b) evidence.  See <u>Kogut</u>, 2013 WL 3820826, at *14.

### 5. <u>Evidence Related to Allegations From Other Criminal Defendants</u>

Defendants move to bar Plaintiff from soliciting testimony from individuals who have discussed their experiences with Defendants in public news reports, which Plaintiff contends he does not plan to introduce.  (Prior Acts Motion at 17-18; Prior Acts Motion Opposition at 12.) This Motion is accordingly DENIED as MOOT.

### 6. <u>Evidence Related to Darryl Grate, Charles Clink, and Joseph Porto</u>

Defendants seek to bar the testimony and materials related to Darryl Grate, Charles Clink, and Joseph Porto, three additional individuals who had experiences with Dempsey.  (Prior Acts Motion at 19.) Because Plaintiff"does not intend to call these witnesses," Defendants' Motion is DENIED as moot.  (Prior Acts Motion Opposition at 12.)

7. Evidence  Related  to  Peddie  Jenkins'  Purported Convictions and Prior Arrest History

Defendants move to preclude Jenkins' arrests that took place after the Jason murder.  (Prior Acts Motion at 19-20.) Because Plaintiff "does not intend to cross-examine Peddie Jenkins with remote criminal convictions for drugs or violence that do not directly bear on his character for truthfulness," this Motion is DENIED as moot.  (Prior Acts Motion Opposition at 12.)

E. Innocence & Bifurcation Motion
    1. Evidence of Plaintiff's Innocence

Defendants contend Plaintiff should be precluded from presenting any testimony, evidence, or arguments asserting his innocence of the Victim's murder, or asserting he was wrongfully convicted, as actual innocence is not relevant to the coercion or Brady claims.  (Innocence & Bifurcation Motion at 2-3 (citing Nnodimele v. Derienzo, No. 13-CV-3461, 2016 WL 3561708, at *10 (E.D.N.Y. June 27, 2016) (ruling "actual innocence is irrelevant" to fair trial and fabrication claims and probative value of innocence evidence "is substantially outweighed by the danger of confusing the issues, misleading the jury, and wasting time")).) Defendants also observe Brady requires a showing only that due process was violated and "materiality does not depend on factual innocence, but rather what would have been proven absent the violation." Poventud v. City of N.Y., 750 F.3d 121, 134 (2d Cir. 2014); see also Leka v. Portuondo, 257 F.3d 89, 104 (2d Cir.2001)

(quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995) (instructing Brady inquiry "is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence")).

In arguing in favor of admitting innocence evidence, Plaintiff cites to cases mostly from other jurisdictions, but argues Restivo referred to such evidence as "important backdrop for their claims at trial." (Innocence & Bifurcation Motion Opposition at 4 (quoting Restivo, 846 F.3d 547 at 559).) To the extent Defendants rely on cases such as Nnodimele that forbid innocence evidence, Plaintiff argues the Second Circuit's "helpful backdrop" reference overturned them in Restivo. (Innocence & Bifurcation Motion Opposition at 6-7.) Because innocence does not go to any element of Plaintiff's remaining claims, the Court GRANTS Defendants' Motion on this point. As Nnodimele observed, allowing in substantial evidence on facts not material to any element would likely confuse the issues and waste the jury's time. Nnodimele, 2016 WL 3561708, at *11. Moreover, no court has ever interpreted Restivo's passing reference to innocence evidence as establishing a broader rule or overturning Nnodimele. By contrast, the Second Circuit has emphasized in Poventud, Leka, and elsewhere,

that innocence is not relevant to a <u>Brady</u> claim.    <u>Poventud</u>, 750 F.3d at 134; <u>Leka</u>, 257 F.3d at 104.

        2. <u>Testimony of Woody Miller</u>

        Defendants seek to bar testimony or evidence from Woody Miller ("Miller"), who has proffered a two-page affidavit explaining his account of the Jason shooting and experience with the shooting investigation. (Innocence & Bifurcation Motion at 3-4.) In his affidavit, Miller avers he witnessed a hooded man run away from the scene of Victim's shooting on March 20, 1994, and while he did not see who it was, he did not believe it was Plaintiff based on his experiences with him. (ECF No. 389-12, "Miller Aff.," ¶¶ 5-19.) The next day, Miller claims police visited his home, where he told investigators he had not seen the shooting and could not identify the perpetrator; the police subsequently came back to his home a few days later and pressured him to identify Plaintiff as the perpetrator. (<u>Id.</u> ¶¶ 26-31.) Plaintiff argues Miller is a relevant eyewitness to the shooting and is accordingly a Rule 602 eyewitness with personal knowledge of events. (Innocence & Bifurcation Motion Opposition at 7-8 (citing <u>United States v. Cuti</u>, 720 F.3d 453, 458-59 (2d Cir. 2013)).) Plaintiff also points out Defendants failed to depose Miller throughout the process, which could have given them the opportunity to obtain additional testimony from him. (<u>Id.</u> at 8.)

Defendants' Motion is DENIED as to this claim. Although Miller's affidavit is lacking in detail, his experiences with the investigation may provide some minimal probative value as to the coercion claim. The lack of detail is better addressed through cross examination; it cannot be addressed through preclusion.

### 3. CIU Reinvestigation Evidence

Defendants seek to preclude several categories of testimony and documents related to the NCDA CIU's reinvestigation of Plaintiff's conviction. (Summary Judgment Order at 49-50.) For the reasons discussed below, the Court GRANTS Defendants' Motion as to these claims.

#### i.    Testimony of Tammy Smiley

Defendants argue Tammy Smiley ("Smiley"), an ADA who worked with the CIU, should be precluded from testifying about the reinvestigation because: Plaintiff failed to disclose her as a witness under Rule 26(a); Smiley lacks personal knowledge of the remaining issues; and Smiley had only a limited role in the CIU reinvestigation. (Innocence & Bifurcation Motion at 5-6.) Plaintiff identified Smiley as an impeachment witness, who he does not intend to call in his case-in-chief. (Innocence & Bifurcation Motion Opposition at 14.) For the reasons discussed, infra, as to Anania, Defendants' Motion as to Smiley is GRANTED.

ii.  Testimony of Sheryl Anania

According to the Proposed PTO, Plaintiff seeks to proffer Anania to testify about the CIU's reinvestigation findings.  (Proposed PTO at 5.) During the 2017 reinvestigation, Anania: reviewed files related to Plaintiff's case; interviewed witnesses; and prepared an internal memorandum identifying the Larrea and Montes statements as potentially material.  (ECF No. 441-3, "Anania Memo," at 11.)  Defendants maintain Anania's testimony: (1) is irrelevant to the coercion and Brady claims; (2) presents many hearsay issues; (3) infringes on the jury's role to ascertain Brady materiality; and (4) as to her opinion regarding Plaintiff's conviction and Brady materiality, is not a "factual finding" admissible under Rule 803(8)(A)(iii).  (Innocence & Bifurcation Motion at 6-8 (citing Nnodimele, 2016 WL 3561708, at *11) (prosecutor may not testify "regarding reasons for actions taken or not taken by the New York County District Attorney's Office" because the jury must decide on the weight of withheld evidence)).)

Plaintiff counters, arguing Anania was central to the vacatur decision and will not testify to Brady materiality. (Innocence & Bifurcation Motion Opposition at 11-12.)  He maintains, because Anania developed relevant facts outside of the trial record, such as the Larrea and Montes statements, her

25

testimony is particularly relevant. (Id.) In support of the admission of Anania's testimony, Plaintiff relies upon Galloway v. County of Nassau, 589 F. Supp. 3d 271, 279 (E.D.N.Y. 2022), a separate civil case brought by a plaintiff who sought to rely upon Anania's testimony and successfully moved to disqualify the firm that represented her and Nassau County. Galloway, 589 F. Supp. 3d at 274. In finding a conflict-of-interest related to representation, the Galloway Court explained "[o]ne can easily imagine the plaintiff calling ADA Anania at trial and confronting her with her testimony, placing Defense Counsel in the impossible position of having represented a witness earlier in the proceedings who, now before a jury, is testifying directly against the Defendants." Id. at 274 (citation omitted).

The Court GRANTS Defendants' Motion as to Anania. As the Nnodimele Court explained when assessing proposed CIU testimony, it "intrudes upon the jury's role in assessing the materiality of the allegedly withheld evidence." Nnodimele, 2016 WL 3561708, at *11. Much of Anania's proposed testimony here relates to her evaluation of evidence, such as the Larrea and Montes statements, and her interviews with witnesses. To the extent Plaintiff wishes to obtain testimony based on what certain witnesses told Anania, those witnesses can speak for themselves. Moreover, Plaintiff's reliance upon Galloway, 589 F. Supp. at 274

is unavailing, as that decision addressed attorney conflicts and not trial evidence.

### iii. Other Evidence from the NCDA's CIU Investigation

Defendants object to admitting additional materials from the NCDA's CIU investigation, for similar reasons as the Anania testimony. (Innocence & Bifurcation Motion at 8-10.) In opposing the Motion, Plaintiff frames the CIU investigation documents as Federal Rule of Evidence 803(8) materials, which renders admissible materials prepared pursuant to "a matter observed while under a legal duty to report." (Innocence & Bifurcation Motion Opposition at 9-12 (citing Fed. R. Evid. 803(8); Martinez v. City of N.Y., No. 16-CV-0079, 2022 WL 20042798, *5 n.6 (E.D.N.Y. Dec. 4, 2022); Bridgeway Corp. v. Citibank, 201 F.3d 134, 143 (2d Cir. 2000)).) Plaintiff refers to the internal NCDA memo prepared to summarize the facts of the case as the "Anania Memo," which serves as an investigation for Rule 803(8) purposes. (Innocence & Bifurcation Motion Opposition at 9-15; Anania Memo.) Defendants contend the "Anania Memo" was merely an informal report, not an investigation for purposes of Rule 803(8), and that specific notes on witness interviews are cumulative, speculative, or improper for impeachment since they were not authored, subscribed to, or adopted by the interviewees. (Innocence & Bifurcation Motion at 9-10; see also ECF No. 21, the "Innocence & Bifurcation Reply," at 6-7.)

The Court GRANTS Defendants' Motion on this claim. The "Anania Memo" and many of its underlying materials relay the views of witnesses, who are available to testify. (see ECF No. 441-3.) Plaintiff does not cite to any cases indicating an internal memo of this kind suffices for Rule 803(8) purposes, especially where the memo predominantly relays statements from third parties. See Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991) (factual findings based on the public official's "own observations and knowledge may be admitted but . . . statements made by third persons under no business duty to report may not") (quoting United States v. Pazsint, 703 F.2d 420, 424 (9th Cir.1983).) And, even if the Anania Memo did satisfy the requirements for a Rule 803(8) report, the "Anania Memo" has minimal probative value since it is largely duplicative to what the witnesses may testify, as well as runs the risk of unfairly bolstering witness statements, as each statement included in the memo could be perceived as having the County's endorsement. See Fed. R. Evid. 403.

### 4. Bifurcation of Trial

Defendants ask the Court to exercise its discretion under Federal Rule of Civil Procedure 42(b) to bifurcate the trial into separate liability and damages phases. (Innocence & Bifurcation Motion at 10-11 (citing Fed. R. Civ. P. 42(b).) In Defendants' view, bifurcation is justified because the evidence

28

regarding liability and damages are distinct, and certain liability findings may eliminate the need for a damages proceeding altogether.  (Id at 11-13.) Defendants also observe courts have previously bifurcated similar civil rights proceedings.  (Id. at 10-11 (citing Restivo, 846 F.3d at 558; Nnodimele, 2016 WL 3561708, at *2).)  Plaintiff would not be prejudiced under bifurcated proceedings  and may even benefit from them, Defendants contend, given the relevance of incarceration and arrest history to damages. (Id. at 14.)

On the other hand, Plaintiff argues Defendants have not rebutted the presumption of a unified trial under Rule 42(b). (Innocence & Bifurcation Motion Opposition at 16-17.) Plaintiff also considers liability and damages evidence to be inextricably intertwined, based upon his belief that overlapping evidence will show willfulness meriting punitive damages.  (Id. at 17-20.) In Plaintiff's view, having to litigate a "substantially similar" case twice will result in "catastrophic" prejudice to him.  (Id. at 20-21.)

The Court must address the following factors when addressing whether to bifurcate a trial:

> (1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or

> bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted.

Dallas v. Goldberg, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001), opinion modified on denial of reconsideration, 2002 WL 1013291 (S.D.N.Y. May 20, 2002). These factors weigh in favor of bifurcation. First, as in Nnodimele, "the issues presented at the liability and damages phases are largely if not entirely distinct: the former will require the jury to determine the conduct of the defendants, whereas the latter will require the jury to assess the effect of that conduct on plaintiff." Nnodimele, 2016 WL 3561708, at *2. Moreover, the Proposed PTO indicates Plaintiff intends to proffer little overlapping testimony: his only damages witnesses are himself and two experts, neither of whom are listed for the liability portion. (Proposed PTO at 9.) Limiting damages testimony only to areas where it is explicitly needed would also eliminate the need for unnecessary testimony and promote judicial efficiency, because as discussed below, Plaintiff seeks to proffer several categories of evidence relevant only to damages. Accordingly, in its discretion, Defendants' Motion on this point is GRANTED. See, e.g., In re Sept. 11 Litig., 802 F.3d 314, 339 (2d Cir. 2015) ("Decisions to bifurcate trials . . . are authorized by Federal Rule of Civil Procedure 42(b) and are typically well within the discretion of district courts.").

F. Dismissed Claims Motion

Defendants' sixth motion in limine generally asserts Plaintiff should be precluded from introducing evidence related to dismissed claims, along with evidence irrelevant to the current theories of liability. (Dismissed Claims Motion at 1-2.) On this basis, Defendants seek to preemptively bar admission of dozens of specific trial exhibits. (see generally Dismissed Claims Motion.) Plaintiff states he will not pursue dismissed claims, but takes issue with preemptive exclusion of large swaths of documents. (See generally ECF No. 442.)

The Court agrees Plaintiff cannot argue as to dismissed claims and accordingly GRANTS the Motion without prejudice to renew. Nonetheless, the Parties are on NOTICE: Because development of the factual record at trial may make some exhibits relevant in ways the Court cannot currently predict, Plaintiff may renew his arguments for admissibility of these exhibits if warranted.

G. Omnibus Motion

1. Information on Dempsey's Adverse Credibility Findings

As previously discussed, the jury in Shonnard Lee's civil case found Dempsey: (a) misled Lee as to the nature of the confession statement he was signing; and (b) knew the statement contained false information and would likely influence a jury's decision. (Omnibus Motion at 5-6.) Plaintiff seeks to admit this

31

finding to: (c) impeach Dempsey's credibility under Rule 608(b); and (d) show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident under Rule 404(b). (Id. at 3-4.) Plaintiff emphasizes the probative value of this finding—especially in light of the credibility dispute over the circumstances of Plaintiff's confession—and argues excluding this evidence would mislead the jury by providing Dempsey with undeserved baseline credibility. (Id. at 7-8, 10-11.) Defendants move to bar the jury's finding, arguing the Lee events do not directly bear on veracity because they involved a decades-old preponderance-of-the-evidence finding which, in any event, is remote in time and not factually similar to the actions in this case. (ECF No. 436, the "Omnibus Opposition," at 6-10.) Permitting cross examination on this point would, in Defendants' view, lead to a distracting mini-trial on collateral matters, consuming undue time and risking jury confusion. (Id. at 7.)

Because the Court has already addressed the Rule 404(b) question, it ascertains whether this is acceptable impeachment evidence under Rule 608(b). Second Circuit courts ascertaining potential Rule 608(b) evidence apply the following factors, as explained in United States v. Cedeno, 644 F.3d 79, 82 (2d Cir. 2011):

> (1) whether the prior judicial finding addressed the witness's veracity in that specific case or generally; (2) whether the two sets of testimony involved similar subject matter; (3) whether the lie was under oath in a judicial proceeding or was made in a less formal context; (4) whether the lie was about a matter that was significant; (5) how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness; (6) the apparent motive for the lie and whether a similar motive existed in the current proceeding; and (7) whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible.

United States v. White, 692 F.3d 235, 249 (2d Cir. 2012) (citing Cedeño 644 F.3d at 82 (internal quotations omitted).) Although the Lee allegations took place nearly thirty years ago and the jury did not find Dempsey generally dishonest, the remaining factors support allowing cross examination on this point. The alleged dishonesty involves similar serious subject matter and motive—an allegedly coerced homicide confession—made with an eye toward potential court proceedings. As the court in Martinez v. City of New York explained, a credibility finding made in formal proceedings is relevant under Rule 608(b) and should not be barred under Rule 403, as "[n]othing could be more probative of a witness's character for untruthfulness than evidence that the witness has previously lied under oath." 2022 WL 20042798, at *5 (citing United States v. Whitmore, 359 F.3d 609, 619 (D.C. Cir. 2004)).

Although this Court barred Lee evidence in <u>Kogut</u>, <u>Kogut</u> did not address a Rule 608(b) challenge and only addressed evidence under Rule 404(b). <u>Kogut</u>, 2013 WL 3820826, at *13-14. Plaintiff's Motion pursuant to Rule 608(b) is accordingly GRANTED to the extent he may inquire about the adverse credibility finding, but without using extrinsic evidence or Lee's testimony.

### 2. <u>Motion to Include the NCDA CIU's Findings</u>

To the extent it was not previously addressed in Section (III)(E)(3), Plaintiff's Motion on this point is DENIED. (Omnibus Motion at 15-17.)

### 3. <u>Motion to Preclude Evidence of Plaintiff's Polygraph Results & Include Takita Dorsey's Polygraph Results</u>

Plaintiff failed the polygraph he was given during his interrogation, and Dorsey passed a polygraph when she denied serving as a messenger between Plaintiff and Tony. (<u>Id.</u> at 17-18.) Plaintiff simultaneously seeks to bar these results, on grounds his polygraph risks unfair prejudice but Dorsey's shows Defendants ignored polygraph results conflicting with Plaintiff's guilt. (<u>Id.</u>) Defendants maintain Plaintiff's polygraph evidence is admissible not for truth, but to rebut Plaintiff's coercion claim. (Omnibus Opposition at 13-14.) As for Dorsey, Defendants maintain her polygraph result should be barred on relevance grounds. (<u>Id.</u>)

34

Consistent with Second Circuit precedent, this Court will not allow in any polygraph result for any reason. See Fraser, 206 F. App'x at 101; Kogut, 789 F.3d at 47. Plaintiff's Motion on this point is accordingly GRANTED in part and DENIED in part to the extent neither Plaintiff's nor Dorsey's polygraph results may be admitted.

### 4. Motion to Preclude Evidence of Plaintiff's Guilt & Include Evidence of Plaintiff's Innocence

As the Court discussed supra at Section (III)(E)(1), Plaintiff's Motion on this point is DENIED as to evidence of innocence. See Leka, 257 F.3d at 104 (Brady "materiality does not depend on factual innocence, but rather what would have been proven absent the violation" for Brady claims); Kyles, 514 U.S. at 434 (Brady inquiry "is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence"). Consequently, Plaintiff's Motion is GRANTED in part and DENIED in part. Because guilt or innocence is not an element to a Brady claim, Defendants may not introduce evidence to establish Plaintiff's guilt of the Jason murder. Likewise, Plaintiff also may not present evidence of innocence at trial.

5. Motion Precluding Defendants from Contesting Settled Issues

In the Proposed Joint Pretrial Order, Defendants assert "[t]he purportedly suppressed evidence was not favorable to the plaintiff" as a defense. (Proposed PTO at 3.) Plaintiff moves to strike this defense, on grounds it is precluded by the Summary Judgment Order's statement that "the Court agrees with Plaintiff that Larrea's and Montes' statements are favorable to the Plaintiff in that they have both exculpatory and impeaching value." (Omnibus Motion at 20-21 (citing Summary Judgment Order at 66-67).)  In support of this defense, Defendants cite to deposition testimony from Plaintiff's former attorney, Scott Brettschneider ("Brettschneider"), who worked on the criminal case.  (Omnibus Opposition at 15-16.) Brettschneider stated he was unsure whether the statements would be helpful because of their lack of specificity, as it was unclear how Larrea and Montes would present at trial. (Id. (citing ECF No. 386-9, 38:23-39:11, 76:25-77:12).) Because Plaintiff has not cited to any authority indicating the Summary Judgment Order has such preclusive effect, the Court DENIES Plaintiff's Motion on this point.

6. Motion to Exclude Defendants' Police Practices Expert, John Monaghan

Plaintiff argues Defendants' police practices expert John Monaghan should have his testimony excluded or heavily limited

under Daubert and Federal Rules of Evidence 403, 702, 703, and 704. (Omnibus Motion at 21.) First, Plaintiff maintains Monaghan, a retired NYPD Captain, is not qualified to opine on Nassau County police practices because he never worked in the Department, never supervised homicide investigations, never served as a detective or conducted a line-up, and focuses his analysis on NYPD standards rather than Nassau County standards. (Id.) Next, Plaintiff claims Monaghan is not qualified to critique Dr. Dysart's eyewitness identification analysis because he does not possess a comparable academic background. (Id. at 23-24.) Third, Plaintiff argues Monaghan should be barred from exceeding the scope of Noble's testimony since Defendants contend Monaghan is a rebuttal witness. (Id. (citing Nnodimele, 2016 WL 3561708, at *14).) Plaintiff additionally seeks to exclude Monaghan's testimony to the extent it: relies upon the Summary Judgment Order; contradicts or vouches for witness statements, including his assertion that Larrea and Montes did not see the shooter; and smuggles hearsay into the record by narrating facts. (Id. at 23-26.)

Defendants counter that Monaghan is qualified based upon his decorated 20-year career, experience in supervisory police roles, and because NYPD standards are "arguably the gold standard" for New York State. (Omnibus Opposition at 19-20.) Moreover, Defendants assert Monaghan is listed as an affirmative and rebuttal

witness in the Proposed PTO (see Proposed PTO at 13), and courts have previously admitted Monaghan's expert testimony. (Omnibus Opposition at 19-20 (citing Nnodimele, 2016 WL 3561708, at *14).) Defendants do not contest Plaintiff's point about judicial opinions.

Plaintiff's Motion is GRANTED in part and DENIED in part as follows. First, Monaghan may use NYPD guidelines, as Plaintiff has provided no basis for precluding them. See Rutherford v. City of Mount Vernon, 698 F. Supp. 3d 574, 611 (S.D.N.Y. 2023) (allowing expert to use Dallas police guidelines).) Although Monaghan does not have the academic experience Dr. Dysart has, his police training provides a sufficient basis for his proposed eyewitness testimony, and any perceived deficiencies can be addressed on cross examination. Monaghan may not base his opinion on judicial opinions, including the Summary Judgment Order, and may not narrate hearsay or opine on inadmissible witness crediblity. See Malletier v. Dooney & Bourke, Inc., 525 F. Supp. 2d 558, 666 (S.D.N.Y. 2007) ("[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony."). Further, because Monaghan is not solely a rebuttal witness, he is not bound to Noble's scope to the extent Monaghan opines on the case-in-chief.

7. <u>Motion to Exclude Dr. Bruce Frumkin, Defendants'</u>
<u>Coerced Confession Expert</u>

In addition to Monaghan, Plaintiff seeks to preclude the testimony of Dr. Bruce Frumkin ("Dr. Frumkin"). (Omnibus Motion at 26.) Dr. Frumkin conducted a psychological evaluation of Plaintiff on July 1, 2022 for the purpose of assessing: (a) his susceptibility to coerced confessions; and (b) any potential psychological damages. (<u>See</u> ECF No. 439-5, the "Frumkin Report," at 1-2.) Plaintiff's Motion on this point is GRANTED to the extent Dr. Frumkin may not testify on coerced confessions (<u>see</u> <u>supra</u> Section (III)(C)(2)), but is DENIED to the extent his findings relate to psychological damages, given their relevance to the damages portion of proceedings, if necessary.

8. <u>Plaintiff's Remote Arrests</u>

Plaintiff seeks to preclude mention of several arrests and convictions he had throughout the late 1980's and 1990's, on Rule 609(b) grounds. (Omnibus Motion at 28 (citing Fed. R. Evid. 609(b)).) Defendants argue such arrests are admissible for both general impeachment and to show damages, on grounds "a plaintiff 'who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never before been detained.'" (Omnibus Opposition at 23 (quoting <u>Banushi v. Palmer</u>, No. 08-CV-2937, 2011 WL 13894, at *3 (E.D.N.Y. Jan. 4, 2011), <u>aff'd</u>, 500 F. App'x 84 (2d Cir. 2012)).) In Defendants' view, an

April 4, 1990 arrest is particularly probative because Plaintiff signed a <u>Miranda</u> card; Defendants say this undercuts his claim that he did not know he was signing a <u>Miranda</u> card during his December 1994 interrogation. (<u>Id.</u> at 24.)

Plaintiff's Motion on this point is GRANTED in part and DENIED in part, as follows. On the matter of liability, these arrests and convictions may not be used for impeachment; they took place more than 30 years ago, have minimal probative impeachment value, and run high risk of unfair prejudice. <u>See</u> Fed. R. Evid. 609(b). However, if liability is proven, as to the matter of damages, Defendants may show Plaintiff was confined and signed a <u>Miranda</u> card on April 4, 1990, without specifics to the arrest, and only to show his familiarity with the <u>Miranda</u> card system. Similarly, in the damages phase of litigation, Defendants may introduce general evidence of Plaintiff's previous arrests and convictions for the limited purpose of establishing Plaintiff's purported lack of distress.

### 9. <u>Plaintiff's Medical Marijuana Use</u>

Plaintiff seeks to preclude evidence of his medical marijuana use, citing a lack of relevance. (Omnibus Motion at 28-29.) Defendants contend said use is relevant as to psychological damages, because Plaintiff "specifically testified that he was prescribed medical marijuana by a doctor in reference to his

psychological issues." (Omnibus Opposition at 24-25.) Plaintiff's Motion is GRANTED in part: Defendants may not raise the medical marijuana use during the liability phase of the trial, given its minimal probative value, but may do so in the damages phase, given its potential bearing on Plaintiff's claimed psychological damages.

### 10. Plaintiff's Jail and Prison Discipline Records

Plaintiff objects to Defendants' "wholesale" selection of Plaintiff's jail and prison disciplinary records, casting them as prejudicial and irrelevant. (Omnibus Motion at 29.) Because Defendants believe Plaintiff will mention his time in a special housing unit as part of his damages argument, Defendants contend they will use this evidence to explain why he was placed there. (Omnibus Opposition 25.) Defendants also plan to use a 2010 administrative finding that Plaintiff was not honest for impeachment purposes. (Id.)

Plaintiff's Motion on this point is GRANTED in part and DENIED in part. Defendants may not offer or discuss the disciplinary records, except for the following reasons: First, consistent with Rule 608(b), Defendants may inquire about the untruthfulness finding without using extrinsic evidence. See Fed. R. Evid. 608(b). Second, during the damages phase, if Plaintiff raises his time in special housing, i.e., opens the door to that

41

matter, Defendants may present evidence regarding the reasons for Plaintiff's placement in response.

### 11. Plaintiff's Inmate Medical & Program Records

Plaintiff seeks to preclude "wholesale" admission of his inmate medical and program records, but "reserves the right to offer selected records narrowly tailored to damages." (Omnibus Motion at 29.) Defendants state they do not plan to address the medical records, but contend the program records are relevant to damages because Plaintiff took several vocational training programs in fields in which he has not sought employment. (Omnibus Opposition at 25.) The Court GRANTS this Motion in part: During the damages phase, the Parties may raise narrowly-tailored portions of the medical and training records, but only as they relate to the issue of damages.

### 12. Scott Brettschneider Evidence

Plaintiff seeks to bar exhibits showing Brettschneider was convicted of a crime and disbarred in 2019, due to his work in an unrelated case. (Omnibus Motion at 29-30.) Plaintiff argues the exhibits—publicly-available news articles and press releases documenting Brettschneider's disbarment and conviction—are irrelevant, prejudicial by association, and not produced. (Id.) Defendants maintain these publicly-available exhibits are not subject to discovery (see Fed. R. Civ. P. 26(a)(1)(A)(ii)), risk

42

no prejudice because their subject matter was known and inquired upon throughout discovery, and are relevant for impeaching Brettschneider as a witness.  (Omnibus Opposition at 25-27.)

Plaintiff's Motion on this point is DENIED to the following extent.  Defendants may use these exhibits for impeachment purposes as to Brettschneider, but may not use these exhibits to impeach Plaintiff or make any kind of guilt-by-association argument.  As to the publicly-available documents, it "is well-established that discovery need not be required of documents of public record which are equally accessible to all parties." Hart v. Suffolk County, No. 17-CV-5067, 2023 WL 5720075, at *7 (E.D.N.Y. Sept. 5, 2023), aff'd, No. 23-7269, 2025 WL 1374984 (2d Cir. May 13, 2025) (quoting Krause v. Buffalo & Erie County Workforce Dev. Consortium, Inc., 426 F. Supp. 2d 68, 90 (W.D.N.Y. 2005)).  Plaintiff is unlikely to suffer from unfair prejudice from permitting the use of the publicly-available documents, given all Parties knew of Brettschneider's conviction and disbarment, and because such materials do not relate to Plaintiff and may not be used against him.

### 13. Plaintiff's *Pro Se* Appellate and Post-Conviction Filings

Plaintiff asserts his pro se appellate and post-conviction filings are irrelevant hearsay and, therefore, should be excluded.  (Omnibus Motion at 30.) Defendants argue such filings

43

are: admissible as party statements and ancient documents; subject to judicial notice; and, relevant because, in said filings, Plaintiff failed to allege his confession "was fabricated, false, or that he was physically coerced into signing said confession as he claims in this lawsuit." (Omnibus Opposition at 27.) In response to Defendants' counterarguments (discussed below), Plaintiff asserts his 2003 habeas filing "contains no statement" inconsistent with his current position, which, in any event, was written before he was given the Larrea and Montes statements. (ECF No. 449 at 11.) To the extent the documents are considered relevant, Plaintiff contends the Court can take judicial notice that the proceedings occurred but may not introduce or discuss the briefings themselves. (Omnibus Motion at 30.)

Plaintiff's Motion on this basis is DENIED. He has failed to cite any authority indicating such materials are inadmissible, especially on the alternative grounds raised by Defendants. To the extent Plaintiff wishes to argue these materials are not inconsistent with his current position or took place before he had the Larrea and Montes statements, he may do so at trial upon examination or cross-examination.

### 14. Evidence of the 1993 Non-Fatal Steven Jason Shooting and 1994 Tony Jackson Murder

In Plaintiff's view, the 1993 non-fatal shooting of Steven Jason, i.e., the Victim has "no relevance to the remaining

44

claims and discussing it at trial will inevitably invite a mini-trial about another crime." (Omnibus Motion at 30-31.) Plaintiff also asserts evidence of the 1994 murder of Tony should be excluded, as it may suggest "guilt by association and wasting time with a needless mini-trial." (Id. at 30.) Defendants consider the 1993 Jason shooting as relevant motive evidence and, while they claim to "have no intention of litigating" Tony's murder, Defendants seek to explore Plaintiff's friendship with Tony in support of their damages defense. (Omnibus Opposition at 27-28.)

Plaintiff's Motion on this point is DENIED as follows. Because the 1993 Jason shooting was discussed as motive evidence in Plaintiff's criminal trial, it may be examined and discussed to the extent it is relevant to Brady materiality. Defendants may additionally raise the Tony friendship during the damages phase, but may not explore this friendship during the liability phase of the litigation, as it bears little probative value to liability and will be far less prejudicial during the damages phase.

### 15. Plaintiff's 1994 Drug Charge

Plaintiff argues evidence related to his August 9, 1994 drug sale is irrelevant, remote in time, and would improperly prejudice the jury. (Omnibus Motion at 31.) Defendants contend this charge is an admissible felony, relevant because Plaintiff was arrested and in custody for this crime when he signed his

45

murder confession.  (Omnibus Opposition at 28.) Per Defendants, excluding this evidence could cause the jury to believe Plaintiff was illegally in custody when he confessed to the murder.  (Id.)

As discussed previously, Defendants are generally barred from raising Plaintiff's previous arrests and convictions. However, Defendants may introduce evidence that Plaintiff was in custody for an unrelated crime at the time of his interrogation. Depending how the testimony develops and to the extent necessary, Plaintiff may seek a limiting instruction regarding consideration of that evidence.  Plaintiff's Motion on this point is accordingly GRANTED in part and DENIED in part.

### 16. Plaintiff's Court of Claims Litigation

Plaintiff seeks to preclude mention of his previous Court of Claims litigation, wherein his claim to recover under New York's Unjust Conviction and Imprisonment Statute was denied because the statute does not allow recovery for Brady vacaturs. (Omnibus Motion at 31; ECF No. 387-22 (Court of Claims decision).) Plaintiff belives the litigation is not relevant and will confuse the jury.  (Omnibus Motion at 31.) Notwithstanding Defendants' counter-position that said case goes to Plaintiff's financial motive, since he did not appeal the adverse finding, this Court GRANTS Plaintiff's Motion on this point.  The Court of Claims litigation has little probative value to the instant action,

46

especially as Plaintiff's claim was denied on narrow state law grounds not at issue here.

### 17. Defendants' Intervening Cause Argument

Defendants' forty-fourth defense in the Proposed PTO posits "Plaintiff's damages were caused or contributed to by ineffective assistance of counsel at all stages of plaintiff's criminal prosecution." (Proposed PTO at 4.) Plaintiff seeks to preclude this line of argument, as it is typically rejected by Second Circuit courts. (Omnibus Motion at 32 (citing, e.g., Hamilton v. City of N.Y., No. 15-CV-4574, 2019 WL 1452013, at *17 (E.D.N.Y. Mar. 19, 2019) ("This Court is not aware of any decision in this Circuit, nor have Defendants cited any, in which an independent decision by a defendant or defense counsel [ . . . ] was held to be a superseding cause of a defendant's conviction[.]"); Galloway v. County of Nassau, No. 19-CV-5026, 2024 WL 1345634, *16 (E.D.N.Y. Mar. 29, 2024), on reconsideration, 2024 WL 2960532 (E.D.N.Y. June 11, 2024), and aff'd in part, appeal dismissed in part, 141 F.4th 417 (2d Cir. 2025)).) Although Defendants argue Plaintiff's criminal defense counsel "knew or should have known of Larrea and Montes's observations and that they failed to utilize this evidence, all of which demonstrates that their statements were not suppressed," the Court GRANTS

Plaintiff's Motion, as the cited precedent casts serious doubt as to the viability of this defense.  (Omnibus Opposition at 29.)

> 18. <u>Legal Arguments to the Jury</u>

Plaintiff posits Defendants should not resolve <u>Brady</u> materiality, favorability, or duty questions, nor raise qualified immunity, objective reasonableness, or probable cause defenses irrelevant to the <u>Brady</u> claim. [6]  (Omnibus Motion at 33.) The Court GRANTS this Motion to the extent the Parties may not infringe on the Court's duty to provide the law to the jury and the jury's duty to apply the law to the facts of the case.  See <u>In re United States</u>, 945 F.3d 616, 627 (2d Cir. 2019) (quoting <u>Sparf v. United States</u>, 156 U.S. 51, 102 (1895)). Counsel may, however, make arguments in their respective summations which are reasonably inferred from evidence presented.  <u>United States v. Roldan-Zapata</u>, 916 F.2d 795, 807 (2d Cir. 1990).

> 19. <u>Purportedly Undisclosed Witnesses and Evidence</u>

---

[6] Plaintiff's Motion on this point sought to preclude Exhibit UUUUUU (the <u>Restivo</u> verdict sheet).  Because the Restivo, Halstead, and Kogut evidence is barred, the Court DENIES as moot this portion of the Motion.

Plaintiff argues several exhibits[7] should be precluded because they were not produced during discovery.  (Omnibus Motion at 33.)  Defendants claim one of the exhibits (Ex. NNNN) was produced during discovery, four (Ex. ZZZ, AAAA, BBBB, and CCCC) are photographs given to Plaintiff at his deposition, and two (Ex. S and IIII) are demonstratives, and are thus not subject to discovery.  (Omnibus Opposition at 30 (citing Alexander v. Stop & Shop Supermarket Co., LLC, No. 22-CV-95557, 2025 WL 654995, at *2 (S.D.N.Y. Feb. 28, 2025)).)  Because Exhibit NNNN appears to have Bates stamps, the four photographs were shown to Plaintiff at his deposition, and demonstratives are not subject to discovery, the Court DENIES Plaintiff's Motion on this point.

Plaintiff also contends three of Defendants' proposed witnesses, Anthony Mayol, Eugene Cordaro, and Isabelle Vailes, and several associated exhibits must be precluded because they were not disclosed during discovery.  (Omnibus Motion at 33.) Defendants acknowledge Mayol, a childhood friend of Plaintiff and attorney who worked on the vacatur litigation, was not designated as a witness, but maintain: (a) Mayol is not required to be disclosed

---

[7] As documented in the Proposed PTO, these exhibits include: (1) Google Map of Area Surrounding Shooting (Ex. S); (2) photographs taken of the NCPD examination room (Ex. ZZZ and AAAA); (3) sketches of the NCPD polygraph room (Ex. BBBB and CCCC); (4) Demonstrative Diagram Map of Evidence related to the homicide of Victim (Ex. IIII); and (5) a document from a court-ordered line-up (Ex. NNNN). (Proposed PTO at pp. 62, 85-87, 89, 91.)

to the extent he is an impeachment witness; (b) Plaintiff will not suffer prejudice from Mayol's inclusion, because his role in the vacatur litigation was discussed extensively throughout the litigation; and (c) Mayol's "testimony is extremely relevant to damages based on his investigation into, knowledge of, and conversations with plaintiff about, the Larrea and Montes statements for more than a decade before plaintiff contacted NCDA." (Omnibus Opposition at 30-31 (citing (Fed. R. Civ. P. 26(a)(1)(A)(i) (witnesses must be disclosed "unless the use would be solely for impeachment")).) On Cordaro, Defendants argue he was identified as a witness in their April 23, 2021 Rule 26(a) disclosures.[8]  (Id.) Defendants did not respond to Plaintiff's Vailes arguments.  (Id.)

Plaintiff's Motion is GRANTED in part and DENIED in part, as follows.  Because Defendants did not timely designate Mayol, including him now would cause prejudice to Plaintiff.  Therefore, he may be offered only for impeachment purposes.  Because Cordaro was identified in Defendants' initial disclosures, he may testify. Because Defendants did not meaningfully respond as to Vailes, Defendants are precluded from calling her to testify.

## 20. Exhibits "Lacking Authentication"

---

[8] Cordaro's name was misspelled as "Cordero" on the initial disclosure.  (Omnibus Motion at 33.)

Per Plaintiff, jail and visitor logs should be excluded, because they "lack proper foundation and should be excluded absent competent testimony establishing their authenticity."[9]  (Omnibus Motion at 33-34.) Defendants argue such documents are admissible as ancient documents and business records, as they "were in the County's possession as they all relate to NCPD's homicide investigation and there is no basis to question their authenticity," while Defendants take the position Exhibit BBBB "is admissible as a business record and for demonstrative purposes." (Omnibus Opposition at 32-33.)

Because these documents appear to be "kept in the course of a regularly conducted activity," Plaintiff's Motion on this point is DENIED without prejudice, provided Defendants can proffer testimony from each exhibit's relevant custodian of records supporting the necessary elements under Rule 803(6) or otherwise prove their authenticity.  Fed. R. Evid. 803(6)(B).

21. <u>Jerl Mullen Notes and Drawings</u>

---

[9] As documented in the Proposed PTO, the exhibits: are Exhibit KK (Nassau County Sheriffs Department- Visit History for Lionel Olige); Exhibit LL (List of Jail Visits); Exhibit MM (NCPD Paperwork on Anthony Mayol); Exhibit BBBB (Sketches of NCPD Polygraph Exam Room); Exhibit IIII (Demonstrative Diagram/Map of Evidence related to the homicide of Victim); and Exhibit BBBBB (Handwritten notes of timeline).  (Proposed PTO at 73, 75, 86, 89.)

In a single-sentence, Plaintiff argues Jerl Mullen's notes should be precluded because he is deceased. (Omnibus Motion at 33.) This one-sentence objection does not satisfy Plaintiff's burden and is accordingly DENIED with prejudice and subject to renewal at trial upon a more developed objection.

22.  "Hearsay Statements and Notes, Including Records Related to Peddie Jenkins"

Plaintiff's single-sentence argument that "[v]arious exhibits listed by defendants constitute inadmissible hearsay and should be precluded on that basis [ . . . ] along with hearsay attributed to Peddie Jenkins" (Omnibus Motion at 34) fails to satisfy his burden and is thus DENIED without prejudice and subject to renewal at trial upon a more developed objection.

23.  Vacated Judicial Decisions

Plaintiff asserts, in non-specific fashion, "the legal decisions flowing into the vacated judgment are a nullity and lack any arguable relevance to the claims to be tried." (Omnibus Motion at 34.) Defendants argue such documents are relevant because the state prosecution could not have proceeded without an indictment, and the pre-trial suppression hearing decision is important to show the state court rejected Plaintiff's coercion argument. (Omnibus Opposition 32.) Because of Plaintiff's lack of specificity, his Motion on this point is DENIED without prejudice to renew.

52

24. <u>Grand Jury and Indictment and Exhibits</u>

Plaintiff contends any references to the May 23, 1995 grand jury decisions should be precluded on grounds "[t]hey are irrelevant to the surviving claims, and smuggle hearsay-within-hearsay about charging decisions, and would invite a prejudicial mini-trial." (Omnibus Motion at 34.) Defendants state they plan to use grand jury transcripts "for impeachment purposes only or possible prior consistent statements," and to show Plaintiff was indicted. (Omnibus Opposition at 32.) Because Defendants' planned use does not raise the hearsay issues Plaintiff objects to, Plaintiff's objection is DENIED. Defendants may use these materials for impeachment and prior consistent statement purposes and, if warranted, the Court will consider any objections thereto and proffered in those capacities.

25. <u>Expert Reports and Supporting Material</u>

Plaintiff's Motion includes a heading reading "Expert reports and supporting materials are inadmissible and should be precluded," with no text beneath it. (Omnibus Motion at 35.) Because no substantive arguments have been presented on this point, this portion of Plaintiff's Omnibus Motion is DENIED without prejudice to renew.

26.  The Witherspoon Identifications and Evidence

Although he cites to no case on this point, Plaintiff maintains Defendants may not rely upon Witherspoon's previous identification of Plaintiff unless she testifies at trial.[10] (Omnibus Motion at 33.) While Witherspoon previously identified Plaintiff as Victim's shooter during the criminal investigation (see Summary Judgment Order at 14-19), she now says she cannot remember her experiences with Plaintiff's investigation due to a 2002 stroke.  (Omnibus Motion at 15.) Defendants argue she is unavailable because, in addition to her medical diagnosis, she lives in Florida and the Court cannot compel her attendance.[11] (Omnibus Opposition at 34-35.) Defendants additionally observe Plaintiff had an opportunity and similar motive to cross-examine Witherspoon about her identification at the criminal trial, rendering her previous testimony admissible.  (Id. (citing United States v. Amato, No. 03-CR-1382, 2006 WL 1891113 (E.D.N.Y. June 27, 2006); City of Almaty, Kazakhstan v. Sater, No. 19-CV-2645, 2025 WL 2256759, at *3 (S.D.N.Y. Aug. 6, 2025)).)  Defendants' counter-position is persuasive.  Moreover, in the absence of any

---

[10] Specifically, Plaintiff argues "Rule 801(d)(1)(C) requires the declarant to testify; Rule 804(b)(1) fails because Jackson lacked a similar motive to cross in 1996 given the suppressed Montes/Larrea statements; adversarial line-up notes/DD-5s are excluded by Rule 803(8); Rule 807 trustworthiness is lacking amid CIU-found Brady violations."  (Omnibus Motion at 34-35.)
[11] Defendants' claim about Witherspoon's residence is made on information and belief.

case law supporting his position, Plaintiff's Motion is DENIED without prejudice and subject to renewal at trial upon a more developed objection.

### 27. Confidentiality Designations

Plaintiff argues confidentiality designations should be removed for trial use.  (Omnibus Motion at 35.) Defendants have no objection to presenting confidentiality-designated evidence to the jury, but assert "[r]ecords produced include officers' internal and personal records, training materials, grand jury transcripts, witness contact information, and all discovery related to the criminal prosecution" should not be published online or dispersed to the media prior to trial.  (Omnibus Opposition at 35.) The Court agrees.  Thus, the Court GRANTS Plaintiff's Motion in part to the extent confidentiality-designated discovery may be used in open Court and in front of the jury, but DENIES it to the extent such confidential-designated material is not to be published online or dispersed to media in unredacted form.  Until further order of the Court, Parties are to use best efforts to limit the introduction of such materials and may address potential redactions of same with the Court as such materials are introduced, consistent with

the Stipulation and Order of Confidentiality filed in this case. (See ECF Nos. 266, 267.)

### 28. Untimely Errata Sheets

Plaintiff observes the errata sheets for Abbondandelo and Kosior, both of which show substantial revisions, were submitted more than 30 days after the transcripts were received. (Omnibus Motion at 35.) Defendants do not dispute that the sheets were submitted past the 30-day deadline. (Omnibus Opposition at 35.) Because the 30-day requirement "is strictly enforced," Plaintiff's Motion is GRANTED as to this claim. Morrison v. Millenium Hotels, No. 18-CV-6811, 2021 WL 1534293, at *8 (S.D.N.Y. Apr. 19, 2021).

\*\*\*

To the extent the Court has not explicitly ruled on a portion of either Parties' motions, they are denied without prejudice to renew at trial, if warranted.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that each of the Motions (ECF Nos. 411, 412, 415, 418, 421, 424, and 430[12]) is granted in part and denied in part, as provided for in the body of this ORDER.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: January 27, 2026
       Central Islip, New York

---

[12] For clarification, these are the actual motions and not the corresponding support memoranda, which the Court defines at pp. 2-3.